UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FERRON SHORTER JR., | : | 2004 MAR 22  P 4: 24 |
| Plaintiff, | : | Case No. 3:03CV0149(WIG) |
| v. | : | |
| HARTFORD FINANCIAL SERVICES GROUP, INC.; MARYANNE RHODES, | : | |
| Defendants. | : | MARCH 12, 2004 |

## AFFIDAVIT OF MAURICE P. KUCK

Maurice P. Kuck, being duly sworn and according to law, deposes and states:

1. I am over the age of eighteen and understand the obligations of an oath.

2. My understanding of the obligations of an oath includes, but is not limited to, my direct experience as a member of the Connecticut State Board of Firearms Permit Examiners which operates pursuant to Connecticut General Statutes, § 29-32b, and requires me to consider testimony taken under oath in the board's decision-making processes.

3. I was employed by Hartford Financial Services Group, Inc ("The Hartford") from May 11, 1987, through November of 2003, and worked with Ferron Shorter Jr. ("Mr. Shorter") in the Commercial Lines Automation (CLA) Division immediately prior to Mr. Shorter's termination.

4. On February 8, 2002, I approached Jennifer Ames Haber ("Ms. Haber"), the Human Resources Representative for the CLA Division, because I had information about a female employee who had been harassing and stalking Mr. Shorter.

*MPK*

5. I observed the female employee, whom I later learned was MaryAnne Rhodes ("Ms. Rhodes"), sitting at Mr. Shorter's desk and staring at him when she had no work-related reason to be in the CLA Division and Mr. Shorter clearly found her presence disturbing and disruptive to his work.

6. I was concerned that Mr. Shorter had been terminated unfairly as a result of statements made by Ms. Rhodes.

7. Ms. Haber directed me to speak to an investigator in the Special Investigations Unit named Richard Wardell ("Mr. Wardell").

8. Ms. Haber indicated no concern when I approached her to discuss Ms. Rhodes' behavior and Mr. Shorter's termination and did not ask for any additional information after I provided my statement to Mr. Wardell.

9. I was never contacted by anyone in the Equal Opportunities Division at The Hartford.

10. Mr. Wardell took a signed and sworn statement from me and informed me that my continued employment was contingent upon my truthfulness.

11. The statement dated February 8, 2002, contains details of Ms. Rhodes' harassing behavior toward Mr. Shorter.

12. During the interview and while I was making my statement, Mr. Wardell was very concerned about my relationship with Mr. Shorter.

13. I was a work acquaintance of Mr. Shorter's and never socialized with him.

14. Mr. Shorter was not aware that I provided a statement and I have not spoken to Mr. Shorter since I last saw him at work prior to his termination.

15. Many months after Mr. Shorter was terminated and after he already filed a federal lawsuit in January of 2003, Mr. Shorter's attorney contacted me and I informed her that I had provided a statement to The Hartford regarding Ms. Rhodes and Mr. Shorter.

16. I indicated that she would need to obtain a copy of the statement from The Hartford since I did not have a copy.

17. The Hartford never contacted me about any action that had been taken regarding the content of my statement or my concerns about Ms. Rhodes' behavior.

18. I sat two desks away from Mr. Shorter and could see him whenever I looked up from my desk. I never observed any behavior by Mr. Shorter in the workplace that was violent or disruptive.

19. I also attended DB2 classes for The Hartford with Mr. Shorter and he displayed the highest level of behavior as a The Hartford employee when he was away from the office. His demeanor was calm and he was considerate to all of the individuals that he worked with.

20. Based upon my knowledge and information I was provided while employed at The Hartford, providing someone with an unauthorized password that they are unauthorized to possess is as serious an offense under The Hartford's Code of Conduct and Electronics Communication Policy as is accessing and using the functions of someone's voice mail using that password.

21. Providing an unauthorized person with a password gives the unauthorized person the ability without corporate permission to use the password to perform unauthorized functions within the accessed system.

22. When I observed Ms. Rhodes at Mr. Shorter's desk as described in my statement to Mr. Wardell she never appeared fearful or under duress, except to the extent she appeared upset when Mr. Shorter did not want to accommodate her demands for attention.

23. I approached Ms. Haber to provide a statement on February 8, 2002, because I believed an injustice had been done to Mr. Shorter because he is black male and the woman whom he had had an affair with was a white woman.

*[signature]*
Maurice P. Kuck

Subscribed and sworn to before me on this 12th day of March, 2004.

*[signature]*
Commissioner of the Superior Court
~~Notary Public~~
~~My Commission Expires:~~

4