UNITED STATES DISTRICT COURT    FILED
DISTRICT OF CONNECTICUT

FERRON SHORTER JR.,         :                2004 APR -5 P 3:39

        Plaintiff,       :      CASE NO. 3:03CV0149(WWE) DISTRICT COURT
                     :                           BRIDGEPORT CT

        v.               :

HARTFORD FINANCIAL SERVICES   :
GROUP, INC., MARYANNE RHODES,   :

        Defendants.     :      APRIL 5, 2004

## PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT REGARDING DEFENDANT HARTFORD FINANCIAL SERVICES GROUP, INC.

Plaintiff Ferron Shorter Jr., by and through his undersigned counsel and pursuant to Local

Rule 56(a)(2) of the Local Rules for the United States District Court for the District of

Connecticut, hereby submits:

### I.   Plaintiff's Responses to Defendant Hartford Financial Services Group, Inc.'s Local Rule 56(a)(1) Statement

    1.  Admit.

    2.  Admit.

    3.  Admit with clarification.  The Hartford maintained an Electronic Communications Policy

(ECP) during Plaintiff's employment from October 9, 1989, through January 23, 2002.  Plaintiff

denies that the ECP, last updated July 18, 2002, submitted as Exhibit 2 to the Affidavit of

Margaret J. Strange, Esq. (doc. #42.3) existed during his employment.

    4.  Admit with clarification.  The ECP submitted as Exhibit 2 to the Affidavit of Margaret J.

Strange, Esq. contains the language quoted but does not contain the underlined emphasis.

    5.  Admit with clarification.  The ECP submitted as Exhibit 2 to the Affidavit of Margaret J.

Strange, Esq. contains the language quoted.

6. Admit with clarification. The ECP submitted as Exhibit 2 to the Affidavit of Margaret J. Strange, Esq. contains the language quoted.

7. Admit with clarification. Defendant MaryAnne Rhodes ("Rhodes") contacted The Hartford's Office of Equal Opportunity Development (EOD) on January 21, 2002. (Affidavit of MaryAnne Rhodes, Rhodes Local Rule 56(a)(1) Statement, Ex. A at ¶¶ 25, 28.) (doc. #50)

8. The credibility of The Hartford's and/or Ms. Anderson's representation of the discussion between Ms. Anderson and Rhodes is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. Plaintiff moves to strike.

9. The credibility of The Hartford's and/or Ms. Anderson's representation of the discussion between Ms. Anderson and Rhodes is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. Plaintiff moves to strike.

10. As regards the first sentence, Plaintiff denies. Plaintiff attempted to convince Rhodes to leave Plaintiff alone by having Rhodes listen to a message left by a man on her voice mail to convince Rhodes that the relationship between Rhodes and Plaintiff was over, however Rhodes became furious, refused to listen, and would not allow Plaintiff to give her the new password. (Affidavit of Ferron Shorter Jr., ¶ 21.) (doc. #59) As regards the second sentence, Plaintiff denies with qualification and clarification. The credibility of Rhodes' and/or Brian Vadney ("Mr. Vadney")'s representation of the discussion between Rhodes and Mr. Vadney is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. However, Rhodes told Plaintiff that Rhodes had to call security to reset the password and that security continued to call Rhodes through the weekend about the changed password. (Rhodes Letter, Affidavit of Rachel M. Baird, Esq., Ex. 15.) (doc. #60) Plaintiff moves to strike the second sentence.

11. The credibility of The Hartford's and/or Ms. Anderson's representation of the discussion between Ms. Anderson and Rhodes is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. Plaintiff moves to strike.

12. The credibility of The Hartford's and/or Ms. Anderson's representation of the discussion between Ms. Anderson and Rhodes is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. Plaintiff moves to strike.

13. Admit.

14. The credibility of The Hartford's and/or Ms. Anderson's representation of Ms. Anderson's contact with Mr. Vadney is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. Plaintiff moves to strike.

15. Admit with clarification. The records specified were obtained in the course of the investigation.

16. Deny. Rhodes contacted Plaintiff at 3:30 A.M. on December 31, 2001, and Plaintiff returned her phone call. Rhodes asked Plaintiff to call Scott and told Plaintiff she feared Scott. During the phone call to Scott, which was taped on Scott's voice mail, Plaintiff told Rhodes to stop harassing Plaintiff and just tell Scott to leave Rhodes alone if Rhodes was really afraid of Scott. (Affidavit of Ferron Shorter Jr., ¶¶ 42, 43.)

17. Admit.

18. Admit.

19. Deny. Rhodes told Plaintiff that she contacted security to reset her password but security contacted Rhodes throughout the weekend as the password changed. (Affidavit of Rachel M. Baird, Esq., Ex. 15.) Mr. Vadney's administrative assistant made a phone call and had the

Rhodes' voice mail password reset. (Affidavit of MaryAnne Rhodes, Rhodes Local Rule 56(a)(1) Statement, Ex. A at ¶ 24.)

