United States District Court,
District of Connecticut
FILED AT          BRIDGEPORT
July 23, 2004
Kevin F. Rowe, Clerk
By                Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FERRON SHORTER JR.,               :

      Plaintiff,               :    Case No. 3:03CV0149(WIG)

      v.               :

HARTFORD FINANCIAL SERVICES       :
GROUP, INC., MARYANNE RHODES,     :

      Defendants.               :    JULY 23, 2004

## THIRD AFFIDAVIT OF RACHEL M. BAIRD

Rachel M. Baird, being duly sworn and according to law, deposes and states:

1. I represent Ferron Shorter Jr., and appear on his behalf, in the above-referenced matter.

2. This Affidavit is submitted in support of Plaintiff's Memorandum of Law in Support of Objection to Defendant MaryAnne Rhodes' Motion to Strike the Affidavit of Ferron Shorter Jr.

3. I affirm that a true and correct copy of <u>Pokorne v. Gary</u>, Docket No. 3:02CV267(GLG) (D. Conn. 2003) is attached as Exhibit 1.

4. I affirm that a true and correct copy of a letter dated November 4, 2003, and forwarded by first-class mail to Attorney David Metzger is attached as Exhibit 2.

5. I affirm that a true and correct copy of a letter dated November 4, 2003, and forwarded by first-class mail to Plaintiff is attached as Exhibit 3.

6. I affirm that a true and correct copy of a letter dated September 12, 2003, and forwarded by facsimile and first-class mail to Attorney David Metzger and Attorney Margaret Strange is attached as Exhibit 4.

7. I affirm that I met with Attorney David Metzger at his office located at 25 Capital Avenue in the City of Hartford for 45 minutes on January 21, 2004, and informed him that

Plaintiff had listened to the tapes as instructed in my letter dated November 4, 2003 (Ex. 3) and

that I had listened to the tapes and knew of no other recording as referenced in his letter of

October 16, 2003.

8.  I affirm, upon my information and belief, the Connecticut Commission on Human Rights

and Opportunities provides copies of recordings on cassette tapes at the cost of $2.00 per tape.


_____
Rachel M. Baird (ct12131)


Subscribed and sworn to before me on this 23rd day of July, 2004.


_____
Notary Public
My Commission Expires:

NOTARY PUBLIC
MY COMMISSION EXPIRES AUG. 31, 2009

**EXHIBIT 1**

Shorter v. Hartford Financial Services Group, Inc.
Case No. 3:03CV0149(WIG)

July 23, 2004

## LOIS Federal District Court Opinions

POKORNE v. GARY, (Conn. 2003)

LESTER N. POKORNE, Plaintiff, against DONALD A. GARY and REAL-VEST

CORPORATION, Defendants

3:02CV267(GLG)

United States District Court, D. Connecticut

September 12, 2003

### MEMORANDUM DECISION

GEREARD GOETTEL, Senior District Judge

The claims in this case arise out of a dispute between former business
partners. The plaintiff, Lester N. Pokorne, is suing the defendants,
Donald A. Gary and Real-Vest Corporation, for funds he claims should have
been distributed, in part, to him following the sale of certain
property. The plaintiff asserts two central claims: breach of fiduciary
duty and breach of contract. He asserts five additional claims; three of
those claims, namely, unjust enrichment, accounting, and constructive
trust are dependant and derivative of his fiduciary duty claim and, the
remaining two, breach of the covenant of good faith and fair dealing and
conversion are dependent upon and derivative of his breach of contract
claim. The defendants have moved for summary judgment **[Doc. 31]**. The
plaintiff seeks to strike **[Doc. 48]** several documents, or portions
thereof, proffered in support of the defendants' motion for summary
judgment, and has moved also for summary judgment **[Doc. 42]**. For the
reasons set forth
**Page 2**
below, the defendants motion is GRANTED and the plaintiff's motions are
DENIED.

