UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FERRON SHORTER JR.<br>    Plaintiff, | :<br>:<br>: |
| v. | : CIVIL NO.: 303 CV 0149(WIG)<br>: |
| HARTFORD FINANCIAL SERVICES GROUP,<br>INC. and MARYANNE RHODES<br>    Defendants. | :<br>:<br>: SEPTEMBER 30, 2004 |

### DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF POST-TERMINATION COMMUNICATIONS BETWEEN PLAINTIFF AND MARYANNE RHODES

Pursuant to Federal Rules of Evidence 402, 403, 602 and 701, Hartford Financial Services Group, Inc. ("The Hartford") hereby moves to preclude the introduction of highly prejudicial evidence of communications between Plaintiff and Defendant Mary Anne Rhodes ("Ms. Rhodes") following Plaintiff's termination of employment on January 23, 2002.[1] The evidence consists of voice mail messages Ms. Rhodes left with Plaintiff between March 22 and March 28, 2002, two conversations with Ms. Rhodes which Plaintiff surreptitiously tape recorded on March 22 and 27, 2002, and a restraining order Plaintiff obtained against Ms. Rhodes in August 2002.[2]

---

[1] The Hartford's Motion to Bifurcate Plaintiff's claims against it and Ms. Rhodes into separate trials is filed simultaneously herewith.

[2] The cassette tapes of the voice mail messages and tape recorded conversations at issue are attached as Exhibits 1 and 2 to the Second Affidavit of Ferron Shorter Jr. dated June 26, 2004 submitted in support of Plaintiff's Objection to Maryanne Rhodes' Motion to Strike the Affidavit of Ferron Shorter Jr. The voice mail messages from March 2002 are found on Side B of Exhibit 1. The taped recorded conversations of March 22 and 27, 2002 are found on Sides A and B of Exhibit 2.

1

As set forth in more detail below, Ms. Rhodes' voice mail messages should be precluded because they are irrelevant to Plaintiff's claims in this case, they have no bearing on The Hartford's discharge of Mr. Shorter and they will only confuse the jury in its consideration of the issues in the case. The tape recorded conversations, in addition to being irrelevant, are also inflammatory and unfairly prejudicial to The Hartford. In these tape recorded conversations, which Plaintiff created after he retained counsel, Plaintiff attempted to manufacture evidence by manipulating Ms. Rhodes into making statements supporting his claims and into reluctantly agreeing with his statement that The Hartford would not have discharged him if he were white. Such evidence is completely irrelevant to The Hartford's decision-making process, lacks any basis in Ms. Rhodes' personal knowledge, and was clearly obtained in preparation for Plaintiff forthcoming lawsuit and its potential shocking effect at trial.[3] Likewise, evidence of a restraining order Plaintiff obtained in August 2002 against Ms. Rhodes is irrelevant to the circumstances leading to his termination and is unfairly prejudicial to The Hartford.

I.   INTRODUCTION

Plaintiff's thirteen count Complaint alleges various statutory and common law claims arising out of the termination of his employment with The Hartford on January 23, 2002. Counts One through Ten allege the following causes of action against The Hartford: 1) sexual harassment in violation of Title VII; 2) race and sex discrimination in violation of Title VII; 3) violation of 42 U.S.C. § 1981; 4) retaliation in violation of Title VII; 5) retaliation under 42 U.S.C. § 1981; 6) race and sex discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"); 7) retaliation in violation of CFEPA; 8) intentional infliction of

---

[3] Based on Plaintiff's refusal to communicate with Ms. Rhodes either prior to or following March 2002, it appears that Plaintiff manipulated Ms. Rhodes and cravenly rekindled his relationship with her for the sole purpose of assembling evidence in support of this litigation.

emotional distress; 9) negligent infliction of emotional distress; and 10) breach of implied covenant of good faith and fair dealing. Count Thirteen alleges a common law claim for invasion of privacy. Counts Eleven and Twelve allege claims against Ms Rhodes for tortious interference with contract and defamation, respectively.

II.    FACTUAL BACKGROUND[4]

Plaintiff was discharged from his position with The Hartford on January 23, 2002 for circumstances surrounding his violation of The Hartford's Electronic Communications Policy ("ECP"). Plaintiff violated the ECP by accessing Ms. Rhodes' voice mail account, changing her password and deleting messages during the weekend of January 18, 2002.[5] Because of Plaintiff's conduct, Ms. Rhodes could not access her voice mail account and could not obtain work-related messages. When Ms. Rhodes returned to work on January 21, 2002, she reported the violation to her supervisor and to Lisa Anderson of The Hartford's Office of Equal Opportunity Development.

