UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FERRON SHORTER JR., | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:03CV0149(WIG) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL SERVICES GROUP, INC., et al., | : | |
| | : | |
| Defendants. | : | OCTOBER 26, 2004 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HARTFORD FINANCIAL SERVICES GROUP, INC.'S MOTION TO BIFURCATE (doc. #89) AND MOTION IN LIMINE (doc. #90) AND DEFENDANT MARYANNE RHODES' MOTION IN LIMINE (doc. #88)**

Plaintiff Ferron Shorter Jr. opposes:

- Defendant Hartford Financial Services Group, Inc. ("The Hartford")'s Motion to Bifurcate (doc. #89) the above-captioned matter into separate trials for the Defendants;

- The Hartford's Motion in Limine to Preclude Evidence of Post-Termination Communications Between Plaintiff and MaryAnne Rhodes (doc. #90); and

- Defendant MaryAnne Rhodes ("Rhodes")' Motion in Limine (doc. #88) to exclude evidence of events that occurred after January 23, 2002, the date of Plaintiff's employment termination from The Hartford.

**I.      Summary of Defendants' Claims and Plaintiff's Response**

   A.      Defendants' Claims

In its Motion to Bifurcate, argued in reliance upon Rule 42(b) of the Federal Rules of Civil Procedure, The Hartford claims that separate trials are warranted to prevent prejudice to The Hartford and provide for more convenient, expeditious, and economical proceedings for the Court and the parties. (The Hartford's Mot. to Bifurcate at 1)  First, The Hartford claims that

"detailed" evidence of the personal relationship between Plaintiff and Rhodes, including post-termination communications between Rhodes and Plaintiff are not relevant to Plaintiff's claims against The Hartford, would prejudice The Hartford, confuse the jury, and contaminate The Hartford's defense.  Second, The Hartford argues that Plaintiff's claims against The Hartford and Rhodes "require proof of different facts which, for the most part, do not overlap."  (The Hartford's Mot. to Bifurcate at 2)

The Hartford's Motion in Limine seeks to preclude evidence and testimony of the post-termination communications between Rhodes and Plaintiff, including (a) voice mail messages left by Rhodes with Plaintiff between March 22, 2002, and March 28, 2002; (b) two conversations between Rhodes and Plaintiff occurring on March 22, 2002, and March 27, 2002; and (c) a contested restraining order obtained by Plaintiff against Rhodes in August of 2002.  In reliance upon Rules 402, 403, 602, and 701 of the Federal Rules of Evidence, The Hartford rests its motion to preclude on its claims that "[s]uch evidence is completely irrelevant to The Hartford's decision-making process, lacks any basis in Ms. Rhodes' personal knowledge, and was clearly obtained in preparation for Plaintiff [sic] forthcoming lawsuit and its potential shocking effect at trial."  (The Hartford's Mot. in Limine at 2)

Finally, in her Motion in Limine , Rhodes argues as well that evidence of interactions between Rhodes and Plaintiff after January 23, 2002, is not relevant and will "distract the jury from the main event."  (Rhodes' Mot. in Limine at 2)

B.      Plaintiff's Response

Plaintiff's response, set forth below, argues that the post-termination evidence that the Defendants seek to preclude is, first, relevant to all of Plaintiff's claims against the Defendants and, next, is more probative than prejudicial.  The probative nature of the evidence and its

relevance to Plaintiff's claims against The Hartford as well as Rhodes, in addition to the necessity of presenting the same witnesses and documentary evidence to prove as well as defend against Plaintiff's claims, argues against granting The Hartford's Motion to Bifurcate and the Defendants' motions in limine.

**II.      Plaintiff's Theory of the Case and The Hartford's Defense**

Plaintiff's claims against The Hartford and Rhodes are supported by facts alleging:

- The Hartford engaged in a discriminatory investigation that resulted in Plaintiff's wrongful termination;

- The Hartford treated Plaintiff in a disparate manner when it terminated his employment and issued a written warning to Rhodes;

- The Hartford disregarded Plaintiff's complaint of sexual harassment against Rhodes;

- Rhodes was untruthful in her statements to The Hartford; and

- The Hartford refused to hold Rhodes accountable for her untruthful statements against Plaintiff.

