UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FERRON SHORTER JR.<br>    Plaintiff,<br><br>v.<br><br>HARTFORD FINANCIAL SERVICES GROUP,<br>INC. and MARYANNE RHODES<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

CIVIL NO.: 303 CV 0149(WIG)

JANUARY 12, 2005

## PARTIES' JOINT TRIAL MEMORANDUM

## EXHIBIT B

## REQUEST TO CHARGE NO. 17

## PROVING PRETEXT OF DISCRIMINATION

If you find that The Hartford has provided a reason unrelated to Mr. Shorter's race and/or sex for his termination of employment, you must find for The Hartford, unless you conclude that Mr. Shorter has proven, by a preponderance of the evidence, that the reason offered by The Hartford for its decision was a pretext for intentional race and/or sex discrimination. To prove pretext, Mr. Shorter must prove that The Hartford lied about its reason for Mr. Shorter's termination <u>and</u> that the action was taken because of his race and/or sex.  At all times in your deliberations, you should remember that Mr. Shorter always bears the ultimate burden of proving that The Hartford intentionally discriminated against him because of his race and/or sex.  Even if you were to find that The Hartford's reason is false, Mr. Shorter still must prove that his race and/or sex actually motivated The Hartford's decision to terminate his employment.

Even if you were to find The Hartford's reasons to somehow be pretextual, the law simply permits you to draw an inference of discrimination.  It does not require you to draw an inference of discrimination, if you conclude that Mr. Shorter has not proven that he was discriminated against on the basis of his race and/or sex.

Sources:    <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S.133 (2000).
<u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993).
<u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989).
<u>Schnable v. Abramson</u>,  232 F.3d 83 (2d. Cir. 2000).
<u>Fisher v. Vassar College</u>, 114 F.3d 1332 (2d Cir. 1997).
<u>Woroski v. Nashua Corp.</u>, 31 F.3d 105 (2d Cir. 1994).

## REQUEST TO CHARGE NO. 18

## GOOD FAITH BELIEF IS ALL THAT IS REQUIRED

The Hartford's reasons for terminating Mr. Shorter's employment cannot be considered a pretext if The Hartford had an honest belief in the truth of the facts upon which it based its decision to terminate Mr. Shorter's employment. You must focus your deliberations on the facts possessed by The Hartford on January 23, 2002, the date of Mr. Shorter's termination. Mr. Shorter's subjective belief that he was discriminated against is irrelevant to your determination. Therefore, if you conclude that The Hartford honestly believed in the truth of the facts it had at the time of Mr. Shorter's termination, you must return a verdict in favor of The Hartford.

Sources:      Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997).
              Combs v. Meadowcraft, Inc., 106 F.3d 1519 (11th Cir. 1997).
              Elrod v. Sears, Roebuck & Co., 939 F.2d 1466 (11th Cir. 1991).
              Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir. 1988).
              Smith v. Papp Clinic, 808 F.2d 1449 (11th Cir. 1987).
              Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010 (9th Cir. 1986).
              Elliott v. Group Medical & Surgical Service, 714 F.2d 556, 567 (5th Cir. 1983), cert. denied, 467 U.S. 1215 (1984).
              Turner v. Texas Instruments, Inc., 555 F.2d 1251 (5th Cir. 1977)
              Aguliaro v. Brooks Brothers, Inc., 927 F. Supp. 741 (S.D.N.Y. 1996).

## REQUEST TO CHARGE NO. 19

## DEFENDANT'S BUSINESS JUDGMENT NOT ON TRIAL

Having reviewed the parties' relative burdens of proof as to Mr. Shorter's claims of race and sex discrimination in a general manner, there are a number of specific considerations which you should keep in mind when you retire to the jury room to deliberate over the merits of this case. The Hartford's business judgment is not on trial in this action. Even if you believe that The Hartford exercised poor or questionable business judgment in deciding to terminate Mr. Shorter's employment or if you feel you would have made a different decision under similar circumstances, you cannot find in favor of Mr. Shorter.

