UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| FERRON SHORTER JR.<br>    Plaintiff, | : <br> : <br> : |
| | :        CIVIL NO.: 303 CV 0149(WIG) |
| v. | : <br> : |
| HARTFORD FINANCIAL SERVICES GROUP,<br>INC. and MARYANNE RHODES | : <br> : |
|      Defendants. | :        JANUARY 18, 2005 <br> : |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE ANTICIPATED
TESTIMONY OF NANCY BIENIEK**

Pursuant to Federal Rules of Evidence 402 and 403, Hartford Financial Services

Group, Inc. ("The Hartford") hereby moves to preclude the anticipated testimony of Nancy

Bieniek from the trial of this matter, including the testimony of any other witness regarding the

subject matter of Ms. Bieniek's anticipated testimony.   As set forth in the Joint Trial

Memorandum, Plaintiff identified Ms. Bieniek in his Witness List and anticipates that she will

testify regarding an incident in 1996 in which Plaintiff was moved to a different workstation so

that two female employees who were disruptive toward each other could be separated.  Plaintiff

admitted at his deposition that his move to a new work station was unrelated to his termination in

2002, that the supervisor responsible for the move was not involved in the decision to terminate

his employment, and that he had no reason to believe that the move was related to his race.

As set forth in more detail below, the anticipated testimony of Ms. Bieniek should

be precluded because: 1) it is irrelevant to Plaintiff's claims in this matter; and 2) its probative

value, if any, is far outweighed by the potential for unfair prejudice to The Hartford and

1

confusion of the issues by the jury. In addition, the Court should bar any other witness, such as

Plaintiff, from testifying regarding the subject matter of Ms. Bieniek's anticipated testimony.

I.      INTRODUCTION

According to Plaintiff's Witness List set forth in the Joint Trial Memorandum,

Plaintiff anticipates that Ms. Bieniek will testify regarding the following:

> Knowledge of workplace incidents between two employees who were
> disruptive toward each other. Plaintiff was asked to move his desk to a
> less desirable location in order to separate the disruptive employees.

(Joint Trial Memorandum, p. 8.) The Hartford objects to the introduction of Ms. Bieniek's

anticipated testimony in its entirety as well as to the testimony of any other witness, including

Plaintiff, regarding the subject matter of Ms. Bieniek's anticipated testimony.

At his deposition, Plaintiff testified in greater detail regarding the subject matter

of Ms. Bieniek's anticipated testimony. Plaintiff testified,

> There was an incident back in 1996 where two women didn't get along.
> And it was getting dangerous. And the supervisor at the time, they sat
> next to each other, and the supervisor at the time wanted to split them up
> as opposed to reprimand them. She just split them, moved their work
> stations. She moved one of them into my work station. I asked please not
> to have me be the one that has to move. . . . I even called, I can't
> remember his name, but I called the person that we are to complain about,
> and he did nothing about it.

(Pl. Dep., pp. 110-11.)[1] Plaintiff complained about his new work station to The Hartford's

human resources department because he felt that the supervisor responsible for moving his work

station resolved the problem created by the two disruptive women at his expense. (Pl. Dep., p.

112.) Plaintiff did not complain to human resources that his move to a new work station was

related to his race and he did not believe that the move was related to his race until he was

---

[1]   A copy of the relevant pages of the transcript of Plaintiff's deposition testimony is attached as Exhibit 1.

terminated in January 2002. (Pl. Dep., pp. 113-14.) Plaintiff admitted at his deposition that he was unaware of any facts suggesting that his move to a new work station was due to his race. Plaintiff further admitted that his move had nothing to do with his termination in 2002 and that the supervisor responsible for moving his work station in 1996 was not involved in the decision to terminate his employment. (Pl. Dep., pp. 113-14.)

II.    ANALYSIS

A.    Ms. Bieniek's Anticipated Testimony Is Irrelevant And Should Be Precluded

According to Rule 402 of the Federal Rules of Evidence, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. The Rules of Evidence further define "relevant evidence" as "[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Ms. Bieniek's anticipated testimony concerning an incident in 1996 in which Plaintiff's work station was moved to separate two workers who were disruptive toward each other is irrelevant to the facts of this matter. Plaintiff admitted under oath that his move to a new work station had nothing to do with his discharge from The Hartford six years later. He also admitted that the supervisor responsible for moving his work station was not involved in the decision to terminate his employment. Plaintiff never complained that the move to a new work station was related to his race, he is unaware of any facts suggesting that the move was related to his race and he did not believe that the move was related to his race until six years later when he was discharged in 2002.

