UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT
/-26-                          2005
By: *Carol Sanders*

FERRON SHORTER JR.
    Plaintiff,

v.

CIVIL NO.: 303 CV 0149(WIG)

HARTFORD FINANCIAL SERVICES GROUP,
INC. and MARYANNE RHODES
    Defendants.

JANUARY 26, 2005

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, The Hartford Financial Services Group, Inc. ("The Hartford") respectfully moves for the entry of judgment as a matter of law as to each of the remaining claims in this matter: 1) Count One alleging sexual harassment in violation of Title VII; 2) Counts Two and Six alleging race and sex discrimination under Title VII and the Connecticut Fair Employment Practices Act, respectfully; 3) Count Three alleging race discrimination in violation of 42 U.S.C. § 1981; 4) Count Eight alleging a claim for intentional infliction of emotional distress; and 5) Count Nine alleging a claim for negligent infliction of emotional distress. The Hartford moves that judgment be entered in its favor as to each of the foregoing claims on the grounds that Plaintiff has been fully heard on the issues and there is no legally sufficient evidentiary basis for a reasonable jury to find in his favor.

I.    ANALYSIS

    A.    The Standard For A Directed Verdict Mirrors The Standard For Summary Judgment

    According to Rule 50(a) of the Federal Rules of Civil Procedure,

1

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained . . . without a favorable finding on that issue.

Fed.R.Civ.Pro. 50(a)(1).

The standard for a directed verdict under Rule 50(a) "mirrors" the standard for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Under Rule 50(a), the trial court "must direct a verdict is, under the governing law, there can be but one reasonable conclusion as to the verdict. Id. "In essence . . . the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

B.    The Hartford Is Entitled To Judgment As A Matter Of Law On Count One Alleging Hostile Work Environment Sexual Harassment

In Count One, Plaintiff alleges that he experienced a sexually hostile work environment in violation of Title VII. (Cmplt., ¶¶ 33, 50-52.) In support of his claim, Plaintiff testified that from December 26 to December 28, 2001 and from January 7, 2002 to January 18, 2002 Ms. Rhodes harassed him at work by coming to his desk, staring at him, tapping her feet, folding her arms and forcing him to go for walks with her. He also testified that during this period of time Ms. Rhodes called him excessively at work and left him voice mail messages. Plaintiff played several of these voice mail messages for the jury which included Ms. Rhodes telling Plaintiff that she loved him, that she wanted to be with him, asking him to call her back and wishing him a happy New Year. With the exception of a single one sentence message on

January 17, 2002, there was nothing remotely sexually, hostile, abusive or offensive in Ms. Rhodes' voice mail messages.

The Hartford is entitled to judgment on Plaintiff's claim of sexual harassment because there is no evidence that Plaintiff experienced a hostile or abusive work environment based on his sex. To sustain a hostile work environment claim under Title VII, Plaintiff must establish he experienced harassing conduct which was "sufficiently severe or pervasive to alter the conditions" of his employment and which "create[d] an abusive working environment." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2nd Cir. 1997)(citations omitted). "In order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." Tomka v. Seiler Corp., 66 F.3d 1295, 1306 n.5 (2d Cir. 1995). The alleged harassing conduct "must be extreme to amount to a change in terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). In evaluating claims of hostile work environment harassment, courts must keep in mind that Title VII "is not a general civility code." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (citation omitted; internal quotations omitted).

In addition to being severe and pervasive, the conduct at issue must be sexually harassing. It is axiomatic that a plaintiff "must produce evidence that []he was discriminated against because of [his sex]." Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999). Such "sex-related" conduct "is a fundamental and necessary element of a hostile environment claim under Title VII." Hill v. Pinkerton Security & Investigation Servs., Inc., 977 F. Supp. 148, 158 (D. Conn. 1997). As the Second Circuit has noted,

> Everyone can be characterized by sex, race, ethnicity or (real or perceived) disability . . . . It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that

3

lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

<u>Alfano v. Costello</u>, 294 F.3d 365, 377 (2d Cir. 2002).

The incidents on which Plaintiff bases his hostile work environment claim are not severe and pervasive, they are facially neutral and they are devoid of any sex-based discriminatory animus.    There is nothing remotely discriminatory or sexual in Plaintiff's allegations that Ms. Rhodes repeatedly came to his desk, stared at him, folded her arms, tapped her feet, forced him to go for walks with her, called him excessively at work and left him voice mail messages.    Nor is such conduct, while inconvenient or bothersome, sufficiently severe and pervasive, as a matter of law, to create an abusive working environment.    Even the voice mails which Ms. Rhodes left for Plaintiff are non-sexual in nature, lack any sex-based animus and are not abusive or hostile.    Ms. Rhodes' alleged conduct, while annoying, irritating or bothersome to Plaintiff, was not extreme and lacks the sex-based component necessary to support liability for a sexually hostile work environment actionable under Title VII.    <u>See</u>  <u>Phillips v. Merchants Ins. Corp.</u>, 3 F. Supp. 2d 204, 208 (N.D.N.Y. 1998) (supervisor's comments, while offensive, were more hostile and angry than sexual, and behavior that is immature, nasty, or annoying, without more, is not actionable as sexual harassment); <u>Ketchum v. Agway Energy Products</u>, 988 F. Supp. 610, 616  (N.D.N.Y. 1997)(dismissing sexual harassment claim based on conduct which may have been nasty but was not sexual in nature); <u>Johnson v. Tower Air</u>, 149 F.R.D. 461, 469 (E.D.N.Y. 1993) (dismissing plaintiff's hostile work environment sexual harassment claim where offensive comments were hostile and angry, but not sexual); <u>Porras v. Montefiore Medical Ctr.</u>, 742 F. Supp. 120, 126-27 (S.D.N.Y. 1990)("[u]nfair, overbearing, or annoying treatment of an employee, standing alone, cannot constitute a Title VII sex discrimination claim").

Plaintiff's claim also fails because it is clear that any allegedly harassing conduct by Ms. Rhodes arose out of their failed romantic relationship. Plaintiff testified extensively regarding this relationship, including the five weeks they lived together in November and December 2001, his efforts to renew their friendship in December 2001 and January 2002, Ms. Rhodes' attempts to save their relationship and their eventual break-up. Conduct arising out of this romantic relationship does not, as a matter of law, support liability for sexual harassment under Title VII. See Succar v. Dade County School Bd., 229 F.3d 1343, 1345 (11th Cir. 2000)(alleged harassment was not actionable where it was motivated, not by plaintiff's gender, but by ill will following termination of his sexual relationship with alleged harasser; under such circumstances, plaintiff's gender "was merely coincidental"); DeCintio v. Westchester County Med. Ctr., 807 F.2d 304, 306-07 (2d Cir. 1986) (Title VII proscribes conduct "based on a person's sex, not on his or her sexual affiliations."); Grandquest v. Mobile Pulley & Machine Works, Inc., 163 F. Supp. 2d 1338, 1348 (S.D. Ala. 2001)(alleged harassment based on uninvited conversations with plaintiff and visits to her desk following failed romantic relationship not actionable under Title VII because conduct was not motivated by her sex); Perez v. MCI World Com Communications, 154 F. Supp. 2d 932, 942 (N.D. Tex. 2001)("the mere fact that two co-workers had an 'affair gone wrong' does in itself turn sex-neutral harassment into harassment based on sex.").

C.    The Hartford Is Entitled To Judgment As A Matter Of Law On Counts Two, Three And Six Alleging Discrimination Based On His Race and Sex

In Counts Two and Six, Plaintiff alleges that he was terminated based on his race and sex in violation of Title VII and Conn. Gen. Stat. § 46a-60. In Count Three, Plaintiff alleges that he was discriminated against based on his race in violation of 42 U.S.C. § 1981.

To prevail on his claims of race and/or sex discrimination, Plaintiff must establish: 1) membership in a protected class; 2) qualification for the position; 3) an adverse employment action; and 4) the existence of circumstances giving rise to an inference of discrimination based on his race and/or sex. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142 (2000). If Plaintiff establishes a prima facie case, the burden then shifts to The Hartford to produce a legitimate, nondiscriminatory reason for the adverse employment action. <u>Sanderson</u>, 530 U.S. at 142 (citation omitted). Once The Hartford meets its burden of production, Plaintiff must demonstrate that the legitimate reasons offered by The Hartford were not its true reasons, but were merely a pretext for impermissible discrimination. <u>Sanderson</u>, 530 U.S. at 143 (citation omitted).

Plaintiff cannot establish a prima facie case of sex or race discrimination because he cannot show that his employment was terminated under circumstances giving rise to an inference of discriminatory intent. There is simply no evidence of race or sex discrimination in this case. Plaintiff did not testify to any comments, incidents, statements or actions that indicate ill will or animus towards Plaintiff based on his race or sex. Nor did Plaintiff establish that a white or female employee engaged in the same or similar conduct as him in violation of the Electronic Communications Policy ("ECP"), but who was not terminated. Indeed, Sharon Courey, the Human Resources Generalist responsible for Ms. Rhodes' department, testified that when she recommended that Ms. Rhodes receive a written warning for her conduct, she was not even aware of Plaintiff's race.

Although an inference of discrimination may be drawn from evidence showing that an employer treated a plaintiff less favorably than another employee outside the protected class, before such an inference is permissible, a plaintiff must first show that he is similarly

6

situated to the other employee in "all material respects." <u>Hunter v. St. Francis Hosp.</u>, 281 F. Supp. 2d 534, 549 (E.D.N.Y 2003) (citing <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994); <u>Shumway v. United Parcel Serv. Inc.</u>, 118 F.3d 60, 63 (2d Cir. 1997)). No reasonable jury could conclude that Plaintiff and Ms. Rhodes were similarly situated.

