UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FERRON SHORTER JR., | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:03-cv-149(WIG) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL SERVICES | : | |
| GROUP, INC., | : | |
| | : | |
| Defendant. | : | FEBRUARY 22, 2005 |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION[1]
FOR ATTORNEY'S FEES, COSTS, AND PREJUDGMENT INTEREST

Plaintiff Ferron Shorter Jr., by and through his undersigned counsel and pursuant to 42

U.S.C. § 2000e-2(k) and 28 U.S.C. § 1920, hereby submits this memorandum of law in support

of his motion for attorney's fees, costs, and prejudgment interest.

I.    INTRODUCTION

Following a five-day trial, the jury returned a verdict on January 28, 2005, in favor of the

Plaintiff, Ferron Shorter Jr., on his claims of race and gender discrimination under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as on his claim of negligent

infliction of emotional distress.[2]  The jury awarded Plaintiff $170,000.00 in back pay and

benefits and $85,000.00 in general compensatory damages.

Plaintiff submits this memorandum as well as the following exhibits in support of his

motion for attorney's fees, costs, and prejudgment interest:  (1) an Affidavit by his undersigned

counsel ("Baird Affidavit") (Ex. 1); (2) a Table of Attorney's Fees and Costs with columns for

"Total Hours," "Claimed Hours," "Fees," "Client Receivables," and "Costs," with twenty-six (26)

---

[1] Local Civil Rule 11 references a "motion" for attorney's fees while, in practice and in case law, such a request is referred to as an "application."  The terms are used interchangeably by Plaintiff.
[2] The jury rendered verdicts in favor of Defendant on Plaintiff's claim of hostile work environment and intentional infliction of emotional distress.

attached invoices (Ex. 2); (3) a contemporaneous listing of costs maintained on the software

program "Quicken" (Ex. 3); and (4) an Affidavit by Attorney Peter B. Prestley (Ex. 4).  The

exhibits support a lodestar of $110,718.00 and costs of $2813.41.  Plaintiff claims $300.00 as the

lodestar hourly rate for this matter with a 2.0 multiplier.[3]

## II.    BACKGROUND

### A.    Administrative Proceedings

Prior to filing a complaint in federal district court, Plaintiff exhausted his administrative

remedies by filing an affidavit of illegal discriminatory practices ("CHRO Complaint") on July

10, 2002, at the Connecticut Commission on Human Rights and Opportunities (CHRO) which

was filed as well with the Equal Employment Opportunity Commission.  Conn. Gen. Stat. §§

46a-51 et seq.  The CHRO Complaint was thirteen (13) pages in length and included allegations

of sexual harassment, failure to adequately investigate, retaliation, discriminatory termination,

and imposition of discriminatory stereotypes against Defendant Hartford Financial Services

Group, Inc. ("The Hartford").  The Hartford, through Lisa Anderson, a Consultant with its Office

of Equal Opportunity Development, responded to Plaintiff's CHRO Complaint in an affidavit of

particulars and submitted written answers to twenty-one (21) CHRO questions.  Plaintiff filed a

thirteen (13) page reply on September 24, 2002, including various cassette tape recordings and

documents as exhibits A through F.   The CHRO issued a notice of final agency action on

December 2, 2002, after a merit assessment review, dismissing Plaintiff's complaint and finding

that there was no reasonable possibility that further investigation would result in a finding of

reasonable cause.  (Baird Affidavit (hereinafter, "Baird Aff."), Ex. 1 at ¶¶ 19-26)  See Unger v.

---

[3] Cf. 20 U.S.C. § 1415(i)(3)("Determination of Amount of Attorneys' Fees — Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded under this subsection.") to 42 U.S.C. § 2000e-2(k) which does not exclude a multiplier from the Court's consideration.

Consolidated Foods Corp., 657 F.2d 909 (7th Cir. (1981), rev. on other grounds, 456 U.S. 1002

(1982) (Attorney's fees are also awardable for work done at the state level by a plaintiff who

loses before the state agency but who later prevails in federal court.)

       B.     Federal District Court Complaint

      Plaintiff filed his Complaint in federal district court on January 22, 2003.  (doc. #1)  The

Hartford filed a Motion to Dismiss the Complaint on February 18, 2003, asserting that Plaintiff's

denial of criminal convictions on January 23, 2002, constituted a *per se* non-discriminatory

reason to warrant his termination.  (doc. #7)  On March 11, 2003, Plaintiff filed an opposition to

The Hartford's Motion to Dismiss.  (doc. #14)  The Hartford filed a Reply on April 3, 2003 (doc.

