UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FERRON SHORTER JR., | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:03-cv-149(WIG) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL SERVICES GROUP, INC., | : | |
| | : | |
| Defendant. | : | FEBRUARY 28, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
EQUITABLE RELIEF, INCLUDING PRE- AND POST-JUDGMENT INTEREST**

Plaintiff Ferron Shorter Jr., by and through his undersigned counsel, hereby submits this memorandum of law in support of his motion for reinstatement or, in the alternative, front pay and benefits. Plaintiff moves as well for pre- and post-judgment interest.

**I.     INTRODUCTION**

Following a five-day trial, the jury returned a verdict on January 28, 2005, in favor of the Plaintiff, Ferron Shorter Jr., on his claims of race and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as on his claim of negligent infliction of emotional distress.[1] The jury awarded Plaintiff $170,000.00 in back pay and benefits and $85,000.00 in general compensatory damages.

Plaintiff submits an Affidavit and exhibits in support of his motion which (a) describe his efforts to find employment since his termination from Defendant Hartford Financial Services Group, Inc. ("The Hartford") on January 23, 2002 (Ex. 1); (b) detail the resources Plaintiff will require to place himself again into a position where he is earning the equivalent of a $44,500.00 annual salary plus promotions/increases in pay that would have occurred since January 23, 2002,

---

[1] The jury rendered verdicts in favor of Defendant on Plaintiff's claim of hostile work environment and intentional infliction of emotional distress.

and a pension plan equivalent to the plan available to Plaintiff at The Hartford (Exs. 1, 2); (c) provide information about The Hartford's Retirement Plan for U.S. Citizens which Plaintiff would have been eligible to receive at the age of fifty-one (51) years old or his normal retirement age of sixty-five (65) in 2032 (Exs. 1, 3); and (d) delineate the disparity between Plaintiff's present and future earnings and his earnings but for the termination. (Ex. 4)

**II.     BACKGROUND**

    A.     <u>Employment at The Hartford</u>

On or about October 9, 1989, The Hartford hired Plaintiff as an Input Technician with an annual salary of $13,000. The Hartford increased Plaintiff's annual salary from $13,300 to $44,500 through promotion and merit assessment reviews, including the following:

    a. On or about August 27, 1990, Plaintiff received a promotion/increase in pay to the position of Insurance Rater with an annual salary of $15,900.

    b. On or about April 1, 1995, Plaintiff received a promotion/increase in pay to the position of Assistant to the Underwriter with an annual salary of $22,600.

    c. On or about October 15, 1996, Plaintiff received a promotion/increase in pay to the position of Actuarial Pricing Specialist with an annual salary of $25,100.

    d. On or about April 16, 1998, Plaintiff received a promotion/increase in pay to the position of Specialty Actuarial Programmer $38,000.

    e. On or about November 27, 2000, Plaintiff received a promotion/increase in pay to the position of Technician in the Information Management Department with an annual salary of $40,000.

    f. On or about October 16, 2001, Plaintiff received a merit promotion to the position of Developer with an annual salary of $44,500.

At the time of his involuntary termination on January 23, 2002, Plaintiff's annual salary was $44,500.  (Ex. 1, Affidavit of Ferron Shorter Jr. (hereinafter, "Shorter Aff."), at ¶¶ 3)

      B.      <u>Job Search</u>

In the Spring and early Summer of 2002, following a period of depression due to the loss of his job, Plaintiff commenced a search for employment after being helped through his depression by relatives.  (Ex. 1, Shorter Aff. at ¶ 4)  From January of 2002 through June of 2002 Plaintiff remained hopeful that The Hartford would reinstate him as he attempted to provide The Hartford additional information about the circumstances of his termination.  (Ex. 1, Shorter Aff. at ¶ 5)  Plaintiff recognized that The Hartford did not intend to reinstate him when he received a letter in June of 2002 indicating that there was no possibility that he would ever return to The Hartford.  (Ex. 1, Shorter Aff. at ¶ 6)

