**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| FERRON SHORTER JR., | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:03-cv-149(WIG) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL SERVICES GROUP, INC., | : | |
| | : | |
| Defendant. | : | FEBRUARY 15, 2005 |

**AFFIDAVIT OF FERRON SHORTER JR.**

Ferron Shorter Jr., being first duly sworn, deposes and states as follows:

1. This Affidavit is submitted in support of my motion for equitable relief, including reinstatement or front pay, as the Court deems appropriate, and prejudgment interest.

**Employment at The Hartford**

2. I was terminated from my employment with The Hartford Financial Services Group, Inc. ("The Hartford") after twelve years of employment on January 23, 2002.

3. On or about October 9, 1989, The Hartford hired me as an Input Technician with an annual salary of $13,000. The Hartford increased my annual salary from $13,300 to $44,500 through promotion and merit assessment reviews, including the following:

   a. On or about August 27, 1990, I received a promotion/increase in pay to the position of Insurance Rater with an annual salary of $15,900.

   b. On or about April 1, 1995, I received a promotion/increase in pay to the position of Assistant to the Underwriter with an annual salary of $22,600.

   c. On or about October 15, 1996, I received a promotion/increase in pay to the position of Actuarial Pricing Specialist with an annual salary of $25,100.

    d. On or about April 16, 1998, I received a promotion/increase in pay to the position of Specialty Actuarial Programmer $38,000.

    e. On or about November 27, 2000, I received a promotion/increase in pay to the position of Technician in the Information Management Department with an annual salary of $40,000.

    f. On or about October 16, 2001, I received a merit promotion to the position of Developer with an annual salary of $44,500.

**Job Search**

4. In the Spring and early Summer of 2002, following a period of depression due to the loss of my job, I commenced a search for employment after being helped through my depression by relatives.

5. From January of 2002 through June of 2002 I remained hopeful that The Hartford would reinstate me as I attempted to provide them additional information about the circumstances

6. I recognized that The Hartford did not intend to reinstate me after receiving a final letter in June of 2002 indicating that there was no possibility that that I would ever return to The Hartford even though I had hoped for reinstatement.

7. The first step in my job search was to recreate my resume because it was stored it on my computer at The Hartford. (Pl. Trial Ex. 029) (doc. #121)

8. My next step was to place my resume on various Internet job search web sites including Monster.com, CareerBuilder.com, CTJobs.com, and HotJobs.com. Id.

9. I also checked the employment section of The Hartford Courant on a regular basis.

10. I applied at temporary work agencies including RJS Associates, Management Search, Inc., and Mazzotta Employment Specialists. Id.

11. I interviewed at RJS Associates, Management Search, Inc., and Mazzotta Employment Specialists.  Id.

12. Christine Durrer at Management Search Inc. interviewed me and indicated she was impressed with my experience and interview but she never contacted me.  Id.

13. James V. Coons at RJS Associates interviewed me and he indicated that he was impressed with my experience but indicated that I may not be qualified for Information Technology because I did not have enough experience and that it would be difficult for me to be employed as a Rater because it had been four years since I held that position.  Id.

14. My best recollection of the individual who interviewed me at Mazzota Employment Specialists is that it was Denise Schumbly.  Ms. Schumbly told me that I was too qualified for the data entry positions that were open with her agency and paid $10.00 per hour.  I indicated to Ms. Schumbly that I would work as a data entry operator but she never contacted me.  Id.

15. I applied for the specific job of Data Analyst at Aetna and received a letter dated October 28, 2002, indicating that the position had been cancelled.  I was advised that this did not affect my candidacy for any other positions but Aetna never contacted me even though I applied for other positions at Aetna following October 28, 2002.  Id.

16. In September or October of 2002, I attended a Career Expo and Job Fair in Cromwell, Connecticut, that was advertised in The Hartford Courant and attracted insurance employers.  Id.

17. I received a letter from RJS Associates indicating that my information had been entered in their data base and that I would be contacted.  Id.

18. In March of 2003, RJS Associates confirmed that I had been active in my job search since October of 2002 and that I had interviewed with several clients but RJS Associates did not consider him a good match for my skills.  Id.

19. One of the RJS Associates clients whom I met with was located in Farmington, Connecticut, but he indicated that it had been too long since I had used my rating skills and he would not have the time to retrain me.  Id.

20. I interviewed with Christine Durrer at management Search, Inc. as well for a rating position in December of 2002 but she informed me that my rating experience was not an exact match for their position.  Id.

21.  I applied to an insurance company in Rocky Hill, Connecticut, by submitting a cover letter and resume to Karen Clark at 795 Brook Street, to apply for a personal lines associate underwriting position but I never heard from Ms. Clark.  Id.

