UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FERRON SHORTER JR. :<br>Plaintiff, :<br>:<br>v. :<br>:<br>HARTFORD FINANCIAL SERVICES GROUP, :<br>INC. and MARYANNE RHODES :<br>Defendants. :<br>: | CIVIL NO.: 303 CV 0149(WIG)<br><br><br><br>MARCH 28, 2005 |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Local Rule 7(a) of this District, Hartford Financial Services Group, Inc. ("The Hartford") submits the following Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees and Costs dated February 25, 2005 ("Motion for Attorney's Fees"). Despite the fact that by her own calculations, Attorney Baird actually billed Plaintiff the amount of $55,359 in attorney's fees in connection with his claims against The Hartford, Attorney Baird seeks a fee award in the amount of $221,436 from The Hartford for the same work. In essence, Attorney Baird seeks to charge The Hartford at a rate of $600 per hour for work she billed Plaintiff at a rate of only $150 per hour.

The Hartford objects to the windfall claimed by Attorney Baird and contends that her fee award should be significantly reduced because: 1) Attorney Baird is not entitled to the application of a multiplier to an award of attorney's fees under a fee shifting statute; 2) Attorney Baird's claimed rate of $300 per hour is not her customary rate nor a reasonable rate; 3) Attorney Baird obtained only limited success on behalf of Plaintiff; and 4) Attorney Baird's time entries

are excessive in that she seeks an award of fees for work performed in connection with Plaintiff's claims against Maryanne Rhodes.

I.      BACKGROUND

Plaintiff commenced this action in United States District Court on January 22, 2003. Plaintiff's thirteen count Complaint alleged various statutory and common law claims against The Hartford and Maryanne Rhodes arising out of the termination of Plaintiff's employment with The Hartford on January 23, 2002. Prior to commencing the instant civil lawsuit, Plaintiff filed an administrative charge with the Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on July 10, 2002. The CHRO dismissed Plaintiff's administrative charge on December 2, 2002 through its Merit Assessment Review process.

   A.    Plaintiff's Claims

Counts One through Ten of the Complaint alleged the following causes of action against The Hartford: 1) sexual harassment in violation of Title VII; 2) race and sex discrimination in violation of Title VII; 3) violation of 42 U.S.C. § 1981; 4) retaliation in violation of Title VII; 5) retaliation under 42 U.S.C. § 1981; 6) race and sex discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"); 7) retaliation in violation of CFEPA; 8) intentional infliction of emotional distress; 9) negligent infliction of emotional distress and 10) breach of implied covenant of good faith and fair dealing. Count Thirteen alleged a common law claim for invasion of privacy against The Hartford.[1]

---

[1] Counts Eleven and Twelve alleged claims against Defendant Maryanne Rhodes for tortious interference with contract and defamation, respectively.

Plaintiff's claims of race and sex discrimination, negligent and intentional infliction of emotional distress and breach of implied covenant of good faith and fair dealing arose out of facts concerning his termination employment at The Hartford on January 23, 2002. Plaintiff's claim of sexual harassment, however, was based on conduct which arose out of his personal relationship with Ms. Rhodes which was unrelated to The Hartford's investigation of his violation of Electronic Communications Policy ("ECP") and his subsequent termination of employment. In addition, Plaintiff's claims of retaliation and invasion of privacy were based on conduct which was also unrelated to his discharge and which allegedly occurred months after Plaintiff's termination. The alleged conduct supporting Plaintiff's sexual harassment, retaliation and invasion of privacy claims was wholly apart from, and unrelated to, the facts and circumstances of Plaintiff's termination.

