EXHIBIT 3

AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, NATIONAL COUNCIL OF THE CHURCHES OF CHRIST IN THE U.S.A., UNITARIAN UNIVERSALIST ASSOCIATION, and LITERARY SOCIETY OF SAINT CATHERINE OF SIENNA, Plaintiffs, v. WAL-MART STORES, INC., Defendant

92 Civ. 5517 (KMW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1994 U.S. Dist. LEXIS 2548

March 7, 1994, Decided
March 7, 1994, Filed

**SUBSEQUENT HISTORY:** [*1] As Amended March 10, 1994.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, a clothing and textiles union and three religious organizations, filed an application for an award of attorney's fees and costs against defendant, a large retail corporation, following the court's ruling enjoining the corporation from omitting plaintiffs' shareholder proposal from the company's proxy material for a shareholder's meeting.

**OVERVIEW:** In reliance on three no-action letters issued by the Securities and Exchange Commission (SEC), the corporation intended to omit plaintiffs' proposal about the corporation's policies on the purchase of goods and services from female and minority owned suppliers and its equal employment opportunity programs and data from the proxy materials sent to shareholders before an annual meeting. Plaintiffs sued the corporation, and the court held that a revised version of plaintiffs' proposal had to be included in the materials. Plaintiffs filed an application for attorneys' fees and costs. The court modified the amount of fees and granted the application. Plaintiffs conferred a substantial benefit on the shareholders of the corporation in vindicating the communication and voting rights of all of corporation shareholders. In light of the benefits conferred, the corporation's shareholders should share in the costs of this litigation by an assessment of plaintiffs' attorneys' fees and costs against the corporation. The fact that plaintiffs' proposal was tied to a general social grievance did not eliminate the possibility of fee shifting because all of the shareholders received a common benefit.

**OUTCOME:** The court granted plaintiffs' application for an award of attorneys' fees and costs.

**CORE TERMS:** shareholder, proxy, common benefit, shifting, multiplier, enhancement, no-action, lodestar, substantial benefit, awarding, logged, annual meeting, union member, prevailed, legal fees, vindicating, entitlement, voting, conferred, voted, false and misleading, reasons stated, communicate, regulation, prevailing, benefiting, inclusion, equitable, lawsuit, confer

**LexisNexis(TM) Headnotes**

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN1]In the absence of statutory or contractual authority, courts in this country generally may not award attorneys' fees to a prevailing party. However, there is an exception when an individual plaintiff prevails and, in doing so, confers a common benefit upon a larger group of similarly situated individuals. There are three conditions, which, if met, make the shifting of fees appropriate. First, the class of persons benefitted by the lawsuit must be small in number and easily identifiable. Second, the benefits must be able to be traced to the class with some accuracy. Third, there must be some reason for confidence that the costs of the litigation could indeed be shifted with some exactitude to those benefiting.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN2]In suits by a shareholder against a corporation, a court is able to avoid any inequity by charging the shareholder's attorneys' fees to the corporation, an appropriate surrogate for the other shareholders.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations*

[HN3]The type of benefits a litigant must confer on others in order to qualify for an award of attorneys' fees is a shareholder's case against a corporation must be substantial, something more than technical in its

consequence, and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Meetings & Voting*

*Securities Law > Investment Companies > Capital Structure, Proxies & Voting Trusts*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN4]Courts authorize an award of attorneys' fees in suits under S.E.C. Rule 14a-9 alleging a material false and misleading statement in proxy material, both before and after the meeting at which shareholder approval of a transaction is sought.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Meetings & Voting*

*Securities Law > Investment Companies > Capital Structure, Proxies & Voting Trusts*

[HN5]The circulation of proxy materials by a corporation that do not include a proper shareholder proposal renders the solicitation of proxies inherently misleading, because the proxy material purports to notify shareholders of all the issues that management anticipates will be raised at the meeting.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Fair Representation*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

*Labor & Employment Law > Collective Bargaining & Labor Relations > Protected Activity*

[HN6]The vindication of a communication right is a common benefit that warrants imposing a successful union member's legal fees on a union. There can be no doubt that, by vindicating his own right of free speech guaranteed by the Labor-Management Reporting and Disclosure Act of 1959, the member necessarily rendered a substantial service to his union as an institution and to all its members. When a union member is disciplined for the exercise of any of the rights protected by the Act, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the chill cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Shareholder Duties & Liabilities*

