# EXHIBIT 4

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 2 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

JOHN REITER, Plaintiff, -v.- METROPOLITAN TRANSPORTATION AUTHORITY OF THE STATE OF NEW YORK, MTA NEW YORK CITY TRANSIT, and MYSORE L. NAGARAJA, P.E., Individually and as Senior Vice President and Chief Engineer, Defendants.

01 Civ. 2762(GWG)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

September 10, 2004, Decided
September 14, 2004, Filed

**SUBSEQUENT HISTORY:** Application granted by, Costs and fees proceeding at, Judgment entered by Reiter v. Metro. Transp. Auth. of N.Y., 224 F.R.D. 157, 2004 U.S. Dist. LEXIS 18168 (S.D.N.Y., Sept. 10, 2004)

**PRIOR HISTORY:** Reiter v. Metro. Transp. Auth. of N.Y., 2003 U.S. Dist. LEXIS 17391 (S.D.N.Y., Sept. 30, 2003)

**DISPOSITION:** Court determined amount of costs and fees to which Plaintiff was entitled.

## CASE SUMMARY

**PROCEDURAL POSTURE:** The court concluded that plaintiff prevailing party was entitled to an award of attorney's fees and court costs in an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. The prevailing party sought attorney's fees in the amount of $ 457,155 for 1713.30 hours of work performed by three attorneys who represented him during his court proceedings, and court costs in the amount of $ 12,090.72.

**OVERVIEW:** Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., the prevailing party could recover a reasonable attorney's fee, including an expert fee, as part of the costs. 42 U.S.C.S. § 2000e-5(k). The court eliminated 8.1 hours attributable to the attorneys' work because of a decimal point that was placed in the wrong place on the time records, reduced the time spent by the attorneys preparing a waiver of service for deposition witnesses, and reduced the time spent by the attorneys drafting five deposition notices because it was excessive and duplicative. The prevailing party had not met his burden of justifying the claimed rates of $350/hour for any of the attorneys where his request for attorney's fees did not disclose what hourly rate any of the attorneys charged to paying clients, and the only direct evidence submitted by the prevailing party on that question was the retainer agreement, which provided only for $ 175/hour for "in office" work. Therefore, the court found that the $ 175/hour rate reflected in the retainer agreement was a reasonable rate, and that adjustment of the rate to $200/hour was appropriate to account for the delay factor.

**OUTCOME:** The prevailing party's reasonable attorney's fees and court costs amounted to $ 17,075.42.

**CORE TERMS:** retainer agreement, hourly rate, lodestar, reasonable rate, reproduced, reduction, years of experience, equitable relief, overhead, reasonable fee, reasonableness, prevailing, excessive, hourly, market rate, case law, customary, hours worked, fee award, out-of-office, contingency, adjusting, quotation, expended, spent, employment discrimination, civil rights, preparing, one-third, undated

**LexisNexis(TM) Headnotes**

*Labor & Employment Law > Discrimination > Title VII*

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

[HN1]A prevailing party in an action under Title VII the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. may recover a reasonable attorney's fee, including expert fees, as part of the costs. 42 U.S.C.S. § 2000e-5(k). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The result of this calculation is commonly called the lodestar amount and is presumed to be a reasonable fee.

*Labor & Employment Law > Discrimination > Title VII*

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

[HN2]In the context of an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., because there is no rule that limits attorney's fees to a

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 3 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

proportion of the damages ultimately awarded, the fee award may exceed the amount of damages. Nonetheless, a court is required to consider the amount of damages awarded as compared to the amount sought in evaluating the reasonableness of a claim for attorney's fees.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

[HN3]The amount of attorney's fees awarded is within the discretion of the court. The fee applicant has the burden of submitting evidence to support the hours worked and the rates claimed.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN4]In the context of a claim for attorney's fees, the law requires that if a court finds that claimed hours are excessive, redundant, or otherwise unnecessary, it should exclude those hours from its lodestar calculation.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN5]To determine a reasonable fee rate, absent special circumstances a court should consider the prevailing rates in the district where the action was commenced and litigated. A reasonable rate should be set "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Where litigation spans a number of years, the reasonable hourly rate should be adjusted to account for the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. Significantly, the fee applicant bears the burden of establishing the reasonableness of the hourly rates requested, specifically, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN6]It is well-settled that an attorney's customary rate is a significant factor in determining a reasonable rate. Indeed, as a logical matter, the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN7]Case law reveals that in the absence of language in a retainer agreement indicating that the rates referred to were in some way reduced in light of the financial circumstances of the plaintiff, or for whatever reason not the normal market rate the attorney's receive, the retainer agreement is an appropriate reflection of the reasonable, and expected, hourly rate.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN8]Courts have recognized that the size of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable attorney's fee, largely because of overhead costs.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN9]Case law reflects that, in order to account for the fact that market rates may increase over time, a court may deviate from the rate listed in a retainer agreement where litigation is protracted, though that usually occurs where the retainer agreement specifically provides for an increase of rates. Even if the agreement does not indicate that rates would be increased over time, it is appropriate to adjust a reasonable rate to account for the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

