# EXHIBIT 9

n14 We originally explained our reasons for giving this charge in ruling on defendants' objections. (Tr. 953-64).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*52] [HN7]

To receive a mixed-motive instruction, the plaintiff must show that the evidence is sufficient to allow a fact-finder to infer the presence of both permissible and discriminatory motives for the employer's adverse action. As a result, the plaintiff's initial burden is heavier than the de minimis showing required to establish a prima facie case under a pretext analysis. See Raskin v. Wyatt Company, 125 F.3d 55, 60 (2d Cir. 1997); de la Cruz, 82 F.3d at 23. To meet this initial burden and trigger a mixed-motive charge requires the plaintiff to present "either direct evidence of discrimination or circumstantial evidence directly tied to the alleged discriminatory animus." Fields, 115 F.3d at 122 (internal citations omitted) (quoting Ostrowski v. Atlantic Mut. Ins. Co., 968 F.2d 171, 182 (2d Cir. 1992)).

[HN8]Although the test for "circumstantial evidence directly tied to the alleged discriminatory animus" has not been defined with geometric precision, it has been established that neither "purely statistical evidence" nor "stray remarks" by persons not involved in the decision-making process warrant a mixed-motive instruction. See Lightfoot, 110 F.3d at 913 (citing [*53] Ostrowski, 968 F.2d at 182). Evidence that may warrant such a charge includes "statements or actions by decision makers 'that may be viewed as directly reflecting the alleged discriminatory attitude.'" Raskin, 125 F.3d at 60-61 (quoting Lightfoot, 110 F.3d at 913 (quoting Ostrowski, 968 F.2d at 182)). See also Hargett v. National Westminster Bank, 78 F.3d 836, 840 (2d Cir.), cert. denied, 519 U.S. 824, 136 L. Ed. 2d 41, 117 S. Ct. 84 (1996). The evidence in this case that triggered the mixed-motive instruction included: 1) the comments made by Sergeant Martucci, a self-described decisionmaker, that she was shocked and disappointed in Sergeant Bick, "as a woman"; 2) the suggestion by Sergeant LaTuga that Sergeant Bick was not sufficiently "sensitive" to the issue of harassment; 3) the manner in which Sergeant Bick's statements during her interviews and those of Officer Sacarello were mischaracterized in the interview summaries; and 4) the fact that Sergeant Feeney, a male of the same rank, who apparently had first-hand knowledge of the misconduct, and who was at least similarly evasive during his OEEO interview, was not charged. (See pp. 21-37, supra).

With these [*54] considerations in mind, I turn to the challenged jury instruction given in this case. After informing the jury that plaintiff had the burden of demonstrating that her gender had been a "motivating factor" in the decision to file charges against her (Tr. 1038), the court proceeded to define "motivating factor" as follows:What is a motivating factor? It is a consideration that played a substantial role in the decision to file the five charges against the plaintiff. It need not be the only consideration that led to the filing of the charges, and it need not even be the most important consideration in the decision. The plaintiff must, however, demonstrate the decision was made at least in substantial part because of her gender.(Tr. at 1038). Defendant claims that the inclusion of the words "at least" before the phrase "substantial part" was both erroneous and prejudicial because it allowed the jury to find in favor of the plaintiff under a diluted burden of proof. (See Def's Mem in Support at 21). n15

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n15 Plaintiff claims that the defendant has waived any challenges to the words "at least" by failing to object to the language at trial. See Fed.R.Civ.P. 51; Anderson, 17 F.3d at 556 (citing Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d. Cir 1992), cert. denied, 508 U.S. 952, 124 L. Ed. 2d 662, 113 S. Ct. 2445 (1993)). The short answer to this argument is that the issue was raised by defendant (Tr. 1067) and therefore preserved.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*55]

When defendants' counsel first advanced this argument at trial, we expressed our puzzlement since the addition of the two words appeared to be at least modestly favorable to defendants. Having now had the benefit of defendant's briefing, we remain puzzled. Simply stated, defendant's argument is both linguistically and legally insupportable.

The term "at least" means "the lowest possible assessment" or "no less than." The American Heritage Dictionary 721 (2d ed. 1976). In common parlance, "at least" is often used as a synonym for "at a minimum." Requiring the plaintiff to demonstrate that the charges were brought "at least in substantial part because of her gender" does not, as defendant contends, allow the jury to find in plaintiff's favor even if gender only played a "minor or fleeting role" in the decision. (Def't's Mem.

at 21). Rather, it instructs the jurors that, to find in favor of the plaintiff, gender must have played no less than -- or at a minimum -- a substantial role in the decision to bring charges.

Even if defendant understands the term "at least" to have some other meaning, heretofore unknown to this court, the use of this phrase in describing the plaintiff's burden [*56] of proof in a discrimination action has been adopted by the Second Circuit. See, e.g., Stratton v. Dep't for the Aging for the City of New York, 132 F.3d 869, 876 (2d Cir. 1997) ("plaintiff must show . . . that it is more likely than not that the employer's decision was motivated at least in part by discrimination"); Cronin v. Aetna Life Insurance Co., 46 F.3d 196, 203 (2d Cir. 1995) ("plaintiff is . . . required to show . . . that the prohibited factor was at least one of the motivating factors"); Cabrera v. Jakabovitz, 24 F.3d 372, 383 (2d Cir.), cert. denied, 513 U.S. 876, 130 L. Ed. 2d 135, 115 S. Ct. 205 (1994) ("in such a (mixed-motive) case the jury should be told that the burden of proof remains on the plaintiff to prove that the adverse action was motivated at least in part by an impermissible reason"). Although we have been cautioned by the Second Circuit not to incorporate all of the appellate court's analysis of Title VII standards in haec verba into a jury charge because technical language may confuse lay jurors, see Cabrera, 24 F.3d at 380-81, we see absolutely no reason why the term "at least" in this context is not appropriate for use in telling [*57] the jury in plain, everyday English what the plaintiff must show to demonstrate that an impermissible consideration was a "motivating factor" in an employer's decision.

Defendant argues that Stratton is not persuasive authority regarding the appropriate standard of proof in a mixed-motive case because it was a "pretext" case. (Def's Mem. in Support at 13). A closer reading of Stratton itself, however, as well as a review of other Second Circuit decisions reveals why this argument is misguided. [HN9]Whether a case is brought under a "pretext" or a "mixed-motive" theory, the ultimate issue is the same: whether the plaintiff has proven that an impermissible criterion was in fact a motivating or substantial factor in the employment decision. Stratton, 132 F.3d at 878 (citing cases); Fields, 115 F.3d at 119. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); Renz, 135 F.3d at 221-22; Ullah v. National Westminster Bank, 1997 U.S. Dist. LEXIS 13080, 1997 WL 538832, at *2-3 (S.D.N.Y. Aug. 29, 1997). The distinction between a "pretext case" and a "mixed-motive" case lies solely in the manner in which the plaintiff meets that burden and whether the [*58] jury receives an instruction regarding the defendant's affirmative defense. See Stratton, 132 F.3d at 878; Fields, 115 F.3d at 124 n.4 ("a dual motivation charge differs from a substantial motivation charge only in asking the jury to consider an additional question: whether the defendant has established its affirmative defense"). Because plaintiff's standard of proof is the same irrespective of the theory under which a case is brought, defendant's attempted distinction of Stratton is meritless.