20. The credibility of The Hartford's and/or Ms. Anderson's and/or Jennifer Ames Haber (or, hereinafter "Ms. Ames")'s representation of the investigation is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. The basis or intent of the agreements arrived at by The Hartford and/or Ms. Anderson and/or Ms. Ames in the course of the investigation and termination is a determination for a finder of fact. Plaintiff moves to strike.

21. The credibility of The Hartford's and/or Ms. Anderson's and/or Jack Jacewicz's representation of the investigation is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness. Plaintiff moves to strike.

22. Admit.

23. Admit with clarification. Richard Wardell ("Mr. Wardell") interviewed Rhodes and reviewed the written statement prepared by Ms. Anderson summarizing the discussion Ms. Anderson had with Rhodes and which Rhodes signed. (Affidavit of Lisa Anderson, ¶ 4.) (doc. #44)

24. Admit.

25. Admit.

26. Deny. The record obtained by Mr. Wardell does not indicate that Plaintiff was convicted of breach of the peace in 1990. (Criminal Conviction Report, Affidavit of Margaret J. Strange, Esq., Ex. 8.)

27. Admit with clarification.  The email contained an attachment placing the message in context.  (Criminal Conviction Report, Affidavit of Margaret J. Strange, Esq., Ex. 9.)  (Affidavit of Ferron Shorter Jr., ¶ 51.)

28. The credibility of The Hartford's and/or Ms. Anderson's and/or Ms. Ames' representation of the investigation is a determination for a finder of fact and Plaintiff cannot admit or deny statements that he did not utter or witness.  The basis or intent of the agreements arrived at by The Hartford and/or Ms. Anderson and/or Ms. Ames in the course of the investigation is a determination for a finder of fact.  Plaintiff moves to strike.

29. Deny.

30. Plaintiff admits that Ms. Ames told Plaintiff that he was terminated because Plaintiff had told Mr. Wardell in a sworn statement that Plaintiff did not have any criminal convictions. Plaintiff denies having a criminal conviction or criminal convictions.  The basis or intent of Ms. Haber's decision-making process in the course of the investigation and termination is a determination for a finder of fact.

31. The basis or intent of Ms. Anderson's decision-making process in the course of the investigation and termination is a determination for a finder of fact.  Plaintiff moves to strike.

32. Deny.  Plaintiff was terminated because he is black and because he is a man.  (Pl. Dep., Vol. II, Second Affidavit of Rachel M. Baird, Ex. 1 at p. 33.)

33. The credibility of Ms. Anderson's representation of the investigation and the basis or intent of Ms. Anderson's decision-making process in the course of the investigation and termination is a determination for a finder of fact.  Plaintiff moves to strike.

34.  The credibility of The Hartford's and/or Ms. Anderson's and/or Ms. Ames and/or Mr. Wardell's representation of the investigation and termination is a determination for a finder of fact.  Plaintiff moves to strike.

35.  Plaintiff admits that Ms. Ames informed Plaintiff on January 23, 2002, that Plaintiff's employment was terminated.

36.  Admit.

37.  As regards the first sentence, the basis or intent of The Hartford's and/or Ms. Anderson's decision to discipline Rhodes is a determination for a finder of fact.  Plaintiff admits the second sentence with clarification.  Rhodes did not receive a development plan in accordance with the written warning/action plan phase of The Hartford's progressive discipline.  (Progressive Discipline, Affidavit of Rachel M. Baird, Esq., Ex. 6.)

38.  The credibility of Ms. Anderson's representation of the investigation and the basis or intent of Ms. Anderson's decision-making process in the course of the investigation and termination is a determination for a finder of fact.  Plaintiff moves to strike.

39.  Admit.

## II. **Disputed Issues of Material Fact**

1.  Ms. Anderson's discriminatory bias against Plaintiff is directly evidenced in the notes Ms. Anderson took regarding the investigation wherein she identifies Plaintiff as a "S, B, M" and Rhodes as a "S, W, F."  (Anderson Notes, Baird Aff., Ex. 1.)

2.  Ms. Anderson's identification of Plaintiff as a "perpetrator" and Rhodes as a "complainant" determined the course of the investigation that resulted in Plaintiff's termination.  (Anderson Dep., Baird Aff., Ex. 10 at 47.)

3. Ms. Anderson's identification of Plaintiff as a "perpetrator" and Rhodes as a "complainant" affected how Ms. Anderson chose to investigate Rhodes' complaint. (Anderson Dep., Baird Aff., Ex. 10 at 47.)

4. Ms. Anderson's identification of Plaintiff as a "perpetrator" and Rhodes as a "complainant" was the basis for Ms. Anderson's choice not to investigate Plaintiff's complaint of harassment. (Anderson Dep., Baird Aff., Ex. 10 at 47.)

5. Ms. Anderson's identification of Plaintiff as a "perpetrator" and Rhodes as a "complainant" was the basis for Ms. Anderson's choice not to act upon Mr. Kuck's February 8, 2002, statement regarding Rhodes. (Anderson Dep., Baird Aff., Ex. 10 at p. 37.)