**Facts**

Pokorne and Gary owned a close corporation known as Real-Vest, which,
through its subsidiaries, engaged in various real estate transactions
throughout the nation. Pokorne owned forty percent of Real-Vest's stock
and was its vice president; Gary was its president and owned the
remaining stock. After a falling out between the two, Pokorne was
terminated as vice president for cause. Subsequently, he negotiated the
transfer of his interest in the company to Gary through a Stock Purchase
Agreement (Stock Agreement), and he resigned from the company and all

of
its subsidiaries and affiliates. In consideration, Pokorne was to receive
cash and a non-recourse note from the defendants. In further
consideration and pursuant to Section 6(b) of the Stock Agreement,
Pokorne was to receive proceeds distributable under Section 11.04 of the
Beaudry I Partnership Agreement for the sale of property[fn1] owned by
the partnership.[fn2] The parties executed also an Assignment of Proceeds
(Assignment) altering the percentage of proceeds to be distributed to
Pokorne in the event
**Page 3**
such proceeds became distributable under Section 11.04.

   On October 31, 2001, the property was sold for $74,500,000. At the time
of sale, four notes encumbered the property including a $56,684,000 note
and a $49,712,000 note (know as the "Z Note" and "ZZ Note,"
respectively). Those two notes were paid off out the $74.5 million
purchase price for a reduced amount and the buyer took the property
subject to the remaining encumbrances. As a result of the sale, Gary
received a payment of $1,875,000 in consideration for his services. It is
this payment that gives rise to the present lawsuit. Having set forth the
relevant facts, we address first the plaintiff's motion to strike.

**Motion to Strike**

   The plaintiff seeks to have this Court strike several of the
defendants' documents, or portions thereof, supporting their motion for
summary judgment. The plaintiff claims these documents are violative of
Fed.R.Civ.P. 56(e)'s requirement that "[s]upporting and opposing
affidavits shall be made on personal knowledge, shall set forth such
facts as would be admissible in evidence, and shall show affirmatively
that the affiant is competent to testify to the matters stated therein."
Fed.R.Civ.P. 56(e). "A motion to strike is the correct vehicle to
challenge materials submitted in connection with a summary judgment
motion." *Newport Elec., Inc. v. Newport Corp.*, 157 F. Supp.2d 202, 208
(D. Conn. 2001). A party can make a
**Page 4**
motion to strike affidavits if they are not made on the basis of personal
knowledge. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d
Cir. 1988). A motion to strike can also be used to challenge documentary
evidence that has not been properly authenticated. *E.g., Dedyo v. Baker
Eng'g N.Y., Inc.*, No. 96 Civ 7152, 1998 WL 9376, at *4 (S.D.N.Y. Jan.
13, 1998).

   First, the plaintiff challenges portions of Gary's March 22, 2002
affidavit, namely, paragraphs 3, 11, 15, 16, 24, 27, 28, as well as
paragraphs 3 through 7 and 10 of his January 14, 2003 affidavit. He
claims that they are self-serving, contain inadmissible "hearsay, are

conclusory, argumentative and fail to cite supporting evidence." (Doc. 48, Pl.'s Mot. to Str. ¶ 1.) We **disagree**.

Gary's testimony contains averments based on his personal, intimate knowledge and understanding of the transaction between himself and the plaintiff. He is also a party to this action and every single statement in
his affidavits could be questioned on cross-examination at trial. *See Keene v. Hartford*, 208 F. Supp.2d 238, 243-44 (D. Conn. 2002).

Second, the plaintiff argues that the expert testimony of Alan Gross would not be helpful to the trier of fact, and that it is not based on sufficient facts. Pursuant to Fed.R.Evid. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to
**Page 5**
determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto
in the form of an opinion or otherwise. An expert may offer opinion testimony as to an ultimate issue in the case," Fed.R.Evid. 704, unless stating a legal conclusion. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988); see
also *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). Further, "[n]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

We decline to strike any of the challenged statements in the Gross affidavit. His occupation as a Certified Public Accountant who has, for the past fourteen years, been intimately involved with the Beaudry I Partnership, Gary, and Pokorne, provides him with a unique understanding
of the complexity of the transactions involved in this case. For instance, he provided estimated tax consequences to the invested limited
partner regarding the sale of the Beaudry I Partnership property, which,
undoubtedly, involved specific knowledge of all the financial consequences of that transaction, including the classification and distribution of funds. His expert testimony satisfies Fed.R.Evid. 702 in
that it is based on sufficient facts and it would be quite informative to
a jury.
**Page 6**

Finally, the plaintiff claims that an independent report written by Gregory G. Gotthardt, a partner at Ernst & Young, on behalf of the defendants, must be stricken because it has not been authenticated and constitutes inadmissible hearsay. The defendants respond by arguing that
the report is independently admissible as expert testimony pursuant to Fed.R. of Evid. 702. We **agree**.