Ms. Rhodes told Ms. Anderson that she and Mr. Shorter had shared a consensual relationship for about six months and that for approximately two months, they lived together at her apartment. Ms. Rhodes told Ms. Anderson that at some point during their relationship, she shared her password to allow Mr. Shorter to listen to her messages because he was jealous and would accuse her of being unfaithful to him. On the previous Friday, January 18, 2002, Ms. Rhodes stated she flew to Florida to visit a friend. While Ms. Rhodes was in Florida, Mr.

---

[4] The following facts are taken from deposition transcripts and other exhibits attached to the Affidavit of Margaret J. Strange submitted in support of Defendant's Motion for Summary Judgment.

[5] Beginning in approximately June 2001, Plaintiff and Ms. Rhodes commenced a romantic relationship which culminated with Plaintiff moving into Ms. Rhodes' apartment in November 2001. While Plaintiff moved out of the apartment in December 2001, the two continued a turbulent on-again, off-again relationship for several additional months.

3

Shorter accessed her voice mail account and changed her password so that she was could not obtain her voice mail messages.

Ms. Rhodes also told Ms. Anderson that her relationship with Mr. Shorter ended in December 2001 when he moved out of her apartment. Ms. Rhodes prepared a written statement for Ms. Anderson in which she wrote, "Ferron could be very jealous. He had had a bad temper and would scream at me. He has squeezed my arm and it bruised, and he kicked me. When he moved in, he told me that he had a gun and he showed it to me."[6] Ms. Rhodes also told Ms. Anderson that Mr. Shorter had threatened her brother and that, on one occasion, her sister-in-law called the police because she heard Mr. Shorter screaming at Ms. Rhodes over the phone. Ms. Rhodes also provided Ms. Anderson with a message Mr. Shorter left on the answering machine of a friend of Ms. Rhodes named Scott. The message from Scott's answering machine recorded an obscenity-laced tirade by Mr. Shorter berating, threatening and screaming at Ms. Rhodes.

After meeting with Ms. Rhodes, Ms. Anderson began to investigate Ms. Rhodes' complaint. As part of her investigation, she obtained Ms. Rhodes' voice mail records. These records indicated that Mr. Shorter accessed Ms. Rhodes' voice mail more than 40 times between 3:00 pm on Friday, January 18, 2002 and 1:30 am on Monday, January 21, 2002. The records also indicated that her password was changed at 5:01 pm and 5:18 pm on January 18, 2002 and that her password was changed an additional two times during the weekend. The records also showed that several messages were deleted from Ms. Rhodes' voice mail.

Ms. Anderson also met with Jennifer Ames, a human resources generalist for Mr. Shorter's department, to notify her of Ms. Rhodes' complaint. Ms. Anderson and Ms. Ames

---

[6] A copy of Ms. Rhodes' written statement is attached as Exhibit 1.

enlisted the assistance of Richard Wardell, an investigator in The Hartford's Department of Special Investigations.

As part of his investigation, Mr. Wardell interviewed Ms. Rhodes and reviewed her statement. In addition to confirming the information in her statement, Ms. Rhodes told Mr. Wardell that she feared for her personal safety. Mr. Wardell also interviewed Mr. Shorter and obtained a written statement from him. Mr. Shorter admitted to Mr. Wardell that he violated the ECP by accessing Ms. Rhodes' voice mail ten to fifteen times over the weekend and changing her password twice. Mr. Shorter claimed that he did this to attempt to catch Ms. Rhodes in a lie. Mr. Wardell also obtained an email message Mr. Shorter sent Ms. Rhodes on the morning of January 18, 2002. In his email, Mr. Shorter referred to himself as a "real jealous type of dude" and stated, "Remember this nigga won't forget about you right away!"