The Hartford maintains:

> Mr. Shorter was terminated for violating The Hartford's ECP [Electronic Communications Policy] by accessing Ms. Rhodes' voice mail and changing her password so that she could not access her voice mail account. Based on the information obtained during The Hartford's investigation, including Ms. Rhodes' statement, Mr. Shorter's email to Ms. Rhodes dated January 18, 2002 and the message Mr. Shorter left for Ms. Rhodes' friend Scott, Ms. Anderson and Ms. Ames were also concerned about a potential threat of violence in the workplace. Ms. Anderson and Ms. Ames made the decision to terminate Plaintiff based on the information obtained during their investigation.

(The Hartford's Mot. in Limine at 5)[1] The Hartford and Rhodes seek to limit Plaintiff to a mere six days in January of 2002 from which to draw proof of his claims. The Hartford proposes:

> Evidence concerning Plaintiff's claims against The Hartford will revolve around Plaintiff's accessing Ms. Rhodes' voicemail and changing his password during the weekend of January 18, 2002, Ms. Rhodes' complaint to Lisa Anderson on Monday, January 21, 2002, information obtained by Ms. Anderson during her investigation on January 22, and 23, 2002, and the decision to discharge Plaintiff on January 23, 2002. This evidence will be limited to the information The Hartford possessed as of January 23, 2002 and the circumstances which led to The Hartford's termination decision. Plaintiff's claims against The Hartford, and The Hartford's defense of those claims, are premised on evidence related to his employment at The Hartford and his admitted misconduct in violating the ECP.

(The Hartford's Mot. to Bifurcate at 6)

However, facts are not inadmissible simply because they occurred after the termination no more than facts are admissible simply because they occurred between January 18, 2002, and January 23, 2002. Facts are admissible because they are probative.

Plaintiff's Amended Complaint asks the fact-finder to consider The Hartford's intent when it chose to consider some information while it excluded other information during its investigation. For example, The Hartford (a) chose to request a criminal record for Plaintiff but not for Rhodes; (b) did not compel Rhodes to sign a written statement under oath and penalty of termination as it required of Plaintiff; and (c) sought and maintained communications from Plaintiff to Rhodes but not from Rhodes to Plaintiff. Despite The Hartford's contention that evidence outside the six days from January 18, 2002, through January 23, 2002, should not be considered, The Hartford relied upon a tape recorded message made outside of the workplace on

---

[1] The Hartford has contended at various times that Plaintiff was terminated for lying to The Hartford when Plaintiff denied having a criminal record but this justification is not included in either the Motion to Bifurcate or Motion in Limine. Plaintiff does not have a criminal record. (Fourth Aff. of Rachel M. Baird (hereinafter, ("Baird Aff.")), Ex. 1)

December 31, 2001, to justify Plaintiff's termination and The Hartford's characterization of Plaintiff as a workplace violence risk. This tape, of a voice mail message left for "Scott" and a conversation between Rhodes and Plaintiff, was used by Lisa Anderson to support her determination that Plaintiff presented a threat of workplace violence and was cause for his termination. Neither Rhodes nor Plaintiff were at work or were using workplace systems when the December 31, 2001, phone call was made.

      The Hartford claims that post-termination evidence will prejudice its defense "which will be based, in large part, on its receipt and good faith investigation of Ms. Rhodes' complaint regarding Plaintiff." (The Hartford's Mot. to Bifurcate at 10) Rhodes' statement was provided to Lisa Anderson on January 21, 2002. Plaintiff contends that evidence obtained after January 23, 2002, demonstrates that Rhodes was untruthful in her statement to Lisa Anderson and that Rhodes had motivation to lie, specifically, that Rhodes was upset and angry because Plaintiff would not resume their relationship. Plaintiff requested that The Hartford obtain Rhodes' voice mails and emails to support his contention but The Hartford refused to reopen the investigation even when it should have been clear to The Hartford that it had already made an error in its investigation when it falsely accused Plaintiff of having a criminal record.[2] The Hartford chose to ignore Plaintiff's efforts to provide additional evidence after January 23, 2002, and took no action against Rhodes for her untruthfulness. (Baird Aff., Ex. 2) The fact-finder must be permitted to draw a reasonable inference from The Hartford's failure to consider Plaintiff's post-termination communications to The Hartford regarding the errors in the investigation, regarding additional evidence that The Hartford had in its possession that would support Plaintiff's claim that Rhodes had lied to Lisa Anderson, regarding Rhodes' motivations to lie,