You must be persuaded that Mr. Shorter has proven, by a preponderance of the evidence, that The Hartford's explanation for its actions was actually a "pretext" for intentional and purposeful race and sex discrimination. The law does not prohibit an employer from making employment decisions based on non-discriminatory reasons, no matter how subjective or unsound you believe the reasons or process may be. If you find that The Hartford truthfully has stated the reason for deciding the employment action at issue, you must find for The Hartford, even if you disagree with The Hartford's reason or action.

Your focus, as the trier of fact, must be on The Hartford's motivation, not on The Hartford's business judgment. In weighing the evidence and evaluating the motives of The Hartford, the law requires that the perception of the individuals who decided to discharge Mr. Shorter be given great weight. On the other hand, Mr. Shorter's opinion or perception are entitled to relatively little weight. He was not the decision-maker. The Hartford's business judgment is not subject to review.

28

The law does not authorize courts or juries to judge the wisdom of an employer's business decisions. Under the law, an employer has the right to make its own business decisions, so long as those decisions are not based on race and/or sex. If you believe The Hartford's explanations for the employment decision at issue are not pretexts to hide intentional and purposeful discrimination, then the decision cannot be second-guessed, and you must find for The Hartford. Keep in mind, that the only question before you is whether the employment decision at issue was made because of Mr. Shorter's race and/or sex.

Sources:    Furnco Construction Corporation v. Waters, 438 U.S. 567 (1978).
Thornley v. Penton Publishing, Inc., 104 F.3d 26 (2d Cir. 1997).
Tyler v. Bethlehem Steel Corp., 958 F.2d 1176 (2d Cir. 1992), cert. denied, 113 S. Ct. 82 (1992).
Parcinski v. Outlet Company, 673 F.2d 34 (2d Cir. 1982), cert. denied, 459 U.S. 1103 (1983).
Halbrook v. Riechhold Chemicals, Inc., 735 F. Supp. 121 (S.D.N.Y. 1990).
Morser v. AT&T Information Systems, 703 F. Supp. 1072 (S.D.N.Y 1989)
Grant v. Morgan Guaranty Trust Co. of New York, 638 F. Supp. 1528 (S.D.N.Y. 1986).
Rosengarten v. J.C. Penney Co., Inc., 605 F. Supp. 154 (E.D.N.Y. 1985).
EEOC v. Trans World Airlines, Inc., 544 F. Supp. 1187 (S.D.N.Y. 1982).
Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980), cert. denied, 450 U.S. 959 (1981).
Smith v. Flax, 618 F.2d 1062 (4th Cir. 1980).

## REQUEST TO CHARGE NO. 20

## RETALIATION

In Counts Four and Seven, Mr. Shorter has also brought claims under Title VII and the Connecticut Fair Employment Practice Act alleging retaliation. These laws prohibit employers from taking retaliatory personnel actions against employees who have previously engaged in activity protected by the law, such as making a complaint of discrimination. It is unlawful for The Hartford to retaliate against an individual because that individual pursued a complaint of discrimination.

Source:    McNamara and Southerland, <u>Federal Employment Jury Instructions</u>, §3:324 "Law Prohibiting Retaliation" (1st Ed. 1999 & 3rd rev. 2002).

## REQUEST TO CHARGE NO. 21

## RETALIATION – PRIMA FACIE CASE

Your consideration of Mr. Shorter's retaliation claim is similar to your consideration of his claims of race and sex discrimination. Both discrimination and retaliation claims utilize the same three step framework.

To prevail on his claim, Mr. Shorter must first establish a prima facie case of retaliation. To demonstrate a prima facie case of retaliation, Mr. Shorter must show:

1. He engaged in statutorily protected activity;

2. He suffered an adverse employment action; and

3. A causal link existed between the protected activity and the adverse action.

In this case, under the first element of his prima facie case, Mr. Shorter's protected activity is the correspondence sent by his attorney to The Hartford following his termination.

Under the second element of his prima facia case, the adverse employment action claimed by Mr. Shorter is Robert Begley's phone call to him in April 2003. An adverse employment action is any conduct which is harmful to a person's current employment or the ability to secure future employment. To find for Mr. Shorter, you must find that Mr. Begley's phone call caused a substantial change in Mr. Shorter's ability to find employment. If you find that Mr. Begley's phone call to Mr. Shorter did not constitute an adverse employment action, you must find in favor of The Hartford.