3

Thus, Ms. Bieniek's anticipated testimony does not concern any facts which are at issue in this matter and the subject matter of her testimony is not "of consequence to the determination of the action." Fed. R. Evid. 401. Consequently, Ms. Bieniek's anticipated testimony, including the testimony of any other witness regarding the subject matter of Plaintiff's move to a new work station in 1996, is irrelevant and should be precluded from the trial of this matter.

B.   Ms. Bieniek's Anticipated Testimony Is Inadmissible Under Rule 403 And Should Be Precluded

Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Fed. R. Evid. 403. "Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case." Leopold v. Baccarat, Inc., 174 F.3d 261, 270 (2d Cir. 1999)(citation omitted). Under this Rule, the Court must balance the prejudicial effect of the evidence with its probative value. United States v. Harvey, 991 F.2d 981, 996 (2d Cir. 1993) ("Under Rule 401 and 403 . . . in order for evidence to be admissible, it must be relevant and its prejudicial effect must not substantially outweigh its probativeness.").

The probative value of Ms. Bieniek's anticipated testimony is substantially outweighed by its prejudicial effect. As set forth above, such evidence has no probative value concerning the facts and circumstances of Plaintiff's relationship with Mary Anne Rhodes, The Hartford's investigation of Ms. Rhodes' complaint or The Hartford's reasons for Plaintiff's subsequent discharge. Nor is such evidence even remotely related to any other facts at issue in this matter.

4

In addition, such evidence is clearly prejudicial to The Hartford. The Hartford's defense will be based in large part on its receipt and investigation of Ms. Rhodes' complaint regarding Plaintiff. This defense will rely on evidence of the good faith nature of The Hartford's investigation, the facts discovered during its investigation and the information it possessed at the time of the termination decision. Evidence of an incident in 1996 in which Plaintiff was moved to a new work station, which Plaintiff did not believe was related to his race until 2002, which Plaintiff can support with only the vaguest assertions of discrimination, and which Plaintiff admitted was unrelated to his termination can only be an attempt by Plaintiff to inappropriately suggest to the jury that The Hartford previously discriminated against Plaintiff and treated him unfairly. Such evidence, absent even the barest factual predicate, can only prejudice The Hartford in the eyes of the jury and confuse the jury's consideration of the facts of Plaintiff's discharge in 2002. Accordingly, such evidence should be barred under Rule 403.

III.    CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine To Preclude Evidence Of Maurice Kuck's Job Performance and Termination of Employment should be granted.

DEFENDANT,
HARTFORD FINANCIAL SERVICES
GROUP, INC.


By:    _Margaret J. Strange_____

Margaret J. Strange (ct08212)
James F. Shea (ct16750)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105
Phone: (860) 522-0404/Fax: (860) 247-1330
email: strangem@jacksonlewis.com
email: sheaj@jacksonlewis.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via facsimile and first class mail, postage prepaid, on this 18th day of January 2005, to the following counsel of record:

Rachel M. Baird
Law Office of Rachel M. Baird
379 Prospect Street
Torrington, CT 06790
(860) 626-9991
Attorney for Plaintiff

David L. Metzger
Metzger & Associates
25 Capitol Avenue
Hartford, CT 06106-1707
Ph. (860) 549-5026
Attorney for Defendant Maryanne Rhodes

_____
Margaret J. Strange

H:\Client Folder\H\The Hartford\Shorter\Trial\Motion Limine Bienick 02 DOC
64532

6

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FERRON SHORTER JR.      :
  Plaintiff,        :
             :   CIVIL NO.: 303 CV 0149(WIG)
v.            :
             :
HARTFORD FINANCIAL SERVICES GROUP, :
INC. and MARYANNE RHODES   :
  Defendants.      :   JANUARY 18, 2005
             :

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE ANTICIPATED TESTIMONY
OF NANCY BIENIEK**

**EXHIBIT 1**

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                          Ferron Shorter, Jr.

Page 110

1    awarded the position as an underwriter assistant.  And

2    then from there, I was promoted to the position of

3    actuarial specialist.  And then from there, I was

4    promoted to the position of data analyst, which

5    involved programming.  And then from there, I was, I

6    had a lateral move to another position, which was

7    desktop support.  And then I received another position

8    as a data technician, and then promoted to developer

9    two and a half months before I was terminated.

10       Q.  So, in total, how many promotions did you have

11   at The Hartford?

12       A.  I didn't count the ones I just said as I was

13   saying them, but add those up.  You want me to add

14   them all and tell you?

15       Q.  No, that's fine.  Did you think that

16   The Hartford was fair to you in your employment by

17   giving you those promotions?

18       A.  Well, the people I worked under specifically

19   at those moments were fair.

20       Q.  Did you feel that you were well regarded as an

21   employee?