During his testimony, Plaintiff acknowledged that he and Ms. Rhodes were not similarly situated. Plaintiff testified that Ms. Rhodes gave him her voice mail password and that her conduct violated the ECP. In contrast, Plaintiff admitted that he utilized Ms. Rhodes' password to access her voice mail approximately 20 times during the weekend of January 19 to January 21, 2002, that he deleted approximately seven messages from her voice mail, that he changed her password four times, and, most importantly, that he hindered Ms. Rhodes' ability to perform her work by denying her access to her voicemail. Plaintiff admitted that by giving him her password, Ms. Rhodes did not hinder his ability to perform his job duties. Plaintiff understood that this was an important distinction because he justified his prior warning for excessive phone use and his inappropriate email to Tammy Priest on the grounds that the conduct did not hinder anyone's work. Unlike Ms. Rhodes, Plaintiff's violation of the ECP hindered Ms. Rhodes' ability to work and carry out the duties of her position.

The Hartford is also entitled to judgment because Plaintiff cannot show that The Hartford's reason for terminating his employment, violations of the ECP, was a pretext for discrimination. It is undisputed that Plaintiff admitted to violating the ECP by accessing Ms. Rhodes' voice mail account, deleting messages and changing her password. In addition, the information The Hartford had at the time established that Plaintiff lied about his conviction history during his interview by Mr. Wardell. Thus, given the complete absence of any evidence

of discriminatory intent by The Hartford, Plaintiff cannot establish that his admitted violation of company policy was a pretext for race and/or sex discrimination.

D.   The Hartford Is Entitled To Judgment As A Matter Of Law On Count Eight Alleging Intentional Infliction Of Emotional Distress

In Count Eight, Plaintiff alleges a claim for intentional infliction of emotional distress. In support of his claim, Plaintiff testified that 1) on January 23, 2002, Richard Wardell of the Department of Special Investigations interrupted his conversation with a co-worker to request a meeting with Plaintiff; 2) he was not allowed to go to his desk to retrieve his possessions after he was terminated; 3) he was forced to wait approximately 30 minutes while his personal items were retrieved from his work station; and 4) he was escorted from the building by a security officer. Count Eight should be dismissed because Plaintiff cannot establish facts showing that The Hartford engaged in extreme and outrageous conduct.

In Appleton v. Bd. of Education of the Town of Stonington, 254 Conn. 205 (2000), the Connecticut Supreme Court affirmed the critical elements that must be alleged and established to prevail under the theory of intentional infliction of emotional distress:

> It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. (Internal quotation marks omitted.) Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

> Liability for intentional infliction of emotional distress requires conduct that exceeds 'all bounds usually tolerated by decent society . . . .' Petyan v. Ellis, supra, 200 Conn. 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60.

Appleton, 254 Conn. at 210-11.

Whether a defendant's conduct satisfies the extreme and outrageous standard is initially a question for the court to determine. Appleton, 254 Conn. at 211. Only where reasonable minds disagree does it become an issue for the jury. Id.

In Appleton, the Court affirmed that extreme and outrageous conduct can only be found:

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!". . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

Appleton, 254 Conn. at 211 (citations omitted; internal quotations omitted).

In Appleton, the plaintiff was a teacher who alleged that her school principal "made condescending comments" to her in front of her fellow colleagues questioning her vision and ability to read; telephoned the plaintiff's daughter, representing that the plaintiff had been acting "differently" and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her car. The plaintiff also asserted in her affidavit that she was subjected to two psychiatric examinations at the request of the board, and that she was forced to take a suspension and a leave of absence and, ultimately, forced to resign. Appleton, 254 Conn. at 211.

The Connecticut Supreme Court held that even conduct of that magnitude did not rise to the level of "extreme and outrageous" necessary to support a claim of intentional infliction.

9

These occurrences may very well have been distressing and hurtful to the plaintiff. They do not, however, constitute extreme and outrageous conduct within the meaning of the precedents to which we referred previously. In fact, this court has noted that "it is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort." Parsons v. United Technologies Corp., 243 Conn. 66, 89, 700 A.2d 655 (1997) (upholding trial court's granting of motion to strike claim for negligent infliction of emotional distress based on circumstances of employee's termination where employee escorted out of building by security after termination); see also Toth v. Square D Co., 712 F. Sup. 1231, 1238 (D.S.C. 1989) (holding that it was not unreasonable for employer to escort former employee off of premises after termination and that such action did not provide basis for claim of intentional infliction of emotional distress). As the defendants' actions in the present case were not so atrocious as to exceed all bounds usually tolerated by decent society, their conduct is insufficient to form the basis of an action for intentional infliction of emotional distress.

Appleton, 254 Conn. at 211-12.

The Hartford's alleged conduct, as described by Plaintiff, is legally insufficient to meet his burden of proving extreme and outrageous conduct. In fact, The Hartford's alleged conduct does not even approach the level necessary to support a claim for intentional infliction of emotional distress. See Davis v. Liberty Mutual Ins. Co., 218 F. Supp. 2d 256, 265 (D. Conn. 2002) (allegation that following her discharge, plaintiff was escorted out the building without an opportunity to clean out her desk held insufficient to support claim for intentional infliction of emotional distress); Dollard v. Board of Educ., 63 Conn. App. 550, 555 (2001) (plaintiff's allegations that the defendants hypercritically scrutinized every aspect of the plaintiff's work and personal life, publicly admonished her and organized a plan to force her to resign were insufficient to show that defendant's conduct was extreme and outrageous).

Based on the foregoing, The Hartford's alleged conduct in interrupting Plaintiff's discussion with a co-worker, refusing to allow him to go to his desk to retrieve his possessions after his termination, and escorting him out the building fail, as a matter of law, to rise to the

level of extreme and outrageous conduct. Therefore, The Hartford is entitled to judgment as a matter of law as no reasonable jury could find in Plaintiff's favor on Count Eight.

    E.    <u>The Hartford Is Entitled To Judgment As A Matter Of Law On Count Nine Alleging Negligent Infliction Of Emotional Distress</u>

Count Nine alleges a claim for negligent infliction of emotional distress against The Hartford. In support of his claim, Plaintiff testified that following his termination, he was not allowed to retrieve his personal items from his work station and he was escorted from the building by a security officer. The Hartford is entitled to judgment as a matter of law as to Count Nine because there is no evidence that The Hartford engaged in unreasonable conduct in the termination process.

Connecticut courts do not recognize claims for negligent infliction of emotional distress based on "conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." <u>Perodeau v. City of Hartford</u>, 259 Conn. 729, 762-63 (2002) (finding individuals cannot be found liable for negligent infliction of emotional distress based on conduct arising out of the ongoing employment relationship.) "Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct . . . in the termination process. The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." <u>Parsons v. United Technologies Corp.</u>, 243 Conn. 66, 88-89 (1997) (citation omitted; internal quotations omitted).

There is no evidence that The Hartford engaged in unreasonable conduct in the termination process. Plaintiff's claim that he had to wait for Ms. Haber to retrieve his personal items from his work station does not, as a matter of law, rise to the level of unreasonable

conduct. See <u>Davis</u>, 218 F. Supp. 2d at 263-64 (allegation that following her discharge, plaintiff was escorted out the building without an opportunity to clean out her desk held insufficient to establish unreasonable conduct in the termination process). Nor is Plaintiff's claim that he was escorted from the building by a security officer sufficient to prevail on a claim for negligent infliction of emotional distress. <u>Parsons</u>, 243 Conn. at 89 ("[I]t is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort."); <u>Meola v. Eagle Snacks Corp.</u>, No. CV 960384760, 2000 Conn. Super. LEXIS 2318, *18-*19 (Conn. Super. Ct. Sept. 6, 2000)(dismissing negligent infliction claim based on allegations that plaintiff was given 10 minutes to get his things and escorted from the premises by a security guard) (Ex. A).

There are no facts establishing that Plaintiff was terminated in a humiliating, embarrassing or otherwise unreasonable manner. Accordingly, Plaintiff cannot prevail on his claim of negligent infliction of emotional distress and Count Nine should be dismissed.

II.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Judgment As A Matter Of Law should be granted.

DEFENDANT,
HARTFORD FINANCIAL SERVICES
GROUP, INC.