#18), and, after requesting and receiving leave, Plaintiff filed a Surreply on April 21, 2003, to

explain in detail the import of the criminal records obtained by The Hartford in February of

2002, as evidence that Plaintiff never had a criminal record.  (doc. #20)  The Hartford filed a

Motion to Strike Plaintiff's Surreply on April 23, 2003.  (doc. #21)

      As a consequence of The Hartford's attempts to dismiss the Complaint, Plaintiff was

compelled to move to amend and supplement the Complaint with just acquired information

regarding a statement made to The Hartford by Maurice P. Kuck on February 8, 2002,

concerning Plaintiff's final month of employment.  The Hartford filed an Answer and

Affirmative Defenses (doc. #38) to the Amended Complaint (doc. #35) on October 11, 2003.

See Wells v. Hutchinson, 499 F.Supp.174 (E.D. Tex. 1980) (Hours may be considered

reasonable if they are spent in the face of vigorous opposition from the opposing party.)

       C.     Discovery

      Plaintiff provided its initial disclosures to The Hartford on April 9, 2003, and responded

to The Hartford's thirty-four (34) requests for production and twenty (20) interrogatories on

April 9, 2003.  Plaintiff submitted supplemental responses to The Hartford's production requests

on April 28, 2003, and responded to four (4) requests for admissions from The Hartford on June

9, 2003.  Plaintiff served The Hartford with one-hundred ten (110) requests for production on

April 10, 2003, and twenty-five (25) interrogatories on August 11, 2003.  The Hartford noticed

Plaintiff for deposition and Plaintiff noticed The Hartford with four (4) depositions, including

Lisa Anderson, Richard Wardell, Jennifer Ames Haber, and Jack Jacewicz.

In addition, Plaintiff served MaryAnne Rhodes interrogatories.  The questions asked of

Ms. Rhodes during discovery were relevant to the case against The Hartford.  Ms. Rhodes'

responses to the interrogatories were used to prepare for her direct examination at trial and her

testimony at trial was a necessary component of Mr. Shorter's case.  Even if Ms. Rhodes had not

been a party to the action, the same time and resources, would have been used during the

discovery process to obtain information from Ms. Rhodes relevant to the claims against The

Hartford.  (Baird Aff., Ex. 1 at ¶ 13)

D.     Summary Judgment

The Hartford moved for summary judgment on January 23, 2004, on all claims against it

in Plaintiff's Amended Complaint, specifically, Counts One through Ten, inclusive, and Count

Thirteen.  (doc. #42)   Plaintiff did not oppose The Hartford's summary judgment motion on

Counts Four, Five, and Seven, alleging Retaliation; Count Ten, alleging Breach of Implied

Covenant of Good Faith and Fair Dealing; and Count Thirteen, alleging Invasion of Privacy.

(doc. #55)  Plaintiff did, however, oppose summary judgment on Count One, alleging Sexual

Harassment; Count Two, Three, and Six, alleging Race and Sex Discrimination; Count Three,

alleging Race Discrimination; and Counts Eight and Nine, alleging emotional distress; and these

counts were submitted to the jury at trial.

III.    **ARGUMENT**

      A.      <u>Attorney's Fees Award Standard</u>

Congress enacted fee-shifting statutes to encourage lawyers to represent civil rights

plaintiffs in the public interest.  Because actual damages in civil rights litigation are often limited

and civil rights litigants rarely are able to afford competent counsel at market rates, the Supreme

Court has recognized:

> The function of an award of attorney's fees is to encourage the
> bringing of meritorious civil rights claims which might otherwise
> be abandoned because of the financial imperatives surrounding the
> hiring of competent counsel.

<u>City of Riverside v. Rivera</u>, 477 U.S. 561, 578 (1986) (internal quotations and citation omitted).