The first step in Plaintiff's job search was to recreate his resume because it was stored on his former computer at The Hartford.  (Ex. 1, Shorter Aff. at ¶ 7)  Plaintiff's next step was to place his resume on various Internet job search web sites including Monster.com, CareerBuilder.com, CTJobs.com, and HotJobs.com.  (Ex. 1, Shorter Aff. at ¶ 8)  Plaintiff also checked the employment section of The Hartford Courant on a regular basis.  (Ex. 1, Shorter Aff. at ¶ 9)  He also applied at temporary work agencies including RJS Associates, Management Search, Inc., and Mazzotta Employment Specialists.  (Ex. 1, Shorter Aff. at ¶ 10)  He interviewed at RJS Associates, Management Search, Inc., and Mazzotta Employment Specialists.  (Ex. 1, Shorter Aff. at ¶ 11)  Christine Durrer at Management Search Inc. interviewed him and indicated she was impressed with Plaintiff's experience and interview but she never contacted Plaintiff.  (Ex. 1, Shorter Aff. at ¶ 12)  James V. Coons at RJS Associates interviewed Plaintiff and he indicated that he was impressed with Plaintiff's experience but indicated that Plaintiff

may not be qualified for Information Technology positions because he did not have enough experience and that it would be difficult for Plaintiff to be employed as a Rater because it had been four years since he held that position.  (Ex. 1, Shorter Aff. at ¶ 13)  Plaintiff was interviewed at Mazzota Employment Specialists by Denise Schumbly.  Ms. Schumbly told Plaintiff that he was too qualified for the data entry positions that were open with her agency and paid $10.00 per hour.  Plaintiff indicated to Ms. Schumbly that he would work as a data entry operator but Ms. Schumbly never contacted Plaintiff.  (Ex. 1, Shorter Aff. at ¶ 14)

      Plaintiff applied for the specific job of Data Analyst at Aetna and received a letter dated October 28, 2002, indicating that the position had been cancelled.  He was advised that the cancellation did not affect his candidacy for any other positions but Aetna never contacted him even though Plaintiff applied for other positions at Aetna following October 28, 2002.  (Ex. 1, Shorter Aff. at ¶ 15)  In September or October of 2002, Plaintiff attended a Career Expo and Job Fair in Cromwell, Connecticut, that was advertised in The Hartford Courant and attracted insurance employers.  (Ex. 1, Shorter Aff. at ¶ 16)  Plaintiff received a letter from RJS Associates indicating that his information had been entered in their data base and that Plaintiff would be contacted.  (Ex. 1, Shorter Aff. at ¶ 17)  In March of 2003, RJS Associates confirmed that Plaintiff had been active in his job search since October of 2002 and that he had interviewed with several clients but RJS Associates did not consider the positions a good match for Plaintiff's skills.  (Ex. 1, Shorter Aff. at ¶ 18)  One of the RJS Associates clients whom Plaintiff met with was located in Farmington, Connecticut, but he indicated that it had been too long since Plaintiff had used his rating skills and he would not have the time to retrain Plaintiff.  (Ex. 1, Shorter Aff. at ¶ 19)

Plaintiff interviewed with Christine Durrer at Management Search, Inc. for a rating position in December of 2002 but she informed Plaintiff that his rating experience was not an exact match for their position. (Ex. 1, Shorter Aff. at ¶ 20) Plaintiff applied to an insurance company in Rocky Hill, Connecticut, by submitting a cover letter and resume to Karen Clark at 795 Brook Street, to apply for a personal lines associate underwriting position but he never heard from Ms. Clark. (Ex. 1, Shorter Aff. at ¶ 21) Plaintiff applied to PeopleLink, Inc., Resource Group Staffing, Webster Insurance, Glenn Sherman at Corporate IT, Howard Systems International. (Ex. 1, Shorter Aff. at ¶ 22) The open positions at Corporate IT and Howard Systems International were Information Technology positions but Plaintiff never received any response from either employer. (Ex. 1, Shorter Aff. at ¶ 23) In April of 2003 Plaintiff relocated to Georgia to search for employment and moved in with his family while he continued his job search. (Ex. 1, Shorter Aff. at ¶ 24)