22. I applied to PeopleLink, Inc., Resource Group Staffing, Webster Insurance, Glenn Sherman at Corporate IT, Howard Systems International.  Id.

23. The open positions at Corporate IT and Howard Systems International were Information Technology positions but I never received any response from either employer.  Id.

24. In April of 2003 I relocated to Georgia to search for employment and move in with my family while I continued my job search.  Id.

25. One week prior to moving to Georgia, I began submitting my resume for positions in Georgia.  Id.

26. After I moved to Georgia, I sought employment through JobWatchers.com, Career-Rocket.com, General Electric, AIG, Allstate, Sanders-Abbott, Nationwide Recruiters, US Recruiting, Inc., Nationwide Recruiters, areer-Rocket.com, Business Careers.com, Accountants One, Kaiser Permanente, Eckerd, Insurance-Staffers.com, n, met with at least five different employers and gave each a copy of my resume.  Id.

27. At Career-Rocket.com, I applied for the positions of Office Clerk/Data Entry at an environmental company in Georgia, at $29,000 per year and Data Entry Operator at a banking company in Georgia at $22,000 per year. The company responded that my resume had been added to their system but I never heard from the company. Id.

28. I applied for an Account Manager position on July 6, 2003, through Monster.com and was told that my information had been sent to the company but I never heard from the company. Id.

29. I applied for the position of Underwriter Assistant at Kaiser Permanente through Businesscareers.com and received a response that I would be contacted if I met the minimum requirements but the company never contacted me. Id.

30. I applied through an accounting recruitment firm, AccountantsOne.com, but was told that there were no positions available that matched my background. Id.

31. I applied for a data entry or Information Technology position with General Electric in May of 2003 that I found on the Internet and was told that my resume would be maintained on file but I was never contacted by General Electric. Id.

32. I applied for a position as Rater with AIG and received confirmation that my resume was being reviewed but I was never contacted by AIG. Id.

33. I applied for a position with Allstate and received confirmation that my resume had been received but I was never contacted by Allstate. Id.

34. I was contacted by Sanders-Abbott April of 2003 in response to a resume I had posted and was offered the opportunity to apply through their web site for open positions which I did but the company never contacted me. Id.

35. I applied for a position through US Recruiting Inc in April of 2003 and I spoke to Andy Kelly, an insurance division team leader with the company.  Id.

36. Mr. Kelly told me that insurance companies would be wary of hiring me because of my last salary at The Hartford of $44,500.00.  Mr. Kelly told me that companies would assume that I would search for more lucrative positions if I accepted employment with them at salary levels of between $20,000.00 for data entry and $30,000.00 for rating positions I would continue to search for higher paying positions.  Id.

37. Mr. Kelly also told me on April 21, 2003, that while I had experience as a Rater, the time that had elapsed since I had worked as a rate made me an unattractive candidate for that position and that although I had more recent experience in Information Technology, I did not have the requisite experience to make me an attractive candidate for that position.  Id.

38. In addition, I was told by interviewers that many of the jobs in Information technology were being relocated overseas or had already been relocated.

39. Mr. Kelly told me that he was impressed with my accomplishments.  Id.

40. On April 22, 2003, Nationwide Recruiters contacted me regarding my resume and indicated that my resume would be kept on file but I never heard from the recruiter again.  Id.

41. I applied to Eckerd Pharmacy for a position as a Computer Operator on April 25, 2003, and received confirmation that my resume was received and I heard from Eckerd on April 26, 2003, indicating that my resume would be reviewed for matches to open positions but I never heard from the company.  Id.

42. I applied for positions through Jacobson Solutions, an insurance recruitment agency, and received confirmation that my resume had been received.  I spoke with a company representative

named Amanda Turcotte and she indicated she would contact me in the future but she never did. Id.

43. The first job that I obtained was with a company named Iron Mountain as a driver/courier on October 20, 2003. I stayed there through June of 2004 and earned $12.00 an hour with no benefits, first, as a part-time employee and then as a full-time employee at 40 hours a week. This would calculate to approximately $25,000.00 per year. I left as a result of a work related accident. Id.

44. I worked at Zifty, a food delivery service, as a courier at $8.00 per hour plus tips from the middle of November of 2003 through the end of December of 2003. Id.

45. When I was offered full-time employment at Iron Mountain commencing in January of 2004, I was forced to resign from Zifty due to the conflict in hours between Zifty and Iron Mountain. Id.

46. The next job that I obtained was with American Courier Systems as a courier in July of 2004, at $12.00 per hour with no benefits. From July of 2004 through present I have been employed with American Courier Systems. Unfortunately, the magazine that I delivered did not renew its route with American Courier Systems so I have not been paid since December of 2004. Id.

47. Since December of 2004 I have searched for additional employment but was unavailable to begin work commencing prior to January 28, 2005, due to the trial in the above-referenced matter.