Plaintiff's sexual harassment claim, for example, was based on his claim that Ms. Rhodes stood by his desk, stared at him and left him voice mail messages indicating her desire to resume their relationship. (Cmplt., ¶¶ 33, 34.) This conduct had nothing to do with Plaintiff's termination for misusing Ms. Rhodes' voice mail password in violation of the ECP. Similarly, Plaintiff's retaliation claim was based on his allegation that an employee of The Hartford, Bob Begley, threatened to have him arrested in April 2002. Plaintiff asserted that Mr. Begley's threat was in response to letters submitted by Attorney Baird to The Hartford in which she complained that Plaintiff was discriminated against. (Cmplt., ¶¶ 130, 138.) Plaintiff's invasion of privacy claim was based on representations The Hartford made to the CHRO and this Court that Plaintiff had a criminal record when he did not. (Cmplt, ¶¶ 162, 165.) These claims were premised on conduct allegedly occurring long after Plaintiff was discharged and were not in any way factually or legally related to his claims of race and sex discrimination.

B.   Results of the Trial

Prior to trial, the Court dismissed Counts Four, Five and Seven alleging retaliation and Count Thirteen alleging invasion of privacy. Plaintiff voluntarily withdrew his claim in Count Ten alleging breach of implied covenant of good faith and fair dealing.[2] Of the remaining counts which were submitted to the jury, the jury found in favor of The Hartford as to Count One alleging sexual harassment and Count Eight alleging intentional infliction of emotional distress.

The jury found in favor of Plaintiff on his claims of race and sex discrimination alleged in Counts Two, Three and Six and on his claim of negligent infliction of emotional distress in Count Nine. The jury awarded Plaintiff $170,000 in back wages and $85,000 in compensatory damages for a total award of $255,000.

Plaintiff's final settlement demand prior to trial was $800,000 without reinstatement or $350,000 with reinstatement. On May 30, 2003, Plaintiff submitted his Damages Analysis in which he claimed that he was entitled to $3.1 million in lost wages, compensatory damages and punitive damages. The jury's verdict in Plaintiff's favor was substantially lower than his final settlement demand and less than 10% of the amount Plaintiff claimed he was owed in his Damages Analysis.

II.   ANALYSIS

A prevailing party in an action under Title VII may recover "a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The result of this calculation is commonly called the

---

[2] A copy of the Court's Order dismissing these claims is attached as Exhibit 1.

"lodestar" amount and is presumed to be a reasonable fee. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). The amount of attorney's fees awarded lies within the discretion of the trial court. Hensley, 461 U.S. at 433, 437; Salpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993). The fee applicant has the burden of submitting evidence to support the hours worked and the rates claimed. Hensley, 461 U.S. at 433.

In Plaintiff's Motion for Attorneys' Fees, Attorney Baird seeks an award of attorneys' fees in the amount of $221,436. Attorney Baird reached this figure by multiplying 369.06 claimed hours of work by an hourly rate of $300. This resulted in a lodestar amount of $110,718. Attorney Baird then applied a multiplier of 2.0 to this amount to reach her requested fee award of $221,436.

Plaintiff's fee award should be substantially reduced a several reasons. First, Attorney Baird is not entitled a multiplier because multipliers are not applicable to fee awards made under fee shifting statutes such as Title VII. In addition, Plaintiff obtained only limited success on his claims because: 1) five of the eleven counts against The Hartford never reached the jury and two of the claims submitted to the jury resulted in verdicts for The Hartford; and 2) the jury's verdict was far lower than Plaintiff's last settlement demand or the damages claimed in his Damages Analysis. Plaintiff's fee award should also be reduced because Attorney Baird's claimed rate of $300 per hour is unreasonable for attorneys of her skill level and experience practicing in the District of Connecticut. Finally, Attorney Baird's time entries are excessive in that she seeks an award of fees for work performed in connection with Plaintiff's claims against Maryanne Rhodes.

A. <u>Plaintiff Is Not Entitled To A Multiplier</u>

The first issue for the Court to determine is whether Attorney Baird is entitled to a multiplier of 2.0 applied to her lodestar figure of $110,718.[3] It appears from Plaintiff's Motion for Attorney's Fees that Attorney Baird seeks a multiplier to compensate her for the degree of risk in accepting this matter. (Mot. Atty. Fees, pp. 8-9; Baird Affidavit, ¶ 29.)