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Meetings & Voting*

*Securities Law > Investment Companies > Capital Structure, Proxies & Voting Trusts*

[HN7]The Security and Exchange Commission's shareholder proposal rule promotes two linked interests. First, it facilitates communication among shareholders and between shareholders and management on a limited range of subjects consistent with the content-based restrictions imposed by S.E.C. Rule 14a-8(c). Second, if a proposal is included pursuant to S.E.C. Rule 14a-8, shareholders receive notice of the proposal and management's position on it prior to the meeting, and also have the opportunity to exercise their franchise in voting to approve or reject, or to abstain from voting on, the proposal.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Shareholder Duties & Liabilities*

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Meetings & Voting*

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations*

[HN8]In creating a shareholder's right to communicate at management's expense with fellow shareholders, the Security and Exchange Commission did not condition the exercise of that right on a prior determination that (1) shareholders are interested in the merits of a particular proposal, or (2) that shareholders are generally interested in submitting proposals. The Supreme Court impliedly rejects any argument that a benefit to a corporation's shareholders must be evaluated according to (1) the percentage of shareholders who voted in favor of the proposal, or (2) the percentage of shareholders who value the right to communicate with each other by submitting shareholder proposals under S.E.C. Rule 14a-8.

*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Meetings & Voting*

*Securities Law > Investment Companies > Capital Structure, Proxies & Voting Trusts*

[HN9]The Security and Exchange Commission acknowledges that shareholder proposals that are opposed by management are unlikely to command a majority of votes; if a proposal carries only three percent of the vote at a meeting held within the previous three years, the proponent may resubmit the proposal and it must be included in the company's proxy materials. 17 C.F.R. § 240.14a-8(c)(12)(i).

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN10]The bad faith of a losing party does not bear on a court's equitable powers to award attorneys' fees in common benefit cases, nor does a losing party's good faith opposition to a plaintiff's claims insulate a defendant from responsibility for plaintiff's legal fees.

*Securities Law > Securities & Exchange Commission > Judicial Review*

*Securities Law > Investment Companies > Capital Structure, Proxies & Voting Trusts*

[HN11]A court may disagree with a Security and Exchange Commission (SEC) no-action position and may require inclusion of a shareholder proposal in proxy materials, because an individual no-action letter does not rank as a rule, regulation or order of the SEC, and reliance on a no-action letter does not provide immunity from liability under 15 U.S.C.S. § 78w(a)(1).

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN12]The application for an award of attorneys' fees cannot be viewed as a distinct cause of action separate from a claim in underlying litigation. In concluding that plaintiffs are entitled to an award of attorneys' fees, a court is not establishing new rights, but is applying existing legal standards to new factual circumstances.

*Securities Law > Bases for Liability > Remedies*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN13]The specific provisions in §§ 9(e), 18(a) of the Securities Exchange Act for the recovery of attorneys' fees should not be read as denying to the courts the power to award counsel fees in suits under other sections of the Act when circumstances make such an award appropriate, any more than the express creation by those sections of private liabilities negates the possibility of an implied right of action under § 14(a) of the Securities Exchange Act.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

[HN14]An award of a lodestar of attorneys' fees without a multiplier enhancement fully reflects the following factors, which are among those that plaintiffs claim entitle them to an enhancement over a lodestar: (1) the novelty and complexity of the issues in a case, (2) the special skill and experience of counsel, (3) the quality of the representation, and (4) the results obtained from the litigation.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

[HN15]The use of multipliers in statutory fee shifting cases is not allowed because a multiplier is not justified based upon a contingency risk.

**COUNSEL:** For AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, NATIONAL COUNCIL OF THE CHURCHES OF CHRIST IN THE U.S.A., UNITARIAN UNIVERSALIST ASSOCIATION, LITERARY SOCIETY OF SAINT CATHARINE OF SIENA, plaintiffs: Howard S. Shaftel, Stein, Zauderer Ellenhorn Frischer & Sharp, NYC, NY.

For WAL-MART STORES, INC., defendant: George Mernick, Alan L. Dye, Ediberto Roman, Lord Day & Lord, Barrett Smith, New York, NY.

**JUDGES:** Wood

**OPINIONBY:** KINBA M. WOOD

**OPINION:** AMENDED OPINION AND ORDER

WOOD, D.J.