[HN10]The "lodestar" amount, which is presumed to be a reasonable fee, is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*

*Civil Procedure > Costs & Attorney Fees > Attorney Fees*

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 4 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

[HN11]Although there is a strong presumption that the lodestar represents the reasonable fee, adjustments may be warranted based upon, inter alia, the extent of success in the litigation and the degree of risk associated with the claim. Indeed, a court is required to consider the amount of damages awarded as compared to the amount sought in evaluating the reasonableness of a claim for attorney's fees. That is true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. However, there is no precise rule or formula for adjusting the lodestar amount to account for limited success and it is a matter committed to the discretion of the court. The party requesting a departure from the lodestar amount has the burden of establishing the propriety of such a departure.

*Civil Procedure > Settlements > Offers of Judgment*

[HN12]Parties should be encouraged to settle early, even at the expense of giving up a large portion of their overall claims, and thus should be encouraged to accept a favorable Fed. R. Civ. P. 68 offer.

**COUNSEL:** [*1] For Plaintiff: Gregory G. Smith, Esq., Gregory Smith & Associates, New York, NY.

For Defendant New York City Transit Authority: Steven M. Stimell, Esq., Bryan Cave LLP, New York, NY.

**JUDGES:** GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

**OPINIONBY:** GABRIEL W. GORENSTEIN

**OPINION: MEMORANDUM DECISION**

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

By Opinion and Order issued this date, familiarity with which is assumed, this Court concluded that plaintiff John Reiter is entitled to an award of attorney's fees and court costs incurred up to and including July 27, 2001. This decision determines the amount of such fees and costs.

I. APPLICABLE LEGAL PRINCIPLES

[HN1]A prevailing party in an action under Title VII may recover "a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); accord Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 95 (2d Cir. 2004) [*2] (per curiam) (citing Blum v. Stenson, 465 U.S. 886, 888, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), cert. denied, 506 U.S. 1053, 122 L. Ed. 2d 132, 113 S. Ct. 978 (1993) The result of this calculation is commonly called the "lodestar" amount and is presumed to be a reasonable fee. See, e.g., Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763-64 (2d Cir. 1998); 601 W. Assocs. v. Kleiser-Walczak Constr. Co., 2004 U.S. Dist. LEXIS 8920, 2004 WL 1117901, at *3 (S.D.N.Y. May 18, 2004).

[HN2]Because there is no rule that limits attorney's fees to a proportion of the damages ultimately awarded, the fee award may exceed the amount of damages. See, e.g., Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997); Lunday v. City of Albany, 42 F.3d 131, 134-35 (2d Cir. 1994) (per curiam); Grant, 973 F.2d at 101-02; see also, e.g., Bridges v. Eastman Kodak Co., 102 F.3d 56, 57-58, 60 (2d Cir. 1996) (upholding a fee award of $ 753,202.99 in a Title VII case where only [*3] $ 117,429.27 in damages was recovered), cert. denied, 520 U.S. 1274, 138 L. Ed. 2d 211, 117 S. Ct. 2453 (1997). Nonetheless, a court is required to consider "'the amount of damages awarded as compared to the amount sought'" in evaluating the reasonableness of a claim for attorney's fees. Farrar v. Hobby, 506 U.S. 103, 114, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992) (quoting City of Riverside v. Rivera, 477 U.S. 561, 585, 91 L. Ed. 2d 466, 106 S. Ct. 2686 (1986) (Powell, J., concurring)).

[HN3]The amount of attorney's fees awarded is within the discretion of the Court. See, e.g., Hensley, 461 U.S. at 433, 437; Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164, 127 L. Ed. 2d 539, 114 S. Ct. 1189 (1994). The fee applicant has the burden of submitting evidence to support the hours worked and the rates claimed. See, e.g., Hensley, 461 U.S. at 433; 601 W. Assocs., 2004 U.S. Dist. LEXIS 8920, 2004 WL 1117901, at *3.