In sum, the challenged instruction was accurate in describing plaintiff's burden. Accordingly, it offers no basis for ordering a new trial. n16

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n16 Given this conclusion, there is no need for us to explore the question of whether the assertedly ailing instruction prejudiced the moving party. Nonetheless, for the reasons noted, we conclude that it obviously did not in this case.

- - - - - - - - - - - - - End Footnotes - - - - - - - - - - - -

3. Excessiveness of Damages Awarded

Defendant also requests a new trial or a remittitur because of the asserted excessiveness [*59] of the damage award. Specifically, defendant argues that the jury's decision to award plaintiff $ 750,000 to compensate her for her pain and suffering is indefensible in light of the evidence adduced at trial and the damages awarded in similar cases.

[HN10]Although juries have a great deal of discretion in awarding damages for pain and suffering, including emotional distress, a court may not sustain an award that it deems to be so excessive as to suggest that it was motivated by "passion or prejudice" rather than a reasoned assessment of the evidence of injury presented at trial. See Ramirez v. New York City Off-Track Betting Corp., 112 F.3d 38, 40 (2d Cir. 1997); Borja-Fierro v. Girozentrale Vienna Bank, 1994 U.S. Dist. LEXIS 7088, 1994 WL 240360, at *3 (S.D.N.Y. May 27, 1994). See also Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir. 1993) ("[a jury] may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket"); Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990). If a court finds that a verdict is excessive, however, it cannot simply reduce the award accordingly, see Lightfoot, 110 F.3d at 914; Vasbinder v. [*60] Scott, 976 F.2d 118, 122-23 (2d Cir. 1992), but may order a new trial on all the issues, or solely on the issue of damages. See Tingley Systems, Inc. v. Norse Systems, Inc., 49 F.3d 93, 96 (2d Cir. 1995).

Page 18

The court also has the option of remitting the award to the maximum amount that would not be excessive. See id.; Scala, 985 F.2d at 684. Remittitur is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." Earl v. Bouchard Transportation Co., 917 F.2d 1320, 1327 (2d Cir. 1990) (quoting Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir. 1984)).

[HN11]The standard that we apply to determine whether a compensatory damage award is excessive differs somewhat depending on whether the plaintiff prevailed on a federal claim or on a state-law claim over which the federal court is exercising supplemental jurisdiction. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 116 S. Ct. 2211, 2224-25, 135 L. Ed. 2d 659 (1996); Consorti v. Armstrong World Ind. Inc., 103 F.3d 2, 4 (2d Cir. 1995). When assessing an amount awarded for claims brought under federal law, the court must apply the federal [*61] standard, which asks whether the award is so excessive as to "shock the conscience" of the court. See, e.g., Scala, 985 F.2d at 680; Schneider v. National R.R. Passenger Corp., 987 F.2d 132, 137 (2d Cir. 1993); Earl, 917 F.2d at 1330. The court's assessment of a sum awarded for a state-law claim is governed by the law of the state. See Gasperini, 116 S. Ct. at 2224-25; Consorti, 103 F.3d at 4; Kukla v. Syfus Leasing Corp., 928 F. Supp. 1328, 1336 (S.D.N.Y. 1996). Therefore, our first step must be to determine whether federal or state law applies. See Consorti, 103 F.3d at 4; Shea v. Icelandair, 925 F. Supp. 1014, 1020 (S.D.N.Y. 1996).

Plaintiff asserted her claims of gender discrimination under both Title VII and the New York State Human Right Law. The jury was not directed to identify whether its award was under federal or state law since the standards are the same, see Pollis v. New School for Social Research, 132 F.3d 115, 124 (2d Cir. 1997); Tomka v. Seiler, 66 F.3d 1295, 1305 n.4 (2d Cir. 1995), and neither party requested such an inquiry.

In their post-trial briefs, both parties acknowledge that the $ 750,000 award exceeds the $ 300,000 [*62] statutory cap on damages for pain and suffering that may be awarded under Title VII, 42 U.S.C. § 1981a(b)(3)(d). (See Plf's Mem. at 9; Def's Mem. at 6 n. 3). The parties therefore both suggest allocating $ 300,000 of the jury award to the Title VII claim and assessing the excessiveness of that amount by the federal "shocks the conscience standard," and treating the remaining $ 450,000 as damages for the state-law claim, which would be reviewed under the New York state standard. (See id.)

Although both parties correctly observe that Title VII limits any compensatory "pain and suffering" recovery to $ 300,000, the suggestion that the sum awarded by the jury be split between the Title VII and the state-law claims is misguided. n17 [HN12]A plaintiff "may not recover compensatory damages in duplicate under both the [Human Rights Law] and Title VII." Anderson v. YARP Restaurant, Inc., 1997 U.S. Dist. LEXIS 560, 1997 WL 27043, at *7 (S.D.N.Y. Jan. 23, 1997). To utilize the suggested procedure would allow a plaintiff to recover for the same injury under two different legal claims, in violation of the prohibition against double recovery. See, e.g., id.; Luciano, 912 F. Supp. 663 at 675; see also Marfia v. [*63] T.C. Ziraat Bankasi, New York Branch, 903 F. Supp. 463, 471 (S.D.N.Y. 1995), vacated on other grounds, 100 F.3d 243 (2d Cir. 1996).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n17 Defendants cite Luciano v. Olsten Corp., 912 F. Supp. 663, 675 (E.D.N.Y. 1996), aff'd 110 F.3d 210 (2d Cir. 1997), in support of the proposition that the compensatory award should be split. (See Def's Mem. at 6 n.3). However, a closer reading of Luciano reveals that the amount awarded to the plaintiff for emotional distress was not split between federal and state law claims, but was allocated in its entirety to the plaintiff's New York Human Rights Law claim. Id. at 675-76.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The solution lies in the fact that Title VII was not intended to preclude a plaintiff from recovery under state law, see 42 U.S.C. § 2000e-7 ("nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalties or punishment provided by any present or future law of any state"), and that the Second Circuit has endorsed the notion [*64] of permitting a successful plaintiff to recover under "the theory of liability that provides the most complete recovery." Magee v. United States Lines, Inc., 976 F.2d 821, 822 (1992). Since Title VII caps damages and state law does not, plaintiff's entire compensatory damage award in this case should be allocated to her successful Human Rights Law claim. See Ginsberg v. Valhalla Anesthesia Assocs, P.C., 1997 WL 669870, at *2 (S.D.N.Y. 1997); Luciano, 912 F. Supp. at 675. See also Anderson, 1997 U.S. Dist. LEXIS 560, 1997 WL 27043, at *7. See generally Shea 925 F. Supp. at 1020; Tanzini v. Marine Midland Bank, 978 F. Supp. 70, 77 (N.D.N.Y. 1997).

Having determined that the award of $ 750,000 should be treated as compensation to plaintiff for the

emotional distress that she suffered as a result of the defendant's violation of state law, we now turn to New York law to resolve whether that award is excessive. See Gasperini, 116 S. Ct. at 2224-25. The relevant New York statutory standard is set forth in C.P.L.R. § 5501(c) (McKinney 1998), which states that [HN13]"an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." n18

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n18 Although the statute explicitly directs the Appellate Division to apply the "deviates materially" standard, see C.P.L.R. § 5501(c), it has since been established that state trial courts, and federal district courts exercising supplemental jurisdiction, are also required to apply this standard. See Gasperini, 116 S. Ct. at 2218 (citing New York cases); Shea, 925 F. Supp. at 1021 (citing New York cases).