6. The Hartford relied upon Ms. Anderson's investigation in determining that Plaintiff's ECP violation merited termination and Rhodes' ECP violation merited a warning. (The Hartford Interrogs., Baird Aff., Ex. 2 at ¶ 2.)

7. Under the ECP, Plaintiff's actions were not more serious than Rhodes' actions. (ECP, Strange Aff., Ex. 2.) (Ames Dep., Baird Aff., Ex. 16 at p. 43.) (Kuck Aff., ¶ 20.) (Information Protection, Baird Aff., Ex 20.)

8. Rhodes' prior violation of the ECP should have subjected Rhodes to discipline as severe as or more severe than the discipline imposed upon Plaintiff. (Progressive Discipline Policy, Baird Aff., Ex. 6.) (Rhodes Interrogs., Baird Aff., Ex. 4 at ¶ 6.) (Rhodes Warning, Strange Aff., Ex. 10.) (Shorter Aff., ¶ 71.)

9. In the course of the investigation that resulted in Plaintiff's termination, Mr. Wardell required that Plaintiff cooperate with the investigation by giving a sworn statement under oath to Mr. Wardell. (Shorter Statement, Strange Aff., Ex. 9.) (Wardell Dep., Baird Aff., Ex. 8 at p. 47.)

10.   On February 8, 2002, in the course of taking a statement from Mr. Kuck regarding Rhodes, Mr. Wardell required that Mr. Kuck swear under oath to the truth of Mr. Kuck's statement. (Kuck Statement, Baird Aff., Ex. 5.)

11.   In the course of the investigation that resulted in Plaintiff's termination, The Hartford's decision not to require a sworn statement under oath from Rhodes subjected Rhodes and Shorter to different terms and conditions of employment. (Rhodes Interrogs, Baird Aff., ¶ 7.) (Shorter Statement, Strange Aff., Ex. 7.) (Rhodes Statement, Strange Aff., Ex. 5.) (Rhodes Statement, Strange Aff., Ex. 5.)

12.   In the course of the investigation that resulted in Plaintiff's termination, Mr. Wardell informed Plaintiff that Plaintiff's continued employment was contingent upon his truthfulness in the course of the investigation. (Shorter Statement, Strange Aff., Ex. 9.) (Wardell Dep., Baird Aff., Ex. 8 at p. 47.)

13.   On February 8, 2002, in the course of taking a statement from Mr. Kuck regarding Rhodes, Mr. Wardell informed Mr. Kuck that Mr. Kuck's continued employment was contingent upon Mr. Kuck's truthfulness in the course of the investigation. (Kuck Statement, Baird Aff., Ex. 5.)

14. In the course of the investigation that resulted in Plaintiff's termination, The Hartford's decision not to inform Rhodes that her continued employment was contingent on her truthfulness subjected Rhodes and Shorter to different terms and conditions of employment. (Rhodes Interrogs, Baird Aff., ¶ 7.) (Shorter Statement, Strange Aff., Ex. 7.) (Rhodes Statement, Strange Aff., Ex. 5.)

15.    In the course of the investigation that resulted in Plaintiff's termination, Mr. Wardell threatened Plaintiff with discipline, including termination, if Plaintiff discussed Plaintiff's statement with anyone. (Shorter Statement, Strange Aff., Ex. 9.)

16.    On February 8, 2002, in the course of taking a statement from Mr. Kuck regarding Rhodes, Mr. Wardell threatened Mr. Kuck with termination if Mr. Kuck discussed Mr. Kuck's statement with anyone. (Kuck Statement, Baird Aff., Ex. 5.)

17. In the course of investigation that resulted in Plaintiff's termination, The Hartford's decision to not prohibit Rhodes from discussing her statement subjected Rhodes and Shorter to different terms and conditions of employment. (Rhodes Interrogs, Baird Aff., ¶ 7.) (Shorter Statement, Strange Aff., Ex. 7.) (Rhodes Statement, Strange Aff., Ex. 5.)

18. Ms. Anderson determined prior to Plaintiff's interrogation by Mr. Wardell that Plaintiff should be terminated. (Anderson Dep., Baird Second Aff., Ex. 2 at 22.) (Cf.: Anderson Dep., Baird Second Aff., Ex. 2 at p. 20.)

19.    In speculating about Plaintiff's reasons for complaining about Rhodes' to security on January 19, 2002, and not treating Plaintiff's statements to security as a complaint, The Hartford subjected Plaintiff to different terms and conditions of employment than Rhodes. (CHRO Affidavit, Baird Aff., Ex. 3 at ¶ 22.)

20.    In declining to speculate about Rhodes reasons for bringing a month old voice mail recording to work on January 21, 2002, The Hartford subjected Plaintiff to different terms and conditions of employment than Rhodes. (CHRO Affidavit, Baird Aff., Ex. 3 at ¶ 45.)

21.    The Hartford treated Rhodes differently than any other employee involved in an investigation when it did not make Rhodes' continued employment contingent on her

truthfulness about Plaintiff. (Letter from Ian Veitzer, Baird Aff., Ex. 9 at p. 1) (Rhodes

Statement, Strange Aff., Ex. 5.)