First, the claim that the report is not authenticated is without

merit.
Gotthardt states on the first page of his report that it is his expert
report, that he prepared it for purposes of this litigation and that it
is the product of his examination of the "sale and distribution of sale
proceeds" of the Beaudry I Partnership property. (Defs.' Ex. 9.) We
find
the report to be independently admissible as expert testimony under
Fed.
R. Evid. 702 because it satisfies that Rule's requirements.

  Before reaching the merits of the parties' claims we must determine
what state's law to apply to the claims presented.

**Choice of Law**

  "A federal court sitting in diversity . . . must apply the choice of
law rules of the forum state." *Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 496 (1941); *Colgate Palmolive Co. v. 5/5 Dart Canada*,
724 F.2d 313, 316 (2d Cir. 1983), *cert. denied*, 466 U.S. 963 (1984).
Connecticut's choice of law rules, absent a limited circumstances not
relevant here, gives effect to
Page 7
the parties' choice of law when expressed in the contract. *See Elgar v.
Elgar*, 238 Conn. 839, 850, 679 A.2d 937 (1996) (listing circumstances
in
which a choice of law clause would not be operative).

  Here, the plaintiff is suing pursuant to the Stock Agreement and
Assignment. The Stock Agreement specifies that it "shall be governed
and
construed in accordance with the laws of the State of New York."
(Def.s'
Ex. 1.) The Assignment has no such provision. It was, however, executed
as part of the Stock Agreement[fn3] and, therefore, we will construe in
accordance with New York law. (*See* Pl.'s Memo, of Feb. 18, 2003,
at 12.) Having determined that the substantive law of New York governs
the contracts at issue here, we consider now the merits of the parties'
claims.

**Summary Judgment Standard**

  The standard for granting a motion for summary judgment is
well-established. A moving party is entitled to summary judgment "if
the
pleadings, depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is no
genuine
issue as to any material fact and that the moving party is entitled to
a
judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of
establishing that there is
Page 8
no genuine factual dispute rests with the moving party. *See Gallo v.
Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.
1994). In ruling on a motion for summary judgment, the Court must
resolve
all ambiguities and draw all reasonable inferences in favor of the

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Where, as here, both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. *Heublein, Inc. v. United States*, 996 F.2d 1455,
1461 (2d Cir. 1993). Rather, each party's motion must be examined on its
own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981).

To the extent that we must construe contractual language, we note further that summary judgment is appropriate only when the terms of the contract are wholly unambiguous. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). Contractual language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277
(2d Cir. 1989) (internal citation and quotation marks omitted). Language
does
**Page 9**
not become ambiguous solely because the parties offer conflicting interpretations during the course of litigation. *See Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir. 1985); *see also Sobering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

If the contractual language is ambiguous and subject to varying reasonable interpretations, the issue of the parties' intent is a question of fact, thereby rendering summary judgment inappropriate. *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). In that event, the
parties have a right to present extrinsic evidence to aid in the interpretation of the contract whose provisions are not wholly unambiguous. *Asheville Mica Co. v. Commodity Credit Corp.*, 335 F.2d 768,
770 (2d Cir. 1964). Thus, if the moving party cannot establish unambiguous contract language, "a material issue exists concerning the parties' intent," which is a question of fact left to the jury. *Wards Co.*, 761 F.2d at 120; *see also Royal Ins. Co. of Am. v. Zygo Corp.*, No. 3:01CV1317, 2003 WL 21960734, at *1-2 (D. Conn. Aug. 15, 2003).

**Discussion**

The essential issue for this court is whether Gary's fee in relation to
the sale of the Beaudry I property constituted proceeds that should have
been distributed under Section 11.04 of the Partnership Agreement, thereby entitling Pokorne to a portion
**Page 10**
of those proceeds under section 6(b) of the Stock Agreement and the Assignment.

Contractual Language

Section 6 of the Stock Agreement provides in relevant part:

> RV . . . **agrees** as follows: (b) In the event that at
> any time, or from time to time, RV (or any subsidiary
> or affiliate of RV, including Gary) should receive a
> *fee in lieu of payment* otherwise payable to R-V Realty
> of California, Inc. and/or Gary pursuant to Section
> 11.04(iv) of the [Partnership Agreement] . . . RV
> shall promptly pay to Pokorne an amount equal to 25%
> of the amount of such fee which is in excess of
> $250,000. RV shall deliver to Pokorne at the time of
> making such payment a report setting forth the amount
> of the fee and the calculation of the payment to
> Pokorne.