Following Mr. Shorter's admission that he accessed Ms. Rhodes voice mail and changed her password, Ms. Anderson met with Ms. Ames and they concluded that Mr. Shorter's conduct warranted his termination. Mr. Shorter was terminated for violating The Hartford's ECP by accessing Ms. Rhodes' voice mail and changing her password so that she could not access her voice mail account. Based on the information obtained during The Hartford's investigation, including Ms. Rhodes' statement, Mr. Shorter's email to Ms. Rhodes on January 18, 2002 and the message Mr. Shorter left for Ms. Rhodes' friend Scott, Ms. Anderson and Ms. Ames were also concerned about a potential threat of violence in the workplace. Ms. Anderson and Ms. Ames made the decision to terminate Plaintiff based on the information obtained during their investigation.

Based on the Affidavit of Ferron Shorter Jr. dated March 5, 2004 (submitted in support of Plaintiff's Objection to Defendants' Motions for Summary Judgment) and the Second

Affidavit of Ferron Shorter Jr. dated June 26, 2004 (submitted in support of Plaintiff's Objection to Ms. Rhodes' Motion to Strike), it appears that Plaintiff intends to offer evidence at trial of communications between himself and Ms. Rhodes which occurred after his termination on January 23, 2002.[7] This evidence includes, but is not limited to:

- Voice mail messages Ms. Rhodes allegedly left for Plaintiff in March 2002. In these voice mail messages, Ms. Rhodes told Plaintiff, among other things, that she loves and misses him and that she is interested in seeing him. (Pl. First Aff., ¶¶ 31, 61, 63-65, 73-76; Pl. Sec. Aff., ¶ 5.)

- Partial excerpts of Plaintiff's surreptitious recording of a conversation he allegedly had with Ms. Rhodes on March 22, 2002 in the parking lot of Oscar's Cafe. During this conversation, Plaintiff pressured Ms. Rhodes into agreeing with his statement that he would not have been fired if he were white. (Pl. First Aff., ¶ 59, Pl. Sec. Aff., ¶¶ 6, 61.)

- Partial excerpts of Plaintiff's surreptitious recording of a conversation he allegedly had with Ms. Rhodes on March 27, 2002 in the parking lot of the Ground Round. During this conversation, Plaintiff again pressured Ms. Rhodes into agreeing with his statement that he would not have been fired if he were white. (Pl. First Aff., ¶ 66, 68-72; Pl. Sec. Aff., ¶¶ 7, 61.)

- Circumstances surrounding a restraining order which Plaintiff obtained against Ms. Rhodes in August 2002. (Pl. First. Aff., ¶ 79.)

The Hartford moves to preclude the introduction of Ms. Rhodes' voice mail messages on the grounds that such evidence is irrelevant to The Hartford's investigation of Ms. Rhodes' complaint and to the circumstances leading to Plaintiff's termination on January 23, 2002. The voice mail messages will also confuse the issues at trial by exploring the state of Plaintiff and Ms. Rhodes' personal relationship two months after Plaintiff's termination. The nature and status of their relationship in March 2002 is completely irrelevant to the issue of The Hartford's potential liability for unlawfully terminating Plaintiff.

---

[7] Copies of Plaintiff's affidavits are attached as Exhibits 2 and 3, respectively.

The Hartford further moves to preclude the introduction of Plaintiff's tape recorded conversations with Ms. Rhodes because: 1) such evidence is irrelevant to Plaintiff's claims against The Hartford; 2) Ms. Rhodes' did not make the decision to discharge Plaintiff and had no personal knowledge of the reasons for that decision; and 3) such evidence is inflammatory and unfairly prejudicial to The Hartford.

The Hartford also moves to preclude the introduction of evidence regarding the restraining order Plaintiff obtained against Ms. Rhodes in August 2002 on grounds that such evidence is irrelevant to Plaintiff's discharge and is unfairly prejudicial to The Hartford. Evidence of Plaintiff's troubled relationship with Ms. Rhodes eight months after his termination is irrelevant to his claims against The Hartford and likely to contaminate The Hartford's defense by introducing details of their tumultuous relationship in an attempt to portray Ms. Rhodes in a negative light.