---

[2] The Hartford obtained information on February 4, 2002, that showed Plaintiff had no criminal record. Plaintiff did not receive these documents until The Hartford responded to Plaintiff's Commission on Human Rights and Opportunities complaint on or about September 5, 2002. (Baird Aff., Ex. 3)

5

and regarding Rhodes' actions after January 23, 2002, that were inconsistent with her statement to Lisa Anderson. The Hartford took no action when presented with evidence contrary to its investigation and therefore, Plaintiff argues, The Hartford's investigation was never made in good faith, as demonstrated by its actions prior to and subsequent to Plaintiff's termination.

Under a theory similar to Plaintiff's in the instant matter, the plaintiffs in <u>Liberty Environmental Systems, Inc. v. County of Westchester</u>, No. 94 CIV. 7431(WK), 2000 WL 1341403 (S.D.N.Y., Sept. 15, 2000), (Baird Aff., Ex. 4), responded to a motion in limine filed by the defendant to preclude evidence occurring after the date of a contract, by claiming that "post-contract events" were "probative of defendant's pre-contract discrimination." The court characterized plaintiffs Liberty Environmental Systems, Inc. ("Liberty")'s and A. Tarricone, Inc.'s intent and theory:

> In support of its Equal Protection Clause claim, Liberty intends to prove at trial that post-contract events, when coupled with various pre-contract actions of defendant, demonstrate that defendant intended to and did in fact discriminate against Liberty during the request for proposals ("RFP") bidding and review process. Indeed, Liberty will argue that defendant purposely manipulated the RFP process to ensure that Liberty was not awarded the contract-and that post-contract behavior serves as circumstantial evidence of pre-contract manipulation.

The <u>Liberty</u> court noted the defendant's denial of discriminatory intent but found that "[p]ost-contract events constitute circumstantial evidence that defendant, notwithstanding the merits of Liberty's proposal, had no intention of awarding liberty the contract under any circumstances." <u>Id</u> at *3. Therefore, the court held, in <u>Liberty</u>, that "it is fair to admit plaintiffs' full spectrum of proof on its equal protection cause of action. <u>Id.</u> The court rejected the defendant's suggestion that the post-contract evidence would "befuddle" the jury and decided instead to address "particularized objections to irrelevant or confusing evidence" during the course of the trial. <u>Id</u>

6

(citing Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996)) ("examining circumstantial evidence of discrimination, including post-termination behavior").

In Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996), plaintiff appealed an order granting summary judgment to defendant on plaintiff's claims of employment discrimination brought pursuant to Title VII of the Civil Rights Act of 1964. The appellate court reversed the order and emphasized the importance of circumstantial evidence in employment discrimination cases:

> Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination.

Plaintiff in the instant case, as in most discrimination cases, is limited largely to circumstantial evidence to prove his claims. In support of his claims, Plaintiff intends to prove at trial that post-termination events, when coupled with the pre-termination actions of The Hartford, demonstrate that The Hartford intended to and did in fact discriminate against Plaintiff in the terms and conditions of his employment. Plaintiff will argue that The Hartford purposely manipulated its investigation to ensure that Plaintiff would be terminated but Rhodes would not. The Hartford's post-termination refusal (a) to terminate Rhodes for her untruthful statements to Lisa Anderson; (b) to act upon evidence of Rhodes' lack of credibility; or (c) to reinstate Plaintiff serves as circumstantial evidence of The Hartford's pre-termination discriminatory manipulation of the investigation.