Under the third element of his prima facia case, Mr. Shorter must establish some connection with his attorney's letters to The Hartford and Mr. Begley's phone call to him in

31

April 2003.  If you find that Mr. Begley did not know of the letters sent by Mr. Shorter's attorney, there can be no causal link between the two and you must find in favor of The Hartford.

If you find that Mr. Shorter established a prima facie case of retaliation, the burden then shifts to The Hartford to produce a legitimate, non-retaliatory reason for the adverse action.  If The Hartford articulates a non-retaliatory reason for the adverse employment action, Mr. Shorter must prove that The Hartford's reason is a pretext for unlawful retaliation.

Source:      McNamara and Southerland, Federal Employment Jury Instructions, §3:320
             "Prima Facie Case" (1st Ed. 1999 & 3rd rev. 2002).
             Quinn v. Greentree Credit Corp., 159 F.3d 759 (2d Cir. 1998).
             Wanamaker v. Columbian Rope Co., 108 F.3d 462 (2d Cir. 1997).
             Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881 (7th Cir. 1996).

## REQUEST TO CHARGE NO. 22

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – ELEMENTS OF LIABILITY

In Count Eight of his Complaint, Mr. Shorter claims that The Hartford intentionally inflicted emotional distress upon him. A cause of action for intentional emotional distress does not exist to redress every instance of dissatisfaction in the workplace. Generally, liability can be found for intentional infliction of emotional distress only when telling the facts to an average member of the community would lead him or her to conclude that the conduct is extreme and outrageous.

For Mr. Shorter to recover on his claim of intentional infliction of emotional distress, he must prove by a preponderance of the evidence each of the following four elements:

(1)  that The Hartford intended to inflict emotional distress upon Mr. Shorter, or that The Hartford knew or should have known that the likely result of its conduct would be Mr. Shorter's severe emotional distress;

(2)  that The Hartford's conduct through those individuals who investigated Ms. Rhodes' complaint was extreme and outrageous;

(3)  that The Hartford's conduct through those individuals who investigated Ms. Rhodes' complaint was the proximate cause of Mr. Shorter's emotional distress; and

(4)  that Mr. Shorter's emotional distress was severe.

One of the elements that Mr. Shorter must prove by a preponderance of the evidence is that The Hartford's conduct was extreme and outrageous. You may only find The Hartford liable to Mr. Shorter if you determine that the conduct toward Mr. Shorter was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

33

You cannot find The Hartford liable if you determine that Mr. Shorter experienced only indignities, annoyances, petty oppressions, or other trivialities. Connecticut law is clear that conduct which is merely insulting or rude or conduct which, while unpleasant, is still endurable, is not sufficient to form the basis for a claim of intentional infliction of emotional distress. Mr. Shorter must necessarily be expected and required to be hardened to a certain amount of unpleasant conduct in the workplace. There is no occasion for the law to intervene in every case where someone's feelings are hurt. In addition, the mere termination of Mr. Shorter's employment is not, by itself, enough to sustain a claim for intentional infliction of emotional distress even if you find that his termination was wrongful

With respect to the element of proximate cause, in order for Mr. Shorter to prove this element, he must prove, by a preponderance of the evidence, that The Hartford's conduct was a substantial factor in producing his alleged injury. If Mr. Shorter's alleged emotional injury was caused substantially by another factor or factors other than The Hartford's conduct, you must find in favor of The Hartford. For example, if you find that Mr. Shorter's emotional injury was caused by conduct of Mary Anne Rhodes, such as the break-up of their relationship, you must find for The Hartford.

Finally, Mr. Shorter must prove by a preponderance of the evidence that the distress he experienced was severe. Whether Mr. Shorter sought treatment and the type, extent and duration of his injury are factors to be considered in determining whether the distress he experienced was severe.

After considering all of the evidence, you may conclude that Mr. Shorter has not proved any one or more of these elements by a preponderance of the evidence. If you determine

that any element of Mr. Shorter's claim for intentional infliction of emotional distress has not

been proven against The Hartford, then The Hartford is not liable.