22       A.  By the people that actually saw me work, yes.

23       Q.  And did anyone else who saw you work, or anyone

24   else you worked for at The Hartford over the years from

25   1989 to 2002, did anyone treat you unfairly?

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                      Ferron Shorter, Jr.

Page 111

1      A.   There was an incident back in 1996 where two

2   women didn't get along.  And it was getting dangerous.

3   And the supervisor at the time, they sat next to each

4   other, and the supervisor at the time wanted to split

5   them up as opposed to reprimand them.  She just split

6   them, moved their work stations.  She moved one of

7   them into my work station.  I asked please not to have

8   me be the one that has to move, because the work

9   station I have, I am blind in one eye, and the side

10  that I can see was facing everyone, the aisle, and

11  everyone else.  But, with that, my blind eye was

12  facing everyone, my good side would only be facing the

13  wall.  I did ask her.  I even called, I can't remember

14  his name, but I called the person that we are to

15  complain about, and he did nothing about it.

16     Q.   Was that somebody in human resources that you

17  called?

18     A.   Yes.

19     Q.   And did you understand who you should go to as

20  an employee of The Hartford if you had a complaint?

21     A.   I just went to whoever.  I went to the

22  supervisor.  She did nothing.  So, that was the next

23  step.  It was either them or security.

24     Q.   What did you complain about to human resources

25  in 1996?

Brandon Smith Reporting Service

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                                      Ferron Shorter, Jr.

Page 112

1    A.   Telling them I was being used as a resolution

2    at my expense to somewhat take care of two other

3    people that didn't get along that had nothing to do

4    with me, two people that were presenting a problem to

5    the whole work area.

6    Q.   And did anything happen as a result of your

7    complaint?

8    A.   No, I was just moved.  And I was told I just

9    had to deal with it, that it was a way to keep the

10   women from arguing with each other and causing more

11   problems at work and violence.

12   Q.   So, was the nature of your complaint in 1996

13   that you were being used because of where you sat?

14   A.   It wasn't because -- I didn't feel it was

15   because where I sat, because there were other aisles

16   and other employees scattered throughout the floor.

17   Q.   Why did you think you were being used then?

18   A.   It could be a number of any reasons.  After

19   the way I was treated, I guess, in 2002, it could be

20   possible this was because of my race.

21   Q.   Did you raise that in 1996?  Did you say you

22   thought you were unfairly treated because of your race?

23   A.   I just said as a result of what happened in

24   2000, that gives me the indication that was possibly

25   why in 1996.

Brandon Smith Reporting Service

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                          Ferron Shorter, Jr.

Page 113

1      Q.   Who was involved in the situation in 1996?

2      A.   A white supervisor.

3      Q.   Was that a supervisor that was involved in your

4    termination in 2002?

5      A.   No.

6      Q.   So, why would you think that the 1996 incident

7    had anything to do with your race?

8      A.   Just because maybe that was the way

9    The Hartford looked upon us, upon me.  I said could

10   have.  I never said that was the reason.  I said that

11   gave me an indication possibly why.

12     Q.   You don't have any specific reason to say that

13   was the motivation for that situation in 1996?

14     A.   No, I just answered that, because you asked me

15   what was going on in my mind.  That's what I felt in

16   my mind.

17     Q.   Before today, have you ever thought the 1996

18   incident had to do with race?

19     A.   I said when I was terminated in 2002, when I

20   thought of the 1996 incident, that's what I thought

21   about it.  I thought about it was when I was

22   terminated.

23     Q.   Did you complain to anyone about that?

24     A.   About being terminated because I was black and

25   a man.

Brandon Smith Reporting Service

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 114

1      Q.   Did you complain to anyone that you thought the

2    1996 incident had to do with your race?

3      A.   No.

4      Q.   The 1996 incident had nothing to do with your

5    termination, did it?

6      A.   No.

7      Q.   Were there any other situations while you

8    worked for The Hartford from 1989 to 2002 where you

9    felt you were treated unfairly?

10     A.   Not that I can think of right now at this

11   moment.

12     Q.   Now, the dates on your resume for the different

13   jobs you held, are they accurate to the best of your

14   knowledge?

15     A.   Yes.

16     Q.   Did you receive regular pay increases while you

17   worked for The Hartford?

18     A.   Not from 1990 to 1994, but from probably the

19   second half of '94 up until January 2002, yeah.

20     Q.   All right.  Did you think you were treated

21   fairly in the raises that you received?

22     A.   I can't answer that question, because I am not

23   aware of the other employees' raises to compare it to.

24     Q.   Do you have any reason to believe that you were

25   treated unfairly in your raises?

8217c679-fe23-40f3-b6fa-baa7dfaf7006