By:    _Margaret J. Strange_

Margaret J. Strange (ct08212)
James F. Shea (ct16750)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105
Phone: (860) 522-0404/Fax: (860) 247-1330
email: strangem@jacksonlewis.com
email: sheaj@jacksonlewis.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was delivered via hand delivery on this 26th day of January 2005, to the following counsel of record:

> Rachel M. Baird
> Law Office of Rachel M. Baird
> 379 Prospect Street
> Torrington, CT 06790
> (860) 626-9991
> Attorney for Plaintiff

And via first class mail, postage prepaid, to the following counsel of record:

> David L. Metzger
> Metzger & Associates
> 25 Capitol Avenue
> Hartford, CT 06106-1707
> Ph. (860) 549-5026
> Attorney for Defendant Maryanne Rhodes

_____
Margaret J. Strange

H:\Client Folder\H\The Hartford\Shorter\Trial\Motion for Directed Verdict.DOC
64532

13

Nicholas Meola v. Eagle Snacks Corporation et al.
CV 960384760

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEWHAVEN, AT NEW HAVEN

2000 Conn. Super. LEXIS 2318

September 6, 2000, Decided
September 6, 2000, Filed

NOTICE:

[*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

DISPOSITION: For the foregoing reasons this court grants the defendant Parker's motion for summary judgment on counts two, four and seven; the defendant Augustitus' motion for summary judgment on counts eight and nine; and the defendant Eagle Snacks' motion for summary judgment on counts twelve, thirteen and fifteen of the complaint. Court denied Parker's motion for summary judgment on counts three, five and six; Augustitus' motion for summary judgment on count ten; and Eagle Snacks' motion for summary judgment on count eleven of the complaint.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendants, employer distributor, manager of employer, and a supplier of employer, moved for summary judgment on plaintiff employee's counts related to wrongful discharge, breach of express contract and implied contract of good faith and fair dealing, intentional and negligent infliction of emotional distress, defamation, and tortious interference with business expectations.

OVERVIEW: Plaintiff was employed by defendant employer, who distributed food products supplied by defendant supplier. Plaintiff alleged that defendant employer had promised that he could have purchased the business subject to defendant supplier's approval. Plaintiff also alleged that defendants, employer and its employee, defamed him, and fired him in a demeaning manner, all of which caused him emotional distress and interfered with his opportunity to purchase defendant employer's business, and that defendant supplier participated. Defendants moved for summary judgment.

The court granted all of defendants' motions except with respect to the following counts, breach of defendant employer's implied promise to sell the business, defamation against defendants employer and its manager, negligent infliction of emotional distress, and breach of promise against defendant employer. There were genuine issues of material facts as to those surviving counts. There did not have to be a physical injury for negligent infliction of emotional distress. Hearsay and denials alone were not enough to counter defamation allegations. There was evidence of agreement to buy and sell the business.

OUTCOME: Summary judgment was granted as to all counts except breach of implied promise against defendant distributor to approve plaintiff as the purchaser of defendant distributor's business, defamation against defendants employer and its manager, and negligent infliction of emotional distress and breach of promise against defendant employer. Defendants failed to prove there was not genuine issue of a material fact as to those counts.

CORE TERMS: summary judgment, intentional infliction of emotional distress, matter of law, sworn, deposition testimony, memorandum, defamation, quotation, infliction of emotional distress, outrageous, fair dealing, terminated, genuine, evidentiary support, business relations, genuine issue of material fact, genuine issue, issues of material fact, tortious interference, terminating, certified copy, severe emotional distress, entitled to judgment, contractual, hearsay, plead, wrongful discharge, interfered, covenant, distress

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law, and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Summary judgment is appropriate only if a fair and reasonable person can conclude only one way.

Labor & Employment Law: Wrongful Termination: Breach of Contract
Contracts Law: Contract Interpretation: Good Faith & Fair Dealing
[HN2] Implied in every contract of employment is a covenant of good faith and fair dealing in the contractual relationship.

Labor & Employment Law: Wrongful Termination: Breach of Contract
Contracts Law: Contract Interpretation: Good Faith & Fair Dealing
[HN3] The reach of the covenant of good faith and fair dealing is limited in the employment context in finding that where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. The circumstances under which an at-will employee may successfully challenge his dismissal, beyond the situation where the reason for his discharge involves impropriety, derives from some important violation of public policy.

Labor & Employment Law: Wrongful Termination: Breach of Contract
Contracts Law: Contract Interpretation: Good Faith & Fair Dealing
[HN4] Absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing. In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing.

Contracts Law: Formation
Civil Procedure: Jury Trials: Province of Court & Jury
[HN5] The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence.

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN6] A motion for summary judgment is properly granted only where no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.

Contracts Law: Types of Contracts: Implied-in-Fact Contracts
[HN7] A contract implied in fact, like an express contract, depends on actual agreement. An implied contract may be enforceable under the doctrine of promissory estoppel in order to avoid injustice to a person who detrimentally relies on a clear and definite promise which a promisor can reasonably expect to induce reliance by the promisee. To prevail on such a claim, the person must prove by a fair preponderance of the evidence that the employer agrees, either by words or action or conduct, to undertake some form of actual contract commitment to the person.

Civil Procedure: Pleading & Practice: Pleadings: Heightened Pleading Requirements
Contracts Law: Types of Contracts: Implied-in-Fact Contracts
[HN8] Where the plaintiff alleges an express promise, which promise the plaintiff claims defendant breaches, then the plaintiff need not plead nor prove promissory estoppel, which applies to implied contracts.

Civil Procedure: Pleading & Practice: Pleadings: Interpretation
[HN9] A party may plead alternative and even inconsistent theories in the same action. Conn. Gen. Prac. Book, R. Super. Ct. § 10-25.

Contracts Law: Types of Contracts: Implied-in-Fact Contracts
[HN10] A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. It is not fatal to a finding of an implied contract that there are no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. Whether and on what terms a contractual commitment is undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN11] In order for the plaintiff to prevail in a case for liability under intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intends to inflict emotional distress; or that he knew or should know that emotional distress is a likely result of his conduct; (2) that the conduct is

extreme and outrageous; (3) that the defendant's conduct is the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff is severe. Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. Thus, it is the intent to cause injury that is the gravamen of the tort. Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy these elements is a question, in the first instance, for the court.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN12] A defendant is not required to suffer a waiting period in excess of two hours before terminating a plaintiff's employment where the plaintiff is an at-will employee and thus his employment can be terminated at any time.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN13] It is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort after termination of employment, and such action does not provide basis for intentional infliction of emotional distress claim.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN14] Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous." Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN15] It is significant that a plaintiff is neither treated nor seeks medical assistance for the distress he allegedly suffers from intentional infliction of emotional distress.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN16] Connecticut law on intentional infliction of emotional distress is determinative of a conclusion whether or not a defendant is entitled to summary

judgment as a matter of law on a Connecticut intentional infliction of emotional distress count.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN17] Connecticut courts recognize a cause of action for negligent infliction of emotional distress. In order to state such a claim, the plaintiff has the burden of pleading that the defendant should realize that its conduct involves an unreasonable risk of causing emotional distress and that distress, if it is caused, might result in illness or bodily harm. Connecticut recognizes the tort claim for negligent infliction of emotional distress without requiring an accompanying physical injury.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN18] As the party moving for summary judgment, the moving party is required to support its motion with supporting documentation, including affidavits. Conn. Gen. Prac. Book, R. Super. Ct. § 17-45. The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.

Torts: Defamation & Invasion of Privacy: Libel
Torts: Defamation & Invasion of Privacy: Slander
[HN19] Defamation is made up of the twin torts of libel and slander, the one being, in general, written while the other in general is oral. A prima facie case of defamation is made when the plaintiff demonstrates that (1) a defamatory statement is made by the defendant, (2) the defamatory statement identifies the plaintiff to a reasonable reader, (3) the defamatory statement is published to a third person, and (4) the plaintiff's reputation suffers injury.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN20] Hearsay cannot be relied upon to support a motion for summary judgment.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN21] Although the moving party for summary judgment has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. The existence of the genuine issue of material fact must be demonstrated by counter-affidavits and concrete evidence. If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant meets his burden of proof.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN22] Averments contained in an affidavit that are merely denials of the allegations in a complaint are an insufficient basis for the rendition of summary judgment.

Torts: Business & Employment Torts: Interference With a Contract
[HN23] Connecticut's courts recognize a cause of action for tortious interference with contract rights or other business relations. The agreement need not, however, be enforceable by the plaintiff as a contract. The law of course does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes. The essential elements of the tort of unlawful interference with a business relationship are (1) a business relationship between the plaintiff and another party, (2) the defendant's intentionally interfering with it while knowing of the relationship, and (3) as a result of the interference, the plaintiff's suffering an actual loss. However, it is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties.

Torts: Business & Employment Torts: Interference With a Contract
[HN24] Tortious interference with contractual relations requires that a third party affect the contractual relations of two other parties.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN25] In a summary judgment determination the court cannot look beyond the complaint for facts not alleged.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN26] A mere denial is insufficient to demonstrate that there are no genuine issues of material fact or that she is entitled to judgment as a matter of law.

Civil Procedure: Jury Trials: Province of Court & Jury
[HN27] The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN28] Liability is found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous." Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN29] In determining a summary judgment, the court cannot look beyond the complaint for facts not alleged.

Torts: Business & Employment Torts: Interference With a Contract
[HN30] Not every act that disturbs a contract or business expectancy is actionable. For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. An action for intentional interference with business relations requires the plaintiff to plead and prove at least some improper motive or improper means.

Torts: Business & Employment Torts: Interference With a Contract
[HN31] It is an essential element of the tort of unlawful interference with business relations that the plaintiff suffers actual loss.

JUDGES: Howard F. Zoarski, Judge Trial Referee.

OPINIONBY: Howard F. Zoarski

OPINION: MEMORANDUM OF DECISION

On March 18, 1996, the plaintiff, Nicholas Meola, filed a seven-count complaint. Process was properly served by the plaintiff on the defendants, Eagle Snacks Corporation [sic] (Eagle Snacks), n1 Frank Parker, III (Parker) and Yvonne Augustitus (Augustitus). On August 26, 1996, the plaintiff filed a fifteen-count revised complaint in response to the defendants' requests to revise. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n1 The defendant's legal name is Eagle Snacks, Inc.