Thus, to strengthen the enforcement of civil rights laws by ensuring that individuals may secure

private counsel when their civil rights are violated, Congress enacted fee-shifting provisions in

civil rights statutes.  <u>See</u> S. Rep. No. 1011, 94th Cong. 2d Sess. 1, 6 (1976).  The fee-shifting

provisions were designed, in particular, to address the concern that civil rights plaintiffs are often

unable to retain an attorney because of insufficient financial resources or because their cases do

not hold out the possibility of a large enough recovery to attract attorneys working on a

contingency fee basis:

> [C]itizens must have the opportunity to recover what it costs them
> to vindicate these rights … I the cost of private enforcement
> actions becomes too great, there will be no private enforcement.  If
> our civil rights laws are not to become more hollow
> pronouncements which the average citizen cannot enforce, we
> must maintain the traditionally effective remedy of fee-shifting in
> these cases.

<u>Id</u> at 2; <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983) ("The purpose of [42 U.S.C.] § 1988 is

to ensure effective access to the judicial process for persons with civil rights grievances.")

(internal quotations and citations omitted).

"The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case." Tsombanidis v. City of West Haven, 208 F.Supp.2d 263, 270 (D.Conn. 2002) (citing Hensley v. Eckerhart, 461 U.S. at 437). "The 'normal starting point for calculating reasonable attorney's fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called "lodestar" figure, which is arrived at by multiplying "the number of hours reasonably expended in the litigation … by a reasonable hourly rate."'" Tsombanidis, 208 F.Supp.2d at 270 (citing Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 433.)); see generally Smart SMW of N.Y. v. Zoning Com'n of Stratford, 9 F.Supp.2d 143, 149 (D.Conn. 1998) ("The appropriate community rate is determined by assessing the market rates in the forum of the litigation."); accord Jones v. Armstrong Cork Co., 630 F.2d 324 (5th Cir. 1980), Maldonado v. Lehman, 811 F.2d 1341 (9th Cir. 1987), Mayson v. Pierce, 806 F.2d 1556 (11th Cir. 1987).

"'The product of reasonable hours times a reasonable rate does not end the inquiry.'" Tsombanidis, 208 F.Supp.2d at 271 (quoting Hensley, 461 U.S. at 434). "There are other considerations that may lead a court to adjust the fee upward or downward. Id (citing Hensley, 461 U.S. at 434). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Id (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). "[A] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof. Id (citing Murphy v. Lynn, 118 F.3d 938, 951 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998) (additional citations omitted). Other factors considered include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

6

fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id (citing Hensley, 461 U.S. at  430 n.3).

B.    Plaintiff Is Entitled To An Award Of Attorney's Fees And Costs

"'[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'"  Tsombanidis, 20.F.Supp.2d at 270 (quoting Hemsley, 461 U.S. at 437).  "'Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.'"  Id (quoting Kirsch, 148 F.3d at 173).

The court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case.  Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. … In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

Id at 270-71 (quoting Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (additional citation omitted).

1.    Results Obtained

The difficulty of Plaintiff's case is demonstrated by the CHRO's dismissal of his complaint without an investigation.  Despite Plaintiff's submissions to the CHRO which included all the information that Plaintiff had at that time, without the resources and authority to conduct the discovery that was required in Plaintiff's case, the CHRO was unable to ascertain the

complex details of the case. Therefore, the CHRO found no reasonable possibility that, following a CHRO investigation, it would determine that The Hartford had violated anti-discrimination state and federal laws. Nonetheless, Plaintiff filed a Complaint in federal court.

At trial, the jury awarded Plaintiff $170,000.00 which, as Plaintiff argues in this motion, is 100% of the equitable relief that was within the jury's authority to award under the court's instructions. Plaintiff's final annual salary upon termination was $44,500.00. The time elapsed between Plaintiff's termination and judgment was three (3) years and five (5) days. Without taking into account promotions, pay raises, and benefits, Plaintiff's back-pay totaled $133,500.00. Clearly, the jury considered the promotions and pay raises earned by Plaintiff at The Hartford and factored those into the back-pay award, as well as lost benefits, to add $36,500.00 to the base figure of $133.500.00 over the span of three years. Plaintiff argues that the results obtained for Plaintiff's claims of back-pay could not have been more favorable under the facts.

At trial, the jury awarded Plaintiff $85,000.00 in compensatory damages for emotional pain, suffering, loss of enjoyment of life, and other non-pecuniary losses. The witnesses and evidence, except for some portions of Plaintiff's and lay witness Cheryl Harris's testimony, did not focus on Plaintiff's compensatory damages. Plaintiff did not spend time or resources obtaining an expert. In consideration of the evidence, which supports an award of $85,000.00 in compensatory damages, but did not make such damages a focus of the trial, Plaintiff asserts that the award was an excellent result.