Prior to moving to Georgia, Plaintiff began submitting his resume for positions in Georgia. (Ex. 1, Shorter Aff. at ¶ 25) After he moved to Georgia, Plaintiff sought employment through JobWatchers.com, Career-Rocket.com, General Electric, AIG, Allstate, Sanders-Abbott, Nationwide Recruiters, US Recruiting, Inc., Nationwide Recruiters, Career-Rocket.com, Business Careers.com, Accountants One, Kaiser Permanente, Eckerd, Insurance-Staffers.com and met with at least five different employers and gave each a copy of his resume. (Ex. 1, Shorter Aff. at ¶ 26) At Career-Rocket.com, Plaintiff applied for the positions of Office Clerk/Data Entry at an environmental company in Georgia at $29,000 per year and Data Entry Operator at a banking company in Georgia at $22,000 per year. The companies responded that Plaintiff's resume had been added to their systems but Plaintiff never heard from the companies afterward. (Ex. 1, Shorter Aff. at ¶ 27) Plaintiff applied for an Account Manager position on

July 6, 2003, through Monster.com and was told that his information had been sent to the company but he never heard from the company. (Ex. 1, Shorter Aff. at ¶ 28) Plaintiff applied for the position of Underwriter Assistant at Kaiser Permanente through Businesscareers.com and received a response that he would be contacted if he met the minimum requirements but the company never contacted him. (Ex. 1, Shorter Aff. at ¶ 29) Plaintiff applied through an accounting recruitment firm, AccountantsOne.com, but was told that there were no positions available that matched his background. (Ex. 1, Shorter Aff. at ¶ 30) Plaintiff applied for a Data Entry or Information Technology position with General Electric in May of 2003 that he found on the Internet and was told that his resume would be maintained on file but he was never contacted by General Electric. (Ex. 1, Shorter Aff. at ¶ 31) Plaintiff applied for a position as Rater with AIG and received confirmation that his resume was being reviewed but he was never contacted by AIG. (Ex. 1, Shorter Aff. at ¶ 32) Plaintiff applied for a position with Allstate and received confirmation that his resume had been received but he was never contacted by Allstate. (Ex. 1, Shorter Aff. at ¶ 33) Plaintiff was contacted by Sanders-Abbott April of 2003 in response to a resume he had posted and was offered the opportunity to apply through their web site for open positions which he did but the company never contacted him. (Ex. 1, Shorter Aff. at ¶ 34)

Plaintiff applied for a position through US Recruiting Inc in April of 2003 and he spoke to Andy Kelly, an insurance division team leader with the company. (Ex. 1, Shorter Aff. at ¶ 35) Mr. Kelly told Plaintiff that insurance companies would be wary of hiring him because of his last salary at The Hartford of $44,500. Mr. Kelly told Plaintiff that companies would assume that he would search for more lucrative positions if he accepted employment with them at salary levels of between $20,000 for Data Entry and $30,000 for rating positions he would continue to search for higher paying positions. (Ex. 1, Shorter Aff. at ¶ 36) Mr. Kelly also told Plaintiff on April

21, 2003, that while he had experience as a Rater, the time that had elapsed since he had worked as a Rater made him an unattractive candidate for that position and that although he had more recent experience in Information Technology, Plaintiff did not have the requisite experience to make him an attractive candidate for that position. (Ex. 1, Shorter Aff. at ¶ 37)  In addition, Plaintiff was told by interviewers that many of the jobs in Information Technology were being relocated overseas or had already been relocated. (Ex. 1, Shorter Aff. at ¶ 38)  Mr. Kelly told Plaintiff that he was impressed with Plaintiff's accomplishments. (Ex. 1, Shorter Aff. at ¶ 39)