**Training for the Future**

48. Following the verdict, I met with a counselor from DeVry University in Alpharetta, Georgia, and was told that I needed networking education because programming jobs without networking skills are scarce.

49. DeVry University offers undergraduate programs in business, technology and management.  www.devry.com

50. I plan to attend a university to acquire the skills and education I need to eventually obtain a position comparable to the position at The Hartford.

51. I have gathered information about Georgia Tech, Georgia State, ITT Technical Institute, and Emory University but I was told that DeVry University is less expensive.  (Ex. 2 to Mem. Of Law in Supp. of Mot. for Equitable Relief, DeVry University Tuition and Fees, Employment Statistics, and Network and Communications Management Curriculum)

52. I will have to obtain education and training on a part-time basis so that I may work as well.

53. After meeting with a university guidance counselor, I now anticipate that I will graduate in 2011 with at least a probability of obtaining a job in the starting salary range of between $30,000.00 and $40,000.00 annually.

54. Specifically, I met with Nyla Phillips, a counselor at DeVry University on February 11, 2005.

55. Ms. Phillips informed me that courses cost $420.00 per credit hour.

56. Ms. Phillips told me that a full-time student is eligible to graduate in 40 months.

57. However, unless I obtain front pay to the extent that I am able to attend school full-time and pay my living expenses, I anticipate that I will attend on a part-time basis and be eligible for graduation in 6 years.

58. Ms. Phillips told me that I will need 133 credit hours to obtain a degree.

59. Therefore I anticipate earning an undergraduate degree in 2011 and obtaining a starting position in my field of computer programming/information technology in the year 2011.

60. I also met with Carrie Hill, a counselor at ITT Technical Institute in Duluth, Georgia.

61. Ms. Hill informed me that the cost to attend ITT is $386.00 per credit hour and that I will need 180 credits to graduate with an undergraduate degree.

62. ITT technical Institute represents itself as providing "Education for the Future."

www.itt-tech.edu

**Lost Pension and Benefits**

63. The Hartford maintains a Retirement Plan for U.S. Employees that I qualified for when I was employed at The Hartford. (Pl. Trial Ex. 025)

64. I understood that the Retirement Plan includes a "Rule of 80" which sets an employee's eligibility for retirement with full medical benefits at the time the employee's age plus years of service with The Hartford equal 80. Id,

65. On October 29, 2018, I will be 51 years old and would have had 29 years of service at The Hartford. These factors would have made me eligible for retirement with full medical benefits from The Hartford at the age of 51.

66. At trial, the jury awarded me back pay in the amount of $170,000.00 calculating that my median annual salary and benefits for the three years since my termination was $57,000.00.

9

67. An actuary employed at Sinclair-Robinson Insurance Group in Wallingford, Connecticut, however conservatively used a final salary of $45,000.00 and a normal retirement date of October 1, 2032, to calculate the difference between the pension benefits I will receive given my termination in 2002 and the pension benefits I would have received if I had retired from The Hartford as I planned to in 2032. (Ex. 3 to Mem. Of Law in Supp. of Mot. for Equitable Relief,, Normal Retirement Benefit Calculation)

68. The difference between my anticipated annual pension of $7589.00 and the pension I would have been entitled to of $18,972,00, but for my termination, is $11,383.00 per year from the year I reach 65 in 2032. (Ex. 1) (Pl. Trial Ex. 024, Letter to Ferron Shorter Jr.

69. Since my termination from The Hartford in 2002, I have not been able to maintain payments on my bills and have been unable to pay for and obtain additional training and education that would qualify me to obtain a position comparable to the position I held at The Hartford.

70. I am serious about my desire for reinstatement to my employment at The Hartford with the appropriate increase in seniority, salary, benefits, and pension status as allowed under the law.

71. I created a spreadsheet which summarizes my front-pay damages.

72. The summary includes a year-to-year estimate from the time I was terminated from The Hartford to the estimated year of retirement at age 65 in 2032.

73. The first front pay of $268,156 is the total amount of damages based on the difference of the minimum salary of $45,000 I would have continued to make at The Hartford and my current salary of $12 hourly or $25,000 annually.

74. The increased current annual salary column for every year on the spreadsheet is an estimated 1% salary increase which would be a minimal increase in my earnings throughout my career.

75. The estimated annual salary column on the spreadsheet is based on the jury's verdict of $57,000 a year through January 28, 2005.

76. The second front pay of $869,828 is total amount of damages based on the difference of the career-advancing salary starting from $57,000 in 2004 that I would have continued to make at The Hartford and 1% increases of my current salary of $12.00 hourly or $25,000 annually.

77. The increased estimated annual salary column for every year on the spreadsheet is an estimated 1% salary increase which would be a minimal increase in my earnings throughout my career.