In determining the applicability of a multiplier to a requested fee award, courts have distinguished between the various exceptions to the American Rule. For example,

> 1) a losing party may be forced to pay the "reasonable fees" of the prevailing party under "fee shifting" provisions found in numerous federal statutes such as 42 U.S.C. § 1988; 2) courts may assess fees in order to secure a party's compliance with the willful violation of a court order; 3) courts may assess fees against parties who have acted in bad faith or vexatiously; and 4) under their equitable powers courts may award attorneys' fees to plaintiffs who have recovered a "common fund" for themselves and others.

<u>Maywalt v. Parker and Parsley Petroleum Co.</u>, 864 F. Supp. 1422, 1434 (S.D.N.Y. 1994). In the present case, Plaintiff seeks an award of attorney's fees under Title VII, 42 U.S.C. 2000e-5(k), which is a fee shifting statute similar to 42 U.S.C. § 1988.

"While multipliers are occasionally used in common fund cases in the Second Circuit . . . it is well settled in the Second Circuit that enhancements of the lodestar amount of

---

[3] In Plaintiff's Motion for Attorney's Fees, Attorney Baird failed to cite a single case supporting her claim that the Court should apply a multiplier to her lodestar figure. The only support Attorney Baird provided for her claim is her reliance on <u>Sands v. Runyon</u>, 28 F.3d 1323 (2d Cir. 1994). In that case, the Second Circuit affirmed the lower court's <u>refusal</u> to apply a multiplier to the plaintiff's fee request. <u>Sands</u>, 28 F.3d at 1334. The plaintiff's attorney had sought a multiplier to compensate him for the long delay between his investment of time in the case and his fee award at the conclusion of nine years of litigation. <u>Id.</u> In denying the requested multiplier, the Second Circuit noted that it may sometimes be appropriate to apply a multiplier "in longstanding litigation . . . to account for the delay between the investment of time and the receipt of the fee award." <u>Id.</u> <u>Sands</u> does not support Plaintiff's claim for a multiplier based on the purported degree of risk associated with Plaintiff's claims against The Hartford. In addition, Plaintiff's lawsuit against The Hartford was not "longstanding litigation" and does not merit the application of a multiplier to compensate Attorney Baird for the delay between her investment of time in the case and her receipt of the instant fee award.

attorney's fees are not permissible under fee-shifting statutes." Fink v. City of New York, 154 F. Supp. 2d 403, 414 (E.D.N.Y. 2001) (citing Anastacio v. Initial Contract Services, Inc., No. 97 Civ. 6695, 1998 U.S. Dist. LEXIS 8641, *3 (S.D.N.Y. June 12, 1998) (Exhibit 2) ("It is well settled in the Second Circuit that enhancements of the lodestar amount of attorneys' fees are not permissible under fee-shifting statutes."); Maywalt, 864 F. Supp. at 1435 ("It is settled in this Circuit that fee enhancements are not permissible under fee-shifting statutes."); Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, No. 92 Civ. 5517, 1994 U.S. Dist. LEXIS 2548, *21-*22 (S.D.N.Y. Mar. 7, 1994) (Exhibit 3) ("[T]he Supreme Court [has] ruled out the use of multipliers in statutory fee shifting cases by holding that a multiplier was not justified based upon a contingency risk."); Dubin v. E.F. Hutton Group, 845 F. Supp. 1004, 1014 (S.D.N.Y. 1994)("[T]he Supreme Court [has] held that enhancement for contingency is not permitted in statutory fee-shifting cases."). See City of Burlington v. Dague, 505 U.S. 557, 567 (1992) (prohibiting contingency enhancement of attorney's fees for degree of risk in cases under fee shifting statutes).[4]

Based on the foregoing, Attorney Baird's request that the Court double her requested fee award by applying a multiplier of 2.0 should be rejected. In addition to Attorney Baird's failure to provide even a modicum of support for her claim, it is well-settled in this

---

[4] In Dague, the Supreme Court rejected the use of multipliers in fee shifting cases, in part, because:

> [A]n enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: 1) the legal and factual merits of the claims; and 2) the difficulty in establishing those merits. The second factor, however, is ordinarily reflected in the lodestar – either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. Taking account of it again through lodestar enhancement amounts to double counting.