Plaintiffs apply for an award of attorneys' fees and costs against Wal-Mart Stores, Inc. ("Wal-Mart") following the court's ruling on April 19, 1993 enjoining Wal-Mart from omitting plaintiffs' shareholder proposal, as amended by the court, from the company's 1993 proxy material. Plaintiffs argue that their success in this litigation produced a benefit shared in common by all Wal-Mart shareholders and that an award of attorneys' fees and costs for generating such a common benefit is, therefore, appropriate. For the following reasons, plaintiffs' application for an award of attorneys' fees and costs is granted. This opinion amends an opinion issued March 7, 1994, which contained minor arithmetic errors affecting the amount due for attorneys' fees and costs.

Background

The court assumes familiarity with its April 26, 1993 Opinion and Order in this case. See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 821 F. Supp. 877 (S.D.N.Y. 1993). The

pertinent facts will be summarized here briefly. In reliance on three no-action letters issued by the Securities [*2] and Exchange Commission ("SEC"), Wal-Mart intended to omit plaintiffs' proposal from the management proxy materials that were due to be distributed to shareholders in advance of the June 1993 annual meeting. The proposal put to a shareholders' vote plaintiffs' request that the company provide its shareholders with information about (1) Wal-Mart's policies favoring the purchase of goods and services from female- and minority-owned suppliers, and (2) Wal-Mart's equal employment opportunity programs and data. Plaintiffs sued Wal-Mart, pursuant to § 14(a) of the Securities Exchange Act of 1934 ("SEA") and SEC Rule 14a-8. For the reasons stated in the Opinion and Order, the court ruled that Wal-Mart could not omit a revised version of plaintiffs' proposal in reliance on the SEC rule that permits omission of proposals that deal with matters relating to the conduct of Wal-Mart's ordinary business operations.

Discussion

I. Entitlement to An Award of Attorneys' Fees and Costs

A. Standard for Fee Awards in Common Benefit Cases

[HN1]In the absence of statutory or contractual authority, courts in this country generally may not award attorneys' fees to a prevailing party. See Alyeska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 247, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975). [*3] Courts have recognized an exception to this "American Rule," however, when an individual plaintiff prevails and, in doing so, confers a common benefit upon a larger group of similarly situated individuals. See, e.g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392, 24 L. Ed. 2d 593, 90 S. Ct. 616 (1970). The Supreme Court identified three conditions, which, if met, make the shifting of fees to the loser appropriate. First, the class of persons benefitted by the lawsuit must be small in number and easily identifiable. Second, the benefits must be able to be traced to the class with some accuracy. Third, there must be some reason for confidence that the costs of the litigation "could indeed be shifted with some exactitude to those benefiting." Boeing Co. v. Van Gemert, 444 U.S. 472, 478-79, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980), quoting Alyeska Pipeline Service Co., 421 U.S. at 264 n.39.

The court's authority to render an award of attorneys' fees in common benefit cases derives from the court's [*4] equitable powers and is justified by the rationale that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co., 444 U.S. at 478, citing Mills v. Electric Auto-Lite Co., 396 U.S. at 392. [HN2]In suits by a shareholder against the corporation, a court is able to avoid this inequity by charging the fees to the corporation, an appropriate surrogate for the other shareholders. See Mills, 396 U.S. at 394. See also Hall v. Cole, 412 U.S. 1, 8-9, 36 L. Ed. 2d 702, 93 S. Ct. 1943 (1973) (awarding a prevailing union member attorneys' fees out of the union treasury shifts the costs to the class that benefited and would have had to pay the fees had the class brought suit).

The Supreme Court has described [HN3]the type of benefits a litigant must confer on others in order to qualify for an award of attorneys' fees:

[A] substantial benefit must be something more than [*5] technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.

Mills, 396 U.S. at 396 (citation and internal quotation marks omitted) (emphasis added).