II. DISCUSSION

Reiter seeks attorney's fees in the amount of $ 457,155 -- for 1713.30 hours of work performed by three attorneys who represented him during his court proceedings -- and court costs in the amount [*4] of $ 12,090.72. See Motion for Attorney's Attorney's [sic] Fees and Costs, filed November 12, 2003 (Docket # 93) ("Pl. Mot."). Because Reiter may not recover fees incurred subsequent to the making of the Offer of Judgment ("Offer"), see Opinion and Order, dated

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 5 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

September 10, 2004, the Court considers only Reiter's claim to fees and costs incurred up to and including July 27, 2001.

A. Court Costs

Up to and including July 27, 2001, Reiter incurred court costs totaling $ 191.67. See John Reiter v. MTA Litigation Expenses, undated (reproduced as Ex. 3 to Pl. Mot.), at 1. Defendant the New York City Transit Authority ("NYCTA") makes no argument that any of these court costs were unreasonable, see Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, filed March 3, 2004 (Docket # 105) ("Def. Mem."), at 35-36, nor does the Court see any basis for such an argument. Accordingly, Reiter is entitled to reimbursement from the NYCTA of $ 191.67 in court costs.

B. Attorney's Fees

Three attorneys performed work on Reiter's case prior to July 28, 2001: Gregory G. Smith (71 hours), Janet J. Lennon (23.6 hours), and Charlesa [*5] E. London (1.75 hours). See Ex. 2 to Pl. Mot. ("Hourly Summaries"). Reiter submits that Smith's and Lennon's time should be reimbursed at a rate of $ 350/hour and London's time at $ 150/hour. See Memorandum of Points and Authorities in Support of Motion for Attorney's Fees and Expenses, filed November 12, 2003 (Docket # 94) ("Pl. Mem."), at 2-3 (citing Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000)). The NYCTA disputes both the number of hours and the rates claimed. See Def. Mem. at 14-33.

1. Reasonable Hours Expended

[HN4]The law requires that if a court finds that claimed hours are excessive, redundant, or otherwise unnecessary, it should exclude those hours from its "lodestar" calculation. See, e.g., Hensley, 461 U.S. at 434; Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997); Cowan v. Ernest Codelia, P.C., 2001 U.S. Dist. LEXIS 185, 2001 WL 30501, at *8 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 Fed. Appx. 36, 2002 WL 31478922 (2d Cir. Nov. 1, 2002). Here, the NYCTA argues that the number of hours Reiter has claimed is excessive. See Def. Mem. at 20-32. Most of [*6] the NYCTA's arguments concern hours accrued subsequent to its making of the Offer on July 27, 2001 and thus need not be addressed. At issue are only the 96.35 hours accrued prior to July 28, 2001. The NYCTA argues that certain of these hours should be eliminated, see id. at 22-25, and that the hours in general should be reduced across-the-board, see id. at 25-32.

a. Hours to be eliminated. The only argument the NYCTA has for elimination of pre-July 28, 2001 hours is a single alleged discrepancy between Reiter's counsel's contemporaneous time records and the summaries of those time records. See id. at 25. The NYCTA contends that on June 29, 2001, Smith's time records show that he worked for .9 hours whereas the summary document states that he worked for 9 hours. See id.; see also Hourly Summaries at 4 ("9.0" hours worked on June 29, 2001 to "draft[] Plaintiff's first req. for interrogs and docs[]"); Time Records, various dates (reproduced as Ex. 12 to Affirmation of Steven M. Stimell in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, filed March 3, 2004 (Docket # 104) ("Stimell Affirm.")), at 3 (".9" hours worked on June 29, 2001 to "draft[]'s [*7] 1st Req. for interrogs & doc req.").

The Court has examined Smith's time records and the summaries of those time records. It appears that a decimal point was put in the wrong place when the time records were summarized. Reiter had the opportunity to address this discrepancy in his reply papers yet did not do so. Accordingly, the Court eliminates 8.1 hours attributable to Smith's work.

b. Hours to be reduced. The NYCTA argues that it is entitled to a reduction of the total number of hours claimed for various reasons, to which the Court now turns.