- - - - - - - - - - - - End Footnotes- - - - - - - - -

[*65]

This so-called "deviates materially" standard for reviewing jury awards is less deferential to a jury verdict than the federal standard because it does not permit a reviewing court to sustain a damage award that is out of line with other awards for similar injuries, even if the amount the jury awarded was not shocking to the court's conscience. See, e.g., Gasperini, 116 S. Ct. at 2218; Consorti v. Armstrong World Inds., 72 F.3d 1003, 1013 (2d Cir. 1995), vacated on other grounds, 116 S. Ct. 2576 (1996); O'Connor v. Graziosi, 131 A.D.2d 553, 554, 516 N.Y.S.2d 276, 277 (2d Dep't), appeal denied, 70 N.Y.2d 613, 524 N.Y.S.2d 432 (1987). However, the standards are similar in that they both require the reviewing court to evaluate the magnitude of a jury award by comparing it to awards in analogous cases. Ginsberg, 1997 WL 669870, at *2 (citing Gasperini, 116 S. Ct. at 2218). See, e.g., Lee v. Edwards 101 F.3d 805, 812 (2d Cir. 1996); Consorti, 72 F.3d at 1013 ("the best guide for a federal court . . would be decisions of state courts in comparable cases indicating at what point awards become excessive"); Ismail, 899 F.2d at 186. The practice of [*66] assessing awards by comparing them to awards made in similar cases stems from the recognition that although judges are in no better position than jurors to place a monetary value on a person's pain and suffering, by reviewing case law they can provide some uniformity or predictability in damage awards. See Consorti, 72 F.3d at 1009 ("It should be [the reviewing court's] goal that persons who endure a similar degree of suffering can expect to receive a roughly similar award of compensation"); Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 750 (2d Cir. 1984).

We have canvassed awards made in gender discrimination claims brought in federal and state court. Based on that review, we find that the award of $ 750,000 is excessive.

[HN14]New York courts have held that "mental injury may be proved by a complainant's own testimony, corroborated by reference to the circumstances of the alleged misconduct." New York City Transit Authority v. State Division of Human Rights, 78 N.Y.2d 207, 216, 573 N.Y.S.2d 49, 54, 577 N.E.2d 40 (1991) n19. See Town of Hempstead v. State Division of Human Rights, 233 A.D.2d 451, 649 N.Y.S.2d 942 (2d Dep't 1996), leave denied, 90 N.Y.2d 807, [*67] 664 N.Y.S.2d 268 (1997); 121-129 Broadway Realty Inc. v. New York State Div. of Human Rights, 49 A.D.2d 422, 423, 376 N.Y.S.2d 17, 18 (3d Dep't. 1975). Compare Annis v. County of Westchester, 136 F.3d 239, 1998 WL 49317, at *10 (2d Cir. 1998)(plaintiff's own testimony is insufficient to warrant an award of compensatory damages for mental anguish). To be compensated, the plaintiff must also produce some evidence of the magnitude and duration of her emotional injury, see New York City Transit Authority, 78 N.Y.2d at 217, 573 N.Y.S.2d at 53, although, in light of "the strong anti-discrimination policy spelled out by the legislature of [New York] state", New York courts do not require the plaintiff to produce the same "quantum and quality of evidence to prove compensatory damages [that she] would have had to produce under an analogous provision." Batavia Lodge No. 196, Loyal Order of Moose v. New York State Div. of Human Rights, 35 N.Y.2d 143, 147, 359 N.Y.S.2d 25, 25, 316 N.E.2d 318 (1974).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n19 Although the court in Matter of New York City Transit Authority v. Division of Human Rights was reviewing an award made by the New York Commissioner of Human Rights, the opinion is equally instructive for review of jury trial awards. See, e.g., Gleason v. Callanan Industries, 203 A.D.2d 750, 751, 610 N.Y.S.2d 671, 673 (3 Dep't 1994).

- - - - - - - - - - - - End Footnotes- - - - - - - - -

[*68]

(a). Evidence at Trial

At trial, plaintiff, her therapist Beth Forhman, and Deputy Inspector Jane Perlov, the commander of the plaintiff's later-assigned precinct, testified regarding the nature and extent of the mental anguish that plaintiff suffered as a result of the defendant's discriminatory behavior. Their testimony suggests far more than minimal injury.

Sergeant Bick testified that she felt "devastated." (Tr. at 160). She recounted that, after being served with the charges and specifications, she had sought help by telephoning the Police Department's "Early Intervention Unit," a counseling service for depressed or suicidal police officers. She further testified that after speaking with her by phone, two Early Intervention counsellors traveled to her home that same night to continue the counseling in person. (Id.).

Sergeant Bick recounted that she had been unable to overcome her sense of despair and therefore continued to seek help from an Early Intervention counselor for an entire year following her first telephone contact. She also sought treatment from Beth Forhman, a certified social worker trained in psychotherapy, who had once worked as a therapist for [*69] Early Intervention. (Id. at 162).

As of the time of the trial, the plaintiff had attended forty-five counseling sessions with Ms. Forhman, and was still in treatment. (Id. at 163-64). At Ms. Forhman's recommendation, she had also sought treatment from a psychiatrist, who prescribed anti-depressant and anti-anxiety medication for the plaintiff. Sergeant Bick testified that she did not continue taking either medication because they made her feel more anxious and sick. (Id. at 165, 284, 285).

Ms. Forhman testified that she was first contacted by Sergeant Bick on Sunday, August 24, 1994 and agreed to meet with the Sergeant on that very same day because, "[Sergeant Bick] had been very distraught and needed to be seen immediately." (Id. at 271) Ms. Forhman diagnosed Sergeant Bick as suffering from "anxiety, depression and feelings of powerlessness." (Id. at 274). She explained that the misconduct charges had left plaintiff feeling "humiliated," "vulnerable," and with a "tremendous sense of loss" (id. at 285), and that as a consequence of this mental anguish, plaintiff experienced disrupted sleep patterns and weight gain. (Id. at 283, 287-88). Ms. Forhman [*70] further testified that while she did not believe that Sergeant Bick would take her own life, the plaintiff did suffer from "suicidal ideation", which she described as "a feeling of desperation" and a desire to have "a respite" from one's life, but without an articulated plan for achieving such long-term respite. (Id. at 280).

In explaining the extremity of the plaintiff's reaction to the filing of the charges, Ms. Forhman noted the central importance that plaintiff's position with the Police Department played in her emotional life. (Id. at 278). She thus described plaintiff as particularly vulnerable to a feeling of betrayal when the Department accused her of misbehaving in the performance of her official duties. (Id. at 278-79).

Ms. Forhman also provided evidence regarding the duration of plaintiff's injury. She testified that she began treating Sergeant Bick in August of 1994 and continued to treat her throughout 1995 and in subsequent years, up to the time of trial. When questioned as to whether Sergeant Bick was still in need of therapy as of December of 1995, Ms. Forhman responded "absolutely so" (id. at 288), explaining that at the end of 1995 Sergeant Bick [*71] "was pretty depressed, pretty anxious, pretty overwhelmed . . . it was affecting her sleep, eating habits, et cetera." (Id. at 289). Ms. Forhman described plaintiff's condition in June of 1996 as "still depressed, but there was less depression." (Id. at 290) By August 1997, shortly before the scheduled trial, Ms. Forhman believed that Sergeant Bick "was making some real progress in feeling better." (Id. at 293). At the time of the trial, in October 1997, Sergeant Bick remained in therapy (id. at 163), but Ms. Forhman described her as "much improved, less depressed and significantly able to take mastery in her life." (Id. at 325).