22. In accepting Rhodes' excuse for violating the ECP as an action taken by Rhodes to quell

Shorter's jealousy and in ignoring Plaintiff's complaint about Rhodes' harassment, The Hartford

subjected Rhodes and Plaintiff to different terms and conditions of employment. (CHRO

Affidavit, Baird Aff., Ex. 3 at ¶¶ 25, 27.)

23.   In the course of the investigation that resulted in Plaintiff's termination, The Hartford

did not request Rhodes' criminal record because she was white. (The Hartford's Interrogs.,

Baird Aff., Ex. 2 at ¶ 13.)

24.   In the course of the investigation that resulted in Plaintiff's termination, The Hartford

did request Plaintiff's criminal record because he was black. (Criminal Background Check,

Strange Aff., Ex. 8.)

25.   The Hartford's reason for terminating Plaintiff based on Plaintiff's violation of the ECP

was not true because Rhodes violated the ECP and was not terminated. (The Hartford Interrogs.,

Baird Aff., 2 at ¶ 3.)

26.   The Hartford "perceived" Plaintiff to be a threat because Plaintiff was black and

Rhodes was white. (The Hartford Interrogs., Baird Aff., 2 at ¶ 3.)

27.   Plaintiff was truthful when Plaintiff provided a statement under oath to Mr. Wardell on

January 23, 2002. (Shorter Statement, Strange Aff., Ex. 7.) (Conviction Information Request,

Baird Aff., Ex. 23.)

28.   Plaintiff was truthful when he told Mr. Wardell on January 23, 2002, that Plaintiff did

not have a criminal record. (Conviction Information Request, Baird Aff., Ex. 23.)

29. The January 18, 2002, email from Plaintiff to Rhodes was not threatening.  (Email, Strange Aff., Ex. 9.)

30.    Rhodes did not tell The Hartford that she was threatened by Plaintiff's January 18, 2002, email. (Rhodes Statement, Strange Aff., Ex. 5.)  (Email, Strange Aff., Ex. 9.)

31.    The Hartford would have shown the Vernon police officer a copy of Plaintiff's January 18, 2002, email on January 23, 2002, if the email had been threatening.  (Police Report, Baird Aff., Ex. 17.)

32.    The Hartford did not present any evidence to the Vernon Police Department on January 23, 2002, to support The Hartford's claim that Plaintiff was a threat.  (Police Report, Baird Aff., Ex. 17.)

33. Rhodes did not present any evidence or statement to the Vernon Police Department on January 23, 2002, to support The Hartford's claim that Plaintiff was a threat. (Shorter Aff., ¶ 68.)

34. The Vernon police officer did not find evidence that Plaintiff had threatened Rhodes. (Police Report, Baird Aff., Ex. 17.)

35.    Plaintiff was not a threat to the workplace. (Kuck Aff., ¶¶ 18, 19.)

36.    The Hartford never determined that Plaintiff was an actual threat to the workplace. (The Hartford Interrogs., Baird Aff., Ex. 2 at ¶ 3.)

37.    The Hartford determined that Plaintiff was a "potential" and a "perceived" threat.  (The Hartford Interrogs., Baird Aff., Ex. 2 at ¶ 3.)

38.    The Hartford's perception that Plaintiff was a potential threat was not based in fact. (The Hartford Interrogs., Baird Aff., Ex. 2 at ¶ 3.)  (Email, Strange Aff., Ex. 9.)  (Conviction Information Request, Baird Aff., Ex. 23.)  (Shorter Aff., ¶¶ 44-47, 48.)

39. The reason Ms. Anderson considered Plaintiff a "potential" threat was based on Plaintiff's race and gender. (Anderson Dep., Baird Aff., Ex. 11.)

40. Ms. Anderson considered Plaintiff a "potential" violent threat to the workplace because she had never observed or received any report that Plaintiff actually had acted in a threatening manner in the workplace. (Anderson Dep., Baird Aff., Ex. 10 at p. 35.)

41. The Hartford did not investigate Plaintiff's January 19, 2002, complaint against Rhodes for harassing Plaintiff. (Anderson Notes, Baird Aff., Ex. 1.) (Anderson Dep., Baird Aff., Ex. 10 at p. 28.)

42.   Mr. Kuck was an employee at The Hartford on February 8, 2002, who made a complaint against Rhodes regarding Rhodes harassing behavior toward Plaintiff. (CHRO Schedule A, Baird Aff., Ex. 14 at ¶ 11(g).) (Kuck Aff., ¶ 11.) (Kuck Statement, Baird Aff., Ex. 5.)

43. Mr. Kuck's statement to Richard Wardell on February 8, 2002, demonstrated that Plaintiff was not a threat to the workplace. (Kuck Statement, Baird Aff., Ex. 5.) (Kuck Aff., ¶ 18.)