(App. to Defs.' Reply Mem. Tab 1.) (emphasis added).

The Assignment provides in relevant part:

> [T]he parties hereto hereby **agree** as follows: 1.
> Assignor [R-V Realty of California, Inc.] does
> herewith sell, transfer and assign, and Assignee
> [Pokorne] does hereby accept without warranty, an
> amount equal to forty percent (40%) of any proceeds
> (after the distribution of proceeds to Ronald J.
> Theissen) which may from time to time be distributed
> to Assignor pursuant to Section 11.04(iv) of [the]
> Partnership Agreement] . . . among Assignor, Donald
> A. Gary, P.K. Investors Partnership-1985, KNAP
> Partners and R-VE Stamford Limited Partnership
> III . . . of Beaudry I Investors. 2. Assignee hereby
> acknowledges that (a) the interest of Assignor
> pursuant to said Section 11.04(iv) of [the]
> Partnership Agreement is contingent and speculative in
> that Assignor may never receive any proceeds pursuant
> to said Section 11.04(iv) of the Partnership Agreement
> and that, accordingly, Assignee's
>
> **Page 11**
>
> interest hereunder is also contingent and speculative
> and (b) Assignee has no further interest . . . in the
> Partnership other than as set forth in Paragraph 1
> hereof above. 3. Assignor hereby **agrees** to receive in
> trust for Assignee any *proceeds properly payable* to
> Assignee pursuant to the provision of Paragraph 1 and
> promptly pay over to Assignee any such proceeds
> received. Assignor further **agrees** to properly account
> to Assignee, upon Assignee's reasonable request
> thereof, with respect to any proceeds which may be
> payable to Assignee pursuant to the provisions of
> Paragraph 1 hereof.

(*Id.* at Tab 2.)

Section 11.04 of the Partnership Agreement provides:

The *Net proceeds* from capital transactions, including
the sale and liquidation of the Partnership property
and assets . . . shall be distributed and applied to
the extent available in the following order: (i) to
the payment of debts and liabilities of the
Partnership, including debts, liabilities and
obligations; (ii) to the setting up of any reserves
which the Managing General Partner of the liquidator
deems reasonably necessary for contingent or unforseen
liabilities or obligations of the partnership; (iii)
to the Partners, pro rata, in an amount equal to their
Capital Contributions to the Partnership, less the
total amount of all prior distributions to them
pursuant to this Section; provided, however, that no
amount shall be distributed to the Partners in excess
of the positive balances in their respective Capital
Accounts; and (iv) the balance, if any, distributed
pari passu 33% to RVR; 12% to RVE; 2% to Gary; 50%
PKI; and 3% to KNAP.

(Defs.' Mem.) (emphasis added).

Finally, we set forth Section 7.04 of the Partnership Agreement
because
the defendants claim that Gary's payment for
**Page 12**
services was authorized and distributed to him through that section. It
provides in relevant part:

The General Partners . . . shall have the right to
contract and otherwise deal with the partnership for
the sale of property, for services or for other
purposes (all of which shall be reasonably necessary
or appropriate for the accomplishment of the
Partnership's purposes), and to receive reimbursement
of actual out of pocket expenditures reasonably
incurred in the performance of their duties
hereunder; provided, however, that the terms and
conditions of such contracts or dealings shall be no
less favorable to the Partnership than could be
obtained from unrelated third parties dealing at
arms-length (sic) with the Partnership. Any contract
or dealing referred to above shall be fully disclosed
to all Partners.

(Pl,'s Opp'n, Ex. H at 23.)

Fiduciary Duty

The defendants have moved for summary judgment on the plaintiff's
breach of fiduciary duty claim arguing that under New York law they
owed
no fiduciary duty to Pokorne.

New York law states clearly that "a conventional business
relationship, without more, does not become a fiduciary relationship by

mere allegation." *Compania Sud-America de Vapores v. IBJ Schroder*, 785 F. Supp. 411, 426 (S.D.N.Y. 1992) (internal citations and quotation marks omitted); *see also Oursler v. Women's Interart Ctr. Inc.*, 170 A.D.2d 407, 408, 566 N.Y.S.2d 295, 297 (1991); *Payrolls & Tabulating, Inc., v. Sperry Rand Corp.*, 22 A.D.2d 595, 598, 257 N.Y.S.2d 884, 887 (1965).