III.   ANALYSIS

According to Rule 402 of the Federal Rules of Evidence, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. The Rules of Evidence further define "relevant evidence" as "[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

A. <u>Evidence Of Ms. Rhodes' Voice Mail Messages Following Plaintiff's Termination Is Inadmissible And Should Be Barred</u>

Between March 22 and March 28, 2002, Ms. Rhodes left approximately nine voice mail messages for Plaintiff. In these messages, Ms. Rhodes refers to Plaintiff as "Sweetie" and "Sweetstuff," she asks how he is, she asks him to call her later and she tells him that she loves him. (Pl. First Aff., ¶¶ 31, 61, 63-65, 73-76; Pl. Sec. Aff., ¶ 5.) Based on Plaintiff's Objection to The Hartford's Motion for Summary Judgment, it appears that Plaintiff intends to introduce evidence of these voice mail messages as support for his claim that Ms. Rhodes sexually harassed him. As set forth below, evidence of Ms. Rhodes' voice mail messages after Plaintiff's discharge is irrelevant to Plaintiff's claims in this matter and is likely to confuse the jury. Accordingly, they should be barred.

Ms. Rhodes' voice mail messages for Plaintiff bear no relationship to any of his claims in this matter. The messages are not evidence of harassment and do not support Plaintiff's sexual harassment claim because he no longer worked for The Hartford in March 2002. Thus, the voice mail messages are not "of consequence to the determination" of his sexual harassment claim against the company. Fed. R. Evid. 401. Nor are Ms. Rhodes' voice mail messages relevant to Plaintiff's remaining claims for discrimination, retaliation, infliction of emotional distress, breach of implied covenant or invasion of privacy – all of which, except for the retaliation and invasion of privacy claims, are based on conduct related to the termination of his employment on January 23, 2002.[8]

---

[8] Plaintiff did not contest The Hartford's Motion for Summary Judgment with respect to either of these claims. In Counts Four, Five and Seven, Plaintiff alleged that an employee of The Hartford, Robert Begley, retaliated against him in April 2003 when he called Plaintiff and threatened to have him arrested. (Cmplt., ¶¶ 130, 140, 144.) In Count Thirteen, Plaintiff alleged that The Hartford invaded his privacy by falsely portraying him to the Commission on Human Rights and Opportunities as a citizen who had been convicted of a crime. (Cmplt., ¶ 165.) While these

Ms. Rhodes' voice mail messages should also be barred because they will confuse the jury as to the issues in Plaintiff's case against The Hartford.[9] The state of Plaintiff and Ms. Rhodes' relationship in March 2002 is of no consequence to whether The Hartford made a discriminatory termination decision in January 2002. Whether Ms. Rhodes called Plaintiff "Sweetie" and said she loved and missed him in March has no bearing on whether The Hartford is liable for employment discrimination in January. This will be a difficult distinction for the jury to make, however, and the tapes only confuse the limited legal issues as to The Hartford's alleged liability. Accordingly, the voice mail messages are inadmissible and should be barred.

    B.    <u>Evidence Of Ms. Rhodes' Conversations With Plaintiff In March 2002 Is Inadmissible And Should Be Barred</u>

Evidence of Ms. Rhodes' conversations with Plaintiff on March 22 and 27, 2002, including Ms. Rhodes' concurrence with Plaintiff's statement that he would not have been terminated if he were white, is also inadmissible and should be barred. Such evidence is irrelevant to Plaintiff's claims against The Hartford because Ms. Rhodes did not make the decision to discharge Plaintiff and she had no input into that decision, which was made by Ms. Anderson and Ms. Ames. Such evidence is also inadmissible under Rule 602 because Ms. Rhodes had no personal knowledge of the reasons for Plaintiff's discharge and under Rule 701 because her statements regarding Plaintiff's discharge constitute unsupported opinion testimony

---

claims are based on post-termination conduct, evidence of Ms. Rhodes's voice mail messages is irrelevant to these claims.

[9] In the event the Court denies The Hartford's Motion to Bifurcate, the Court will have to decide whether evidence of Plaintiff's post-termination communications with Ms. Rhodes is relevant to Plaintiff's claims against Ms. Rhodes for tortious interference with contract and defamation. Both of these claims are based on the written statement Ms. Rhodes provided to Lisa Anderson on January 21, 2002 as part of The Hartford's investigation. As set forth in Defendant's Motion to Bifurcate, separate trials are warranted, in part, because the admission of such post-termination evidence as to Ms. Rhodes would be prejudicial to The Hartford.

by a fact witness. Such evidence is also inadmissible, to the extent Plaintiff believes that it casts doubt on the results of The Hartford's investigation, on the grounds that it is merely an improper attempt by Plaintiff's to second guess The Hartford's business judgment.