7

**III.    Specific Evidence Claimed By Defendants as Irrelevant**

    A.    Voice Mail Messages from Rhodes to Plaintiff

The Defendants ask the Court to preclude evidence of voice mail messages left by Rhodes for Plaintiff between March 22, 2002, and March 28, 2002. (The Hartford's Mot. in Limine at 8-9) (Rhodes' Motion in Limine at 6) The Hartford claims that the messages are irrelevant. Rhodes claims that the messages, among other things, will only "serve as a side show" to confuse the jury. Admittedly, Rhodes concedes that the veracity of Rhodes' statement and her motivation for making the statement to The Hartford on January 21, 2002, will be an issue at trial. (Rhodes' Mot. in Limine at 7) In her statement, Rhodes told Lisa Anderson that she was fearful of Plaintiff. Plaintiff told The Hartford's investigator, Richard Wardell, that he acted from desperation to stop Rhodes from harassing him and attempting to resume their relationship. Plaintiff's statement and Rhodes' statement were directly contradictory. Someone was lying. The fact that less than two months after Plaintiff's termination, Rhodes wrote Plaintiff what may be characterized as a love letter (Baird Aff., at Ex. 5) and then within two months after Plaintiff's termination was frantically leaving voice mail messages for Plaintiff to join her at her apartment is probative of Rhodes intent and truthfulness when she made her statement to Lisa Anderson on January 21, 2002. The Hartford's lack of interest in terminating Rhodes for her malicious intent and untruthfulness is evidence of The Hartford's discriminatory bias against Plaintiff.

    B.    Conversations Between Plaintiff and Rhodes in March of 2002

The Hartford claims that Rhodes' statements made during conversations with Plaintiff in March of 2002 and regarding Plaintiff's termination should be precluded because Rhodes was not a decisionmaker in the termination process, had no personal knowledge of the reasons for

8

Plaintiff's discharge, and her opinions constitute unsupported opinion testimony. (The Hartford's Mot. in Limine at 9) Rhodes claims again that the evidence, among other things, will confuse and mislead the jury. (Rhodes' Mot. in Limine at 7)

    1. <u>Relevance of Rhodes' Statements</u>

The Hartford claims that statements by nondecisionmakers are not evidence of discrimination (The Hartford's Motion in Limine at 10) and cites <u>Burrell v. Bentsen</u>, No. 91 CV 2654, 1993 U.S. Dist. LEXIS 18005, *29-*30 (S.D.N.Y. Dec. 21, 1993), <u>aff'd.</u>, 50 F.3d 3 (2d Cir. 1995), as support. In its motion, The Hartford misrepresents <u>Burrell</u> as holding that "'statements by nondecisionmakers' are not evidence of discrimination." (The Hartford's Motion in Limine at 10; Ex. 4) In fact, this is not the holding in <u>Burrell</u>. <u>Burrell</u> is quoting another case, <u>Radabaugh v. Zip Feed Mills, Inc.</u>, 997 F.2d 444, 448 (8th Cir. 1993). The actual language quoted from <u>Radabaugh v. Zip Feed Mills, Inc.</u>, in <u>Burrell</u> is: "In particular, 'stray remarks in the workplace,' statements by nondecisionmakers,' and 'statements by decisionmakers unrelated to the decisional process' are not **by themselves** sufficient to satisfy plaintiff's burden of proving pretext.'" <u>Id</u> (emphasis in bold added). The actual language from <u>Burrell</u> and <u>Radabaugh</u>, which includes the phrase "by themselves" lends an entirely different meaning than the statement attributed by The Hartford to <u>Burrell</u>.

Whether a remark is sufficient by itself as evidence to withstand a motion for summary judgment is a different question than whether the remark is relevant. In fact, another case provided by The Hartford, <u>Gorley v. Metro-North Commuter R.R.</u>, No. 99 Civ. 3240 (NRB), 2000 U.S. Dist. LEXIS 18427, *18-*19 (S.D.N.Y. Dec. 21, 2000, <u>aff'd.</u>, 29 Fed. Appx. 764 (2d Cir. 2002) provides the following quotation from <u>Burrell</u> "stray remarks in workplace, statements

9

by [non]decisionmakers,[3] and statements by decisionmakers unrelated to decisional process are not by themselves sufficient to satisfy plaintiff's burden of proving pretext." (The Hartford's Mot. in Limine at 10; Ex. 5)  These cases rely upon Justice O'Connor's concurring opinion in Price-Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989), stating:

> Thus, stray remarks in the workplace, while perhaps probative of sexual harassment cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.