Sources:  Appleton v. Bd. of Educ. for the Town of Stonington, 254 Conn. 205 (2000).
     Peytan v. Ellis, 200 Conn. 243 (1986).
     Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 19 (Conn. Super. Ct. 1991).
     Huff v. West Haven Bd. of Education, 10 F. Supp.2d 117 (D. Conn. 1998).
     DeLeon v. Little, 981 F. Supp. 728 (D. Conn. 1997).
     Reed v. Signode Corp., 652 F. Supp. 129 (D. Conn. 1986).

**REQUEST TO CHARGE NO. 23**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS –
ELEMENTS OF LIABILITY**

In Count Nine, Mr. Shorter claims that he was subjected to negligent infliction of emotional distress. To establish a claim of negligent infliction of emotional distress, Mr. Shorter has the burden of proving that The Hartford should have realized that his conduct involved an unreasonable risk of causing emotional distress and that, the distress, if it were caused, might result in illness or bodily harm to Mr. Shorter.

Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct in the termination process. The mere termination of Mr. Shorter's employment is not, by itself, enough to sustain a claim for negligent infliction of emotional distress, even if it caused him some emotional distress. Under the law, the mere act of firing an employee, even if wrongfully motivated, is not enough to sustain a claim for negligent infliction of emotional distress.

Additionally, because a claim of negligent infliction of emotional distress is limited to conduct occurring during the termination process, you may not find for Mr. Shorter based upon any conduct occurring before or after Mr. Shorter's termination on January 23, 2002.

Sources:    Perodeau v. City of Hartford, 259 Conn. 729 (2002).
Parsons v. United Technologies Corp., 243 Conn. 66 (1997).
Morris v. Hartford Courant Co., 200 Conn. 676 (1986).
Petyan v. Ellis, 200 Conn. 243 (1986).
Muniz v. Kravis, 59 Conn. App. 704 (2000).
Malik v. Carrier Corp., 986 F. Supp. 86 (D. Conn. 1997).

## REQUEST TO CHARGE NO. 24

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In Count Ten, Plaintiff alleges a claim for breach of the implied covenant of good faith and fair dealing against The Hartford. The law implies into every contract a promise, also called a covenant, that neither party to the contract will take any action intended to deprive the other party of the benefit of the contract. This promise is implied because the law puts it into all contracts, even though the parties never discussed it. This implied promise is called the covenant of good faith and fair dealing, which imposes a duty on both parties to a contract to act in good faith toward each other. Good faith means honesty in fact and behaving in such a way as to allow both parties to obtain the benefit of their agreement. The implied covenant of good faith and fair dealing operates to fulfill the reasonable expectations of the contracting parties as they presumably intended.

The existence of a contract between the parties is, therefore, a necessary antecedent to any claim for breach of the duty of good faith and fair dealing. Thus, you must first find that a contract existed between Mr. Shorter and The Hartford in order for his claim of breach of implied covenant of good faith and fair dealing to exist.

The Hartford has claimed that Mr. Shorter was employed "at-will" and that it did not enter into a contract of employment with Mr. Shorter for anything other than "at will" employment. The term "at will" means that employment may be legally terminated for any reason or for no reason just by giving notice to the other party. Under the law of this state, all employment relationships are presumed to be at-will unless the parties have agreed otherwise. Therefore, Mr. Shorter must prove the existence of a contrary agreement to avoid the

37

presumption that his employment was at will. If you find that Mr. Shorter was employed at will, you must find in favor of The Hartford on this claim.

To establish a claim for breach of the implied covenant of good faith and fair dealing, Mr. Shorter must prove all of the following by a preponderance of the evidence:

1)    he and The Hartford entered into a contract and the terms of that contract;

2)    The Hartford took some action, or failed to act, in a way that was not authorized by the contract and did so in bad faith with the intent of depriving Mr. Shorter of some benefit that she reasonably expected to receive from the contract;

3)    The Hartford's action, or its failure to act, was the proximate cause of an economic loss to Mr. Shorter; and

4)    the amount of economic loss that Mr. Shorter sustained.