[*2]

n2 The August 26, 1996 revised complaint is the operative complaint for purposes of the motions.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

In his complaint, the plaintiff alleges the following undisputed facts. From August 1993 until June 1996, the plaintiff worked for Parker as general manager of distribution for Parker's company, Electra Snacks Corporation in Bridgeport (Electra Snacks). Parker owned the company. Augustitus was employed by Electra Snacks during the time the plaintiff worked there. Electra Snacks distributed Eagle Snacks' products in Connecticut.

The plaintiff filed his complaint after his employment with Electra Snacks terminated on June 16, 1996. The contested allegations in the plaintiff's complaint are that: (1) the plaintiff was never given a reason for his termination; (2) Parker told a third party that the plaintiff sold Electra Snacks' products in an unauthorized manner and kept a share of the profits therefrom; (3) the month before the plaintiff's employment with Electra Snacks terminated, Parker offered to sell Electra Snacks to the plaintiff for one dollar, plus an additional $30,000 for all of[*3] the depreciated assets of the company; (4) Eagle Snacks was aware of Parker's offer to sell the business to the plaintiff, (5) Eagle Snacks' agent, Edward Mangine, agreed to facilitate the plaintiff taking over Electra Snacks; and (6) Augustitus spread rumors about the plaintiff's improper conduct while he was employed at Electra Snacks.

On February 29, 2000, Eagle Snacks filed its motion for summary judgment on count eleven of the complaint alleging breach of promise; count twelve of the complaint alleging intentional infliction of emotional distress; count thirteen of the complaint alleging negligent infliction of emotional distress; count fourteen of the complaint alleging defamation; and count fifteen of the complaint alleging tortious interference with business relations. n3

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 Eagle Snacks' motion for summary judgment is accompanied by a memorandum of law in support of the motion and the following exhibits: (1) a certified copy of a portion of the plaintiff's sworn deposition testimony; (2) Parker's sworn deposition testimony; (3) copy of the plaintiff's revised complaint; (4) copy of the asset purchase agreement among Electra Snacks, Parker, and Eagle Snacks; (5) copy of the master distributor agreement between Electra Snacks and Eagle Snacks; (6) sworn affidavit of David Poldoian, president of Eagle Snacks; and (7) sworn affidavit of Holly Polglase, Esq., counsel for Eagle Snacks.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*4]

On March 6, 2000, Parker and Augustitus filed their motion for summary judgment on count one of the complaint alleging wrongful discharge against Parker; count two of the complaint alleging breach of the covenant of good faith and fair dealing against Parker; count three of the complaint alleging breach of a promise against Parker; count four of the complaint alleging intentional infliction of emotional distress against Parker; count five of the complaint alleging negligent infliction of emotional distress against Parker; count six of the complaint alleging defamation against Parker; count seven of the complaint alleging tortious interference with business expectations against Parker; count eight of the complaint alleging intentional infliction of emotional distress against Augustitus; count nine of the complaint alleging negligent infliction of emotional distress against Augustitus; and count ten of the complaint alleging defamation against Augustitus. n4

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n4 Parker's and Augustitus' motion for summary judgment is accompanied by a memorandum of law in support of the motion and the following documents: (1) a certified copy of the plaintiff's sworn deposition testimony; (2) copy of May 17, 1995 letter from Parker to Edward Mangine regarding Electra Snacks' withdrawal from the snack distribution business; (3) Parker's sworn affidavit; (4) State of Connecticut notice of hearing and unemployment compensation claim; (5) copy of a portion of the plaintiff's responses to the defendants' request for disclosure and production; (6) copy of Sound Distributing Corporation's employee

handbook; (7) copy of the master distributor agreement between Electra Snacks and Eagle Snacks; (8) copy of an Eagle Snacks' internal e-mail from Jane Weatherford to Jody Valentine and Edward Mangine; and (9) Augustitus' sworn affidavit.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*5]

On May 8, 2000, the plaintiff filed his objection to Eagle Snacks' motion for summary judgment, arguing that his complaint raises genuine issues of material fact and that summary judgment, as a matter of law, must be denied as to counts eleven through thirteen and fifteen of the plaintiff's complaint. The plaintiff withdraws the fourteenth count sounding in defamation against Eagle Snacks. The plaintiff's motion in opposition to Eagle Snacks' motion for summary judgment is accompanied by a memorandum of law in support of the plaintiff's motion and the plaintiff refers to Exhibits A-G, relied on and attached to the plaintiff's May 12, 2000 motion in opposition to the individual defendants' motion for summary judgment.

On May 12, 2000, the plaintiff filed an objection to the individual defendants' motion for summary judgment, arguing that his complaint raises genuine issues of material fact and that summary judgment, as a matter of law, must be denied as to counts one through ten of the plaintiff's complaint. n5

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

n5 Attached to the plaintiff's motion is a memorandum of law in support of the motion and the following exhibits: (1) a certified copy of Parker's sworn deposition testimony; (2) a certified copy of the plaintiff's sworn deposition testimony; (3) a certified copy of Edward Mangine's sworn deposition testimony; (4) copy of the master distribution agreement between Electra Snacks and Eagle Snacks; (5) the plaintiff's sworn affidavit; (6) copy of a portion of Parker's responses to the plaintiff's interrogatories and production requests; and (7) copies of Superior Court opinions cited in the plaintiff's memorandum of law.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*6]

On May 15, 2000, the court heard oral argument on the defendants' motions for summary judgment. [HN1] Summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . ." (Citation omitted; internal quotation marks omitted.) *Appleton v. Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact . . ." (Citations omitted.) Id.

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . ." Id. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." *Miller v. United Technologies Corp.*, 233 Conn. 732, 751, 660 A.2d 810 (1995).[*7]

Count Two--Breach of the Covenant of Good Faith and Fair Dealing (Parker)

In count two of the complaint, the plaintiff alleges breach of the covenant of good faith and fair dealing in conjunction with the plaintiff's alleged wrongful discharge claim in count one. n6 Parker moves for summary judgment on count two of the complaint on the ground that the plaintiff's claim fails as a matter of law or completely lacks evidentiary support. Specifically, Parker argues that if the plaintiff's wrongful discharge claim fails to survive the motion for summary judgment, then his claim for the breach of the covenant of good faith and fair dealing also cannot survive the motion. In his memorandum in opposition, the plaintiff argues that Parker's actions associated with terminating the plaintiff's employment constitutes a breach of the covenant of good faith and fair dealing.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

n6 In his memorandum in opposition to Parker's motion for summary judgment, the plaintiff argues that count one of his complaint alleges breach of

contract. Upon closer examination of plaintiff's complaint, it is submitted that the plaintiff alleges a breach of an employment contract that goes to the plaintiff's wrongful discharge claim. The plaintiff withdrew the wrongful discharge claim during oral argument on the motions for summary judgment. Thus, the plaintiff's allegation that the defendant, Parker, promised to sell Electra Snacks to the plaintiff will be addressed in the discussion of count three of the complaint.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*8]

"In *Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 479 A.2d 781 (1984),* our Supreme Court addressed the issue of whether the doctrine of an implied covenant of good faith and fair dealing is applicable to the termination of an employment contract . . . The Magnan court accepted the principle that [HN2] implied in every contract of employment is a covenant of good faith and fair dealing in the contractual relationship . . ." *Doherty v. Sullivan, 29 Conn. App. 736, 742, 618 A.2d 56 (1992).* Connecticut's appellate courts [HN3] limited the reach of the covenant of good faith and fair dealing in the employment context in finding that "where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right . . . We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy." (Citation omitted; internal quotation marks omitted.), *Id. at 742-43,* quoting *Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984).*[*9]

In his memorandum in opposition, the plaintiff avers that Parker acted in bad faith in his treatment of the plaintiff in the course of terminating the plaintiff's employment. The plaintiff, however, fails to plead or offer proof that he was terminated in contravention of a public policy. Therefore, " [HN4] absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing." *Carbone v. Atlantic Richfield Co., 204 Conn. 460, 470-71, 528 A.2d 1137 (1987);* see also *Seery v. Yale-New Haven Hospital, 17 Conn. App. 532, 543, 554 A.2d 757 (1989)* (where court found that, in the absence of a public policy violation, there is no breach of

the implied covenant of good faith and fair dealing). Accordingly, summary judgment is granted in favor of Parker on count two of the plaintiff's complaint. n7

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n7 In his memorandum in opposition, the plaintiff cites *Gaudio v. Griffin Health Services Corporation, 249 Conn. 523, 733 A.2d 197 (1999)* for the proposition that whether Parker acted in bad faith when terminating the plaintiff's employment with Electra Snacks is a question of fact for the jury. Gaudio involved a finding by the jury that the plaintiff had an implied employment contract with the defendant and that this implied contract prohibited termination without just cause. *Id., 529.* Whether the plaintiff in the present case had an implied employment contract with Parker cannot be determined since the plaintiff withdrew count one of his complaint in which he alleged wrongful discharge. Accordingly, the plaintiff's argument that Gaudio applies fails to support the allegations made in count two of the complaint.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*10]

Count Three--Breach of Promise (Parker)

In count three of the complaint, the plaintiff alleges that Parker breached his promise to sell Electra Snacks to the plaintiff, causing the plaintiff to suffer severe economic losses. Parker moves for summary judgment on count three on the ground that the plaintiff's claim must fail as a matter of law or completely lacks evidentiary support. Specifically, Parker denies ever promising to sell Electra Snacks to the plaintiff. Parker further avers that, even if the actions alleged by the plaintiff could be construed as an offer that was accepted by the plaintiff, no consideration was given for the contract and there was no meeting of the minds on material terms of the alleged contract. In the plaintiff's deposition testimony, the plaintiff acknowledges that he never paid anything toward the purchase of Electra Snacks. (Memorandum of law in support of defendants' motion, Exh. A, pp. 159-60.) In his memorandum in opposition, the plaintiff avers that, in rendering summary judgment on count three of his complaint, the court would have to improperly make an adverse credibility determination against the plaintiff

and decide questions of fact[*11] properly left for the fact finder.