### 2.    Degree of Risk

The degree of risk that Plaintiff would not prevail at trial is demonstrated by two factors: (a) The CHRO found no merit in the case to warrant investigation (Baird Aff., Ex. 1 at ¶

8

19); and (b) The Hartford assessed the case and determined that it would make no offer of settlement whatsoever. See Cush-Crawford v. Achem Corp., 234 F.Supp.2d 207, 212 (E.D.N.Y. 2000) ("Having decided the initial lodestar calculation, the Court now decides whether an upward or downward adjustment is warranted by factors such as the extent of success in the litigation and the degree of risk associated with the claim.") (citing Hensley, 461 U.S. at 434 and n. 9.)

In Sands v. Runyon, 28 F.3d 1323, 1334 (2d Cir. 1994), the appellate court condoned the district court's finding that "it is sometimes appropriate to apply a multiplier to the basic hourly rate to account for the delay between the investment of time and the receipt of the fee award." The plaintiff in Sands, however, had rejected an offer of judgment that would have provided the plaintiff a back-pay award equal to a calculation made by the plaintiff's own expert and the plaintiff's attorney one-half of her requested fees. Id. The district court therefore denied Sands' request for an enhancement of the lodestar. The Second Circuit found that this is a factor a court may use in considering the attorney's fees award. Id.

Sands implies that a defendant's failure to make any offer at all would be relevant to a court's consideration of attorney's fees. If a plaintiff's rejection of a reasonable offer is cause to reject a plaintiff's request for a multiplier based on the plaintiff having delayed their relief by rejecting the offer, then a defendant's failure to make any offer whatsoever must be cause to multiply a plaintiff's fee award given that the plaintiff was never provided the opportunity to extricate himself from a costly case, placing him in the position of proceeding further into debt or abandoning the case with no opportunity for recovery. See Thomas v. National Football League Players, 273 F.3d 1124, 1131 n.9 (D.C. Cir. 2001) (citing Sands, 28 F.3d at 1334 ("The

district court has discretion to consider settlement negotiations in determining the reasonableness

of fees but it is not required to do so.")

## IV.    PLAINTIFF IS ENTITLED TO COSTS

Plaintiff also seeks a recovery of costs in the amount of $2813.41.  (Baird Aff., Ex. 1 at

¶¶ 9-11)   The Second Circuit has held that awards of attorney's fees in civil rights suits under

fee-shifting statutes "include those reasonable out-of-pocket expenses incurred by attorneys and

ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.

1998) (internal quotations and citation omitted).  See also Reichman v. Bonsignore, Brignati &

Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987).  Recoverable expenses under fee-shifting

statutes include filing fees, deposition transcripts, service of process fees, photocopying,

telephone and fax charges, postage and express mail charges, messenger service, transportation,

and computerized legal research.

The following categories of costs comprise the total claimed costs of $2813.41:

- District Court Filing Fee - $150.00
- Service of Process, The Hartford - $71.25
- Subpoenas for Trial Witnesses - $242.40
- Transcripts of Deposition Testimony - $1813.98
- Postage Fees - $160.22
- Legal Research - $13.13
- Copies - $344.43
- Cassette tapes for Exhibits - $18.00

 (Baird Aff., Ex. 1 at ¶ 10)

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves for an award of attorney's fees

against The Hartford in the amount of $110,718.00 multiplied by 2.0 for the reasons stated in

section III(B)(1) and (2), above, and costs in the amount of $2813.41, as described in section IV,

above.

PLAINTIFF
FERRON SHORTER JR.


BY:    _____

Rachel M. Baird (ct12131)
Law Office of Rachel M. Baird
379 Prospect St
Torrington CT 06790-5239
Tel:  (860) 626-9991
Fax:  (860) 626-9992
bairdlawoffice@aol.com


## CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Memorandum of Law in

Support of Attorney's Fees, Costs, and Prejudgment Interest was mailed first-class, postage paid

to the following counsel of record on February 22, 2005:

Margaret J. Strange, Esq.
Jackson Lewis LLP
55 Farmington Ave Ste 1200
Hartford CT 06105

David L. Metzger, Esq.
Metzger & Associates
25 Capitol Ave
Hartford CT 06106


_____
Rachel M. Baird