      On April 22, 2003, Nationwide Recruiters contacted Plaintiff regarding his resume and indicated that his resume would be kept on file but Plaintiff never heard from the recruiter again. (Ex. 1, Shorter Aff. at ¶ 40)  Plaintiff applied to Eckerd Pharmacy for a position as a Computer Operator on April 25, 2003, and received confirmation that his resume was received and he heard from Eckerd on April 26, 2003, indicating that his resume would be reviewed for matches to open positions but Plaintiff never heard from the company. (Ex. 1, Shorter Aff. at ¶ 41) Plaintiff applied for positions through Jacobson Solutions, an insurance recruitment agency, and received confirmation that his resume had been received.  He spoke with a company representative named Amanda Turcotte and she indicated she would contact him in the future but she never did. (Ex. 1, Shorter Aff. at ¶ 42)

      The first job that Plaintiff obtained was with a company named Iron Mountain as a driver/courier on October 20, 2003.  He stayed there through June of 2004 and earned $12.00 an hour with no benefits, first, as a part-time employee and then as a full-time employee at 40 hours a week.  This would calculate to approximately an annual wage of $25,000.  He left as a result of a work related accident. (Ex. 1, Shorter Aff. at ¶ 43)  Plaintiff worked at Zifty, a food delivery service, as a courier at $8.00 per hour plus tips from the middle of November of 2003 through

7

the end of December of 2003. (Ex. 1, Shorter Aff. at ¶ 44) When he was offered full-time employment at Iron Mountain commencing in January of 2004, Plaintiff was forced to resign from Zifty due to the conflict in hours between Zifty and Iron Mountain. (Ex. 1, Shorter Aff. at ¶ 45) The next job that Plaintiff obtained was with American Courier Systems as a courier in July of 2004, at $12.00 per hour with no benefits. From July of 2004 through present Plaintiff has been employed with American Courier Systems. Unfortunately, the magazine that he delivered while employed at American Courier Systems did not renew its route with American Courier Systems so Plaintiff has not been paid since December of 2004. (Ex. 1, Shorter Aff. at ¶ 46) Since December of 2004 Plaintiff has searched for additional employment but was unavailable to begin a new job commencing prior to January 28, 2005, due to the trial in the above-referenced matter. (Ex. 1, Shorter Aff. at ¶ 47)

    C.    <u>Training for the Future</u>

Following the verdict, Plaintiff met with a counselor from DeVry University in Alpharetta, Georgia, and was told that he needed networking education because programming jobs without networking skills are scarce. (Ex. 1, Shorter Aff. at ¶ 48) DeVry University offers undergraduate programs in business, technology and management. www.devry.com (Ex. 1, Shorter Aff. at ¶ 49) Plaintiff plans to attend a university to acquire the skills and education he needs to eventually obtain a position comparable to the position at The Hartford. (Ex. 1, Shorter Aff. at ¶ 50) Plaintiff has gathered information about Georgia Tech, Georgia State, ITT Technical Institute, and Emory University but was told that DeVry University is less expensive. (Ex. 1, Shorter Aff. at ¶ 51) (Ex. 2, DeVry University Tuition and Fees, Employment Statistics, and Network and Communications Management Curriculum) Plaintiff will need to obtain

education and training on a part-time basis so that he may work as well. (Ex. 1, Shorter Aff. at ¶ 52)