Dague, 505 U.S. at 562-63 (citations omitted).

7

Circuit that the application of a multiplier is impermissible under fee shifting statutes like Title VII. Thus, the starting point for this Court's analysis of Attorney Baird's requested fee award should be her lodestar figure of $110,718.

    B.    <u>Attorney Baird's Requested Fee Rate Of $300 Per Hour Is Not Reasonable</u>

In Plaintiff's Motion for Attorney's Fees, Attorney Baird asserts that she is entitled to a fee rate of $300 per hour. The Court should reduce Attorney Baird's lodestar amount because: 1) there is no evidence that Attorney Baird's customary rate is $300 per hour; and 2) her requested fee rate of $300 per hour is not reasonable.

To determine a reasonable fee rate, courts consider the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 115 (2d Cir. 1997). The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested by producing satisfactory evidence that the requested rates are in line with those prevailing in the community. <u>Hensley</u>, 461 U.S. at 437.

"A reasonable starting point for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate." <u>Parrish v. Sollecito</u>, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003); <u>Fink</u>, 154 F. Supp. 2d at 406 ("To determine what constitutes a reasonable rate, the proper starting point is the attorney's customary rate."). "In the absence of language in a retainer agreement indicating that the rates referred to were in some way reduced in light of the financial circumstances of the plaintiff . . . the retainer agreement is an appropriate reflection of the reasonable, and expected, hourly rate." <u>Parrish</u>, 280 F. Supp. 2d at 170. "[T]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." <u>The Crescent Publishing Group, Inc. v. Playboy</u>

Enterprises, Inc., 246 F.3d 142, 151 (2d Cir. 2001). See Reiter v. Metropolitan Transp. Auth. of the State of New York, No. 01 Civ. 2762 (GWG), 2004 U.S. Dist. LEXIS 18167, *14 (S.D.N.Y. Sept. 14, 2004) (Exhibit 4) ("[A]s a logical matter, the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate."); Vernon v. Port Auth. of N.Y. & N.J., 220 F. Supp. 2d 223, 230 (S.D.N.Y. 2002) (rejecting employment discrimination plaintiff's request for fee award at rate of $250 per hour where retainer agreement provided for a rate of only $200 per hour and noting, "it would be inappropriate for an attorney to seek from an adversary a greater sum than what would have been charged to his client").

    1.    <u>Attorney Baird's Customary Rate Is $150 Per Hour</u>

Based on the evidence submitted in support of Plaintiff's Motion for Attorney's Fees, this Court should conclude that Attorney Baird's customary rate is $150.00. In support of her fee request, Attorney Baird did not submit her retainer agreement with Plaintiff. In the absence of Attorney Baird's retainer agreement, there is no basis for the Court to conclude that Attorney Baird reduced her customary rate in light of Plaintiff's financial circumstances or otherwise. In addition, Attorney Baird provides no indication in her Affidavit of Rachel M. Baird what her customary rate is or whether she reduced her customary rate for this matter.

There is, however, abundant evidence that Attorney Baird's customary rate is $150 per hour. In her Affidavit, Attorney Baird testified that she agreed to charge an hourly rate of $150 per hour with Plaintiff responsible for any costs incurred during the litigation. (Baird Affidavit, ¶ 7.) This is consistent with the invoices attached as Exhibit 2 to Plaintiff's Motion for Attorney's Fees which establish that Attorney Baird actually billed Plaintiff at the rate of $150.00 per hour. Plaintiff also testified at his deposition that his fee arrangement with Attorney Baird called for him to be billed at a straight hourly rate of $150. (Plaintiff's Deposition, Day II,

pp. 53-54)(Exhibit 5.) Plaintiff's fee arrangement did not include a contingency fee provision and there is no evidence that Plaintiff received a reduced rate from Attorney Baird. Thus, the starting point for the Court's determination of a reasonable rate for Attorney Baird's services is $150 per hour – the hourly rate at which she actually billed Plaintiff.