A. Did Plaintiffs Confer a Common Benefit on Wal-Mart's Shareholders?

1. Prevention of Fraud

Wal-Mart argues that attorneys' fees should not be awarded in this case, because plaintiffs did not prevent a fraud on Wal-Mart's shareholders. Specifically, Wal-Mart argues that had Wal-Mart omitted the proposal, plaintiffs could not have prevailed in a suit filed after the annual meeting on the claim that Wal-Mart's proxy material was rendered fraudulent because it improperly omitted plaintiffs' proposal. The prevention of fraud or of a "'deceit practiced on the shareholders as a group,'" Mills, 396 U.S. at 392, quoting J.I. Case Co. v. Borak, 377 U.S. 426, 432, 12 L. Ed. 2d 423, 84 S. Ct. 1555 (1964), [*6] is only one of the substantial benefits that one shareholder can confer on all shareholders. n1 The court need not resolve whether plaintiffs could have prevailed under Rule 14a-9's prohibition against false and misleading proxy material if they had sued Wal-Mart after the annual meeting for excluding their proposal. n2 The fact of the matter is that plaintiffs sued in advance of the annual meeting. Thus, the only issue before the court is whether, in this case, Wal-Mart's shareholders received some substantial benefit from this litigation.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 [HN4]Courts have repeatedly authorized the award of attorneys' fees in suits under Rule 14a-9 alleging a material false and misleading statement in proxy material, both before and after the meeting at which shareholder approval of a transaction is sought. See, e.g., Mills, 396 U.S. at 396-97; Osofsky v. Zipf, 645 F.2d 107 (2d Cir. 1981); United Paperworkers Int'l Union v. Int'l Paper Co., 801 F. Supp. 1134 (S.D.N.Y. 1992), modified, aff'd, 985 F.2d 1190 (2d Cir. 1993); Smillie v. Park Chemical Co., 710 F.2d 271, 275 (6th Cir. 1983).

[*7]

n2 A number of courts have observed that [HN5]the circulation of proxy materials that do not include a proper shareholder proposal renders the solicitation of proxies inherently misleading, because the proxy material purports to notify shareholders of all the issues that management anticipates will be raised at the meeting. See, e.g., Roosevelt v. E.I. du Pont de Nemours & Co., 294 U.S. App. D.C. 198, 958 F.2d 416, 422 (D.C.Cir. 1992); Wal-Mart, 821 F. Supp. at 882; New York City Employees' Retirement System v. American Brands, Inc., 634 F. Supp. 1382, 1386 (S.D.N.Y. 1986). However, in each of these cases, suit was brought prior to the circulation of the proxy material. No court has ruled that the corporation's omission of the shareholder proposal had in fact caused the proxy material to be false and misleading.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

2. Vindicating the Communication and Voting Rights of Wal-Mart's Shareholders

The Supreme Court has also held that [HN6]the vindication of a communication right is a common benefit [*8] in the labor relations context that warrants imposing a successful union member's legal fees on the union. As Justice Brennan explained: . . . there can be no doubt that, by vindicating his own right of free speech guaranteed by [the Labor-Management Reporting and Disclosure Act of 1959], respondent necessarily rendered a substantial service to his union as an institution and to all its members. When a union member is disciplined for the exercise of any of the rights protected by the [Act], the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the "chill" cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.'

Hall, 412 U.S. at 8 (citations omitted); see also Donovan v. CSEA Local Union 1000, 784 F.2d 98, 102-03 (2d Cir. 1986) (extending Hall to award of attorneys' fees to union member [*9] who intervenes in a suit by the Secretary of Labor challenging union election procedures), cert. denied, 479 U.S. 817, 93 L. Ed. 2d 30, 107 S. Ct. 74 (1986); Pawlak v. Greenawalt, 713 F.2d 972, 980 (3rd Cir. 1983) (affirming award of fees in a challenge to union's procedures for presenting referenda on by-laws), cert. denied, 464 U.S. 1042 (1984); Colpo v. General Teamsters Local Union 326, 531 F. Supp. 573, 577 (D.Del. 1982) (awarding attorneys' fees to a union member wrongly denied his voting and candidacy rights).

[HN7]The SEC's shareholder proposal rule promotes two linked interests. First, it facilitates communication among shareholders and between shareholders and management on a limited range of subjects consistent with the content-based restrictions imposed by Rule 14a-8(c). n3 Second, if a proposal is included pursuant to Rule 14a-8, shareholders receive notice of the proposal and management's position on it prior to the meeting, and also have the opportunity to exercise their franchise in voting to approve or reject (or [*10] to abstain from voting on) the proposal.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n3 Wal-Mart notes that Rule 14a-7 permits shareholders, at their own expense, to communicate with one another without the content restrictions imposed by Rule 14a-8(c). The existence of this other avenue of shareholder communication was noted by the court, see Wal-Mart, 821 F. Supp. at 882 n.5, but does not alter the fact that plaintiffs prevailed in demonstrating that their proposal met the restrictions on content and must be included in Wal-Mart's proxy materials at the corporation's expense.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Plaintiffs argue that in substantially prevailing on their motion for summary judgment, they vindicated the communication and electoral rights of Wal-Mart's shareholders, thereby conferring a benefit on all Wal-Mart shareholders. Thus, plaintiffs claim, to allow Wal-Mart's two million other shareholders to obtain full benefit from plaintiffs' efforts, without contributing equally to the litigation expenses, would enrich the other shareholders unjustly at [*11] plaintiffs' expense.