The NYCTA claims that the following three pre-July 28, 2001 time entries were "excessive and duplicative": (1) on April 21, 2001, 3 hours by Smith preparing waivers of service for deposition witnesses; (2) on June 23, 2001, 2 1/2 hours by Smith drafting five deposition notices; and (3) on March 8, 2000, 1 1/2 hours by Lennon reviewing Reiter's file and any available information concerning his Equal Employment Opportunity Commission ("EEOC") complaint. See Def. Mem. at 26 & nn.22-23. The NYCTA provides no arguments directed at each individual entry but rather states generally that they are "excessive, redundant, or otherwise unnecessary, [*8] " id. at 26. Likewise, Reiter -- who bears the burden of justifying his claim for fees -- provides no arguments directed at these entries. See Plaintiff's Memorandum of Law in Reply in Further Support of His Motion for Attorneys' Fees and Costs, filed May 3, 2004 (Docket # 112) ("Pl. Reply Mem."), at 19-20. After consideration of the entries, the Court concludes that two are excessive in relation to the tasks described and thus makes the following adjustments: (1) the April 21, 2001 entry is reduced to 2 hours; and (2) the June 23, 2001 entry is reduced to 1 hour.

The NYCTA next claims that hours should be reduced generally because of Reiter's "shotgun approach to

Case 3:03-cv-00149-WIG    Document 140-5    Filed 03/29/2005    Page 6 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

litigation." Def. Mem. at 28. The NYCTA's argument is that Reiter "wasted significant amounts of time pursuing numerous unsuccessful claims" and thus should not be compensated for any time not "intertwined with" his one successful claim. Id. The NYCTA correctly notes that numerous claims brought by Reiter were dismissed prior to trial on summary judgment, including claims of discrimination based on race and marital status and his claim that he was retaliated against based on his wife's complaints of discrimination. [*9] See Reiter v. Metro. Transp. Auth., 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *5-*14 (S.D.N.Y. Sept. 30, 2002).

The NYCTA's argument, however, has little applicability to pre-July 28, 2001 hours. The Court has examined all of counsel's pre-July 28, 2001 hours and none of the entries appear to have been incurred for work on any specific claim. Rather, the work -- such as preparing the complaint, demands for discovery, and responses to NYCTA's discovery demands -- would have had to have been done even if Reiter had brought only the single retaliation claim upon which he ultimately succeeded at trial. Thus, during the pre-July 28, 2001 period, "much of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," Hensley, 461 U.S. at 435. While there may have been some additional drafting time required to list claims for relief in the complaint that turned out to be unmeritorious, the Court does not deem it necessary, given the small number of hours at issue, to attempt to estimate the hours relating to such claims. As a result, there is no reason to reduce counsel's hours based upon the [*10] inclusion of the unmeritorious claims.

Accordingly, for purposes of calculating the lodestar amount, counsel's reasonable hours are as follows: (1) Smith -- 60.4 hours (reflecting the reductions of 8.1, 1.0, and 1.5 hours); (2) Lennon -- 23.6 hours (no reduction); and (3) London -- 1.75 hours (no reduction).

2. Reasonable Hourly Rate

[HN5]To determine a reasonable fee rate, absent special circumstances a court should consider the prevailing rates in the district where the action was commenced and litigated. See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n, 369 F.3d at 94, 96-97; Luciano, 109 F.3d at 115-16; Polk v. N.Y.S. Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). A reasonable rate should be set "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11; accord Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998); see Miele v. N.Y.S. Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987) (to determine reasonableness [*11] of hourly rates, court may rely on its own knowledge of hourly rates in the community). Where litigation spans a number of years, the reasonable hourly rate should be adjusted to account for "the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 282, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989) (internal quotation marks and citation omitted); accord Raniola v. Bratton, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003). Significantly, the fee applicant bears the burden of establishing the reasonableness of the hourly rates requested -- specifically, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community. Blum, 465 U.S. at 895 n.11.