Deputy Inspector Perlov, a friend as well as supervisor of Sergeant Bick, also testified. She recounted that in December 1994, when Sergeant Bick was assigned to Inspector Perlov's precinct, she had been required to make an emergency trip to Sergeant Bick's home, where she found the Sergeant to be "in an upset state" and "pretty hysterical" because she believed that she was being falsely accused of misconduct. (Id. at 169-170) Based on her assessment of the plaintiff's emotional condition, which she described as a state of "serious [*72] upheaval," the Inspector removed plaintiff's firearm, which was not returned to her for at least a week. (Id. at 170-71, 173). Inspector Perlov also described Sergeant Bick at work as "not on an even keel as an emotional state," and recounted that she had witnessed Sergeant Bick "have crying jags on and off at work." (Id. at 173).

From the foregoing testimony, which was not contradicted, we conclude that the jury could have found that plaintiff suffered from fairly severe emotional anguish for an extended period of time, although she remained largely functional and appeared

to be in an improved state by the time that a trial of her claims had been scheduled.

### (b). Comparison with Other Verdicts

The evidence adduced at trial regarding the duration, extent and consequences of the mental anguish suffered by the plaintiff as a result of the defendant's discriminatory actions certainly differentiates this case from the so-called "garden-variety" mental-anguish claims, in which the awards hover in the range of $ 5,000 to $ 30,000. See Luciano, 912 F. Supp. at 673. In those cases, the evidence of mental suffering is generally limited to the testimony of the plaintiff, [*73] who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. See, e.g., Kim v. Dial Service Intern., 1997 U.S. Dist. LEXIS 12544, 1997 WL 458783, at *12-13 (S.D.N.Y. Aug. 11, 1997)($ 300,000 award reduced to $ 25,000 where plaintiff testified and his wife corroborated that he felt "gloomy," had lost weight, drank more, took sedatives and had trouble sleeping); Tanzini, 978 F. Supp. at 78 (award reduced from $ 200,000 to $ 30,000 where evidence limited to plaintiff and spouse testifying that plaintiff was in "state of shock"); Binder v. Long Island Lighting Co., 847 F. Supp. 1007, 1028, rev'd on other grounds, 57 F.3d 193 (2d Cir. 1997) (award reduced from $ 497,738 to $ 5,000 where plaintiff briefly testified of feeling discouraged and very "alone"); Borja-Fierro, 1994 U.S. Dist. LEXIS 7088, 1994 WL 240360, at *3-4 (award reduced from $ 185,000 to $ 15,000 where testimony of mental anguish was "vague and conclusory"); Quality Care Inc. v. Rosa, 194 A.D.2d 610, 611, 599 N.Y.S.2d 65, 66 (2d Dep't 1993)(award reduced from $ 10,000 to $ 5,000 where evidence limited to plaintiff's testimony that she was "shocked," "devastated" and in a "real pickle"); [*74] Cosmos Forms, Ltd. v. State Div. of Human Rights, 150 A.D.2d 442, 442, 541 N.Y.S.2d 50, 50 (2d Dep't 1989)(award of $ 35,000 reduced to $ 5,000 where plaintiff testified to feeling "emotionally and physically screwed up"); Cottongim v. County of Onondaga Sheriff's Dep't, 127 A.D.2d 986, 986, 513 N.Y.S.2d 68, 68 (4th Dep't 1987), aff'd, 71 N.Y.2d 623, 528 N.Y.S.2d 802, 524 N.E.2d 123 (1988)($ 30,000 award reduced to $ 15,000 where there was no indication of length of time or consequences of the anguish suffered).

This case is also distinguishable, in terms of both the magnitude of the injury and the graveness of its consequences, from cases in which the award for emotional distress substantially exceeded $ 100,000. n20 See, e.g., Shea, 925 F. Supp. at 1021-24 (award of $ 175,000 where mental anguish exacerbated plaintiff's Parkinson's disease and caused plaintiff to suffer an angina attack and fostered a heart condition); Ramirez, 112 F.3d at 38 ($ 500,000 award for pain and suffering sustained where plaintiff is unlikely to be able to work as a consequence of his mental anguish); Town of Hempstead, 233 A.D.2d 451, 649 N.Y.S.2d 942 ($ 500,000 award upheld where [*75] plaintiff, a victim of childhood sexual abuse, was subjected to sexual harassment which caused her severe, continuing, emotional distress, including a fear of going out alone); Smith v. Tiffany & Co., No. 1B-E-CS-84-97230, at 308 (State Div. of Human Rights, Aug. 11, 1995), aff'd, 224 A.D.2d 332, 638 N.Y.S.2d 454 (1st Dep't 1996)($ 300,000 award upheld where plaintiff continued to suffer severe depression, anorexia and insomnia); New York City Transit Authority v. State Division of Human Rights, 181 A.D.2d 891, 895, 581 N.Y.S.2d 426, 429 (1992)($ 450,000 award upheld where evidence supported a finding that plaintiff's mental anguish would persist for the rest of her life). But see Broome v. Biondi, 1997 WL 691421, at *13 (S.D.N.Y. Nov. 5, 1997)($ 230,000 award to married couple upheld under "shocks the conscience" test where husband testified of continued feelings of anger and humiliation and wife testified of recurring pain).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n20 This court declines to consider cases, cited by the plaintiff, that uphold large emotional distress awards but provide no basis of comparison because they fail to detail what evidence was presented at trial to support the large sums awarded. See Ginsberg, 1997 WL 669870, at *4.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*76]

As this survey demonstrates, "awards for emotional distress under the New York Human Rights Law can be thought of as arrayed along a continuum." Shea, 925 F. Supp. at 1027. The evidence of mental anguish proffered by Sergeant Bick is not analogous to that proffered in cases at either extreme of this continuum. Defendant's conduct caused neither profound irreversible mental injury, nor only slight or temporary suffering. Sergeant Bick testified that she suffered from serious, but not debilitating, mental anguish from at least 1994 until mid-1996 and continued to suffer, to a lesser extent, thereafter. Her testimony was corroborated by testimony from her therapist and a ranking member of the Police Department. Although plaintiff was diagnosed as suffering from suicidal ideation (Tr. 280), and was perceived by some co-workers as potentially suicidal (Tr. at 170-71), plaintiff

offered no evidence that she had in fact acted upon any suicidal impulses. Compare Marfia, 903 F. Supp. at 467 ($ 100,000 award upheld where plaintiff tried to commit suicide and was hospitalized for approximately two weeks on "suicide watch"). Although plaintiff remains depressed (Tr. at 163), there was [*77] little evidence to suggest that she will continue to suffer from significant emotional distress for any extended period of time in the future.