44.   Ms. Anderson did not consider Plaintiff's complaint to security about Rhodes' harassing behavior because Rhodes is white female and Shorter is a black male. (Anderson Dep., Baird Aff., Ex. 10 at p. 28.)

45. The Hartford attempted to hide Mr. Kuck's February 8, 2002, statement regarding Rhodes. (Kuck Aff., ¶ 8.) (CHRO Schedule A, Baird Aff., Ex. 14 at ¶ 11.)

46. Mr. Kuck's statement to Mr. Wardell on February 8, 2002, was relevant to Plaintiff's claims of sexual harassment. (The Hartford Interrogs., Baird Aff., Ex. 2 at ¶ 9.)

47. Ms. Ames did not act upon Mr. Kuck's February 8, 2002, statement regarding Rhodes. (Kuck Aff., ¶ 8.)

48. The term "nigga" is not threatening.  (Shorter Aff., ¶ 48.)

49. Ms. Anderson's February 24, 2002, invitation that Rhodes call Ms. Anderson for lunch subjected Plaintiff and Rhodes to different terms and conditions of employment based on Rhodes and the Plaintiff's race and gender.  (Anderson Notes, Baird Aff., Ex. 1.)

50. Ms. Anderson became aware after Plaintiff's termination that Rhodes was meeting with Plaintiff.  (Anderson Dep., Baird Aff., Ex. 10 at p. 58.)

51. Rhodes brought a tape recorded voice mail message from 3:30 A.M. on December 31, 2001, to The Hartford on January 21, 2002, as part of a calculated plan to convince The Hartford that Rhodes should not be held accountable for violating the ECP.  (Shorter Aff., ¶¶ 42-48.) (CHRO Affidavit, Baird Aff., Ex. 4 at ¶ 10.)  (Anderson Dep., Baird Aff., Ex. 10 at p. 68.)

52. The Hartford considered a tape recorded voice mail message from 3:30 A.M. on December 31, 2001, that Rhodes provided on January 21, 2002, as evidence that Plaintiff was a potential threat to the workplace.  (CHRO Affidavit, Baird Aff., Ex. 3 at ¶ 10.)  (Anderson Dep., Baird Aff., Ex 10 at p. 68.)

53. Rhodes and Plaintiff were outside the workplace when the December 31, 2001, voice mail message was left on Scott's recorded.  (Shorter Aff., ¶¶ 42-47.)

54. Ms. Anderson did not formulate an opinion about what Rhodes did outside the workplace.  (Anderson Dep., Baird Aff., Ex. 10 at p. 58.)

55. Ms. Anderson held Plaintiff accountable for actions outside the workplace but did not hold Rhodes accountable for actions outside the workplace.  (Anderson Dep., Baird Aff., Ex. 10 at pp. 58, 68.)

56. The Hartford's failure to question Rhodes' motives in bringing a December 31, 2001, voice mail message tape to The Hartford on January 21, 2002, was not objective investigation. (Anderson Dep., Baird Aff., Ex. 10 at p. 48.)

57. The Hartford's determination not to consider Plaintiff's report of sexual harassment to The Hartford's security on January 19, 2002, and to The Hartford's Department of Special Investigations (DSI) on January 23, 2002, subjected Plaintiff to different terms and conditions of employment than Rhodes. (Anderson Dep., Baird Aff., Ex. 10 at 28.) (CHRO Affidavit, Baird Aff., Ex. 3 at ¶¶ 22, 25.)

58. Rhodes told her supervisor, Brian Vadney, on January 21, 2002, that Rhodes had provided Plaintiff with Rhodes voice mail password after Rhodes found out that Plaintiff had reported Rhodes to security for harassing Plaintiff. (Rhodes Aff., ¶¶ 21, 22-23.)

59. Rhodes stalked and harassed Plaintiff by coming to Plaintiff's work station at The Hartford when she was not welcome in January of 2002. (Kuck Aff., ¶¶ 4, 5.)

60. Rhodes stalked and harassed Plaintiff by calling Plaintiff at his work number while he was at his desk. (Kuck Aff., ¶ 4.)

61. Plaintiff was truthful in his statement to Richard Wardell when he stated that he did not have any criminal convictions. (Conviction Information Request, Baird Aff., Ex. 23.) (Superior Court Records, Baird Aff., Ex. 12.)

62. The Hartford had information on January 23, 2002, that Plaintiff had never been convicted of breach of peace. (Criminal History Record, Strange Aff., Ex. 8.)

63. The Hartford had information on February 4, 2002, that Plaintiff did not have any criminal convictions. (Superior Court Documents, Baird Aff., Ex. 12.)

64. The Hartford knew on March 11, 2002, that its claim that Plaintiff had several criminal convictions, including one for threatening, was not true. (Letter from Ian Veitzer, Baird Aff., Ex. 9 at p. 2.) (Superior Court Records, Baird Aff., Ex. 12.)

65. Ms. Anderson told Rhodes that Plaintiff had been terminated for harassing Rhodes. (Hearing Transcript, Baird Aff., Ex. 24 at 6.)