**Page 13**

"Indeed, New York Courts have **rejected** the proposition that a fiduciary relationship can arise between parties to a business transaction . . . and have concluded that `where parties deal at arm[']s length in a commercial transaction, no relationship of confidence or trust sufficient
to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.'" *Compania*, 785 F. Supp. at 426; *see In Re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir.), *cert. denied*, *Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield*, 537 U.S. 882
(2002); *BBS Power Mod, Inc. v. Prestolite Elec., Inc.*, 71 F. Supp.2d 194,
203 (W.D.N.Y. 1999). Such circumstances generally relate to the superior
bargaining position of one party. *See BBS*, 71 F. Supp.2d at 203.

Here, the plaintiff asserts that his business relationship with the defendants, which spanned a decade, suffices to establish that the defendants owed him a fiduciary duty. The plaintiff claims further that the parties' status as the only stock holders in a close corporation, their execution of certain agreements and involvement in numerous investments, provide additional reasons for finding a fiduciary duty to have existed here. We are not persuaded.

The record reveals that the "extraordinary circumstances" necessary to
impose fiduciary obligations upon the defendants are fatally lacking. To
begin, there is no evidence whatsoever that

**Page 14**

the transaction was anything other than an arm's length business transaction. Pokorne and Gary were clearly businessmen of a sophisticated
nature. They established as business partners layers of companies of various types and took part in numerous business transactions of high economic value. As mentioned above, Pokorne was the vice-president of Real-Vest and Gary was its president. They were also partners in several
partnerships and have had significant exposure to various partnership agreement provisions governing the distribution of funds.

Significantly, Pokorne states in his Declaration of February 14, 2003,
that Section 6(b) was included in the Stock Agreement "to protect [his] rights to payment from Beaudry I if Gary or RVR received fees in lieu of
distribution under [Section] 11.04(iv)" of the Partnership Agreement. This indicates that the deal was a business transaction entered into by parties of similar bargaining power. Pokorne recognized he had an interest to be protected and he negotiated successfully to secure it.

Moreover, he was represented by counsel in these negotiations. In other words, the transaction was the product of arm's length negotiations. The plaintiff's claim made at oral argument and in his motion papers that he was unable to protect his interest, based on the evidence, seems rather disingenuous.

   Because no genuine issue of material fact exists as to the plaintiff's breach of fiduciary duty claim, we GRANT the
**Page 15**
defendants' motion for summary judgment in that regard.

   Breach of Contract

   The defendants have moved also for summary judgment on the plaintiff's breach of contract claim. Fundamentally, their argument is this: Because the mortgage holders and primary investors lost millions of dollars and were not paid in full when the property was sold, there was no money for distribution under the clear and unambiguous language of Section 11.04(iv) of Partnership Agreement. Consequently, there were no proceeds "properly payable" under the Assignment, and no fee paid in lieu of distribution pursuant to Section 6(b) of the Stock Agreement. Moreover, the invested partners were free to make whatever deal they wanted with Gary to pay him any amount they saw fit for his services. As an additional argument, and the one we find convincing, the defendants assert that his receipt of a fee was authorized explicitly by Section 7.04 of the Partnership Agreement. Our inquiry, therefore, focuses on Section 7.04.

   Section 7.04 allows general partners "to contract and otherwise deal with the partnership for . . . services or for other purposes." We find this language to be definite and precise. It authorizes a general partner, like Gary, to contract with the partnership for services. As the defendants argue, because Gary was entitled to a fee for his services under Section 7.04, that amount was subtracted properly from the gross proceeds
**Page 16**
of the sale of the Beaudry I property and it did not constitute net proceeds. Under Section 11.04, Pokorne is entitled to the distribution of net proceeds only; the Assignment allows him to receive proceeds that are properly payable under Section 11.04(iv), as does Section 6(b). Because there were no net proceeds under Section 11.04(iv), no proceeds were properly payable under the Assignment or the Stock Agreement.