    1.    <u>Ms. Rhodes Was Not A Decision Maker</u>

Ms. Rhodes did not make the decision to discharge Plaintiff. Consequently, Ms. Rhodes' beliefs or opinions about the reasons for Plaintiff's discharge are irrelevant to his claims of discrimination and cannot be used to establish either Plaintiff's prima facie case or that The Hartford's reason for Plaintiff's discharge was a pretext for unlawful conduct. See <u>Burrell v. Bentsen</u>, No. 91 CV 2654, 1993 U.S. Dist. LEXIS 18005, *29-*30 (S.D.N.Y. Dec. 21, 1993), <u>aff'd.</u>, 50 F.3d 3 (2d Cir. 1995) (citation omitted) (Ex. 4) (holding that "statements by nondecision makers" are not evidence of discrimination and further stating, "Unless the remarks upon which the plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge."); <u>Gorley v. Metro-North Commuter R.R.</u>, No. 99 Civ. 3240 (NRB), 2000 U.S. Dist. LEXIS 18427, *18-*19 (S.D.N.Y. Dec. 21, 2000), <u>aff'd</u>, 29 Fed. Appx. 764 (2d Cir. 2002) (comments "made by individuals without decision-making authority" are not evidence of discrimination) (Ex. 5); <u>Boyle v. McCann-Erickson, Inc.</u>, 949 F. Supp. 1095, 1102 (S.D.N.Y. 1997) (finding that comments by individuals not involved in the discharge did not constitute proof of discrimination); <u>Getschmann v. James River Paper Co.</u>, 822 F. Supp. 75, 78 (D. Conn.), <u>aff'd</u>, 7 F.3d 221 (2d Cir. 1993) (finding that discriminatory remark by individual not involved in plaintiff's termination was "legally inadequate to prove discrimination"). Such evidence, therefore, is inadmissible and should be barred.

2.   **Ms. Rhodes Had No Personal Knowledge Of The Reasons For Plaintiff's Discharge**

Rule 602 of Federal Rules of Evidence states, in pertinent part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Rule 701 of the Federal Rules of Evidence prohibits a fact witness from testifying "in the form of opinions or inferences" unless "those opinions or inferences . . . are (a) rationally based on the perception of the witness. . . ." Fed. R. Evid. 701.

Evidence of Ms. Rhodes' conversations with Plaintiff in March 2002 is also inadmissible because Ms. Rhodes had no personal knowledge of the reasons for Plaintiff's termination. As set forth above, Ms. Rhodes filed a complaint against Plaintiff. She did not investigate that complaint or participate in the decision to discharge Plaintiff. Thus, Plaintiff's beliefs about the reasons for Plaintiff's discharge are inadmissible for lack of personal knowledge under Rule 602.

Additionally, evidence of Ms. Rhodes' opinions or beliefs concerning the reasons for Plaintiff's termination is not rationally based on her perceptions as a witness. Her anticipated testimony is based on nothing more that unsubstantiated speculation and conjecture. Thus, her statements regarding The Hartford's reasons for Plaintiff's termination is opinion testimony by a fact witness and is inadmissible under Rule 701.

3.   **Evidence Questioning The Hartford's Business Judgment Is Inadmissible**

Evidence of Ms. Rhodes' conversations with Plaintiff in March 2002 should also be barred on grounds that it is merely an attempt by a non-decision maker to second guess the results of The Hartford's investigation and its good faith business judgment. Such evidence does

not support a claim of discrimination and is irrelevant to Plaintiff's claims. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (holding that it is not evidence of discrimination if the employer discharged an employee based on an honest, but mistaken, belief that the employee violated company policy); Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988) (same). "Evidence that an employer made a poor business judgment in discharging an employee" is insufficient to establish that the employer's reason for the discharge was discriminatory. Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). Thus, such evidence is inadmissible and should be barred.

Based on the foregoing, evidence of Ms. Rhodes' comments to Plaintiff in March 2002 regarding her beliefs as to the reasons for his discharge is not evidence of discrimination and cannot be used to establish that The Hartford's reasons for his discharge were a pretext. Thus, such evidence is inadmissible and should be barred.

C. Evidence Of Ms. Rhodes' Conversations With Plaintiff In March 2002 Is Unduly Prejudicial And Should Be Barred

Evidence of Ms. Rhodes' conversations with Plaintiff on March 22 and 27, 2004, including Ms. Rhodes' concurrence with Plaintiff's statement that he would not have been terminated if he were white, should also be barred under Rule 403 because its probative value is outweighed by the danger of undue prejudice to The Hartford.

Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. "Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case." Leopold v. Baccarat, Inc., 174 F.3d 261, 270 (2d Cir. 1999)(citation omitted). Under this Rule, the Court must balance the prejudicial effect

12

of the evidence with its probative value. United States v. Harvey, 991 F.2d 981, 996 (2d Cir. 1993) ("Under Rule 401 and 403 . . . in order for evidence to be admissible, it must be relevant and its prejudicial effect must not substantially outweigh its probativeness.").

The probative value of Ms. Rhodes' concurrence with Plaintiff's statement that he would not have been discharged if he were white is substantially outweighed by its prejudicial effect. As set forth above, Ms. Rhodes' concurrence has no probative value concerning The Hartford's reasons for Plaintiff's discharge because she was not a decision maker and had no personal knowledge of the reasons for The Hartford's decision. Additionally, if Plaintiff's claim that Ms. Rhodes wanted to continue their romantic relationship is true, Ms. Rhodes' statements have even less probative value because her self-interest lay in supporting Plaintiff and confirming his analysis of the events leading to his discharge.

Ms. Rhodes statements are also clearly prejudicial to The Hartford. The Hartford's defense will be based in large part on its receipt and investigation of Ms. Rhodes' complaint regarding Plaintiff. This defense will rely on evidence of the good faith nature of The Hartford's investigation, the facts discovered during its investigation and the information it possessed at the time of the termination decision. The Hartford's defense will be unfairly undermined and prejudiced by the admission of testimony from the complaining witness that the termination decision was biased and discriminatory. Coming from a witness who played no role in the conduct of The Hartford's investigation or in the termination decision, such testimony can only inflame and confuse the jury. Accordingly, it should be precluded.

D. <u>Evidence Of Plaintiff's Restraining Order Against Ms. Rhodes In August 2002 Is Irrelevant And Unduly Prejudicial And Should Be Barred</u>

It appears that Plaintiff also intends to introduce evidence that he obtained a restraining order against Ms. Rhodes in August 2002. (Pl. First. Aff., ¶ 79.) Evidence regarding the restraining order and the circumstances leading to the restraining order should be barred because such evidence is irrelevant to Plaintiff's termination and unfairly prejudicial to the Hartford.

Evidence of Plaintiff's restraining order and of his troubled relationship with Ms. Rhodes eight months after his termination will lead to a mini-trial concerning the events which led to the restraining order and the nature of their relationship between January 23, 2002 and August 2002. This evidence is completely irrelevant to Plaintiff's discharge and will only confuse the issues and distract the jury. Such evidence will also prejudice The Hartford's defense by introducing details of Plaintiff's tumultuous relationship with Ms. Rhodes in an attempt to portray her in a negative light. The fact that Plaintiff's relationship with Ms. Rhodes did not end well months after Plaintiff's discharge can only serve to unfairly malign Ms. Rhodes in the eyes of jury. Such evidence will likely contaminate The Hartford's defense, which is based on its investigation of Ms. Rhodes' complaint and on the facts discovered during that investigation in January 2002.

IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine To Preclude Evidence Of Post-Termination Communications Between Plaintiff And Maryanne Rhodes should be granted.

>                         DEFENDANT,
>                         HARTFORD FINANCIAL SERVICES
>                         GROUP, INC.
>
> By:   *Margaret J. Strange*
>       Margaret J. Strange (ct08212)
>       James F. Shea (ct16750)
>       Jackson Lewis LLP
>       55 Farmington Avenue, Suite 1200
>       Hartford, CT 06105
>       Phone: (860) 522-0404/Fax: (860) 247-1330
>       email: strangem@jacksonlewis.com
>       email: sheaj@jacksonlewis.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this 30th day of September 2004, to the following counsel of record:

> Rachel M. Baird
> Law Office of Rachel M. Baird
> 379 Prospect Street
> Torrington, CT 06790
> (860) 626-9991
> Attorney for Plaintiff

> David L. Metzger
> Metzger & Associates
> 25 Capitol Avenue
> Hartford, CT 06106-1707
> Ph. (860) 549-5026
> Attorney for Defendant Maryanne Rhodes

*Margaret J. Strange*
Margaret J. Strange

H:\Client Folder\H\The Hartford\Shorter\Trial\Motion Limine Post Termination Evid.DOC
64532