(internal citations omitted).  Justice O'Connor's concurring opinion in Price-Waterhouse, as well as the opinions cited by The Hartford, do not assert that statements made by nondecisionmakers are irrelevant but instead are insufficient, without more evidence, to withstand summary judgment in employment discrimination cases.  See Price-Waterhouse, 490 U.S. at 277 ("…, in my view testimony such as Dr. Fiske's[4] in this case, **standing alone**, would not justify shifting the burden of persuasion to the employer.")  (bold emphasis added).

  2. Rhodes' Competence to Testify and Personal Knowledge

Rule 701 of the Federal Rules of Evidence provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

---

[3] Gorley misquotes Burrell by using the term "decisionmakers" in this second clause rather than "nondecisionmakers."  In addition, Gorley mistakenly cites to *8 of Burrell for the quoted language instead of *18.
[4] Dr. Susan Fiske was a social psychologist who rendered an opinion stating that defendant's actions in Price-Waterhouse were probably the result of sex-stereotyping.  490 U.S at 235.

Rule 602 provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Under these rules, Rhodes is as competent as Plaintiff to render an opinion as to why she was not terminated and Plaintiff was terminated. Plaintiff and Rhodes were the two recipients of the discipline meted out by The Hartford following its investigation. Certainly, if Rhodes believed that she had been discriminated against in receiving a written warning then she would be competent to render that opinion in her testimony. Whether she could present evidence and substantiate her claim would be tested in cross-examination as it will in the instant matter. However, the fact that Rhodes does not claim to have been discriminated against makes her no less of a recipient and focus of the investigation process with an opinion based on her direct perception of her discipline as well as Plaintiff's discipline.

    3.   The Hartford's Business Judgment

The statements placed in issue by The Hartford which occurred during conversations between Plaintiff and Rhodes in March of 2002 have not been characterized by any witness who has been deposed, in the pleadings, in documents provided during the discovery process, or in taped recordings as an attempt by Rhodes to "second guess the results of The Hartford's investigation and its good faith business judgment." (The Hartford's Mot. in Limine at 11) In fact, Plaintiff has consistently claimed that the investigation was discriminatory and not conducted in good faith, as demonstrated by pre-termination and post-termination conduct. Rhodes' opinion of the disparity in The Hartford's treatment of her and Plaintiff is founded in discrimination not poor business judgment.

11

C.  The Restraining Order Obtained by Plaintiff Against Rhodes

The necessity of a restraining order in August of 2002 and the court's grant of the order after a contested hearing where Rhodes was represented by counsel and Plaintiff was not is (a) circumstantial evidence that Rhodes was untruthful in her January 21, 2002, statement to Lisa Anderson when she claimed to be fearful of Plaintiff and (b) circumstantial evidence that Plaintiff was truthful in his claim of sexual harassment against Rhodes and his statement that he changed the voice mail password as an act of desperation to convince Rhodes to stop the harassment. Furthermore, at the hearing, Rhodes testified that she had not been threatened by Plaintiff and that she had not been physically abused by Plaintiff.[5]  This differed from her statement to Lisa Anderson on January 21, 2002, that Plaintiff had kicked Rhodes.  (The Hartford's Mot. in Limine, Ex. 1.)

**IV.  Motion to Bifurcate**

For the foregoing reasons, the post-termination communications between Plaintiff and Rhodes are more probative than prejudicial as well as relevant as to Plaintiff's claims against both Defendants.  The witnesses who will be called to prove and defend against the claims are identical, including Plaintiff, Rhodes, The Hartford employees Lisa Anderson, Jennifer Ames, Richard Wardell, Jack Jacewicz, and former employees of The Hartford Mary Johnson and Peter Kuck.