As you were just instructed, the second element that Mr. Shorter must prove to establish his claim for breach of the implied covenant of good faith and fair dealing is that The Hartford acted in bad faith. Bad faith means that The Hartford acted or failed to act in order to deprive Mr. Shorter of benefits that were reasonably expected from the contract and for the sole purpose of harming Mr. Shorter. You may consider all of the circumstances in which The Hartford acted or failed to act to determine its intent. You must not, however, find bad faith unless you are convinced that The Hartford wanted to deprive Mr. Shorter of some benefit that he would have received from the contract and that this desire to deprive was the reason that The Hartford acted or failed to act.

As set forth above, Mr. Shorter must also establish that The Hartford's action, or its failure to act, was the proximate cause of his economic loss. The Hartford's action or failure to act is the proximate cause of Mr. Shorter's loss if you conclude it was a substantial factor in

38

causing that loss. If you find that other factors caused his loss, you may not find for Mr. Shorter on this element unless you find that The Hartford's action or failure to act was a substantial factor in causing Mr. Shorter's loss.


Source:        Hoskins v. Titan Value Equities Group, 252 Conn. 789 (2000).
               Magnan v. Anaconda Industries, Inc., 193 Conn. 558 (1984).
               Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471 (1980).
               Cowen v. Federal Express Corp., 25 F. Supp.2d 33 (D. Conn. 1998).

## REQUEST TO CHARGE NO. 25

### INVASION OF PRIVACY

In Count Thirteen, Mr. Shorter alleges a claim for false light invasion of privacy against The Hartford. To prevail on his claim, Mr. Shorter must prove that The Hartford published information about Mr. Shorter which: (1) was not true; and (2) was such a major misrepresentation of his character, history, activities or beliefs that The Hartford could reasonably expect that a reasonable man in Mr. Shorter's position would take serious offense.

Mr. Shorter cannot base his claim for invasion of privacy on any representations made by The Hartford to the Commission on Human Rights and Opportunities or this Court. This is because representations made by a party during the course of judicial proceedings are absolutely privileged and cannot support liability of any kind. Thus, any statements made by The Hartford to the CHRO or this Court regarding Mr. Shorter's criminal background are absolutely privileged and cannot give rise to liability.

Sources:     Restatement (Second) Torts § 652F.
Perkins v. Freedom of Information Commission, 228 Conn. 158 (1993).
Petyan v. Ellis, 200 Conn. 243 (1986).
Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107 (1982).
Alexandru v. Dowd, 79 Conn. App. 434 (2003).

40

## REQUEST TO CHARGE NO. 26

## BACK PAY DAMAGE CALCULATIONS

Since Mr. Shorter is claiming money damages in this case, I must discuss the law of damages with you. However, you must not take this discussion to mean that Mr. Shorter is entitled to any money damages simply because I instruct you on the law of damages.

If you find that The Hartford discriminated against Mr. Shorter in its termination of his employment, he would be entitled to money damages or backpay. The sum Mr. Shorter would be entitled to is the amount of wages he would have earned and any benefits he would have received if he had not been discriminated against minus all income and benefits he actually received, or should have received with reasonable efforts to obtain other employment, since his termination of employment.

It is Mr. Shorter's burden to prove each element and item of damage relating to monies he claims he would have received had he not been discriminated against, it is not The Hartford's burden to disprove them.

Damages cannot be based on mere speculation. They must be grounded in fact and must be reasonable. Therefore, Mr. Shorter must introduce evidence of the effect of the alleged discrimination upon him.

Sources:    Carey v. Piphus, 435 U.S. 247 (1978) ("an award of damages must be supported by competent evidence concerning the injury").
Buckman v. People Express, Inc., 205 Conn. 166 (1987).
Annis v. County of Westchester, 136 F.3d 239 (2d Cir. 1998).
Patramale v. Local No. 17, 847 F.2d 1009 (2d Cir. 1988).
Schanzer v. United Technologies Corp., 120 F. Supp.2d 200 (D. Conn. 2000).

41

## REQUEST TO CHARGE NO. 27

### COMPENSATORY DAMAGES - SUBJECTIVE INJURY
### INSUFFICIENT WITHOUT COMPETENT EVIDENCE

Mr. Shorter is also seeking damages for mental and emotional suffering he claims to have endured as a result of his discharge. These damages are commonly referred to as "compensatory damages." To be entitled to an award of compensatory damages, Mr. Shorter must prove that he incurred identifiable pain and suffering as a direct result of The Hartford's conduct.