" [HN5] The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence." *Avon Meadow Condo. Assn., Inc., v. Bk., Boston Ct., 50 Conn. App. 688, 695, 719 A.2d 66 (1998),* quoting *Fortier v. Newington Group Inc., 30 Conn. App. 505, 509, 620 A.2d 1321,* cert. denied, *225 Conn. 922, 625 A.2d 823 (1993);* see also *Union Trust Co. v. Jackson, 42 Conn. App. 413, 419, 679 A.2d 421 (1996)* ("question of whether the parties had an oral contract is material, if, and only if, a trier of fact were to find that there was an oral agreement"). [HN6] A motion for summary judgment is properly granted only where no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. *Dept. of Social Services v. Saunders, 247 Conn. 686, 724 A.2d 1093.*

The parties' motions and supporting documents raise the following questions of fact, which militate against a finding, as a matter of law, that the plaintiff and Parker failed to enter into an agreement. The plaintiff alleges that he had an agreement with Parker for the sale of Electra[*12] Snacks to the plaintiff. Parker denies ever promising to sell Electra Snacks to the plaintiff and points to portions of the plaintiff's sworn deposition testimony where he claims that the plaintiff admits that he did not have such an agreement. (See, e.g., memorandum of law in support of defendants' motion, Exh. A, p. 146, 11. 5-6 where the plaintiff states "I thought I was well on my way to owning the business, but I don't think I owned the business; Exh. A., p. 154, 11. 20-21 where the plaintiff states "that I would be the future owner of Electra Snacks"; Exh. A, pp. 195-96 where the plaintiff discusses actions of Parker which made the plaintiff believe the two had reached an agreement regarding the purchase of Electra Snacks.) These excerpts from the plaintiff's sworn deposition testimony, however, support the plaintiff's contention that Parker promised to sell him Electra Snacks and that the plaintiff knew other steps were necessary to finalize the sale.

Parker also points to the master distributor agreement, attached as Exhibit G to the defendants' memorandum in support of their motion for summary judgment, wherein Eagle Snacks had approval rights over any transfer in ownership[*13] of Electra Snacks. Parker contends that the plaintiff knew that any sale to him would require Eagle Snacks approval and that the plaintiff also knew he never received such approval from Eagle Snacks. (Memorandum of law in support of defendants' motion, Exh. A, pp. 160; 146-50; 182-83; 189.) These portions of the plaintiff's sworn deposition testimony merely show that the plaintiff awaited Eagle Snacks' approval of the

sale of Electra Snacks to him. The excerpts do not, as Parker argues, show that the plaintiff did not have an agreement with Parker regarding the sale of the business.

Finally, Parker argues that, because the plaintiff did not rely on the alleged promise to sell him Electra Snacks to his detriment, he cannot successfully bring a claim for promissory estoppel. " [HN7] A contract implied in fact, like an express contract, depends on actual agreement . . . An implied contract may be enforceable under the doctrine of promissory estoppel in order to avoid injustice to [a person] who has detrimentally relied on 'a clear and definite promise which a promisor could reasonably have expected to induce reliance' by the promisee. *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987).*[*14] To prevail on such a claim, the [person] must prove by a fair preponderance of the evidence that the employer agreed, 'either by words or action or conduct, to undertake [some] form of actual contract commitment' to the [person] . . ." (Citation omitted; internal quotation marks omitted.) *Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580, 593, 711 A.2d 747,* cert. denied, *245 Conn. 911, 718 A.2d 17 (1998).*

In count three of his complaint, [HN8] the plaintiff alleges an express promise by Parker to sell him Electra Snacks, which promise the plaintiff claims Parker breached. Thus, the plaintiff need not plead nor prove promissory estoppel, which applies to implied contracts. *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 213.* Furthermore, [HN9] "a party may plead alternative and even inconsistent theories in the same action." *Marrin v. Spearow, 35 Conn. App. 398, 401, 646 A.2d 254 (1994);* Practice Book 10-25. Thus, "[ [HN10] a] true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words . . . It is not[*15] fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous . . ." (Citation omitted; internal quotation marks omitted.) *Sandella v. Dick Corp., 53 Conn. App. 213, 219, 729 A.2d 813,* cert. denied, *249 Conn. 926, 733 A.2d 849 (1999).*

Accordingly, because the parties' pleadings and proof raise genuine issues of material fact as to whether the plaintiff and Parker had an agreement or what the terms of that agreement were, Parker's motion for summary


judgment is denied on count three of the plaintiff's complaint. n8

----------------Footnotes----------------

n8 The plaintiff argues that count one of his complaint alleges breach of contract, as well as wrongful discharge. The plaintiff further argues that count three of his complaint alleges promissory estoppel, thereby defeating Parker's argument that no contract between the two men existed because the plaintiff offered no consideration for Parker's promise to sell Electra Snacks to the plaintiff.

In paragraph fifteen of count one of his complaint, the plaintiff alleges facts pertaining to an alleged agreement with Parker on the sale of Electra Snacks to the plaintiff. Nowhere in count one, however, does the plaintiff allege that Parker breached the agreement. It is only in count three of the complaint that the plaintiff alleges that Parker breached his promise to sell Electra Snacks to the plaintiff.

----------------End Footnotes----------------

[*16]

Count Four--Intentional Infliction of Emotional Distress (Parker)

Count four of the complaint sounds in intentional infliction of emotional distress. Parker moves for summary judgment on the ground that count four must fail as a matter of law or completely lacks evidentiary support. Specifically, Parker argues that he terminated the plaintiff's employment because he wanted to close his business. (Memorandum of law in support of defendants' motion, Exh. D, State of Connecticut Notice of Hearing and Unemployment Compensation Claim, employer's reason for separation.) Parker further contends that he did not intend to cause emotional distress by discharging the plaintiff, nor did he act in an extreme and outrageous manner in terminating the plaintiff's employment with Electra Snacks. Finally, Parker argues that the plaintiff fails to allege injuries to support his claim for intentional infliction of emotional distress.

" [HN11] In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be

shown: (1) that the actor intended to inflict emotional distress; or that he knew or should[*17] have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . ." (Citations omitted; internal quotation marks omitted.) *Appleton v. Board of Education, supra,* 254 Conn. 210. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind . . . Thus, it is the intent to cause injury that is the gravamen of the tort . . . Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court." (Citations omitted; internal quotation marks omitted.). *Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 711-12, 746 A.2d 184,* cert. denied, *252 Conn. 954, 749 A.2d 1202,* A.2d (2000); see also *Bell v. Board of Education, 55 Conn. App. 400, 409-10, 739 A.2d 321 (1999).*[*18]

The plaintiff alleges two actions that give rise to the tort. The first action involves Parker undermining the plaintiff's managerial authority through a constant campaign of rumors, half-truths, and innuendos throughout the tenure of the plaintiff's employment with Electra Snacks. Parker points to the certified copy of the plaintiff's sworn deposition testimony, wherein the plaintiff states that, while working at Electra Snacks, there were never any rumors or lies generated. (Memorandum of law in support of defendants' motion, Exh. A, p. 241, 1. 20.) The plaintiff thereby contradicts his allegation that Parker undermined his managerial authority throughout the tenure of his employment with Electra Snacks, which could only have occurred when the plaintiff was employed by Parker.

The plaintiff, however, further alleges that Parker's actions associated with the termination of the plaintiff's employment also gives rise to his claim for intentional infliction of emotional distress. In his memorandum in opposition to Parker's motion, the plaintiff claims that when Parker informed him that his employment with Electra Snacks was terminated, the plaintiff was given ten minutes to[*19] get his things and leave the office; was escorted from the premises by a security guard; when he asked for his check, Parker wrote him a check and threw it at him; the defendant refused to pay him a bonus or for vacation; and he had to leave behind a number of his personal belongings. (Memorandum of law in opposition to defendants' motion, Exh. B, certified copy of plaintiff's sworn deposition testimony, pp. 80-92, 220.)

Two recent Connecticut Supreme Court cases are helpful in deciding whether the plaintiff's pleadings and proof support his claim for intentional infliction of emotional distress against Parker. In *Parsons v. United Technologies Corp., 243 Conn. 66, 89, 700 A.2d 655 (1997)*, the Connecticut Supreme Court upheld the trial court's finding that " [HN12] the defendant was not required to suffer a waiting period in excess of two hours before terminating the plaintiff's employment [because] the plaintiff was an at-will employee [and thus] his employment could be terminated at any time." (Internal quotation marks omitted.) Id. The court further found that " [HN13] it is not patently unreasonable for an employer to remove a discharged employee from its premises[*20] under a security escort." Id., citing *Toth v. Square D. Co., 712 F. Supp. 1231, 1238 (D.S.C. 1989)* (not unreasonable for employer to escort former employee off premises after termination of employment, and such action does not provide basis for intentional infliction of emotional distress claim.) (Emphasis added.)