After meeting with a university guidance counselor, Plaintiff now anticipates that he will graduate in 2011 with at least a probability of obtaining a job in the starting salary range of between $30,000 and $40,000 annually. (Ex. 1, Shorter Aff. at ¶ 53) Specifically, Plaintiff met with Nyla Phillips, a counselor at DeVry University on February 11, 2005. (Ex. 1, Shorter Aff. at ¶ 54) Ms. Phillips informed Plaintiff that courses cost $420.00 per credit hour. (Ex. 1, Shorter Aff. at ¶55) Ms. Phillips told Plaintiff that a full-time student is eligible to graduate in 40 months. (Ex. 1, Shorter Aff. at ¶ 56) However, unless Plaintiff obtains front pay to the extent that he is able to attend school full-time and pay his living expenses, he anticipates that he will attend on a part-time basis and be eligible for graduation in 6 years. (Ex. 1, Shorter Aff. at ¶ 57) Ms. Phillips told Plaintiff that he will need 133 credit hours to obtain a degree. (Ex. 1, Shorter Aff. at ¶ 58) Therefore Plaintiff anticipates earning an undergraduate degree in 2011 and obtaining a starting position in his field of Computer Programming/Information Technology in the year 2011. (Ex. 1, Shorter Aff. at ¶ 59) Plaintiff also met with Carrie Hill, a counselor at ITT Technical Institute in Duluth, Georgia. (Ex. 1, Shorter Aff. at ¶ 60) Ms. Hill informed Plaintiff that the cost to attend ITT is $386.00 per credit hour and that he will need 180 credits to graduate with an undergraduate degree. (Ex. 1, Shorter Aff. at ¶ 61) ITT Technical Institute represents itself as providing "Education for the Future." www.itt-tech.edu (Ex. 1, Shorter Aff. at ¶ 62)

     D.    <u>Lost Pension and Benefits</u>

The Hartford maintains a Retirement Plan for U.S. Employees that Plaintiff qualified for when he was employed at The Hartford. (Pl. Trial Ex. 025) (Ex. 1, Shorter Aff. at ¶ 63) Plaintiff

9

understood that the Retirement Plan includes a "Rule of 80" which sets an employee's eligibility for retirement with full medical benefits at the time the employee's age plus years of service with The Hartford equal eighty (80). (Ex. 1, Shorter Aff. at ¶ 64) On October 29, 2018, Plaintiff will be fifty-one (51) years old and would have had twenty-nine (29) years of service at The Hartford. These factors would have made him eligible for retirement with full medical benefits from The Hartford at the age of fifty-one (51). (Ex. 1, Shorter Aff. at ¶ 65) At trial, the jury awarded Plaintiff back pay in the amount of $170,000.00 calculating that his median annual salary and benefits for the three years since his termination was $57,000.00. (Ex. 1, Shorter Aff. at ¶ 66) An actuary employed at Sinclair-Robinson Insurance Group in Wallingford, Connecticut, conservatively used a final salary of $45,000.00 and a normal retirement date of October 1, 2032, to calculate the difference between the pension benefits Plaintiff will receive given his termination in 2002 and the pension benefits he would have received if he had retired from The Hartford as he planned to in 2032. (Ex. 3, Normal Retirement Benefit Calculation) (Ex. 1, Shorter Aff. at ¶ 67) The difference between Plaintiff's anticipated annual pension of $7589.00 and the pension he would have been entitled to of $18,972,00, but for his termination, is $11,383.00 per year from the year he reaches 65 in 2032. (Pl. Trial Ex. 024, Letter to Ferron Shorter Jr.) (Ex. 1, Shorter Aff. at ¶ 68)

     Since his termination from The Hartford in 2002, Plaintiff has not been able to maintain payments on his bills and has been unable to pay for and obtain additional training and education that would qualify him to obtain a position comparable to the position he held at The Hartford. (Ex. 1, Shorter Aff. at ¶ 69) Plaintiff is serious about his desire for reinstatement to his employment at The Hartford with the appropriate increase in seniority, salary, benefits, and pension status as allowed under the law. (Ex. 1, Shorter Aff. at ¶ 70)

**III.   ARGUMENT**

- "In calculating the size of a front-pay award the court must estimate the plaintiff's ability to mitigate damages in the future. Such a determination is committed to that court's discretion." Dominic v. Consolidated Edison Co. of New York, 822 F.2d 1249, 1258 (2d Cir. 1987). In the district court's award of front pay to the plaintiff in Dominic, on appeal, it was upheld that it is proper to take into account plaintiff's "lack of serious desire for his prior job in setting the amount." Id at 160 n.1. Plaintiff in the instant matter has expressed a serious desire for his job at The Hartford with the appropriate increase in seniority, salary, benefits, and pension status as allowed under the law. (Ex. 1, Affidavit of Ferron Shorter Jr. (hereinafter, "Shorter Aff."); at ¶ 70) Preliminarily then, Plaintiff seeks reinstatement as he has since his termination. (Ex. 1, Shorter Aff. at ¶¶ 5-6)