### 2. Attorney Baird's Requested Rate Of $300 Is Not Reasonable

In support of her claimed rate of $300 per hour, Attorney Baird relies on her own Affidavit of Rachel M. Baird in which she states that for the past four years, she has devoted approximately 50% of her practice to representing plaintiffs in employment related matters. (Baird Affidavit, ¶ 4.) She also relies on the Affidavit of Peter Prestley in which Attorney Prestley opines that Attorney Baird's proposed rate of $300 per hour is reasonable and consistent with the prevailing rate in the community. There is no indication in Attorney's Baird's affidavit that she has ever actually billed a client at the rate of $300 per hour. There is also no indication in Attorney Prestley's affidavit that he has ever worked with Attorney Baird or that he has ever actually billed a client at his purported rate of $385 per hour.[5] (Prestley Affidavit, ¶ 12.)

The courts of this District disagree with Attorney Baird's claim that $300 per hour is a reasonable hourly rate for her services. Just last summer, Judge Underhill noted, "Judges in the District of Connecticut have considered hourly rates of between $250 and $300 reasonable for attorneys with a <u>great deal</u> of expertise in their legal field. Factors relevant to determining an appropriate rate of compensation include the size of the law firm, the national or local character of the practice, and the size and prevailing hourly rates of the locality where the practice is

---

[5] Attorney Prestley's affidavit is of very little assistance in this matter. While it includes a brief but thorough summary of his experience in the field of employment law, it provides only the most conclusory statements about his familiarity with Attorney Baird's work, his knowledge of her skill and experience, and his understanding of prevailing hourly rates in Connecticut. (Prestley Affidavit, ¶¶ 10-12.)

located." <u>Piurkowski v. Goggin</u>, No. 3:01 CV 302 (SRU), 2004 U.S. Dist. LEXIS 12656, *10 n.5 (D. Conn. July 6, 2004) (Exhibit 6.).

Last spring, Judge Chatigny noted, "Based on the reported decisions, it appears that hourly rates awarded in this district have not exceeded $275 <u>for highly experienced attorneys</u>, or $175 for associates." <u>Accel Int'l. Corp. v. Allegiance Ins. Managers, Ltd.</u>, No. 3:03 CV 983 (RNC), 2004 U.S. Dist. LEXIS 3979, *7 (D. Conn. Mar. 8, 2004)(emphasis added) (Exhibit 7). In another case, Magistrate Judge Fitzsimmons rejected Attorney James Brewer's request that for an award of attorney's fees at a rate of $300 per hour and found that $275 was a reasonable hourly rate. <u>Fago v. City of Hartford</u>, No. 3:02 CIV 1189 (AHN), 2004 U.S. Dist. LEXIS 14195, *6 (D. Conn. Mar. 18, 2004)(Exhibit 8).[6]

Attorney Baird does not have a "great deal" of experience in the field of employment law. By her own admission, she has practiced in this field for only four years and devotes only approximately 50 percent of her practice to employment related cases. (Baird Affidavit, ¶¶ 4, 25.) Indeed, her recitation of the cases she has handed in federal court in the past four years includes only a handful of employment related matters. (Baird Affidavit, ¶ 4.) Attorney Baird is also a solo practitioner with a local practice. (Baird Affidavit, ¶¶ 4, 5.) Given these factors, including, most importantly, evidence that Attorney Baird's customary rate was

---

[6] In the Southern District of New York, which includes Manhattan and some of the highest fee rates in the country, a federal district court recently stated, "After researching recent fee awards in civil rights cases, the Court finds that a reasonable rate scale is as follows: $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-$250 for attorneys with seven to nine years of experience, $180-$200 for attorneys with four to six years of experienced, and $130-$150 for attorneys with one to three years of experience." <u>Reiter</u>, 2004 U.S. Dist. LEXIS 18167 at *19.

$150 per hour and evidence that she agreed to charge Plaintiff at the rate of $150 per hour, this Court should find that a reasonable hourly rate for Attorney Baird's services is $150 per hour.[7]

      C.      <ins>The Court Should Adjust The Lodestar Figure Downward To Account For Plaintiff's Lack Of Success On Claims Unrelated To His Termination And For His Overall Minimal Level Of Success</ins>

It is well-established that the lodestar calculation may be adjusted downward to reflect a plaintiff's limited success.