Wal-Mart responds by arguing that the litigation conferred no substantial benefit on the shareholders as a whole. Wal-Mart asserts that plaintiffs pursued grievances of individual or only limited concern. In support of this contention, Wal-Mart notes that over 90% of the shares that were voted on plaintiffs' amended proposal voted against it. Melton Dec. P 3. Wal-Mart concludes that it would be inequitable to shift plaintiffs' legal fees to the 90% of the shareholders who voted against the proposal. Wal-Mart also argues that the vast majority of its shareholders were not interested in hearing what plaintiffs had to say in their proposal or in the right to submit proposals generally.

Wal-Mart errs in minimizing the communication benefits to all shareholders secured by plaintiffs' victory. [HN8]In creating a shareholder's right to communicate at management's expense with fellow shareholders, the SEC did not condition the exercise of that right on a prior determination that (1) shareholders are interested in the merits of a particular proposal, or (2) that shareholders are generally interested in submitting proposals. The Supreme Court's decision in Hall impliedly [*12] rejects any argument that the benefit to Wal-Mart's shareholders must be evaluated according to (1) the percentage of shareholders who voted in favor of the proposal, or (2) the percentage of shareholders who value the right to communicate with each other by submitting shareholder proposals under Rule 14a-8. [HN9]The SEC has acknowledged that shareholder proposals that are opposed by management are unlikely to command a majority of votes; if a proposal carries only three percent of the vote at a meeting held within the previous three years, the proponent may resubmit the proposal and it must be included in the company's proxy materials. See 17 C.F.R. § 240.14a-8(c)(12)(i). Plaintiffs' proposal was approved by 7% of the shares present and entitled to vote at the meeting, Melton Dec. P 3, making it eligible for resubmission and inclusion next year. The fact that the proposal commanded more than twice the votes deemed necessary by the SEC to keep it in the next year's proxy materials suggests that the communication was valuable. Where the communication has such value, and in addition, where, as here, the litigation has contributed to the preservation of shareholders' communication rights [*13] generally, plaintiffs have conferred a substantial benefit upon all of Wal-Mart's shareholders.

In response, Wal-Mart argues that plaintiffs vindicated a general social grievance, which they believe, renders inappropriate an award of attorneys' fees. See Alyeska, 421 U.S. at 263-67 & n.39. In Alyeska, the plaintiffs prevailed in their claim that the impending issuance of permits to construct the trans-Alaska pipeline would violate the Mineral Leasing Act of 1920. See id., 421 U.S. at 243-44. The lower court there noted that the litigation "may well have provided substantial benefits to particular individuals and, indeed to every citizen's interest in the proper functioning of our system of government." Id., 421 U.S. at 246 n.14, quoting, 495 F.2d 1026, 1029 (D.C.Cir. 1974) (en banc). The lower court held that shifting the Wilderness Society's legal fees to the consortium of oil companies seeking to build the pipeline "would not operate to spread the costs of the litigation [*14] proportionately" among those benefiting from it. Id. In this case, as discussed above, the costs of litigation would be shared directly by the group benefiting from plaintiffs' efforts. That plaintiffs' proposal was tied to a general social grievance does not eliminate the possibility of fee shifting under the common benefit exception, so long as the conditions for applying that exception are met. In this case, the Supreme Court's three criteria are met; the benefits of this litigation flowed to a discrete group of similarly situated shareholders. See Boeing Co., 444 U.S. at 478-79. Nothing in the nature of plaintiffs' proposal or the interests that Wal-Mart claims motivated plaintiffs alters their entitlement to an award of attorneys' fees and costs.