The NYCTA argues that the hourly rates submitted by Reiter -- $ 350/hour for Smith and Lennon, $ 150/hour for London -- are unreasonable. See Def. Mem. at 15-20. To support his claimed rate, Smith avers that he has "extensive experience" in "general trial practice with an emphasis in representing individual employees in all areas of [*12] employment law" and that he has "represented employees who have been discriminated against on the basis of age, race and gender in both the Southern and Eastern Districts of New York." Affiramtion [sic] of Gregory G. Smith in Support of Motion for Attorney's Fees and Expenses, dated November 12, 2003 ("Smith Affirm.") (reproduced in Pl. Mot.), P 4. He has maintained his own private practice since 1995. See id. Lennon indicates that her practice is concentrated in the areas of criminal law, corporate law, and civil litigation. See Resume of Janet J. Lennon, undated ("Lennon Resume") (reproduced as Ex. 1 to Pl. Mot.), at 1. Lennon has "had numerous trials in state and federal court" and has "completed several employment discrimination cases in the Southern and Eastern Districts of New York all but the instant case settling out of court for money damages." Pl. Reply Mem. at 16. In addition, shehas been doing civil rights litigation since 1981 as an attorney with Davis Polk & Wardwell. [She] is a Yale Law School graduate. She has tried many cases as a trial attorney and a trial bureau chief in the City of New York Special Narcotic Prosecutors [sic] Office. She has [*13] supervised trial division prosecutors as the [Chief] of Narcotic Prosecutions for the Manhattan District Attorney's office She has overseen civil rights litigation, including employment discrimination cases brought against members of the New York City Police Department. All in addition to the private cases [she

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 7 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

and Smith] have jointly prosecuted. Id. at 16-17. Less information has been provided concerning London. It would appear from her resume that she was admitted to the New York State Bar in either 2000 or 2001 and that, prior to becoming employed with Smith's solo practice in September 2001, she worked at a New York City firm handling largely criminal matters. See Resume of Charlesa E. London, undated ("London Resume") (reproduced as Ex. 1 to Pl. Mot.), at 1.

After a review of Reiter's submissions and of case law in this district, the Court concludes that Reiter has not met his burden of justifying the claimed rates for any of the attorneys. [HN6]It is well-settled that an attorney's customary rate is a significant factor in determining a reasonable rate. See, e.g., Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003); Fink v. City of New York, 154 F. Supp. 2d 403, 406 (E.D.N.Y. 2001); [*14] In re Masterwear Corp., 233 B.R. 266, 278 (Bankr. S.D.N.Y. 1999); see also Blum, 465 U.S. at 895 n.11 (where client is represented by non-profit counsel, the rate customarily charged by counsel in private representations can be useful in determining an appropriate hourly rate). Indeed, as a logical matter, the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate. See, e.g., Anderson v. YARP Restaurant, 1997 U.S. Dist. LEXIS 1106, 1997 WL 47785, at *2 (S.D.N.Y. Feb. 6, 1997); Lilly v. County of Orange, 910 F. Supp. 945, 949 (S.D.N.Y. 1996); Meriwether v. Coughlin, 727 F. Supp. 823, 831 (S.D.N.Y. 1989). Inexplicably, the affidavits submitted by counsel in support of Reiter's request for attorney's fees do not disclose what hourly rate any of the attorneys charges to paying clients. Rather, the only direct evidence submitted by Reiter on this question is the retainer agreement in this very case, which provides only for $ 175/hour for "in office" work and $ 200/hour for "out-of-office" work. Attorney Client Retainer Agreement, dated March 10, 2000 ("Retainer Agreement") (reproduced [*15] as Ex. 2 to Stimell Affirm.), at 1.

Reiter's counsel justifies the higher rate of $ 350/hour on only two bases: (1) the conclusory contention that this rate is within the range of rates charged by other attorneys with comparable experience, see Smith Affirm. P 8 -- a contention that does not take into account the overhead costs of such other attorneys as compared with those of Reiter's counsel; and (2) the contention that Reiter's attorneys "would have charged a higher rate if there was not [a] contingency provision in the [retainer] agreement," Pl. Reply Mem. at 12; see Retainer Agreement at 1. However, these explanations provide no evidence as to an appropriate market rate for Reiter's counsel. Reiter has thus failed to meet his burden "to produce satisfactory evidence in addition to the attorney's own affidavits showing that the requested rates are at the prevailing market level," Paulino v. Upper West Side Parking Garage, Inc., 1999 U.S. Dist. LEXIS 7544, 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999) (citing, inter alia, Blum, 465 U.S. at 895 n.11). As a result, the Court will "look[] to the retainer agreement as evidence of the appropriate historic market [*16] rate at the start of the litigation," Saulpaugh, 4 F.3d at 146.