Without minimizing the very real suffering that plaintiff endured, we conclude from our review of cases with comparable evidence of mental anguish that an award of $ 750,000 is excessive. Therefore a new trial on damages will be held unless plaintiff accepts a remittitur of $ 650,000. This will reduce her damage award for pain and suffering to $ 100,000 -- an amount that does not deviate materially from analogous cases in which the plaintiff has sought medical treatment for alleged mental anguish and has proffered witness testimony regarding the extent of this anguish. n21 See, e.g., Ginsberg, 1997 WL 669870, at *4 (award of $ 100,000 where plaintiff presented scant evidence regarding her emotional distress, but her testimony that she saw a psychiatrist and received anti-depressant medication for nearly a year distinguished case from those awarding lesser amounts); Anderson, 1997 U.S. Dist. LEXIS 1106, 1997 WL 27043, at *8 (award of $ 65,000 where plaintiff sought medical treatment for her mental distress and therapist testified at trial that the plaintiff suffered [*78] from emotional trauma, including sense of powerlessness, panic attacks, trouble sleeping and difficulty maintaining employment); Gleason, 203 A.D.2d at 752, 610 N.Y.S.2d at 673 (award of $ 54,000 where plaintiff testified, and a witness confirmed, that she suffered from irritable bowel syndrome, pains in her sides, insomnia, migraines and depression for which she sought medical treatment); Thorenson v. Penthouse Int'n, Ltd., 179 A.D.2d 29, 31, 583 N.Y.S.2d 213, 215 (1st Dep't), aff'd, 80 N.Y.2d 490, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992)(award of $ 60,000 sustained in sexual harassment suit where plaintiff sought treatment from psychotherapist to treat mental anguish).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n21 Plaintiff's therapist, Ms. Forhman, testified that Sergeant Bick had suffered from other life difficulties, including growing up in an alcoholic family, and that her experience of discrimination reactivated some of her feelings from the past. (Tr. 274). Although "it is well settled that aggravation of a preexisting condition gives rise to liability" Shea, 925 F. Supp. at 1025 (quoting Maurer v. United States, 668 F.2d 98, 99-100 (2d Cir. 1981)), in arriving at an equitable compensatory figure, this court has taken into account the fact that plaintiff has suffered through personal adversity, not attributable to the defendants, that undoubtedly contributed to her emotional suffering. See White-Ruiz v. City of New York, 983 F. Supp. 365, 1997 WL 442150, at *33.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*79]

Accordingly, we direct that a new trial, limited to damages, will be conducted unless plaintiff accepts a reduction in the award for pain and suffering from $ 750,000.00 to $ 100,000.00. n22 Plaintiff is to notify the court and defendants in writing of her election and is to do so within two weeks.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n22 The jury's award for out-of-pocket expenses is not affected by this ruling.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

### III. Attorney's Fees

As a prevailing party, plaintiff is entitled to reasonable attorney's fees. 42 U.S.C. § 2000e-5(k). Plaintiff seeks a total of $ 169,987.50 n23 for work done by her two attorneys, Peter M. Blessinger and George Cerrone, and by a legal assistant. Defendant objects to this sum on several grounds. Defendant contends: (1) that the hourly rates sought by the attorneys and the paralegal are excessive; (2) that the lodestar should be reduced because plaintiff's attorneys failed to submit contemporaneous time-records or to exercise appropriate billing judgment; and (3) that the lodestar should be further reduced [*80] by 50% to reflect the fact that plaintiff prevailed on only two of the seven claims listed in her amended complaint. n24

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n23 This amount is $ 2,600 less than the amount plaintiff originally sought in attorney's fees, reflecting her concession that work done by attorneys during travel time and lunch breaks should be

Page 23

compensated only at 50% of the normal rate.

n24 Defendant also argues that plaintiff's application for attorney fees and expenses should be denied in its entirety because plaintiff failed to accompany service of her application with a notice of motion or any supporting affidavits in violation of Civil Rule 6.1(b) of the Southern District and because the format of her application did not comply with Civil Rule 7.1. (See Defs' Mem. of Law in Opp. at 4). At the close of trial plaintiff announced her intention to submit an application for attorney's fees and costs by November 6, 1997. (Tr. at 1077). Subsequent to the service of that application, defendant sought, and received, two extensions of time to respond to that request. (See Endorsed Order, dated Nov. 11, 1997; Endorsed Order, dated Dec. 3, 1997). Because defendant had actual notice that it would be served with an application for fees and costs on November 6, 1997, and in light of plaintiff having cured the above-noted defects by re-serving her application accompanied by a notice of motion and attorney declarations, her application will not be denied for non-compliance with Civil Rules 6.1 and 7.1.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*81]

On the assumption that plaintiff will agree to the remittitur, we address the question of fees at this stage, rather than waiting for a formal election by her. In the event that she opts for a new trial, we will hold a formal award of fees in abeyance.

A. General Standards

[HN15]The first step in determining an appropriate fee award involves the calculation of the so-called "lodestar" amount, which, in general terms, is the product of the number of hours reasonably expended by counsel on the litigation and a reasonably hourly rate. See, e.g., Blanchard v. Bergeron, 489 U.S. 87, 94, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989); Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); Luciano, 109 F.3d 111 at 115. n25 In calculating the lodestar figure, we exclude any time that represents excessive, unnecessary, or duplicative work. See Hensley, 461 U.S. at 436; Quaratino, 129 F.3d 702 at 705. The court must also exclude hours spent pressing unsuccessful claims unless the plaintiff demonstrates that those claims were "inextricably intertwined" with her successful claims, in that they "involve a common core of facts or are based on related legal theories." [*82] Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996)(quoting Dominic v. Consolidated Edison Co. of New York, Inc., 822 F.2d 1249, 1259 (2d Cir. 1987).

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n25 Although the Second Circuit has recently announced it will reconsider, en banc, its decision in Quaratino v. Tiffany & Co., 129 F.3d 702, 705 (2d Cir. 1997), in which it rejected a requirement that there be a proportional relationship between the amount awarded in damages to a successful plaintiff and the amount awarded in attorney fees, see id. at 705, at this time the law of the circuit remains that attorney fees should be calculated by use of the lodestar figure without taking into account the amount awarded in damages. See Deborah Pines, "Circuit Agrees to Reconsider 2 Bias Rulings," N.Y.L.J., Feb. 2, 1998, at 1.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

B. Hourly Rates

[HN16]A prevailing party is entitled to hourly rates that fall within the prevailing range of rates in the community "for similar services by lawyers of reasonably comparable skill, experience [*83] and reputation." Luciano, 109 F.3d at 115; Cruz v. Local Union No.3 of Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994)(quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)). In making the comparison to prevailing marketplace rates, we must take into account the size of the law firm. Thus, if the movant is represented by a small or medium-sized firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain a higher hourly rate if represented by a large law firm, since such firms typically charge more per hour to cover a higher overhead. See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905, 110 L. Ed. 2d 268, 110 S. Ct. 2587 (1990); Helbrans v. Coombe, 890 F. Supp. 227, 233 (S.D.N.Y. 1995)); Jennette v. City of New York, 800 F. Supp. 1165, 1169 (S.D.N.Y. 1992). For purposes of determining the appropriate hourly

rate, the "prevailing community" is "the district in which the court sits." Luciano, 109 F.3d at 115 (quoting Polk v. New York State Dep't of Correctional Services, 722 F.2d [*84] 23, 25 (2d Cir. 1983)).

Bick seeks compensation for her trial attorney, Peter Blessinger, Esq., at the following hourly rates: $ 275 for work performed in 1995, $ 300 for work performed in 1996, and $ 325 for work performed in 1997. The hourly rates sought for plaintiff's second attorney, George Cerrone, Esq., begin at $ 325 in 1995 and increase by increments of $ 25 per year, culminating in a request for $ 375 an hour for work undertaken in 1997. Plaintiff also seeks compensation for work performed by John Gasparino, a paralegal, at hourly rates of $ 60 for 1995, $ 65 for 1996, and $ 70 for work performed in 1997.