66. Rhodes compromised the ECP by not informing Brian Vadney on January 18, 2002, that Rhodes had provided Rhodes voice mail password to an unauthorized user. (Rhodes Statement, Strange Aff., Ex. 5.)

67. Rhodes told Brian Vadney on January 18, 2002, that Plaintiff had changed Rhodes' voice mail password. (Rhodes Aff., ¶ 18.)

68. Rhodes told Ms. Anderson on January 21, 2002, that Rhodes had told Brian Vadney on January 18, 2002, that Rhodes' voice mail was "messed up." (Rhodes Statement, Strange Aff., Ex. 5.)

69. Brian Vadney compromised The Hartford security by failing to contact security on January 18, 2002, to reset Rhodes' voice mail. (Rhodes Aff., ¶ 24.)

70. Brian Vadney's failure to act upon Rhodes' January 18, 2002, report that someone had access to Rhodes voice mail, was based on the fact that Brian Vadney did not believe the situation was serious. (Rhodes Aff., ¶ 18, 24.)

71. Rhodes knew that if she told The Hartford that Rhodes was afraid of Plaintiff that The Hartford would believe Rhodes because Rhodes was a white woman and Plaintiff was a black man. (Shorter Aff., ¶ 28.)

72. Ms. Anderson acted on complaints according to whom she identified as the "perpetrator" and who she identified as the "complainant." (Anderson Dep., Baird Aff., Ex. 10 at 47.)

15

73. Ms. Anderson, at the commencement of the investigation, identified Plaintiff as a "S, B, M" and Rhodes as a "S, W, F" because those facts mattered to Ms. Anderson. (Anderson Notes, Baird Aff., Ex. 1.)

74. Rhodes told Ms. Anderson that Rhodes feared Plaintiff because Rhodes knew that Plaintiff was living with another woman. (Rhodes Statement, Strange Aff., Ex. 5.)

75. Plaintiff's behavior, work record and personal relationship with the company (prior to Ms. Rhodes' statement) during his twelve years at The Hartford does not corroborate The Hartford's determination that Plaintiff posed a threat of violence at the workplace. (Kuck Aff., ¶¶ 18, 19.) (Am. Compl., ¶¶ 14-16.)

76. On January 23, 2002, Jennifer Ames told the Plaintiff that he was terminated for being untruthful in his statement to Wardell for denying that he had any criminal convictions. (Shorter Aff., ¶ 36.)

77. During his interrogation of Plaintiff, Wardell presented the employee handout booklet to Plaintiff when Wardell discussed the password situation and when he gave Plaintiff a moment to review the booklet at the latter part of the interrogation, the Plaintiff told him that accessing a password when the password is given was not listed but sharing a password was listed as a violation in the handout booklet. (Shorter Aff., ¶ 41.)

78. Rhodes' letter to Plaintiff postmarked March 1, 2002, indicated that Rhodes was not been fearful of Plaintiff. (Rhodes Letter, Baird Aff., Ex. 15.)

79. Rhodes' letter to Plaintiff postmarked March 1, 2002, indicated that Rhodes had been untruthful to Ms. Anderson on January 21, 2002, about being fearful of Plaintiff. (Rhodes Letter, Baird Aff., Ex. 15.)

80. Rhodes' contacts with Plaintiff following Plaintiff's termination indicated that Rhodes was not fearful of Plaintiff. (Rhodes Letter, Baird Aff., Ex. 15.) (Shorter Aff., ¶¶ 59-65, 72.)

81. Ms. Anderson's investigation was not thorough because she did not review voice mails that Rhodes had left on Plaintiff's voice mail system, she did not review emails from Rhodes to Shorter, and she did not talk to any of Shorter's co-workers. (Anderson Dep., Ex. 10 at 48.)

82. Plaintiff's allegations against Rhodes were verifiable on January 23, 2002, if The Hartford had thoroughly investigated Plaintiff's complaint of harassment. (Kuck Statement, Baird Aff., Ex. 4.) (Shorter Statement, Strange Aff., 7.)

83. Rhodes told Ms. Anderson that Rhodes was fearful of Plaintiff because Rhodes knew Ms. Anderson would believe that Rhodes, a white woman, was afraid of Shorter, a black male, and investigate Rhodes' complaint in accordance with that perception. (Shorter Aff., ¶ 28.)

84. Every time that Ms. Rhodes and Plaintiff were in each other's company prior to and subsequent to January 21, 2002, Ms. Rhodes never had a reason to be fearful of Plaintiff and she never mentioned to Plaintiff that she was fearful. (Shorter Aff., ¶ 72.)

85. In conversations that Rhodes had with Plaintiff on March 22, 2002, and March 27, 2002, Rhodes asked Plaintiff to come to Rhodes' apartment. (Shorter Aff., ¶¶ 60, 69.)

86. Mr. Wardell failed to investigate Plaintiff's assertion that Rhodes had a temper. (Shorter Statement, Strange Aff., Ex. 7.)