   The plaintiff does little to challenge this interpretation. He provides only conclusory statements devoid of any legal authority. For instance, he claims that Section 7.04 "does not authorize payment of the fee here

because, as general partner, Gary was required to devote his time to management of the partnership's business. Special compensation is not warranted for performance of services that the general partner is already
obligated to provide. And, in any event, Defendants' failure to disclose
Gary's fee, disqualifies them from relying on that section here."
(Pl,'s
Mem. in Opp'n at 8-9.) Conclusory statements of this type will not suffice to invent a genuine issue of material fact where none exists.
See
Conroy v. New York State Dept. of Corr. Serv's., 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.") (citing Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

The plaintiff makes other claims under Section 7.04 that
**Page 17**
have no basis in the contract. For example, he claims that Gary has violated Section 7.04 because he did not provide proper notice to his fellow partners. The plaintiff argues, while general partners may contract with the partnership, certain conditions must be met first.
For
instance, such dealings have to be fully disclosed to all partners, the dealings must be necessary and appropriate and no less favorable to the partnership than could have been obtained from a third party. (See Pl.'s
Mem. in Supp. of Summ. J. at 5.) Section 7.04 is quite clear in that such
challenges concern partners to the partnership — not the
plaintiff. Section 7.04 states precisely that "[a]ny contract of dealing
referred to [in this Section] shall be fully disclosed to all Partners."
(emphasis added). The plaintiff is not a partner under the Partnership Agreement.

The plaintiff's interpretation of Section 7.04 is unreasonable and finds no support, even when the record is viewed in a light most favorable to his position. The defendants, on the other hand, have satisfied their burden of demonstrating that no genuine issue of material
fact exists regarding the interpretation of Section 7.04. It allows clearly for Gary to contract with the partnership and to receive payment
for his services. As we have stated already, Section 11.04 allows for the
distribution of "net proceeds" in order of priority. Reading Sections 7.04, 11.04, the Assignment and the Stock Agreement
**Page 18**
together, any fees taken under section 7.04 necessarily must be deducted
from gross proceeds. RJE Corp. v. Northville Indus. Corp., 329 F.3d 310,
314 (2d Cir. 2003) (In assessing ambiguity, we consider the entire contract to "safeguard against adopting an interpretation that would render any individual provision superfluous.") If Gary's authorized fee

was not to be deducted from the gross proceeds of the sale, the language
allowing a general partner to receive such a fee would be rendered
meaningless. *Manley v. Ambase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003). In
other words, if the fee for services was not deducted from gross
proceeds, it would become part of the "net proceeds," which must be
distributed amongst others according to the Section 11.04, thereby
stripping a general partner of his contractual right to receive a fee for
his services in dealing with the Partnership.

We find that the defendants have demonstrated that no genuine issue of
material fact exists as to the plaintiff's breach of contract claim and
GRANT their motion for summary judgment on that claim.

### Plaintiff's Motion for Summary Judgment

The plaintiff moves for judgment as to the entirety of his complaint.
He, too, claims that no genuine issue of material fact exists in this
case. As our discussion above reveals, the defendants have shown that no
genuine issue of fact exists and
**Page 19**
that judgment should enter in their favor as a matter of law.
Consequently, the plaintiff's motion is DENIED because he cannot show
that he is entitled to judgment as a matter of law.

### Conclusion

The plaintiff's motion to strike **[Doc. 48]** is *DENIED*. The defendants'
motion for summary judgment is granted regarding the plaintiff's claims
for breach of fiduciary duty and breach of contract. Additionally, we
grant summary judgment in favor of the defendants as to the plaintiff's
remaining claims of unjust enrichment, accounting, constructive trust,
breach of good faith and fair dealing, and conversion because the first
three of those claims are dependent upon the fiduciary duty claim and the
last two claims are dependent upon the breach of contract claim.
Therefore, the defendants' motion for summary judgment is **GRANTED [Doc.
31]** as to all of the plaintiff's claims asserted against them. The
plaintiff's motion summary judgment is **DENIED [Doc. 42]**. The clerk is
directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

[fn1] The property consisted of an office building in Los Angeles,
California.

[fn2] Real-Vest's interest in this property stems from its wholly owned
subsidiary, Real-Vest California, Inc., which had a residual interest in
the Beaudry I partnership.

[fn3] The Assignment was executed on December 18, 1991; the Stock
Agreement was executed on January 10, 1992.