> The interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency. See Fed. R. Civ. P. 42(b). Bifurcation may therefore be appropriate where the evidence offered on two different issues will be wholly distinct or where litigation of one issue may obviate the need to try another issue.

---

[5] Rhodes answered in response to her attorney's question whether Plaintiff had ever physically abused her: "No. I mean other than – he had bruised my arms before, when we were together." (Baird Aff., Ex. 6 at 8)

Vichare v. AMBAC Inc., 106 F.3d 457, 466 (2d Cir. 1996) (internal citations omitted).  In Vichare, the appellate court upheld the denial of Plaintiff's motion to bifurcate.  The plaintiff brought an employment discrimination claim against his former employer, defendant AMBAC Inc.  AMBAC Inc. filed a counterclaim alleging that plaintiff had received "secret kickbacks" from a subcontractor while employed by AMBAC Inc.  106 F.3d at 460.  "Vichare moved prior to trial to bifurcate the counterclaim from his Title VII claim, arguing that any after-acquired evidence of impropriety on Vichare's part was irrelevant to the question of whether AMBAC had illegally discriminated against Vichare and would be unfairly prejudicial to Vichare at trial. The court denied this motion." Id.  The jury found in favor of AMBAC Inc. and Vichare's appeal failed to reverse the trial court's denial of bifurcation.  See also Getty Petroleum Corp. v. Island Transportation Corp., 862 F.2d 10, 15 (2d Cir. 1988) (citing Fed.R.Civ.P. 42(b) and Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir.), cert. denied, sub nom. Cody v. Donovan, 469 U.S. 1072 (1984))  ("[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court.").

     A bifurcation of the trial in the above-captioned matter would prejudice the Plaintiff.  If the causes had been brought separately against The Hartford and Rhodes there is little doubt that they would be subject to consolidation due to the overlap of the issues, facts, witnesses and documentary evidence.  In a case which will rely upon largely circumstantial evidence, excluding the evidence of Rhodes' and The Hartford's post-termination conduct through preclusion or bifurcation will prevent the fact-finder from consideration of probative evidence from which it could draw reasonable inferences.  The Hartford asserts that its "defense will be unfairly undermined and prejudiced by the admission of testimony from the complaining witness that the termination was biased and discriminatory."  (The Hartford's Mot. in Limine at 13)  The entire

13

premise of a trial is to submit the relevant facts to the fact-finder for its determinations of weight and credibility. Plaintiff would prefer as well to exclude evidence that may be prejudicial to his case or inconsistent with his proof. However, if the evidence is relevant and probative, Plaintiff must rely on his right to cross-examine the witnesses and to scrutinize the evidence so that the fact-finder will find that his position has the credibility and weight to meet the legal standard of proof required on Plaintiff's claims. The Defendants' preferred method of excluding evidence that is not consistent with their defenses or avoiding the evidence through bifurcation is contrary to the idea of a trial which is to confront the evidence and argue the case to the fact-finder.

## V.  Conclusion

For the foregoing reasons and specifically to allow Plaintiff the opportunity to present probative evidence to support his claims in an expeditious and economic manner, Plaintiff opposes The Hartford's Motion to Bifurcate and Defendants' motions to preclude evidence of post-termination communications between Plaintiff and Rhodes.

        PLAINTIFF
        FERRON SHORTER JR.

BY: _____
     Rachel M. Baird (ct12131)
     Law Office of Rachel M. Baird
     379 Prospect St
     Torrington CT 06790-5239
     Tel:  (860) 626-9991
     Fax:  (860) 626-9992
     Email:  bairdlawoffice@aol.com

**CERTIFICATION**

    I HEREBY CERTIFY that a copy of the foregoing was mailed first-class, postage paid and transmitted by facsimile to the following counsel of record on October 26, 2004:

Margaret J. Strange, Esq.  
Jackson Lewis LLP  
55 Farmington Ave Ste 1200  
Hartford CT 06105  
Fax: (860) 247-1330

David L. Metzger, Esq.  
Metzger & Associates  
25 Capitol Ave  
Hartford CT 06106  
Fax: (860) 549-5226

                                                                                _____  
                                                                                Rachel M. Baird