Mr. Shorter has the burden of proving any compensatory damages by a preponderance of the evidence. If Mr. Shorter does not establish that he has experienced emotional distress, embarrassment, mental anguish and loss of enjoyment of life because of The Hartford's conduct, then he cannot recover compensatory damages.

If you determine that Mr. Shorter has proven by a preponderance of the evidence that he has experienced emotional distress, embarrassment, mental anguish and loss of enjoyment of life as a result of any wrongful act by The Hartford, you may award him damages for those injuries. No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence. No exact standard exists for fixing the compensation to be awarded for these elements of damages. In order for you to award such damages, you must find that the alleged emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life are real. Only if you determine that they are, can you award such damages -- no more and no less.

Mr. Shorter must prove by a preponderance of the evidence that The Hartford's conduct, and not some other reason, caused him pain and suffering. Mr. Shorter must prove that

42

he suffered an emotional injury beyond that commonly incurred by an employee who is terminated. Even if Mr. Shorter experienced emotional distress, The Hartford is not liable if the distress is exaggerated in comparison to that which a reasonable person would experience under the same circumstances. Moreover, damages for mental anguish may not be presumed simply because of the nature of the alleged emotional injury.

When considering the amount of monetary damages to which Mr. Shorter may be entitled, you should consider the nature, character, and seriousness of any emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life Mr. Shorter felt. Relevant factors in determining the magnitude of the alleged emotional distress include whether Mr. Shorter curtailed his life activities, whether he promptly sought professional psychological help, whether his symptoms are "garden variety" symptoms that would ordinarily be expected of a person in his situation and whether there is any physical manifestation of psychological injury.

If you conclude that Mr. Shorter failed to prove these elements by a preponderance of the evidence, then you should not award him any compensatory damages.

Sources:     Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, 104.06 (4th ed. 1987).
Carey v. Piphus, 435 U.S. 247 (1978) ("an award of damages must be supported by competent evidence concerning the injury").
Patramale v. Local No. 17, 847 F.2d 1009 (2d Cir. 1988).
McKenna v. Pacific Rail Service, 32 F.3d 820 (3rd Cir. 1994).
Bushman v. Halm, 798 F.2d 651 (3rd Cir. 1986).

43

## REQUEST TO CHARGE NO. 28

### PUNITIVE DAMAGES - TITLE VII

In addition to the claims for damages already mentioned, if, and only if, you find that The Hartford is liable to Mr. Shorter for race or sex discrimination, the law allows you, but does not require you, to award punitive damages against The Hartford under Title VII and Section 1981. It does not require you to do so, but you may award punitive damages if you find that The Hartford's conduct meets the standards I am about to give you.

Punitive damages are an extraordinary sanction, available in Title VII or Section 1981 only under aggravated circumstances, to penalize a party for knowingly violating the law or for violating the law in the face of a perceived risk that the party may be doing so. The law does not generally look with favor upon punitive damages. It is for you to determine whether such damages should be awarded, based on the instructions I am about to give you.

It is not enough for an award of punitive damages if Mr. Shorter proves that he was discriminated against on the basis of his race or sex. Punitive damages can only be awarded for acts committed by The Hartford or for omissions of The Hartford.

Punitive damages may be awarded only if you unanimously find by a preponderance of the evidence that The Hartford discriminated against Mr. Shorter despite the fact that The Hartford was aware of the risk that its employment decisions would violate Title VII and/or Section 1981.

You may not award punitive damages simply because you find that The Hartford's actions were egregious or reprehensible. You must find that The Hartford discriminated against Mr. Shorter with the knowledge that its conduct might violate Title VII and/or Section 1981. You may consider the egregiousness of The Hartford's conduct as evidence

44

that The Hartford acted with the mental state I have just described, but you may not award punitive damages based on the egregiousness alone. You must find that The Hartford disregarded the risk that its actions might violate Title VII and/or Section 1981.

If you find that Mr. Shorter was discriminated against, but you also find that The Hartford had a policy and practice to eliminate discrimination in the workplace and that it made a good faith effort to comply with the applicable laws prohibiting discrimination, The Hartford cannot be held liable for punitive damages. Thus, if you find that The Hartford made good faith efforts to eliminate discrimination in the workplace, you may not award punitive damages against The Hartford for the discrimination.