More recently, the Connecticut Supreme Court reversed the Appellate Court's decision in *Appleton v. Board of Education, 53 Conn. App. 252, 730 A.2d 88 (1999)* to overturn the trial court's grant of summary judgment for the defendants on the plaintiff's intentional infliction of emotional distress claim. *Appleton v. Board of Education, supra, 254 Conn. at 212.* The Connecticut Supreme Court found that Appleton's allegations that one of the defendants "'made condescending comments to [her] in front of [her] fellow colleagues questioning [her] vision and ability to read'; telephoned the plaintiff's daughter, representing that the plaintiff 'had been acting differently' and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her[*21] car" did not rise to the level of extreme and outrageous conduct needed to successfully state a claim for intentional infliction of emotional distress. *Id. at 211.*

" [HN14] Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' 1 *Restatement (Second), Torts 46*, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress . . ." Id.

In the present case, the plaintiff fails to allege facts or provide evidence that Parker's actions in terminating the plaintiff's employment were so atrocious as to exceed all bounds usually tolerated by decent society.

Finally, Parker urges the court to grant his motion because the[*22] plaintiff fails to allege or offer evidence that he sought medical treatment for his alleged severe emotional distress. In *Lilly v. Hartford, 1998 Conn. Super. LEXIS 3337*, Superior Court, judicial district of Hartford at Hartford, Docket No. 533577 (November 19, 1998) (Fineberg, J.), the court granted the defendant's motion for summary judgment on the plaintiff's intentional infliction of emotional distress claim partly because the plaintiff failed to seek medical attention for his condition. Id., citing *Reed v. Signode Corp., 652 F. Supp. 129 (D.Conn. 1986)* (where court granted motion for summary judgment on the plaintiff's intentional infliction of emotional distress claim, in part on the issue of severity, noting that [HN15] it was significant that the "plaintiff was neither treated nor did he seek medical assistance for the distress he allegedly suffered").

The plaintiff in the present case fails to allege or provide proof that he sought medical assistance for the emotional distress he allegedly suffered. In his opposition to Parker's motion for summary judgment, the plaintiff cites two out-of-state cases in support of his contention that evidence or manifestation of physical injury is[*23] not a required element for a claim of intentional infliction of emotional distress. [HN16] Connecticut law on intentional infliction of emotional distress is determinative of the conclusion that Parker is entitled to summary judgment as a matter of law on count four of the complaint.

Thus, in response to Parker's arguments in his motion for summary judgment, the plaintiff fails to meet his burden of raising a genuine issue of material fact that Parker's behavior in terminating the plaintiff's employment was so atrocious it exceeded all bounds usually tolerated by decent society. Furthermore, the plaintiff fails to allege or offer proof that he sought medical treatment for alleged severe distress. Accordingly, Parker's motion for summary judgment on count four of the complaint be granted.

Count Five--Negligent Infliction of Emotional Distress (Parker)

Count five of the complaint sounds in negligent infliction of emotional distress. The plaintiff alleges the same facts as in count four. Parker moves for summary judgment on the ground that the plaintiff's claim for negligent infliction of emotional distress fails as a matter or law or completely lacks evidentiary support.

Parker[*24] only raises the arguments he raised for the intentional infliction of emotional distress claim in count four.

[HN17]

The Connecticut appellate courts "first recognized a cause of action for negligent infliction of emotional distress in *Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978)* . . . In order to state such a claim, the plaintiff has the burden of pleading that 'the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.' Id.; see also *Morris v. Hartford Courant Co., 200 Conn. [676,] 683-84 [, 513 A.2d 66 (1986)]*; 2 restatement (Second), Torts 313 (1965). *Parsons v. United Technologies Corp., supra, 243 Conn. 88.* "Connecticut has long recognized the tort claim for negligent infliction of emotional distress without requiring an accompanying physical injury . . ." *Moore v. Continental Casualty Co., 252 Conn. 405, 415, 746 A.2d 1252 (2000)*; see also *Clohessy v. Bachelor, 237 Conn. 31, 46, 675 A.2d 852 (1996)*; *Montinieri v. Southern New England Telephone Co., supra, 175 Conn. 345;*[*25] *Urban v. Hartford Gas Co., 139 Conn. 301, 306, 93 A.2d 292 (1952).*

The plaintiff avers that Parker engaged in behavior other than terminating his employment and having him escorted off the premises by a security guard. Similar behavior failed to survive a motion for summary judgment in Parsons. *Parsons v. United Technologies Corp., supra, 243 Conn. 88.* Namely, the plaintiff points to his certified deposition testimony to bolster his allegations that when Parker informed him that his employment with Electra Snacks was terminated, the plaintiff was given ten minutes to get his things and leave the office; was escorted from the premises by a security guard; when he asked for his check, Parker wrote him a check and threw it at him; the defendant refused to pay him a bonus or for vacation; and he had to leave behind a number of his personal belongings. (Memorandum of law in opposition to defendants' motion, Exh. B, pp. 80-92, 220.)

Parker fails to provide proof to refute the plaintiff's allegations that Parker threw his check at him, failed to pay him a bonus or for vacation and refused to let the plaintiff collect his personal belongings. [*26] Rather, Parker argues that these actions fail to support the plaintiff's claim for intentional infliction of emotional distress. " [HN18] As the party moving for summary judgment, the [moving party] is required to support its motion with supporting documentation, including affidavits." *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756, 796, 653 A.2d 122 (1995)*; Practice Book 17-45. "The movant must show that it is

quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact . . ." (Internal quotation marks omitted.) *Miller v. United Technologies Corp., supra, 233 Conn. 751-52.*

In his complaint, the plaintiff sets forth a cause of action for negligent infliction of emotional distress, stating that Parker's actions were such that he knew or should have known that he created an unreasonable risk of causing severe emotional distress to the plaintiff which may have resulted in his illness or bodily harm. Parker fails to support his motion for summary judgment with documents that refute the plaintiff's claims. The plaintiff raises genuine issues of material fact which militate[*27] against granting Parker's motion for summary judgment as a matter of law. Accordingly, Parker's motion as to count five of the complaint is denied.

Count Six--Defamation (Parker)

In count six of the complaint, the plaintiff alleges that the defendant, Parker, published to other employees his "erroneous beliefs that the plaintiff was engaged in improper conduct and/or that he was involved in duplicitous and/or unethical and/or unauthorized activity which brought into substantial question his professional integrity, was calculated to injure the plaintiff in his profession and/or business and as such was defamatory in nature." (Complaint, count six, 15.) The plaintiff further alleges that Parker's actions resulted in the plaintiff being held up to ridicule, as well as great personal and professional humiliation and the plaintiff experienced substantial economic losses and financial hardship. (Complaint, count six, 16.) Parker moves for summary judgment on count six of the complaint on the ground that the claim fails as a matter of law or lacks evidentiary support.

" [HN19] 'Defamation is made up of the twin torts of libel and slander--the one being, in general, written while the[*28] other in general is oral . . .' W. Prosser and W. Keeton, Torts (5th ed. 1984) 111, p. 771; see also *Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 611-12, 116 A.2d 440 (1955).* 'A prima facie case of defamation is made when the plaintiff demonstrates that: 1. [a] defamatory statement was made by the defendant; 2. the defamatory statement identifies the plaintiff to a reasonable reader; 3. the defamatory statement is published to a third person; and; 4. the plaintiff's reputation suffers injury.'" [Brackets in original; internal quotation marks omitted.) *Lizotte v. Welker, 45 Conn. Supp. 217, 220, 709 A.2d 50, aff'd, 244 Conn. 156, 709 A.2d 1 (1998).*

In his opposition to Parker's motion, the plaintiff cites to a comment in the Restatement (Second), Torts, which

defines defamation. The plaintiff also refers to two court cases, without analyzing how these cases support his claim that Parker defamed him. n9 Finally, the plaintiff cites Exhibit E, his sworn affidavit, attached to his opposition to Parker's motion. In Exhibit E, the plaintiff states that he was "deeply saddened" when an Electra Snacks employee told him that[*29] he was terminated because he "made deals" and was "stealing" from Electra. The plaintiff further states in Exhibit E that he was informed by a number of individuals that "Parker and Augustitus had expressed to them" that the plaintiff had been terminated because he "made unauthorized deals" and "was curiously keeping large amounts of cash" in his office. The plaintiff offers no other proof to support his claim that Parker defamed him.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n9 *Tierney v. American Urban Corp., 170 Conn. 243, 365 A.2d 1153 (1976),* involves the question of whether the plaintiff could testify about a conversation with the defendant's employee without establishing a foundation that the employee was the defendant's agent. *Id., 251.* In the present case, Parker does not challenge whether another employee of Electra Snacks told the plaintiff that Parker made the statements the plaintiff claims Parker made. Rather, Parker claims never to have made the statements. Thus, the plaintiff's citation to Tierney fails to provide evidence in support of the plaintiff's claim that Parker made the alleged defamatory statements.