In addition "[a] Title VII claimant seeking either back pay or front pay damages has a duty to mitigate those damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located.  . The burden of proving that the employee did not make reasonable efforts is on the defendant." Excel Corp. v. Bosley, 165 F.2d 635, 639 (8th Cir. 1999) (citing Equal Employment Opportunity Commission v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992); Di Salvo v. Chamber of Commerce, 568 F.2d 593, 598 (8th Cir. 1978)). In Bosley, the district court denied the plaintiff front pay and explained:

> [I]f Bosley had offered evidence of her job search, it might have shown that she had mitigated her damages. But, that evidence was not in the record. The evidence actually in the record before the court could not support a finding of mitigation.

- Bosley, 165 F.3d at 640.

11

In <u>Thompson v. Sawyer</u>, 678 F.2d 257, 292 (D.C. Cir. 1982), the court found that because there were few positions open to the plaintiffs for reinstatement such a time would elapse before plaintiffs would be able to move into the positions they had been unjustly denied that the district court ordered monetary compensation to continue into the future. The Court of Appeals for the District of Columbia held:

> A number of circuits have approved the use of such front pay to make plaintiffs whole for the losses caused by discrimination, and we join them. See, e.g., United States v. Lee Way Motor Freight, Inc., 625 F.2d 918, 932 (10th Cir. 1979); James v. Stockham Valves & Fitting Co., 559 F.2d 310, 358 (5th Cir. 1977), <u>cert. denied</u>, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); Equal Employment Opportunity Comm'n. v. Enterprise Association Steamfitters, Local 638, 542 F.2d 579, 590 (2d Cir. 1976), <u>cert. denied</u>, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); Patterson v. American Tobacco Co., 535 F.2d 257, 269 (4th Cir.), <u>cert. denied</u>, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976).

<u>Thompson</u>, 678 F.2d at 292. Therefore, front pay is a substitute for reinstatement. When reinstatement is feasible, and it is arguably more feasible the larger the employer, and plaintiff has demonstrated that there is a serious desire to return to his former employment as Plaintiff in the instant matter has throughout, there is no impediment to such equitable relief.

## IV.    CONCLUSION

Plaintiff seeks reinstatement and offers that the varied locations of The Hartford's offices and the number of its employees render Plaintiff's request reasonable. In the alternative however, and only of there is a finding that reinstatement will not be ordered, Plaintiff seeks to obtain equitable relief so that he may obtain a comparable position elsewhere. While Plaintiff was employed at The Hartford he was committed to its system of promotion and moved from position to position as was necessary at The Hartford to progress successfully in the company.

12

However, Plaintiff's commitment to The Hartford's promotion and job system did not prepare him for his sudden termination and left him unqualified to do any one particular job elsewhere in his chosen insurance and computer programming fields of employment.  Therefore, Plaintiff seeks front pay so that he may obtain the education and training he needs to find a comparable job and so that he may be compensated for his diminished earnings and benefits.  (Ex. 1, Shorter Aff. at ¶¶ 71-77)

                          PLAINTIFF
                          FERRON SHORTER JR.

BY:    _____
           Rachel M. Baird (ct12131)
           Law Office of Rachel M. Baird
           379 Prospect St
           Torrington CT 06790-5239
           Tel:  (860) 626-9991
           Fax:  (860) 626-9992
           bairdlawoffice@aol.com

## **CERTIFICATION**

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Memorandum of Law in Support of Equitable Relief, including Pre- and Post-Judgment Interest was mailed first-class, postage paid to the following counsel of record on February 28, 2005:

Margaret J. Strange, Esq.
Jackson Lewis LLP
55 Farmington Ave Ste 1200
Hartford CT 06105

David L. Metzger, Esq.
Metzger & Associates
25 Capitol Ave
Hartford CT 06106

                                                    _____
                                                    Rachel M. Baird