> At step one of this analysis, the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation. At step two, the district court determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award.

Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101 (2d Cir. 1992). "A prevailing plaintiff is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims if those claims were unrelated to the claims on which the party prevailed." Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 284 (D. Conn. 2002). No deduction is required "if the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based on related legal theories." Id. (internal quotations omitted; citations omitted). See Hensley, 461 U.S. at 434-35 (where the plaintiff presents "in one lawsuit distinctly different claims for relief that are based on different facts and legal theories . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be

---

[7] The Court should also take into account the consensus in this District that attorneys who are experts in their fields are entitled to between $250 and $300 per hour. The foregoing analysis is not intended to disparage or detract from the skill and effort Attorney Baird demonstrated in litigating this matter. It is intended to demonstrate, however, that $300 per hour is not a reasonable rate for an attorney in Connecticut with Attorney Baird's skills and experience. See Luciano, 109 F.3d at 115.

deemed to have been expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on the unsuccessful claim.")

      1.      The Lodestar Figure Should Be Adjusted Downward To Account For Plaintiff's Lack Of Success On Claims Unrelated To His Termination

As set forth above, the jury returned a verdict for The Hartford on Plaintiff's claim of sexual harassment and Plaintiff's claims of retaliation and invasion of privacy were dismissed prior to trial. These claims were not related to Plaintiff's successful claims for race and sex discrimination and negligent intentional infliction of emotional distress. Plaintiff's successful claims arose out of the facts and circumstances of Plaintiff's misconduct over the weekend of January 18, 2002, The Hartford's investigation of Maryanne Rhodes' complaint on January 21, 2002, and Plaintiff's discharge on January 23, 2002 for violating The Hartford's ECP.

In contrast, Plaintiff's claim of sexual harassment was based on alleged conduct by Ms. Rhodes wholly apart from The Hartford's decision to discharge Plaintiff. That conduct arose out of Plaintiff's personal relationship with Ms. Rhodes and lacks any nexus to Plaintiff's termination or to the events leading to his termination. Likewise, Plaintiff's claims of retaliation and invasion of privacy were based on conduct which allegedly occurred months after Plaintiff's termination. Plaintiff's retaliation claim, for example, was based on his allegation that an employee of The Hartford, Bob Begley, threatened to have him arrested in April 2002. Plaintiff asserted that Mr. Begley's threat was in response to letters submitted by Attorney Baird to The Hartford in which she complained that Plaintiff was discriminated against. (Cmplt., ¶¶ 130, 138.) Plaintiff's invasion of privacy claim was based on representations The Hartford made to

the CHRO and this Court that Plaintiff had a criminal record when he did not. (Cmplt, ¶¶ 162, 165.)

Plaintiff's unsuccessful claims for sexual harassment, retaliation and invasion of privacy were wholly unrelated, both factually and legally, to his successful claims for discrimination and negligent infliction of emotional distress. These unsuccessful claims were premised on a completely different set of facts – facts which were wholly unrelated to Plaintiff's termination and which involved employees of The Hartford different from those involved in the termination decision. Plaintiff's unsuccessful claims were also based on different legal theories which were distinct and analytically unrelated to Plaintiff's successful claims for discrimination and emotional distress. See Bick v. City of New York, No. 95 Civ. 8781, 1998 U.S. Dist. LEXIS 5543, *98 (S.D.N.Y. Apr. 21, 1998) (Exhibit 9) (finding "the libel claims, the claim for intentional infliction of emotional distress and the retaliation claim . . . are not closely related to the successful gender claims because the facts that plaintiff needed to prove in order to prevail on these common-law claims . . . differ markedly from the facts at issue in the plaintiff's successful gender-discrimination claims"); Marshall v. State of New York Division of State Police, 31 F. Supp. 2d 100, 108-09 (N.D.N.Y. 1998) (reducing overall fee award 50% for unsuccessful failure to promote and retaliation claims and dismissal of individual defendants); Tanzini v. Marine Midland Bank, N.A., 978 F. Supp. 70, 84 (N.D.N.Y. 1997) (excluding hours spent on breach of oral employment contract claim as the "existence of that contract turned upon factual issues wholly unrelated to the discrimination claims . . . [and] involved entirely different legal theories"); Kim v. Dial Service Int'l. Inc., No. 96 CIV 3327, 1997 U.S. Dist. LEXIS 12544, *57 (N.D.NY. Aug. 11, 1997), aff'd, 159 F.3d 1347 (2d Cir. 1998) (Exhibit 10) (reducing fee award