C. Wal-Mart's Good Faith Reliance on No-Action Letter Process

Wal-Mart also argues that awarding plaintiffs attorneys' fees in this case would undermine (1) the SEC's informal procedure for resolving whether a shareholder proposal must be included, and (2) the immunity conferred on parties who rely in good faith on the rules, regulations, or orders of the SEC. See 15 U.S.C. § 78w [*15] (a)(1) n4 Neither of these arguments is persuasive on the issue of a prevailing party's entitlement to an award of attorneys' fees.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n4 This section provides in pertinent part:No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation or order of the

Commission. 15 U.S.C. § 78w(a)(1) (Supp. 1993).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

At the outset, the court notes that [HN10]the bad faith of a losing party does not bear on the court's equitable powers to award attorneys' fees in common benefit cases; nor does a losing party's good faith opposition to a plaintiff's claims insulate a defendant from responsibility for plaintiff's legal fees. See Hall, 412 U.S. at 15 ("neither the presence nor absence of 'bad-faith' is in any sense dispositive where attorneys' fees are awarded to the successful plaintiff under the 'common benefit' rationale").

As discussed in greater detail [*16] in the court's Opinion and Order, [HN11]a court may disagree with an SEC no-action position and may require inclusion of a shareholder proposal, see Wal-Mart, 821 F. Supp. at 884-86, because an individual no-action letter does not rank as a "rule, regulation or order" of the SEC, and reliance on a no-action letter does not provide immunity from liability under 15 U.S.C. § 78w(a)(1). Immunity from monetary liability has been conferred only where the defendant relied on an SEC position that was more formally adopted or more consistently held than the no-action letters issued here. See Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1293-94 (2d Cir. 1973); Colema Realty Corp. v. Bibow, 555 F. Supp. 1030, 1040 (D.Conn. 1983). Further, in opposing plaintiffs' motion for summary judgment, Wal-Mart did not argue that it was immune from any injunctive relief for omitting plaintiffs' proposal. The court is not aware of any authority for such an immunity. The court, therefore, finds that neither the SEC's informal procedures to review shareholder proposals nor § [*17] 78w(a)(1) prevents the court from awarding attorneys' fees to plaintiffs.

D. Improper Expansion of Implied Right of Action

Last, Wal-Mart argues that the court would inappropriately expand the implied rights of shareholders to seek inclusion of their proposals by permitting them also to recover attorneys' fees. The court is mindful of the reluctance of the judiciary to expand the rights inferred from Congressional silence, see Virginia Bankshares, Inc. v. Sandberg, 115 L. Ed. 2d 929, 111 S. Ct. 2749, 2763-64 (1991); however, [HN12]the application for an award of attorneys' fees cannot be viewed as a distinct cause of action separate from the claim in the underlying litigation. In concluding that plaintiffs are entitled to an award of attorneys' fees, the court is not establishing new rights, but is applying existing legal standards to new factual circumstances. A concern similar to Wal-Mart's concern on this issue was addressed by the Supreme Court in Mills, where Justice Harlan wrote:

We agree with the Second Circuit that [HN13]the specific provisions in §§ 9(e) and 18(a) [for the recovery of attorneys' fees] should not be read as denying [*18] to the courts the power to award counsel fees in suits under other sections of the [Securities Exchange Act of 1934] when circumstances make such an award appropriate, any more than the express creation by those sections of private liabilities negates the possibility of an implied right of action under § 14(a).

Mills, 396 U.S. at 390-91. Thus, awarding plaintiffs attorneys' fees in this case would not impermissibly expand the implied rights of plaintiffs to sue corporations for excluding their shareholder proposals.

For all the reasons stated above, the court finds that plaintiffs conferred a substantial benefit on the shareholders of Wal-Mart in vindicating the communication and voting rights of all of Wal-Mart's shareholders. In light of the benefits conferred, Wal-Mart's shareholders should share in the costs of this litigation through the vehicle of the court assessing plaintiffs' reasonable attorneys' fees and costs against Wal-Mart.

II. Calculation of Fees and Costs Awarded

Plaintiffs seek recovery for the time spent by two lawyers on this case, Cornish F. Hitchcock, Esq., an attorney with Public Citizen Litigation [*19] Group in Washington D.C., and Paul M. Neuhauser, Esq., a professor of law at the University of Iowa College of Law. Wal-Mart does not challenge the number of hours logged by each lawyer, n5 his hourly rate n6 or the out-of-pocket expenses incurred by plaintiffs. The court finds the rate of compensation and the number of hours claimed by each attorney reasonable in this case. The parties, therefore, agree on a total lodestar of $ 54,140.00 ($ 41,327.50 through the entry of judgment, plus an additional $ 12,812.50 for the fee application). In the alternative, and in lieu of an award for time spent preparing the fee application, Plaintiffs seek a .5 multiplier on the lodestar on the hours logged prior to the fee application, for a total award of $ 61,991.25. n7 Thus, the parties' disagreement over the calculation of the fee involves only $ 7,851.25. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n5 Mr. Hitchcock logged 103.75 hours until judgment was entered, Hitchcock Aff.