According to the retainer agreement agreed to by Reiter, attorneys were to be paid at a rate of $ 175/hour for "in office" work and $ 200/hour for "out-of-office" work. Retainer Agreement at 1. The agreement also provided for additional fees in the event that one-third of the recovery exceeded the total fees charged based on the hourly rates, see id. -- a provision that did not come into play in this case due to the minimal award, see Pl. Reply Mem. at 13. No distinction was made in the agreement as to particular attorneys. Counsel has indicated that Reiter was billed at a rate of $ 175/hour, apparently without differentiating between "in office" work and "out-of-office" work. See Smith Affirm. P 9. In any event, virtually all of the hours at issue (i.e., those incurred prior to July 28, 2001) appear to have involved "in office" work. This evidence would afford a presumption that a reasonable rate is $ 175/hour -- the rate actually charged Reiter.

While Reiter's counsel have asserted that they charged $ 175/hour because Reiter could not afford to pay more, id. PP 9-10; accord [*17] Affirmation of Janet Lennon in Support of Motion for Attorney's Fees and Expenses, dated November 12, 2003 ("Lennon Affirm.") (reproduced in Pl. Mot.), P 6, counsel do not reveal what they would have charged Reiter otherwise. Nor do they reveal what they charge other clients, instead stating merely that $ 350/hour "is an appropriate rate," Lennon Affirm. P 6; accord Smith Affirm. P 8. In addition, [HN7]case law reveals that "in the absence of language in a retainer agreement indicating that the rates referred to were in some way reduced in light of the financial circumstances of the plaintiff, or for whatever reason not the normal market rate the attorney's receive, the retainer agreement is an appropriate reflection of the reasonable, and expected, hourly rate." Parrish, 280 F. Supp. 2d at 170; accord Vernon v. Port Auth. of N.Y. & N.J., 220 F. Supp. 2d 223, 230 (S.D.N.Y. 2002) (rejecting employment discrimination plaintiff's request for attorney's fees at a rate of $ 250/hour where the retainer agreement provided for a rate of only $ 200/hour and noting that "it would be inappropriate for an attorney to seek from an adversary a greater sum than what [*18] would have been charged to his client"); Fink, 154 F. Supp. 2d at 406-07 (because retainer agreement specifically indicated that plaintiff was being charged a reduced

Case 3:03-cv-00149-WIG    Document 140-5    Filed 03/29/2005    Page 8 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

rate in light of his financial condition, court looked to the attorney's customary rate, and not to the rate listed in the retainer agreement, as evidence of the reasonable rate); Anderson, 1997 U.S. Dist. LEXIS 1106, 1997 WL 47785, at *1, *3 (where plaintiff claimed a rate of $ 225/hour, but retainer agreement specified that $ 195/hour constituted the "normal hourly rate[]," court held that reasonable hourly rate was $ 195/hour). Nor does the Court view counsel's potential recovery of additional fees if the damages award were large enough (that is, the one-third contingency payment) as demonstrating that $ 175/hour was not a reasonable rate. This is particularly true in the instant case where counsel asserts that Reiter's judgment represents an "excellent result[]," Pl. Reply Mem. at 22, and shows that "[Reiter] received essentially everything he set out to receive," id. at 20, thus suggesting that counsel understood that the one-third contingency payment contemplated in the retainer agreement would likely [*19] never occur. In other words, counsel obviously sought through the retainer agreement to receive compensation based upon the hourly rate.

Reiter cites to Marisol A. to support his claimed rates. See Pl. Mem. at 2-3; Pl. Reply Mem. at 17. There, the court surveyed case law from this district to determine whether certain claimed rates were reasonable. See 111 F. Supp. 2d at 386-87. The court concluded:

After researching recent fee awards in civil rights cases, the Court finds that a reasonable rate scale is as follows: $ 350 for attorneys with more than fifteen years of experience, $ 300 for attorneys with ten to fifteen years of experience, $ 230-250 for attorneys with seven to nine years of experience, $ 180-200 for attorneys with four to six years of experience, and $ 130-150 for attorneys with one to three years of experience.

Id. at 386. Thus, Reiter claims that Smith is entitled to $ 350/hour for his over 15 years of experience in trial litigation, that Lennon is entitled to $ 350/hour for her over 20 years of experience in trial litigation, and that London is entitled to $ 150/hour for her unspecified number of years of experience [*20] that falls "within the range stated in [Marisol A.]" Pl. Mem. at 2-3.