Defendant argues that these rates are "exorbitant," and "way out of line with hourly prevailing rates in the district." (Def's Mem in Opp at 8). Defendant suggests that $ 250 an hour is a more appropriate rate of compensation for plaintiff's attorneys, and that plaintiff's paralegal should be compensated at an hourly rate of $ 40.

[HN17]The fee applicant bears the burden of producing evidence demonstrating that the requested rates are in line with those prevailing in the community. See Cruz, 34 F.3d at 1159. In the absence of such evidence, the court may take judicial [*85] notice of the rates prevailing within the community for comparable legal services. see e.g., Tray-Wrap v. Meyer Tomatoes, 1996 U.S. Dist. LEXIS 1387, 1996 WL 54321, at *2 (S.D.N.Y Feb. 9, 1996)(citing Miele v. New York State Teamsters Conference Pension & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Pearson v. Coughlin, 1995 U.S. Dist. LEXIS 8409, 1995 WL 366463, at *5 (S.D.N.Y June 20, 1995).

In support of her requested hourly rates, plaintiff has cited a variety of recent opinions awarding attorney fees at an hourly rate greater than $ 200 but, of the ten cases cited, not one compensated an attorney at a rate of $ 375 per hour -- the rate sought for Mr. Cerrone, and in only one cited case was an attorney awarded $ 350 an hour. (See Pl's Reply Mem. at 8-9 citing Helbrans, 890 F. Supp. at 233 (S.D.N.Y. 1995)). Assessing both the submitted decisional law and our knowledge of the current market for legal services, we find both of the requested rates to be excessive.

Mr Blessinger, a solo practitioner, has been a trial attorney for more than twenty years. (See Declaration of Peter J. Blessinger, Esq., dated Dec. 23, 1997, at PP 3, 5, 7). He has extensive experience litigating claims involving members of [*86] the New York City Police Department, first as a prosecutor in the Police Department's Advocates Office, then as a private attorney with his own practice, trying cases referred to him by the New York Police Department unions. (See id. at 6-7)

Mr. Cerrone, a partner in the law firm of Cerrone & Geoghan, has been practicing law for 12 years. (See Declaration of George Cerrone, Esq., dated Dec. 22, 1997 at PP 2, 3). Like Mr Blessinger, Mr Cerrone started his career as an attorney prosecuting disciplinary actions in the Advocate's Office of the Department and then moved to a private practice, representing individual members of the police force in employment-related suits.

Having reviewed rates of attorney compensation awarded in the Southern District for discrimination cases, we find that although in some instances attorneys were compensated at a rate as high as $ 350, these rates are the exception, and that a rate of $ 250 for both Mr. Blessinger and Mr. Cerrone is reasonable and in keeping with rates awarded in the majority of cases involving solo practitioners and partners in small firms with the experience and skill of Mr. Blessinger and Mr. Cerrone's expertise. See, [*87] e.g., Anderson, 1997 U.S. Dist. LEXIS 1106, 1997 WL 47785, at *3 (S.D.N.Y. Feb. 6, 1997)("fee rates ranging from $ 250 to $ 300 have been considered as reasonable rates for 'recognized experts and senior litigators in civil rights cases' in the Second Circuit, whereas lesser amounts have been considered reasonable for less experienced litigators in smaller firms")(citing cases); Kim, 1997 WL 458783, at *17 (rate of $ 250 for attorney with 16 years experience in public interest law); Stratton, 1996 U.S. Dist. LEXIS 9551, 1996 WL 352909, at *2 (S.D.N.Y June 25, 1996)(awarding $ 200 per hour for attorney with over ten years experience); Bridges v. Eastman Kodak Co., 1996 U.S. Dist. LEXIS 809, 1996 WL 47304, at *12 (S.D.N.Y. Feb. 6, 1996), aff'd, 102 F.3d 56 (2d Cir. 1996), cert. denied, 117 S. Ct. 2453 (1997)(awarding $ 250 per hour to attorneys with twenty and thirty years experience); Marfia, 903 F. Supp. at 476 (awarding $ 250 for lawyer with more than seven years experience).

Defendant also contends that the hourly rates of $ 60-$ 70 requested for work performed by Mr. Gasparino, plaintiff's paralegal, is excessive. Plaintiff has failed to provide any evidence in support of this requested rate, such as the paralegal's experience, training, [*88] or salary. Having canvassed rates of paralegal compensation in the Southern District, we find $ 60 an hour to be a reasonable amount. See, e.g., Ginsberg, 1998 WL 19997 at *3 ($ 65 an hour for paralegals); Wilder v. Bernstein, 975 F. Supp. 276, 282 (S.D.N.Y. 1997)($ 60 an hour for paralegal work); Stratton, 1996

WL 352909, at *2 (paralegal work performed by non-attorneys compensated at $ 50); Nembhard v. Memorial Sloan Kettering Cancer Center, 918 F. Supp. 784, 791 (S.D.N.Y. 1996)($ 65 for paralegals); Bridges, 1996 WL 47304, at *11-12 ($ 60 for paralegals).

C. The Number of Compensable Hours: Time Records

It is well-established that, [HN18]to be compensated, attorneys for the prevailing party must provide the court with time records, made at the time the work was performed, that, at the minimum, "specify for each attorney the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). See Hensley, 461 U.S. at 437 n.12; Cruz, 34 F.3d at 1160. A reduction in the amount awarded for fees is appropriate where adequate contemporaneous records have not been kept. [*89] F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987); see, e.g., Stratton, 1996 WL 352909, at *4. Defendant seeks such a lodestar reduction, alleging that plaintiff's time records do not appear to have been created at the time when the tasks were performed and that the time entries are overly vague.

In conjunction with her fee application, plaintiff's counsel submitted a typed list of hours worked and tasks performed. Mr. Blessinger, in his declaration, states that these time entries were prepared on the day when the service was rendered or within a few days thereafter (See Blessinger Decl. at P 8). While not the paragon of attorney time-records, the billing entries submitted by plaintiff's counsel are sufficiently contemporaneous to satisfy the rationale underlying Carey, which established the requirement to ensure that, in reviewing a fee application, the court has a reliable record of how hours were spent. Carey, 711 F.2d 1136 at 1148. ("it is hard to weigh claims of over-staffing and duplication of effort against the plaintiff's estimates of hours expended"). See generally Cruz, 34 F.3d at 1160 (citing cases accepting reconstructed time [*90] records as sufficiently contemporaneous); Bonner v. Guccione, Jr., 1997 U.S. Dist. LEXIS 11382, 1997 WL 441910, at *10 (S.D.N.Y. Aug. 6, 1997), app. pending, Dkt. No. 97-9026 (2d Cir argued April 13, 1998); David v. Sullivan, 777 F. Supp. 212, 213 (E.D.N.Y. 1991).

Defendant's argument that the fee requested should be reduced because the submitted time records are too vague fares little better. [HN19]When determining whether time records are sufficiently detailed, the court need not examine each entry individually, but rather must ask whether, assessed as a whole, the time records perform the function of accurately indicating how much time was spent on what general tasks.