87. Rhodes presented a threat of workplace violence. (Shorter Aff., ¶¶ 12-14.)

88. Based on the information the Hartford received during the final week of September of 2002, the letter, the taped conversation, the restraining order transcript and/or the messages from Ms. Rhodes revealed inconsistencies of the allegations in Ms. Rhodes' January 21, 2002,

statement to Ms. Anderson, however Ms. Rhodes remained employed at the Hartford. (Anderson Dep., Baird Aff., Ex. 10 at p. 58.)

89. Ms. Rhodes remained employed although the information the Hartford received subsequent to January 23, 2002, the date of the Plaintiff's termination, showed that Rhodes had never feared Plaintiff. (Anderson Dep., Baird Aff., Ex. 10 at p. 58.)

90. The Hartford was overwhelmingly, unquestionably, and unequivocally receptive to Rhodes' role as the victim and the Plaintiff's role as the aggressor and perpetrator because Plaintiff was a black male and Rhodes was a white female. (Anderson Notes, Baird Aff., Ex. 1.) (Anderson Dep., Baird Aff., Ex. 10 at p. 47.)

91. Ms. Anderson, Mr. Wardell, and Ms. Ames had no basis, other than Rhodes' statement, that Plaintiff had ever shown Rhodes a gun. (Shorter Statement, Strange Aff., Ex. 7.) (Rhodes Statement, Strange Aff., Ex. 7.)

92. In January of 2002, during the investigation, Ms. Anderson and Mr. Wardell had first direct knowledge of Rhodes's harassing phone calls to Plaintiff at work when Plaintiff told Wardell that the obscene phone messages on Plaintiff's business voice mail were from Ms. Rhodes. (Shorter Statement, Strange Aff., Ex. 7.)

93. The Hartford refused to obtain obscene voice mail messages left by Rhodes on Plaintiff's voice mail at work and The Hartford's decision to use Rhodes' December 31, 2001, taped voice mail message from outside the workplace as evidence that Plaintiff was a threat to the workplace subjected Plaintiff and Rhodes to different terms and conditions of employment. (Anderson Dep., Baird Aff., Ex. 10 at pp. 47, 68.) (Shorter Aff., ¶¶ 12-14.)

94. The Hartford chose to believe that Plaintiff was a violent, gun possessing, black male who presented a threat to Ms. Rhodes despite the credibility issues brought to the attention of

The Hartford regarding Ms. Rhodes and despite the fact that absolutely no one at the Hartford corroborated any such behaviors demonstrated by the Plaintiff. (Am. Compl., ¶¶ 14-16.) (Kuck Aff., ¶¶ 18, 19.)

95. On January 21, 2002, when Rhodes spoke with Ms. Anderson, Ms. Anderson only inquired whether Plaintiff owned a gun and did not inquire whether Rhodes owned a gun because Rhodes is white and Plaintiff is black. (Rhodes Statement, Strange Aff., Ex. 5.) (Anderson Notes, Baird Aff., Ex. 1.)

96. Mr. Wardell did not ask Rhodes whether Rhodes owned a gun because Rhodes is white and Plaintiff is black. (Wardell Dep., Baird Aff., Ex. 8 at pp. 18-19.)

97. Mr. Wardell failed to place Rhodes under oath or to require a written sworn statement when he asked Rhodes whether Rhodes feared Plaintiff because Rhodes was a white female and Plaintiff a black male. (Wardell Dep., Baird Aff., Ex. 8 at 19.)

98. On January 21, 2002, when Rhodes spoke with Ms. Anderson, Ms. Anderson only inquired whether Plaintiff had physically abused Rhodes and did not inquire whether Rhodes had physically abused Plaintiff. (Rhodes Statement, Strange Aff., Ex. 5.) (Anderson Notes, Baird Aff., Ex. 1.)

99. Mr. Wardell did not ask Rhodes whether Rhodes had physically abused Plaintiff. (Wardell Dep., Baird Aff., Ex. 8 at pp. 18-19.)

100. After Rhodes threatened Plaintiff on January 20, 2002, by telling Plaintiff that Plaintiff would not have a desk on Tuesday, January 22, 2002, Plaintiff never initiated any contact with Rhodes again. (Shorter Aff., ¶ 78.)

101.  Rhodes left voice mail messages with obscene language on Plaintiff's work voice mail while Plaintiff never left a message on Ms. Rhodes' voice mail using obscene language.  (Shorter Aff., ¶ 12-14.)  (Rhodes Statement, Strange Aff., Ex. 5.) (Rhodes Aff.)

102.  At the time of his termination, the Plaintiff had a copy of the employee handout booklet of the ECP at his desk but never received it when his belongings from his desk were shipped to his home.  (Shorter Aff., ¶ 41.)  (Shorter Statement, Strange Aff., Ex. 7.)

103.  Rhodes confirmed on March 27, 2002, that Plaintiff's action of accessing someone's voice mail when given the password is not a written rule in the employee handbook of ECP (red pamphlet) but sharing the password is a violation in the employee handbook of ECP.  (Shorter Aff., ¶¶ 41, 70-71.)