Page 1

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 2

Shorter v. Hartford Financial Services Group, Inc.
Case No. 3:03CV0149(WIG)

July 23, 2004

# Law Office of Rachel M. Baird

Stonegate Professional Building
379 Prospect Street
Torrington CT 06790-5239

Phone: 860.626.9991
Facsimile: 860.626.9992
Toll free: 866.279.6402

Rachel M. Baird, Attorney

November 4, 2003

David L. Metzger
Metzger & Associates
25 Capital Ave
Hartford CT 06106

Re:     **Shorter v. Hartford Financial Services Group, et al,** Case No. 3:03CV149(MRK)

Dear Attorney Metzger:

Please find enclosed a Stipulation and proposed cover letter to the Clerk regarding the magistrate referral. The original Stipulation with my signature has been forwarded to Attorney Strange. I look forward to any comments regarding revision to the Stipulation and will file the document when it is returned.

I am in receipt of your letter regarding the March 22, 2003, tape recording and am in the process of comparing it to another copy of the tape.

Sincerely,

Rachel M. Baird, Attorney

Encls:  Stipulation, dated November 4, 2003 (copy)
        Draft Cover Letter to Clerk, dated November 4, 2003
        Supplemental Production, P195 through P213, inclusive

**EXHIBIT 3**

Shorter v. Hartford Financial Services Group, Inc.
Case No. 3:03CV0149(WIG)

July 23, 2004

**Law Office of Rachel M. Baird**

Stonegate Professional Building
379 Prospect Street
Torrington CT 06790-5239

Phone: 860.626.9991
Facsimile: 860.626.9992
Toll free: 866.279.6402

Rachel M. Baird, Attorney

November 4, 2003

Ferron Shorter Jr.
PO Box 464526
Lawrenceville GA 30042

**Re:**   **Client Copy**

Dear Ferron:

Please find enclosed the following:

- Letter from Attorney Metzger, dated October 16, 2003;
- Copy of Tape with October 22, 2002, conversation;
- Endorsement and Scheduling Order, filed September 29, 2003;
- Orders regarding Plaintiff's Motion for Leave to File Supplemental and Amended Pleading, Defendant's Motion to Strike, MaryAnne Rhodes' Motion to Strike, and Defendant's Motion to Dismiss, filed September 25, 2003;
- Stipulated Protective Order for Confidential Information, dated September ___, 2003;
- Defendant's Amended Answer and Affirmative Defenses to the Amended Complaint, dated October 21, 2003;
- Defendant MaryAnne Rhodes' Answer to Complaint, dated October 21, 2003;
- Draft Stipulation regarding Magistrate Referral and Cover Letter to Clerk of Court, dated November 4, 2003;
- Letter from Attorney Baird to Attorney Strange, dated November 4, 2003;
- Letter from Attorney Baird to Attorney Metzger, dated November 4, 2003;
- Discovery Documents (195 – 213, inclusive) with Motion regarding Supplemental Responses, dated November 4, 2003.

Please review the enclosed tape and compare the March 22, 2003, conversation to the conversation you have on your tape to ensure that no part of the original tape recording is missing from the enclosed tape. You may be able to recall by listening without comparing.

Sincerely,

Rachel M. Baird, Attorney

Enclosures

**EXHIBIT 4**

Shorter v. Hartford Financial Services Group, Inc.
Case No. 3:03CV0149(WIG)

July 23, 2004

# Law Office of Rachel M. Baird

Stonegate Professional Building
379 Prospect Street
Torrington CT 06790-5239

Phone: 860.626.9991
Facsimile: 860.626.9992
Toll free: 866.279.6402

Rachel M. Baird, Attorney

September 12, 2003

**Via facsimile and first-class mail**
David L. Metzger, Esq.
Metzger & Associates
25 Capitol Ave
Hartford CT 06106
Fax: (860) 549-5224

Re: **Ferron Shorter Jr. v. Hartford Financial Services Group, Inc., et al.**

Dear Attorney Metzger:

As we discussed at my client's deposition on September 5, 2003, I am providing you documents from the Commission on Human Rights and Opportunities (CHRO) proceeding that may not have been included in previous discovery responses or as deposition exhibits. Although I believe discovery has produced the entire CHRO file at this point, I am not certain enough to make that representation and invite The Hartford to provide any documents that I may have missed.

With regard to the transcript and other related documents from the restraining order hearing that we discussed on September 5, 2003, these documents may be found at P85 through P105, inclusive. As indicated in my Second Supplemental Response to The Hartford dated September 12, 2003, please contact me at your convenience to arrange to copy the tapes that were entered as exhibits to Complainant's CHRO Reply.

Sincerely,

Rachel M Baird

Rachel M. Baird, Attorney

c:    Margaret J. Strange, Esq. (via mail and facsimile)