You should also bear in mind not only the conditions under which the law permits an award of punitive damages to be made, but also the requirement of the law that the amount of such extraordinary damages, if awarded, must be fixed with calm discretion and sound reason and must never be awarded or fixed in any amount because of any sympathy or bias or prejudice with regard to any party to the case. The amount of punitive damages must be in proportion to the evidence that The Hartford disregarded the risk of violating Title VII or Section 1981, or the damages will be found to be excessive. If you award punitive damages, they must be separately stated in your verdict. Your verdict form has a separate space for punitive damages.

Sources:    42 U.S.C. § 2000e-5(g).
            42 U.S.C. § 1981a(b)(1).
            Kolstad v. American Dental Association, 527 U.S. 526 (1999).
            Ford Motor Co. v. EEOC, 458 U.S. 219 (1982).

45

**REQUEST TO CHARGE NO. 29**

**AFTER-ACQUIRED EVIDENCE OF WRONGDOING**

I will now charge you on the doctrine of after-acquired evidence of wrongdoing. During this case, you heard evidence that Mr. Shorter inappropriately used The Hartford's email system in communicating with several women outside work and that he accessed unauthorized websites using the internet at work. You also heard testimony that such conduct violated The Hartford's email and internet policies.

After-acquired evidence of wrongdoing is evidence of misconduct by Mr. Shorter which The Hartford did not learn of until after his termination of employment. As a result, such misconduct did not have a role in The Hartford's termination decision because the company was not aware of the misconduct during Mr. Shorter's employment. The doctrine of after-acquired evidence does not function as a bar to Mr. Shorter's claims in this matter. However, evidence that The Hartford would have terminated Mr. Shorter for his inappropriate use of the company's email system and for his accessing unauthorized websites at work limits Mr. Shorter's right to recover certain damages.

You need only address this issue of after-acquired evidence if you first find in favor of Mr. Shorter on one or more of his claims. If, after finding for Mr. Shorter, you also find that The Hartford established, by a preponderance of the evidence, that Mr. Shorter's misuse of The Hartford's email system and internet access was sufficiently severe that The Hartford would have terminated him on such grounds alone if the company had known of the misconduct at the time, then Mr. Shorter is not entitled to reinstatement to his former position or to an award of front pay. In addition, you must limit any award of back pay to Mr. Shorter to the period of time

46

between the date of Mr. Shorter's discharge and the date the after-acquired evidence was discovered by Mr. Wardell.

Sources:    McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995).
            Green v. Coach, Inc., 218 F. Supp. 2d 404 (S.D.N.Y. 2002).
            Blake-McIntosh v. Cadbury Beverages, Inc., No. 3:96 CV 2554 (EBB), 1999 U.S.
            Dist. LEXIS 16550 (D.Conn. 1999).

## REQUEST TO CHARGE NO. 30

## MITIGATION OF DAMAGES

Any person who claims damages as a result of an allegedly wrongful act on the part of another has a legal duty to mitigate those damages. Mr. Shorter must be denied that portion of his financial and emotional injuries or loss, if any, which he could have avoided by his reasonable efforts. Fair compensation to an injured person does not include injuries which in a practical sense were self-inflicted. Mr. Shorter must, therefore, have used reasonable care and diligence to minimize the extent of his damages.

Mr. Shorter is not entitled to recover damages for any losses that resulted from his failure to mitigate his damages. With respect to his claim for lost wages, Mr. Shorter had a duty to pursue and accept comparable substitute employment. If Mr. Shorter could have obtained comparable employment with the exercise of reasonable diligence, he had a duty to locate and accept such employment. Mr. Shorter's claim for back wages is properly reduced by the amount he could have earned had he used reasonable diligence in obtaining substitute employment.

With respect to Mr. Shorter's claim for emotional distress damages, Mr. Shorter had a duty to submit to treatment that was medically advisable to mitigate his damages. Reasonable mitigation efforts for Mr. Shorter included seeking treatment for his emotional distress. Mr. Shorter is not entitled to recover damages for any condition or emotional injuries that he could have alleviated or avoided by timely seeking appropriate medical treatment.