The plaintiff also cites *Gyro Brass Mfg. Corp. v. United Automobile Workers, 147 Conn. 76, 80, 157 A.2d 241 (1959)* with the following parenthetical "a statement offered merely to prove the statement was made, is not hearsay." Parker does not raise the issue of hearsay in his motion for summary judgment. Thus, the court will not address whether the plaintiff's claim for defamation should fail because it is based on hearsay. See *Rosenberg v. Meriden Housing Authority, 1999 Conn. Super. LEXIS 2971,* Superior Court, judicial district of New Haven at New Haven, Docket No. 377376 (October 29, 1999) (Licari, J.) (granting the defendant's motion for summary judgment after defendant challenged the plaintiff's claim of defamation, claiming that the alleged allegation was based on hearsay and the court found, as a matter of law, that the alleged defamatory statement was hearsay and thus, was not admissible to support the plaintiff's claim). See also *Fogarty v. Rashaw, 193 Conn. 442, 444, 476 A.2d 582 (1984)* (

[HN20] hearsay cannot be relied upon to support a motion for summary judgment); *Annecharico v. Patterson, 44 Conn. App. 271, 278, 688 A.2d 1341 (1997).*

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*30]

" [HN21] Although the moving party [for summary judgment] has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." *Beers v. Bayliner Marine Corp., 236 Conn. 769, 771 n.4, 675 A.2d 829 (1996); Delahunty v. Massachusetts Mutual Life Insurance Co., 236 Conn. 582, 588 n.10, 674 A.2d 1290 (1996).* "The existence of the genuine issue of material fact must be demonstrated by counter-affidavits and concrete evidence." 2830 *Whitney Avenue Corp. v. Heritage Canal Development Associates, Inc., 33 Conn. App. 563, 567, 636 A.2d 1377 (1994).* "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) *Id., 569.*

In the present case, Parker, as the moving party for summary judgment, fails to meet his burden of proof in moving for summary judgment on count six of the complaint. Parker does nothing more than provide an[*31] affidavit in which he denies the plaintiff's allegations that Parker published to other employees his "erroneous beliefs that the plaintiff was engaged in improper conduct and/or that he was involved in duplicitous and/or unethical and/or unauthorized activity which brought into substantial question his professional integrity, was calculated to injure the plaintiff in his profession and/or business and as such was defamatory in nature." (Complaint, count six, 15.) [HN22] Averments contained in an affidavit that are merely denials of the allegations in a complaint "are an insufficient basis for the rendition of summary judgment." *Gambardella v. Kaoud, 38 Conn. App. 355, 360, 660 A.2d 877 (1995).*

Thus, because Parker fails to offer any proof that no genuine issues of material fact exist or that he is entitled to judgment as a matter of law, Parker's motion for summary judgment is denied on count six of the complaint.

Count Seven--Tortious Interference with Business Relations (Parker)

In count seven of the complaint, the plaintiff alleges that Parker, after promising to sell Electra Snacks to the plaintiff, conspired to prevent the plaintiff from purchasing[*32] the business. The plaintiff contends that Parker interfered with his business expectations by not allowing the plaintiff in the building where Electra Snacks was previously located and barred the plaintiff's access to the necessary assets to operate the business.

Parker moves for summary judgment on count seven of the complaint on the ground that the plaintiff's claims must fail as a matter of law or completely lacks evidentiary support. Parker denies conspiring with anyone to prevent the plaintiff from purchasing the business. Parker further avers that the plaintiff's argument must fail, as a matter of law, because, as the owner of Electra Snacks, Parker cannot be found to have interfered with his own business arrangement. Finally, Parker argues that the plaintiff's claim for tortious interference with business relations must fail because the plaintiff fails to allege actions by Parker that satisfy the legal requirements for the tort.

[HN23]
Connecticut's appellate courts have "long recognized a cause of action for tortious interference with contract rights or other business relations . . ." (Citation omitted.) *Daley v. Aetna Life and Casualty Co.,* 249 Conn. 766, 805, 734 A.2d 112 (1999).[*33] " 'The consequence need not, however, be enforceable by the plaintiff as a contract . . . the law of course does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes.' [W.] Prosser, Torts (4th Ed.) 129, p. 932." *Wellington Systems, Inc. v. Redding Group, Inc.,* 49 Conn. App. 152, 167-68, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998).

"The essential elements of the tort of unlawful interference with a business relationship are (1) a business relationship between the plaintiff and another party, (2) the defendant's intentionally interfering with it while knowing of the relationship and (3) as a result of the interference, the plaintiff's suffering an actual loss." *Dinapoli v. Cooke,* 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), cert. denied, *Cooke v. Dinapoli,* 520 U.S. 1213, 117 S. Ct. 1699, 137 L. Ed. 2d 825 (1997). "However, it is well-settled that the tort of interference with contractual relations [*34]only lies when a third party adversely affects the contractual relations of two other parties . . ." (Emphasis in original.) (Citations omitted.) *Wellington*

*Systems, Inc. v. Redding Group, Inc., supra,* 49 Conn. App. 168.

In his complaint, the plaintiff alleges that he had an agreement with Parker to buy his business and that Parker, himself, interfered with the agreement. The plaintiff fails to plead or prove that a third party interfered with the agreement. [HN24] As a matter of law, tortious interference with contractual relations requires that a third party affect the contractual relations of two other parties. The plaintiff fails to counter Parker's argument that he is entitled to judgment as a matter of law on this count of the plaintiff's complaint by presenting any evidence which raises a genuine issue of material fact. Accordingly, Parker's motion for summary judgment is granted on count seven of the complaint.

Count Eight--Intentional Infliction of Emotional Distress (Augustitus)

In count eight of the complaint, the plaintiff alleges that Augustitus participated in the wrongful discharge of the plaintiff and that she actively participated in[*35] undermining the managerial authority of the plaintiff through a constant campaign of rumors, half-truths and innuendos throughout the tenure of plaintiff's employment. Augustitus moves for summary judgment on count eight on the ground that the plaintiff's claims fail as a matter of law or completely lacks evidentiary support.

The plaintiff withdrew his claim of wrongful discharge at oral argument on May 15, 2000, so that claim is no longer before the court. Furthermore, the plaintiff fails to allege facts about Augustitus' behavior that could be characterized as extreme and outrageous. As discussed in count four above, the plaintiff simply fails to allege that Augustitus engaged in behavior so atrocious it exceeds all bounds usually tolerated by decent society. Furthermore, the plaintiff fails to provide any proof that he sought medical treatment for his alleged severe distress. Thus, the plaintiff is unable to raise any genuine issues of material fact, thereby precluding Augustitus from prevailing on her motion. Accordingly, Augustitus' motion for summary judgment is granted on count eight of the complaint.

Count Nine--Negligent Infliction of Emotional Distress (Augustitus)[*36]

In count nine of the complaint, the plaintiff alleges that Augustitus' actions, as alleged in paragraphs one through fourteen of count one, created an unreasonable risk of causing severe emotional distress to the plaintiff. The plaintiff further alleges that Augustitus knew, or should have known, that her actions would cause said severe

emotional distress. Augustitus moves for summary judgment on count eight on the ground that the plaintiff's claims fail as a matter of law or completely lacks evidentiary support.

In count one, paragraphs one through fourteen, the plaintiff fails to allege any actions on the part of Augustitus. The only allegation made in the first fourteen paragraphs of the plaintiff's complaint about Augustitus is that she was employed by Eagle Snacks and where she resides. (Complaint, count one, 4.) In opposition to Augustitus' motion, the plaintiff cites a number of cases where the courts found negligent infliction of emotional distress, but fails to raise any issue of genuine fact regarding Augustitus' behavior which would give rise to negligent infliction of emotional distress.

There simply are no allegations or arguments about Augustitus' behavior [*37]before the court upon which to base a determination that a factual issue exists. [HN25] The court "cannot look beyond the complaint for facts not alleged." *Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 537, 546 A.2d 216 (1988); Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86, 449 A.2d 986 (1982).* Accordingly, Augustitus' motion for summary judgment is granted on count nine of the complaint.

Count Ten--Defamation (Augustitus)

In count ten of the complaint, the plaintiff alleges that Augustitus published to other employees her "erroneous beliefs that the plaintiff was engaged in improper conduct and/or that he was involved in duplicitous activity which brought into substantial question his professional integrity, was calculated to injure the plaintiff in his profession and/or business and as such was defamatory in nature." (Complaint, count ten, 15.) The plaintiff further alleges that Augustitus' actions resulted in the plaintiff being held up to ridicule, as well as great personal and professional humiliation and the plaintiff experienced substantial economic losses and financial hardship. (Complaint, count ten, 16.) Augustitus[*38] moves for summary judgment on count eight on the ground that the plaintiff's claims fail as a matter of law or completely lacks evidentiary support.

The plaintiff simultaneously argues his claims for defamation against both Parker and Augustitus, citing to his own affidavit as proof that Augustitus defamed him. Augustitus merely offers her own affidavit, attached as Exhibit J to her memorandum of law in support of her motion for summary judgment, in which she denies the allegations made in the plaintiff's complaint.

In accordance with the discussion on count six above, the plaintiff sets forth a cause of action for defamation which is merely denied by Augustitus. Augustitus' [HN26] mere denial is insufficient to demonstrate that there are no genuine issues of material fact or that she is entitled to judgment as a matter of law. *Gambardella v. Kaoud, supra, 38 Conn. App. 360.* Therefore, Augustitus' motion for summary judgment is denied on count ten of the complaint.

Count Eleven--Breach of Promise (Eagle Snacks)

In count eleven of the complaint, the plaintiff alleges that Eagle Snacks, through its agent, Edward Mangine, promised to sell Electra Snacks[*39] to the plaintiff and to facilitate said sale through Eagle Snacks' agents, servants and/or employees. (Complaint, count eleven, 16.) Plaintiff further alleges that Eagle Snacks breached this promise.