30% for unsuccessful breach of contract claim and age discrimination claim, finding that these were separate claims with separate legal theories).

Consequently, Attorney Baird's lodestar figure should be adjusted downward by the amount of 33% to account for Plaintiff's lack of success on these unrelated claims. Thirty-three percent is a generous figure because while these claims comprised approximately one half of Plaintiff's claims in his lawsuit (sexual harassment; race discrimination; sex discrimination; retaliation; emotional distress; and common law claims), The Hartford recognizes that Plaintiff's counsel did not devote equal time to each category of Plaintiff's claims. Thus, a 33% deduction of Attorney Baird's fee request is warranted rather than a 50% deduction.

    2.    The Lodestar Figure Should Be Adjusted Downward To Account For Plaintiff's Overall Lack Of Success

The lodestar figure should also be reduced due to Plaintiff's overall lack of success in this matter. A downward adjustment to the lodestar figure is appropriate even when unsuccessful claims are interrelated with successful claims if the overall limited results achieved by the plaintiff warrant a corresponding reduction in the fee award. Hensley, 461 U.S. at 435; Grant, 973 F.2d at 101. If a plaintiff has obtained "excellent results," the fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435. However, a "reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. . . . [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley, 461 U.S. at 440.

In the present matter, the jury awarded Plaintiff $170,000 in back wages and $85,000 in compensatory damages for a total award of $255,000. The amount the jury awarded

to Plaintiff was substantially less than the amounts Plaintiff sought prior to trial. Based on Plaintiff's limited success at trial, the Court should further reduce Attorney Baird's lodestar figure.

Plaintiff's final settlement demand prior to trial was $800,000 without reinstatement or $350,000 with reinstatement. On May 30, 2003, Plaintiff submitted his Damages Analysis in which he claimed that he was entitled to $3.1 million in lost wages, compensatory damages and punitive damages. Attorney Baird submitted a document to this Court, subject to Rule 11, in which she represented that Plaintiff had sustained $3.1 in damages. Presumably, this $3.1 million in damages had grown considerably by the time trial commenced eighteen months later in January 2005.[8]

Plaintiff did not recover an amount anywhere near the damages he asserted in this case. In fact, the jury's verdict was substantially lower than Plaintiff's final settlement demand and less than 10% of the amount Plaintiff claimed he was owed in his Damages Analysis and discovery responses. Consequently, Plaintiff's overall lack of success warrants an additional reduction of 5% of Attorney Baird's lodestar figure. See Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002) (The court reduced plaintiffs' requested fee award by 60% where plaintiffs recovered $37,500 each after demanding $1.25 million on grounds that "plaintiffs achieved remarkably little in comparison to what they sought.").

---

[8] Plaintiff made the same assertion that he sustained $3.1 million in damages in response to Interrogatory No. 7 of Defendant's First Set of Interrogatories dated April 9, 2003. A copy of Plaintiff's responses to Defendant's First Set of Interrogatories is attached as Exhibit 11

D.  The Court Should Adjust The Lodestar Figure Downward To Account For Fees Incurred In Prosecuting Claims Against Maryanne Rhodes

The Court should further adjust the lodestar figure downward to account for fees incurred by Plaintiff in connection with discovery he conducted in furtherance of his claims against Maryanne Rhodes. If the Court determines that certain claimed hours are "excessive, redundant, or otherwise unnecessary," those hours should be excluded from the lodestar calculation. Hensley, 461 U.S. at 434.