P 6, followed by an additional 51.25 hours preparing the fee application and replying to Wal-Mart's brief on the issue. Hitchcock Supp. Aff. P 2.

Mr. Neuhauser logged a total of 54 hours. Neuhauser Aff. P 4.

[*20]

n6 Counsel for plaintiffs proposed hourly rates based upon the matrix used by the U.S. Department of Justice in calculating reasonable attorneys' fees in statutory fee shifting cases. The matrix suggested an hourly rate for Mr. Hitchcock of $ 250 per hour based upon his 15 years of litigation experience, and an hourly rate for Mr. Neuhauser of $ 285 per hour based upon his 30 years of specialized experience in the securities field.

n7 Plaintiffs acknowledge that in traditional common fund cases, they may not recover attorneys' fees for the time spent in connection with the fee application. Pl. Mem. Supp. at 11 n.1, citing Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 111 (3rd Cir. 1976) (en banc). Such expenses are implicitly covered through the award of a multiplier. By contrast, in common benefit cases, where no fund is established, courts have awarded successful litigants fees for the preparation of the fee application. See Pawlak, 713 F.2d at 984 (awarding fees for fee application where plaintiffs vindicated free speech rights of union members).

n8 It is of course understood that the fact that Wal-Mart does not challenge the total hours logged by, or proposed hourly rates of, plaintiffs' counsel does not waive their objection to any award of attorneys fees in this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*21]

With respect to plaintiffs' entitlement to a multiplier, the Supreme Court held that [HN14]an award of the lodestar without a multiplier enhancement fully reflects the following factors (which are among those that plaintiffs claim entitle them to an enhancement over the lodestar): (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of the representation; and (4) the results obtained from the litigation. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986); Kronfeld v. Transworld Airlines, Inc., 129 F.R.D. 598, 608 (S.D.N.Y. 1990). In support of an enhancement over and above the lodestar calculation, plaintiffs also point to (1) the fact that counsel acted without a fee, and (2) the public interest in this litigation. This argument is unavailing.

First, in City of Burlington v. Dague, 120 L. Ed. 2d 449, 112 S. Ct. 2638, 2643-44 (1992), the Supreme Court ruled out [HN15]the use of multipliers in statutory fee shifting cases by [*22] holding that a multiplier was not justified based upon a contingency risk. Plaintiffs argue that because this is a fee sharing case, rather than a fee shifting case, they are still entitled to a multiplier. However, as one court observed, "the overriding purpose of fee shifting statutes, to ensure adequate representation in socially desirable litigation, is identical to the ultimate rationale of the equitable fund [or common benefit] doctrine." In Re Bolar Pharmaceutical Co. Secur. Litigation, 800 F. Supp. 1091, 1096 n.7 (E.D.N.Y. 1992). This purpose is fully served by the lodestar equation, which accounts for the risk counsel take in providing representation without a fee. Id. at 1096-97 (citing Burlington, 112 S. Ct. 2638). Enhancement of the lodestar figure would double-count counsel's risk-taking. Id. at 1097. Therefore, the court declines plaintiff's request for enhancement on this ground.

As to plaintiff's second contention, the public policy considerations in this litigation are not a factor justifying enhancement of the award of attorneys' fees over and above [*23] the amount that would be awarded in a fee shifting case. Even in cases where Congress finds sufficient public interest that it specifically encourages litigation by providing a statutory fee shifting mechanism, courts have rejected a multiplier. Where, as here, Congress has not taken such steps to encourage litigation, there is no basis for providing any multiplier.

Conclusion

For the reasons stated above, the court grants plaintiffs' application for an award of attorneys' fees in the amount of $ 54,140.00 and costs in the amount of $ 768.93.

SO ORDERED.

Dated: New York, NY
March 7, 1994

Kimba M. Wood

1994 U.S. Dist. LEXIS 2548

United States District Judge