The Court does not believe that Marisol A. has any bearing on this case, given the existence of the retainer agreement and Reiter's failure to disclose his attorneys' customary rates. In any event, even that case does not support the rates Reiter seeks. Marisol A. does not discuss the size of the firms involved or other overhead costs of the practitioners. Here, by contrast, Smith was a solo practitioner until September 2001, at which time London became his associate. See London Resume at 1; see also http://www.gregorysmithlawfirm.com (last visited Sept. 8, 2004) (showing Smith to be the sole member of his firm). In addition, it appears that Lennon had her own practice at all times during this litigation. See Lennon Resume at 1. [HN8]Courts have recognized that the size of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable attorney's fee, largely because of overhead costs. See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (noting that the size of an attorney's firm is relevant [*21] in determining the relevant community's "prevailing market rates" and that "smaller firms may be subject to their own prevailing market rate"), cert. denied, 496 U.S. 905, 110 L. Ed. 2d 268, 110 S. Ct. 2587 (1990); Smith v. Wettenstin, 2003 U.S. Dist. LEXIS 22649, 2003 WL 22966281, at *3 (S.D.N.Y. Dec. 16, 2003) ("As a single practitioner, [plaintiff's attorney] does not face the overhead of the larger firms and hence his compensation is -- all other things being equal -- appropriately set at a lower rate."); Raniola, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *6 n.10 ("The size of the firm is deemed to be pertinent [in calculating a reasonable hourly rate] because larger law firms are assumed to carry a larger overhead, thus necessitating a higher hourly rate."); Algie v. RCA Global Communication, Inc., 891 F. Supp. 875, 895 (S.D.N.Y. 1994) ("If the movant is represented by a small or medium-size firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead."), aff'd, 60 F.3d 956 (2d Cir. 1995). [*22]

Accordingly, the Court adheres to its view that the $ 175/hour rate reflected in the retainer agreement was a reasonable rate at the time the agreement was signed. Nonetheless, [HN9]case law reflects that, in order to account for the fact that market rates may increase over time, a court may deviate from the rate listed in a retainer agreement where litigation is protracted, though this usually occurs where the retainer agreement specifically provides for an increase of rates. See, e.g., Sands v. Runyon, 28 F.3d 1323, 1334-35 (2d Cir. 1994); Saulpaugh, 4 F.3d at 146; Parrish, 280 F. Supp. 2d at 170. Here, the retainer agreement was signed in March 2000. While the agreement does not indicate that rates would be increased over time, it is appropriate to adjust a reasonable rate to account for "the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value," Agyei, 491 U.S. at 282; accord Raniola, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *6. In March 2000, when Reiter entered into the retainer agreement, the Consumer

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 9 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

Price Index for All Urban [*23] Consumers ("CPI") in the New York region was 181.5. The most recent CPI available, for July 2004, was 205.5. n1 This reflects an inflation of prices over this period of approximately 13.2%. Accordingly, the hourly rate may appropriately be increased to $ 200/hour.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 These figures appear on the Bureau of Labor Statistics website, at http://www.bls.gov/cpi. The data for the New York region is available at http://data.bls.gov/cgi-bin/surveymost?cu (last visited Sept. 8, 2004).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Exceptions to the $ 200/hour rate are warranted in some limited instances, however, because some of Smith's time was spent on clerical work. On June 19, 2000, Smith spent .5 hours preparing, copying, and sorting Reiter's second EEOC complaint. See Hourly Summaries at 3. In addition, on April 2, 2001, he spent .4 hours filing Reiter's federal complaint. See id. These .9 hours are reimbursable only at the rate of $ 50/hour. See generally Cooper v. Sunshine Recoveries, Inc., 2001 U.S. Dist. LEXIS 8938, 2001 WL 740765, at *4 (S.D.N.Y. June 27, 2001) [*24] (attorney's clerical work compensable at reduced rate of $ 50/hour); Greenbaum v. Svenska Handelsbanken, N.Y., 998 F. Supp. 301, 304 (S.D.N.Y. 1998) (same); Luciano v. Olsten Corp., 925 F. Supp. 956, 965-66 (E.D.N.Y. 1996) (same), aff'd, 109 F.3d 111 (2d Cir. 1997).

As for London, Reiter has similarly provided no evidence of her customary rate. It does not appear that her time was billed in accordance with the retainer agreement, as Reiter is claiming a rate of only $ 150/hour for her time while the retainer agreement permits billing of $ 175/hour. Nevertheless, London's time must be valued. Given that she is far junior to Smith and Lennon, the Court concludes that $ 125/hour is a reasonable rate.