Bridges, 1996 WL 47304, at *5 (citing Burr v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990)). "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended," but need only submit time records sufficiently detailed to enable the court to ascertain whether the task performed was necessary, and whether the time expended on the task was excessive. Hensley, 461 U.S. at 437 n.12; See Bridges, 1996 WL 47304, at *5; Helbrans, 890 F. Supp. at 233.

Although several of the [*91] time-record entries submitted by plaintiff's counsel were less than rigorously detailed, the records as a whole provide this court with ample basis for assessing the nature and amount of work that was performed. See, e.g., Ginsberg, 1998 WL 19997, at *3; Bonner, 1997 U.S. Dist. LEXIS 11382, 1997 WL 441910, at *12; Stratton, 1996 WL 352909, at *4; Helbrans, 890 F. Supp. at 233. Accordingly, there will be no across-the-board reduction for lack of specificity.

D. Reasonableness of Hours Billed

Defendant urges that the fee request in this case should be substantially reduced to reflect inappropriate billing judgments on the part of the plaintiff's attorneys. [HN20]An attorney may only be compensated for hours that were reasonably expended, see Hensley, 461 U.S. at 433, and therefore, in determining the lodestar figure, the court must exclude excessive, redundant or otherwise unnecessary hours. See, e.g., id. at 434; Luciano, 109 F.3d at 116; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).

Defendant has submitted virtually an item-by-item log of what it considers to be instances in which plaintiff's counsel have billed unnecessary or excessive hours. In assessing a fee application, [*92] the court is not required to become "enmeshed in a meticulous analysis of every detailed facet of the professional representation," Seigal v. Merrick, 619 F.2d 160, 165, n.8 (2d Cir. 1980)(citations omitted), nor is the court required to "set forth, item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134. Having carefully reviewed the affidavits and time record submitted with the fee application, we find that the vast majority of items that defendant contests, including time spent preparing for depositions or reviewing OEEO case files, reflect defensible investments of time. There are several billing entries, however, that require closer scrutiny.

Plaintiff seeks reimbursement for 33.3 hours spent by Mr. Cerrone and Mr. Blessinger in consulting with each other. Mr. Cerrone represented the plaintiff in the Police Department disciplinary proceedings that were

the genesis of the discrimination suit for which she currently seeks fees but he did not appear in court on this case. Defendant complains that the hours of consultation were duplicative because Mr. Blessinger billed for those same hours, and that Mr. Cerrone's [*93] request should be denied because it is "just a patent attempt to obtain unrecovered fees expended defending plaintiff in her Police Department disciplinary proceedings." (See Mem. in Opp. at 17).

We decline the defendant's invitation to attribute surreptitious motives to the plaintiff's request for Mr. Cerrone's fees, and note as well that it may be entirely appropriate for each of two attorneys who confer regarding a case to bill for the time spent in consultation. See, e.g., Bridges, 1996 WL 47304, at *7. Those observations, however, do not end the matter.

Mr. Blessinger is being compensated at an hourly rate commensurate with a skilled and experienced attorney, which suggests that he did not need to consult Mr. Cerrone for extended periods of time regarding any legal matters. See Perez v. Manhattan Jeep Eagle, 1997 U.S. Dist. LEXIS 11928, 1997 WL 458787, at *2 (S.D.N.Y. Aug. 11, 1997). If we assume that the consultations between Mr. Blessinger and Mr. Cerrone concerned factual, rather than legal, issues involved in this case n26, the amount of time claimed for these consultations -- more than thirty three hours -- appears excessive in the absence of an explanation as to the need for such consultation. [*94] Although the process is admittedly somewhat arbitrary, we will reduce the amount of compensable consultation time for Mr. Cerrone and Mr. Blessinger to fifteen hours for each attorney.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n26 In plaintiff's fee application it is stated that Mr. Cerrone consulted with Mr. Blessinger about the progress of the case and "has personal knowledge of the discriminatory conduct from the beginning, he has known the individual defendants for many years, [and] . . . represented . . . plaintiff during the N.Y.P.D. disciplinary hearing . . ." (Reply Mem. at 8).

- - - - - - - - - - - - End Footnotes- - - - - - - - -

Defendant also contends that eleven hours billed by Mr. Blessinger for researching the New York State Human Rights Law and amending the complaint by adding a mere five sentences is excessive. We agree. As previously stated, Mr. Blessinger is being billed at a rate of $ 250, which assumes a certain level of expertise in discrimination law, including a basic familiarity with New York State Human Rights Law. See generally Bridges, 1996 WL 47304, at *6. Accordingly, [*95] he will be compensated only for five hours spent in researching the law and amending the complaint.

Defendant also objects to several of Mr. Blessinger's time entries on the ground that the tasks performed were clerical in nature and that an attorney should not be compensated at an attorney's hourly rate for work that could be performed by a paralegal or clerical aide. (See Mem. in Opp. at 24). See, e.g., Kim, 1997 WL 458783, at *19. The time records indicate, however, that Mr. Blessinger billed at a paralegal rate for those tasks he had undertaken, such as serving the complaint and subpoenas, that could have been done by someone other than an attorney. Mr. Blessinger will therefore be reimbursed for hours spent working in a paralegal capacity at $ 65 an hour.

E. Reduction for Unsuccessful Claims

Defendant argues that the lodestar amount should also be reduced by fifty percent to reflect the fact that plaintiff succeeded on only two of the seven claims listed in her amended complaint. As previously summarized, in her amended complaint plaintiff asserted claims of gender discrimination and retaliation under both state and federal law, as well as claims of libel and intentional [*96] infliction of emotional distress. Before trial plaintiff withdrew her libel claims and the court refashioned the gender retaliation claim into two claims of First Amendment retaliation, one premised on the decision by OEEO to file the misconduct charges and the other based on the circulation of an OEEO memorandum highly critical of the plaintiff. (See Mem. & Order, dated July 9, 1997, at 12). At the close of plaintiff's case, the First Amendment retaliation claim arising from the alleged circulation of the critical memorandum was dismissed, and plaintiff voluntarily withdrew her claim of intentional infliction of emotional distress. (Tr 823, 825). The claims submitted to the jury were the First Amendment retaliation claim based on the decision to file the misconduct charges and the state and federal gender-discrimination claims. Plaintiff prevailed on her gender discrimination claims and the jury found against her on the First Amendment claim.

[HN21]As a general rule, fees may not be recovered for distinct unsuccessful claims. See Hensley, 461 U.S. at 434-35. If, however, the court "determines that the successful and unsuccessful claims are inextricably intertwined and involve [*97] a common core of facts or are based on related legal theories, it is not an abuse of discretion for the court to award the entire fee."

Page 27

Reed, 95 F.3d at 1183 (internal quotations omitted). See Lunday, 42 F.3d at 133 (citing Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993)).

The determination whether the lodestar amount should be adjusted when a plaintiff prevails on only some of her claims involves a two-step process. First, the court must exclude hours spent on failed claims found to be independent of the claims on which plaintiff succeeded. Hensley, 461 U.S. at 434. Second, if the failed claims are intertwined with successful claims, the court must next consider whether the extent of plaintiff's success was so limited that it would be unreasonable to award the entire balance of the requested fee. See id. at 440; Grant, 973 F.2d at 101.