104.  The Hartford did not preserve the attachment to Plaintiff's January 18, 2002, email because the attachment showed that Plaintiff's email was not threatening.  (Email, Strange Aff., Ex. 9.)

105.  The Hartford never planned to follow-up on Plaintiff's statements that Rhodes had harassed Plaintiff.  (Anderson Dep., Baird Aff., Ex. 10 at p. 48.)

106.  Ms. Anderson knew that Plaintiff and Rhodes were not living together in the four weeks prior to January 23, 2002, when Mr. Kuck claimed Rhodes harassed and stalked Plaintiff. (Shorter Statement, Strange Aff., Ex. 7.)  (Rhodes Statement, Strange Aff., Ex. 5.)

107.  In determining that Rhodes could not have harassed Plaintiff because Rhodes and Plaintiff were living together in the four weeks prior to Plaintiff's termination and in determining that Rhodes was fearful of Plaintiff during a December 31, 2002, voice mail message that Rhodes brought to work on January 21, 2002, The Hartford subjected Plaintiff and Rhodes to

different terms and conditions of employment. (Anderson Dep., Baird Aff., Ex. 10 at ¶¶ 37, 48, 68.)

108. The Hartford's failure to address the harassment complaint that Plaintiff filed with security on January 19, 2002, and The Hartford's immediate response to the complaint of harassing phone calls that Rhodes filed with security on April 9, 2002, subjected Plaintiff and Rhodes to different terms and conditions of employment. (Begley Notes, Baird Aff., Ex. 22.) (CHRO Affidavit, Baird Aff., Ex. 3 at ¶ 22.)

109. The Hartford refused to provide Plaintiff with the voice mail messages that were on Plaintiff's voice mail on January 23, 2002, because the voice mail messages supported Plaintiff's statements to security and to Mr. Wardell that Rhodes had harassed Plaintiff. (Ames Notes, Baird Aff., Ex. 16.)

110. The Hartford refused to turn over Mr. Kuck's statement regarding Rhodes to the CHRO because the statement supported Plaintiff's statements to security and to Mr. Wardell. (Kuck Statement, Baird Aff., Ex. 3.) (CHRO Affidavit, Baird Aff., Ex. 14 at ¶ 11.)

111. The Hartford subjected Rhodes and Plaintiff to different terms and conditions of employment by allowing Rhodes to remain employed after her violation of the ECP when The Hartford excused Rhodes' violation due to Rhodes' alleged motive to quell Plaintiff's jealousy and terminated Plaintiff after his violation of the ECP because The Hartford characterized Plaintiff's reason for violating the ECP, which was to stop Rhodes' harassment, as self-serving. (Shorter Statement, Strange Aff., Ex. 7.) (CHRO Schedule A, Baird Aff., Ex. 14 at ¶ 11(b).) (CHRO Affidavit, Baird Aff., Ex. 3 at ¶¶ 27, 22.)

112. Plaintiff filed a formal complaint of sexual harassment on January 19, 2002. (Anderson Notes, Baird Aff., Ex. 1.) (Shorter Aff., ¶ 24.) (CHRO Affidavit, Baird Aff., Ex. 3 at ¶ 22.)

113.    The Hartford was aware that Rhodes disbursed not only her own voice mail password but the proprietary phone number for her entire department.  (Shorter Aff., ¶ 19.)

114.    The Hartford ignored the fact that Rhodes was not cooperative in seeking a restraining order because The Hartford did not speculate upon the motives or credibility of Rhodes, a white woman, while The Hartford speculated upon the motives and credibility of Plaintiff because he was a black male.  (Anderson Notes, Baird Aff., Ex. 1. )  (Anderson Dep., Baird Aff., Ex. 10 at 47.) (CHRO Affidavit, Baird Aff., Ex. 3 at ¶¶ 22, 27.)

115.    The Hartford subjected Plaintiff to different terms and conditions of employment when Ms. Anderson found cause to investigate a potential violence in the workplace issue against Plaintiff based upon a taped voice mail message from a conversation between Rhodes and Plaintiff outside the workplace but ignored evidence that Rhodes was not fearful of Plaintiff,. (Anderson Dep., Baird Aff., Ex. 10 at pp. 58, 68.)

116.    The Hartford's beliefs, assumptions, and actions were based on racially biased views toward black males as violent and dangerous.  (Anderson Notes, Baird Aff., Ex. 1)

PLAINTIFF
FERRON SHORTER JR.

BY:    _____
Rachel M. Baird (ct12131)
Law Office of Rachel M. Baird
379 Prospect St
Torrington CT 06790-5239
Tel:  (860) 626-9991
Fax:  (860) 626-9992

## <u>CERTIFICATION</u>

I HEREBY CERTIFY that a copy of the foregoing was mailed first-class, postage paid to

the following counsel of record on April 5, 2004:

Margaret J. Strange, Esq.
Jackson Lewis LLP
55 Farmington Ave Ste 1200
Hartford CT 06105

David L. Metzger, Esq.
Metzger & Associates
25 Capitol Ave
Hartford CT 06106

Rachel M. Baird