In addition, mitigation of damages is a defense that is raised by The Hartford. As a result, the burden of proving that Mr. Shorter unreasonably failed to mitigate his damages rests on The Hartford, which must carry its burden of proof by a preponderance of the evidence.

48

If you find that The Hartford met its burden of proving that Mr. Shorter failed to alleviate or avoid damages, then the failure to mitigate damages results in a proportionate reduction in Mr. Shorter's damages.

Sources:     Ann Howard's Apricots Restaurant, Inc. v. CHRO, 237 Conn. 209 (1996).
Preston v. Keith, 217 Conn. 12, 20-22 (1991).
Greenway v. Buffalo Hilton, 143 F.3d 47, 54 (2d Cir. 1998).
Federal Ins. Co. v. Sabine Towing & Transp. Co., Inc., 783 F.2d 347 (2d Cir. 1986).
Fleet Nat. Bank v. Anchor Media Television, Inc., 45 F.3d 546 (1st Cir. 1995).
F.D.I.C. v. Wheat, 920 F.2d 124 (5th Cir. 1992).
Hagerty v. L & L Marine Services, Inc., 788 F.2d 315 (5th Cir. 1986).
McElyea v. Navistar Intern. Transp. Corp., 788 F. Supp. 1366 (E.D.Pa. 1991).
Buras v. Shell Oil Co., 666 F. Supp. 919 (S.D.Miss. 1987).
Yosuf v. U.S., 642 F. Supp. 432 (M.D.Pa. 1986).

## REQUEST TO CHARGE NO. 31

## DAMAGES – PLAINTIFF CANNOT RECOVER MORE
## THAN ONCE FOR THE SAME LOSS

Mr. Shorter cannot recover more than once for the same loss, even if he prevails on two or more of his claims. You are not permitted to award Mr. Shorter a double recovery for a single loss. If two separate claims result in a damages award to compensate Mr. Shorter for a particular injury, only one award can be made.

I have provided you with a verdict form and I will go through it with you to make sure you understand where there is a potential for Mr. Shorter to recover more than once for the same loss.

Source:    State of Connecticut Judicial Branch, Civil Jury Instructions, §3.81 (Revised to April 3, 2000).

## REQUEST TO CHARGE NO. 32

## SYMPATHY

The Court cautions you to guard against appeals to your sympathy when assessing these cases. The Court instructs you that any perceived lack of fairness toward Mr. Shorter does not equal race and/or sex discrimination. You are instructed to make your decision as to the appropriate amount of damages, if any, based upon the evidence presented and not on the basis of any sympathy you may feel for Mr. Shorter. If you find that The Hartford discriminated against Mr. Shorter because of his race and/or sex, you should assess as damages the amount you find justified by the preponderance of the evidence, no more and no less. If, on the other hand, you find that The Hartford did not discriminate against Mr. Shorter, you should find in favor of The Hartford and not assess damages against The Hartford.

Under no circumstances should you let your sympathy affect your consideration of the law and the evidence. Likewise, it is not part of your function as jurors to punish The Hartford or to be generous to Mr. Shorter.

Source:    ABA Section of Litigation Pattern Jury Instructions 1.12[1](2).

51

## REQUEST TO CHARGE NO. 33

## ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things in the evidence in the case.

Source:    Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions (4th Ed.) §72.01 (4th ed. 1987).

## REQUEST TO CHARGE NO. 34

## COURT HAS NO OPINION

It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner what verdict I think you should find.  The verdict shall be your sole and exclusive duty and responsibility.

Source:     Devitt, Blackmar and Wolff, <u>Federal Jury Practice and Instructions</u> §74.07 (4th ed. 1987).

## REQUEST TO CHARGE NO. 35

### SPECIAL VERDICT AND GENERAL VERDICT FORMS

A form of special verdict has been prepared for your convenience.  You will take these forms to the jury room.  I direct your attention first to the form of special verdict.

[Forms of verdict read].

The answer to each question must be the unanimous answer of the jury.  Your foreperson will write the unanimous answer of the jury in the space provided under each question, and will date and sign the special verdict, when completed.