Eagle Snacks moves for summary judgment on count eleven of the complaint on the ground that there is no genuine issue as to any material fact alleged in the complaint and that the court should enter a judgment in favor of Eagle Snacks. Eagle Snacks avers that, because it did not own Electra Snacks, it could not promise the plaintiff to sell it to him. Eagle Snacks points to the plaintiff's sworn deposition testimony in support of its argument that the plaintiff knew Eagle Snacks did not own Electra Snacks. (Memorandum of law in support of defendant's motion, Exh. C, p. 110, 11.1-15.) Eagle Snacks further avers that the alleged promise "to facilitate" the sale of Electra Snacks to the plaintiff is too vague to constitute a mutual understanding between the parties.

" [HN27] The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence." *Avon Meadow Condo. Assn., Inc., v. Bk., Boston Ct., supra, 50 Conn. App. at 695,* quoting *Fortier v. Newington Group Inc., 30 Conn. App. 505, 509, 620 A.2d 1321,*[*40] cert. denied, 225 Conn. 922, 625 A.2d 823 (1993). As in the discussion above regarding count three of the complaint, the plaintiff's sworn deposition testimony relied on by Eagle Snacks in support of its motion raises as many questions as it answers. For example, Eagle Snacks also points to the master distributor agreement, attached as Exhibit B to David Poldoian's sworn affidavit, that provides Eagle Snacks the "right to approve all changes in ownership, sale, transfer or other disposition (David Poldoian's aff., Exh. B, p. 4, 3(d).) In his sworn deposition testimony, the plaintiff, while admitting he knows that Eagle Snacks did not own Electra Snacks, also states that Parker, representing Electra Snacks, agreed to sell the plaintiff the business and that Eagle Snacks agreed to the sale.

(Memorandum of law in support of defendant's motion, Exh. B, p. 165, 11.9-15.)

Accordingly, because the parties' pleadings and proof merely raise, rather than dispel, questions of fact, Eagle Snacks' motion for summary judgment on count eleven of the plaintiff's complaint is denied.

Count Twelve--Intentional Infliction of Emotional Distress (Eagle Snacks)

In count twelve[*41] of the complaint, the plaintiff alleges that Eagle Snacks, "through its agent, servant and/or employee, Edward Mangine, actively participated in the undermining of the managerial authority of the plaintiff through a constant campaign of rumors, half-truths and innuendos throughout the tenure of plaintiff's employment." (Complaint, count twelve, 17.) The plaintiff goes on to allege that these actions on the part of Eagle Snacks, through Edward Mangine, were extreme and outrageous and caused the plaintiff severe emotional distress. The plaintiff further alleges that Eagle Snacks, through Edward Mangine, participated in his wrongful termination, a claim the plaintiff withdrew at oral argument on May 15, 2000.

Eagle Snacks moves for summary judgment on count twelve of the complaint on the ground that there is no genuine issue as to any material fact in the complaint and the court should enter a judgment in favor of Eagle Snacks. Eagle Snacks argues that the record is devoid of any outrageous conduct. The plaintiff fails to either allege or meet his burden of proof that Eagle Snacks' behavior was extreme and outrageous. Eagle Snacks contends that, when asked to state specifically what[*42] conduct on the part of its agent, Edward Mangine, caused the plaintiff's emotional distress, the plaintiff could not state any conduct on the part of Mangine or Eagle Snacks. (Memorandum of law in support of defendant's motion, Exh. C, pp. 12-13.) The plaintiff argues that reasonable minds can differ about whether Eagle Snacks' conduct was extreme and outrageous, thus raising a question for a jury. The plaintiff fails to address the contradiction between the allegations in his complaint and his sworn deposition testimony where he could not state any conduct on the part of Eagle Snacks or its agent, Edward Mangine, that was extreme and outrageous.

" [HN28] Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment

against the actor, and lead him to exclaim, 'Outrageous!' 1 Restatement (Second), Torts 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely[*43] insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress . . ." Appleton v. Board of Education, supra, 254 Conn. 211.

Because the plaintiff fails to counter Eagle Snacks' proof that no genuine issue of fact exists regarding any conduct on its part which can be considered to be extreme or outrageous in support of his allegations in the complaint, that the court grant Eagle Snacks' motion for summary judgment on count twelve of the complaint is granted.

Count Thirteen--Negligent Infliction of Emotional Distress (Eagle Snacks)

In count thirteen of the complaint, the plaintiff incorporates paragraphs one through fifteen of count one. The plaintiff alleges that Eagle Snacks' actions, through Edward Mangine, created an unreasonable risk of causing severe emotional distress to the plaintiff. (Complaint, count thirteen, 16). Finally, the plaintiff alleges that Eagle Snacks' actions, through Edward Mangine, in facilitating the discharge of the plaintiff, severely injured and embarrassed the plaintiff. Eagle Snacks moves for summary judgment on count[*44] thirteen on the ground that there is no genuine issue as to any material fact in the plaintiff's complaint and the court should enter judgment in favor of Eagle Snacks on count thirteen.

In count one, paragraphs one through fifteen, the plaintiff alleges that he was wrongfully terminated, but fails to allege that Eagle Snacks was in any way involved with the termination. The only allegation against Eagle Snacks in count one, other than its place of incorporation, is that Eagle Snacks was aware of the agreement between the defendant Parker and the plaintiff and that Eagle Snacks, through Edward Mangine, agreed to facilitate the sale. (Complaint, count one, 5, 15.) As he does in his opposition to Augustitus' motion, the plaintiff cites a number of cases where the courts found negligent infliction of emotional distress, but fails to raise any issue of genuine fact regarding Eagle Snacks' behavior which would give rise to negligent infliction of emotional distress.
  [HN29]
The court "cannot look beyond the complaint for facts not alleged." Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 537, 546 A.2d 216 (1988); Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86, 449 A.2d 986 (1982). [*45]There are simply no allegations or arguments about Eagle Snacks' behavior

before the court upon which to base a determination that a factual issue exists. Accordingly, Eagle Snacks' motion for summary judgment on count thirteen of the complaint is granted.

Count Fifteen--Tortious Interference with Business Relations (Eagle Snacks)

In count fifteen of the complaint, the plaintiff alleges that Eagle Snacks tortiously interfered with the plaintiff's contract with the defendant, Parker, to purchase Electra Snacks. The plaintiff alleges that Eagle Snacks, through Edward Mangine, first promised the plaintiff that he would be permitted to purchase Electra Snacks, but that Eagle Snacks then "surreptitiously" conspired with Parker to prevent the plaintiff from purchasing the business.

Eagle Snacks moves for summary judgment on the ground that there is no genuine issue as to any material fact in the complaint and the court should enter a judgment in its favor. Eagle Snacks argues that the plaintiff is unable to satisfy the elements needed to sustain a cause of action for tortious interference with business relations.

" [HN30] Not every act that disturbs a contract or business[*46] expectancy is actionable . . . For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously . . . An action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means . . ." (Citations omitted; internal quotation marks omitted.) *Daley v. Aetna Life & Casualty Co.*, supra, 249 Conn. 805-06.

In opposition to Eagle Snacks' motion, the plaintiff argues that Eagle Snacks acted with improper motive by preventing him from performing under the  contract he allegedly had with the defendant, Parker. The plaintiff, however, fails to support his allegations with evidence that raises any genuine issue of material fact. In his sworn deposition testimony, the plaintiff refers to occasions on which the defendant Eagle Snacks' agent, Edward Mangine, assisted him in the purchase of Electra Snacks by telling him what he needed to do to get Eagle Snacks' approval of[*47] the sale. (Memorandum of law

in support of defendant's motion, Exh. B, p. 150, 11.4-21.) The plaintiff does not, however, aver in either his complaint or in his memorandum in opposition to the defendant Eagle Snacks' motion for summary judgment that Eagle Snacks, through Edward Mangine, was guilty of fraud, misrepresentation, intimidation or molestation, or that the defendant acted maliciously. See *Daley v. Aetna Life & Casualty Co.*, supra, 249 Conn. 805-06. The plaintiff fails to point to any actions by Eagle Snacks that could be construed as tortious.

Furthermore, the plaintiff fails to plead or prove that he suffered an actual loss due to Eagle Snacks' alleged interference. " [HN31] It is an essential element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." (Emphasis in original.) (Internal quotation marks omitted.) *Dinapoli v. Cooke*, supra, 43 Conn. App. 426. In his complaint, the plaintiff states that he "had a reasonable expectation that he would have recovered a substantial profit had he purchased Electra as he had previously overseen its operations in the two years prior to his wrongful[*48] discharge and had realized a reasonable profit each year." (Complaint, count fifteen, 15.) Such losses are speculative.

The plaintiff's pleadings and proof fail to raise a genuine issue of material fact as to whether Eagle Snacks tortiously interfered with the plaintiff's business relations. Accordingly, Eagle Snacks' motion for summary judgment on count fifteen of the complaint is granted.

For the foregoing reasons this court grants the defendant Parker's motion for summary judgment on counts two, four and seven; the defendant Augustus' motion for summary judgment on counts eight and nine; and the defendant Eagle Snacks' motion for summary judgment on counts twelve, thirteen and fifteen of the complaint. This court denies Parker's motion for summary judgment on counts three, five and six; Augustus' motion for summary judgment on count ten; and Eagle Snacks' motion for summary judgment on count eleven of the complaint because the plaintiff raises genuine issues of material fact and the defendants are not entitled to judgment as a matter of law on these counts of the complaint.

Howard F. Zoarski

Judge Trial Referee