In Invoice No. 388 dated October 9, 2003, Attorney Baird seeks to recover for six hours of time incurred on August 9 and 10, 2003 in connection with drafting Plaintiff's interrogatories directed to Ms. Rhodes. In Invoice No. 445 dated December 31, 2003, Attorney Baird seeks to recover for an additional 30 minutes of time incurred on November 25, 2003 in connection with preparing a letter to Ms. Rhodes' counsel, David Metzger, regarding Ms. Rhodes' responses to Plaintiff's interrogatories. Attorney Baird should not be permitted to recover fees from The Hartford incurred in connection with Plaintiff's litigation of claims against Ms. Rhodes. Thus, an additional amount of 6.5 hours should be deducted from the lodestar amount.

In Plaintiff's Motion for Attorney's Fees, Attorney Baird claims that she is entitled to recover for time spent obtaining discovery from Ms. Rhodes because the information was relevant to Plaintiff's claims against The Hartford. She further claims that she utilized the information obtained from Ms. Rhodes to prepare for trial and that, even if Ms. Rhodes had not been a party, she would have incurred the same time and expense obtaining information from Ms. Rhodes. (Baird Affidavit, ¶¶ 13, 14.)

Attorney Baird's claims are unavailing and ignore several facts. First, Plaintiff's claims against Ms. Rhodes for tortious interference with contract and defamation had nothing to do with his claims against The Hartford. Ms. Rhodes was not a decision-maker in this case and she did not conduct The Hartford's investigation into Plaintiff's misconduct. Second, Plaintiff is not a prevailing party with respect to his claims against Ms. Rhodes. Thus, Attorney Baird is not entitled to an award of fees for work performed in connection with those claims. In addition, if not for the fact that Ms. Rhodes was a party to this matter, Plaintiff could not have served her with interrogatories which may only be served on a party. Fed. R. Civ. Pro. 33. Thus, Attorney Baird only incurred attorney's fees in connection with serving interrogatories on Ms. Rhodes because she made Ms. Rhodes a party and pursued claims against her individually. Finally, it simply defies common sense to hold The Hartford responsible for fees incurred by Attorney Baird in furtherance of Plaintiff's claims against another party. Simply because Attorney Baird found the information obtained from Ms. Rhodes useful in her claims against The Hartford is no reason to shift responsibility for Plaintiff's fees to The Hartford.

III.  CONCLUSION

Based on the foregoing, The Hartford asserts that Attorney Baird's fees should be reduced as follows:

- Reasonable Rate: $150/hour
- Reasonable Number of Hours: 362.56
- Reasonable Rate multiplied by Reasonable Number of Hours equals:
- Lodestar Figure Of $54,384
- Adjustment of 33% to Lodestar for lack of success on unrelated claims: $36,256
- Adjustment of 5% to Lodestar for overall minimal level of success: $34,443.

                    DEFENDANT,
                    HARTFORD FINANCIAL SERVICES
                    GROUP, INC.

By: _____
     Margaret J. Strange (ct08212)
     James F. Shea (ct16750)
     Jackson Lewis LLP
     55 Farmington Avenue, Suite 1200
     Hartford, CT 06105
     Phone: (860) 522-0404/Fax: (860) 247-1330
     email: strangem@jacksonlewis.com
     email: sheaj@jacksonlewis.com

CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this 28th day of March 2005, to the following counsel of record:

> Rachel M. Baird
> Law Office of Rachel M. Baird
> 379 Prospect Street
> Torrington, CT 06790
> (860) 626-9991
> Attorney for Plaintiff
>
> David L. Metzger
> Metzger & Associates
> 25 Capitol Avenue
> Hartford, CT 06106-1707
> Ph. (860) 549-5026
> Attorney for Defendant Maryanne Rhodes

_____
Margaret J. Strange

H:\Client Folder\H\The Hartford\Shorter\Post Trial\Opposition to Motion for Atty Fees DOC
64532