3. Computation of "Lodestar" Amount

[HN10]The "lodestar" amount, which is presumed to be a reasonable fee, see, e.g., LeBlanc-Sternberg, 143 F.3d at 764, is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. Using the figures determined above, the "lodestar" amount is calculated as follows:

| | | |
|---|---|---|
| (1) Smith | = .9 hours at $50/hour | |
| | = 59.5 hours at $200/hour | |
| | | = $ 11,945.00 |
| (2) Lennon | = 23.6 hours at $200/hour | = $ 4,720.00 |
| (3) London | = 1.75 hours at $125/hour | = $ 218.75 |
| | "Lodestar" amount | = $ 16,833.75 |

4. Adjustments

[HN11]Although there is a "strong presumption that the lodestar represents the reasonable fee," City of Burlington v. Dague, 505 U.S. 557, 562, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992) (internal quotation marks and citation omitted), adjustments may be warranted based upon, inter alia, the extent of success in the litigation and the degree of risk associated with the claim, see, e.g., Hine v. Mineta, 253 F. Supp. 2d 464, 466 (E.D.N.Y. 2003) (citing Hensley, 461 U.S. at 434 & n.9); accord Raniola, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *7. Indeed, a court is required to consider "the amount of damages awarded as compared to the amount sought" in evaluating the reasonableness of a claim for attorney's fees. Farrar, 506 U.S. at 114 (internal quotation marks and citation omitted); see also Hensley, 461 U.S. at 436 (noting that "the most critical factor" in determining the reasonableness [*25] of a fee award is "the degree of success obtained"). This is true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. However, "there is no precise rule or formula" for adjusting the "lodestar" amount to account for limited success and it is a matter committed to the discretion of this Court. Id. at 436-37. The party requesting a departure from the "lodestar" amount has the burden of establishing the propriety of such a departure. See, e.g., Dague, 505 U.S. at 562; Grant, 973 F.2d at 101.

The NYCTA argues that it "is entitled to a reduction of the lodestar amount because of [Reiter's] lack of overall success" in the litigation, Def. Mem at 34, and thus seeks "at least a 25% reduction" of the "lodestar" amount, id. at 35. Reiter argues that the equitable relief he was awarded was what he actually sought in this

Case 3:03-cv-00149-WIG   Document 140-5   Filed 03/29/2005   Page 10 of 10

2004 U.S. Dist. LEXIS 18167; 94 Fair Empl. Prac. Cas. (BNA) 1256

case and that no reduction is warranted because he obtained that equitable relief. See, e.g., Pl. Reply Mem. at 13-14. The NYCTA naturally focuses on the dollar recovery, noting that Reiter initially sought $ 233,708 [*26] in lost salary and pension benefits, $ 423,767 in lost opportunity pay, back pay for $ 233,708, and front pay for $ 1.8 million -- totaling approximately $ 2.7 million. See Def. Mem. at 34; see also Ex. 5 to Stimell Affirm.; Letter from Smith to the Hon. John G. Koeltl, dated September 9, 2003 (reproduced as Ex. 10 to Stimell Affirm.), at 2. His actual recovery was just $ 10,000, combined with the equitable relief. See Judgment, filed October 24, 2003 (Docket # 92) (reproduced as Ex. 1 to Declaration of Gregory G. Smith in Further Support of Plaintiff's Application for Attorneys' Fees and Costs, filed May 3, 2004 (Docket # 113)), at 3.

The argument as framed by the parties thus boils down to what Reiter was really seeking in this case: equitable relief or damages. If it was equitable relief, then no reduction would be warranted if comparison is made with the final judgment. If it was damages, a reduction would certainly be warranted since he recovered less than 1% of what he initially sought. Complicating this question, however, is whether the comparison should be made with the final judgment (which includes equitable relief) or with the more favorable Offer [*27] (which includes no equitable relief).

It is unnecessary to reach these questions, however, because the severe diminution of Reiter's claim for fees arising from Rule 68's applicability to this case counsels against reducing the "lodestar" amount. [HN12]Parties should be encouraged to settle early -- even at the expense of giving up a large portion of their overall claims -- and thus should be encouraged to accept a favorable Rule 68 offer. To reduce Reiter's attorney's fees award in this situation would needlessly discourage such settlements. Because the NYCTA is reaping the significant advantage of cutting off all of Reiter's post-July 27, 2001 fees, the Court will exercise its discretion not to reduce the fees prior to that date.

Conclusion

Reiter's reasonable pre-July 28, 2001 attorney's fees and court costs amount to $ 17,075.42.

Dated: September 10, 2004

New York, New York

GABRIEL W. GORENSTEIN

United States Magistrate Judge