We find that the claims of gender discrimination and First Amendment retaliation submitted to the jury are "inextricably intertwined" because they stem from a common core of facts concerning the OEEO's investigative interviews with the plaintiff and the decision to bring disciplinary [*98] charges against her. See Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997), cert. denied, 140 L. Ed. 2d 114, 118 S. Ct. 1051 (1998)(claims deemed interrelated when plaintiff needed to present same evidence of events for both claims); Lunday, 42 F.3d at 134 (claims related where both arose from common core of facts); Grant, 973 F.2d at 101. In contrast, the libel claims, the claim for intentional infliction of emotional distress and the retaliation claim related to the disparaging report sent to the plaintiff's precinct are not closely related to the successful gender claims because the facts that plaintiff needed to prove in order to prevail on these common-law claims -- including the chain of custody of the memorandum and how it came to be circulated at the plaintiff's precinct and who read it -- differ markedly from the facts at issue in the plaintiff's successful gender-discrimination claims.

The failure of the plaintiff to succeed on her unrelated claims involving the memorandum requires a downward reduction in the fee award. See Hensley, 461 U.S. at 435. However, because these claims did not involve factually or legally complex issues and consequently represented [*99] a fairly insignificant amount of the work performed, an over-all reduction of only ten percent in the lodestar is warranted. See, e.g., Bonner 1997 U.S. Dist. LEXIS 11382, 1997 WL 441910, at *9.

Having determined that the unsuccessful First Amendment retaliation claim is interrelated with the successful discrimination claim, our next step is to assess the level of success achieved by the plaintiff. See Hensley, 461 U.S. at 434. This question is addressed because, [HN22]"even where plaintiff's unsuccessful and successful claims are interrelated, if a plaintiff achieves only partial or limited success 'the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" Lilly, 910 F. Supp. 945 at 952 (quoting Hensley, 461 U.S. at 436). See also Farrar v. Hobby, 506 U.S. 103, 113, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996). In this case the plaintiff won a resounding $ 750,000 in damages for her gender discrimination claims. The fact that the award is subject to reduction does not negate the plaintiff's substantial victory. See Ginsberg, 1998 WL 19997, at 2; Kim, 1997 WL 458783, at [*100] *18. In light of the plaintiff's success on her discrimination claims, the lodestar amount will not be further reduced despite the failure of the related First Amendment retaliation claim.

In her application, plaintiff requests, "in the event that the court acts upon defendants' request by lowering the hourly fee amount or the number of hours allowed," that the resulting lodestar be enhanced by fifty percent to reflect "the exceptional jury result obtained" by plaintiff's counsel. (See Pl's Reply Mem. at 21) [HN23]Although the lodestar may be adjusted based on several permissible factors, including the results obtained, the risks involved and the delay in payment, see Hensley, 461 U.S. at 434; Blanchard, 489 U.S. at 94-95; Luciano, 109 F.3d at 116, there is a "strong presumption" that the lodestar figure represents a reasonable fee. See Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d Cir. 1997). Having carefully considered all of the available factors that might warrant an upward adjustment in the fee award, we find that the lodestar figure, as modified, is a reasonable fee award, and therefore decline plaintiff's request to increase it.

F. Conclusion as [*101] to Fee Award

In conclusion, plaintiff's proposed total fee award of $ 169,987.50 will be reduced in the following manner: Work performed by Mr. Cerrone and Mr. Blessinger in their capacities as attorneys will be compensated at an hourly rate of $ 250 and paralegal work will be compensated at $ 60 an hour. The lodestar will then be reduced by $ 10,650 to reflect excessive and unnecessary work. Finally that amount will be further reduced by ten percent to reflect plaintiff's unsuccessful, independent claims. Thus, the total amount that will be awarded in attorney's fees is $ 111,171.60.

IV. Costs or Expenses

Plaintiff requests the reimbursement of her litigation expenses in the amount of $ 6,358.58. The following is a break-down of these requests:

| | |
|---|---|
| Depositions: | $ 2,636.55 |
| Expert Witness Fee: | $ 3,300.00 |
| Docket Sheets: | $ 3.50 |
| Filing Fee: | $ 120.00 |
| Xerox Copies: | $ 175.08 |
| Supplies: | $ 3.00 |
| Travel: | $ 55.50 |

(Plf's App. for Allowances of Attorney's Fees & Expenses at Ex. D).

[HN24]When awarding attorney's fees, a court "should also award the prevailing party 'reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [*102] fee-paying clients." Bonner, 1997 U.S. Dist. LEXIS 11382, 1997 WL 441910, at *12 (quoting Reichman v. Bonsignore Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)(internal citations and quotations omitted)). Defendant objects to the request for reimbursement on a number of grounds.

As a preliminary matter, the defendant contends that the plaintiff's request for costs should be denied in its entirety because plaintiff's initial fee application failed to conform to 28 U.S.C § 1924 or Civil Rule 54.1(a) in that it was not accompanied by an affidavit from counsel stating that the costs are allowable by law and because plaintiff failed to attach paid receipts to her application. (See Mem. in Opp. at 32). Neither contention merits a denial of expenses. As discussed, plaintiff re-served her application with the appropriate affidavits in support, and therefore she is currently in compliance with 28 U.S.C § 1924. Moreover, plaintiff's application for costs does not need to conform to Civil Rule 54.1 because that rule applies to requests to tax costs made to the Clerk of the Court, not to requests for a statutory award of expenses made to the court. See S.D.N.Y. C.P.R. 54.1.

Defendant also challenges [*103] the request for expert witness fees paid to Ms. Forhman. Plaintiff claims that Ms. Forhman testified as an expert, and that therefore, pursuant to 42 U.S.C. § 2000e-5(k), she is entitled to recover the fees paid to Ms. Forhman in connection with her testimony. However, as defendant correctly notes, plaintiff never designated Ms. Forhman as an expert, and plaintiff never provided expert-witness information regarding Ms. Forhman, as required by Fed. R. Civ. P. 26(a)(2)(b). Plaintiff offered Ms. Forhman as a fact witness (See Joint-Pre Trial Order at 7, 10) and shall be reimbursed accordingly. See Bridges, 1996 WL 47304, at *15. Thus, plaintiff may recover $ 40 for the day Ms. Forhman testified and $ 80 for Ms. Forhman's travel time. See 28 U.S.C. § 1920(3); 28 U.S.C. § 1821.

Defendant's remaining contention is that plaintiff should not be reimbursed for a number of her expenses because she has failed to provide adequate supporting documentation. Contrary to defendant's assertions, we find that plaintiff has provided sufficient evidence to support her claim that her costs were reasonably incurred and necessary for the litigation. See, e.g., Saudi Iron & Steel Co. v. [*104] Stemcor U.S.A. Inc., 1997 U.S. Dist. LEXIS 20336, 1997 WL 790746, at *1 n.1 (S.D.N.Y. Dec. 23, 1997); Bonner, 1997 U.S. Dist. LEXIS 11382, 1997 WL 441910, at *12; Bridges, 1996 WL 47304, at *15. Accordingly, plaintiff will be awarded $ 3,178.58 in costs.

**CONCLUSION**

Defendant's motion for judgment as a matter of law is denied. Defendants' motion for a new trial is granted solely only on the issue of damages unless the plaintiff accepts a remittitur of $ 650,000, for an award of $ 100,000 in compensation for pain and suffering and $ 450.00 in out-of-pocket expenses. Plaintiff is to notify the court in writing within two weeks of her election. Subject to her election to accept a remittitur, plaintiff will be awarded $ 111,171.60 in attorney's fees and $ 3,178.58 for litigation expenses.

DATED: New York, New York

April 21, 1998

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE