UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FERRON SHORTER JR. <br> Plaintiff, | |
| v. | CIVIL NO.: 303 CV 0149(WIG) |
| HARTFORD FINANCIAL SERVICES GROUP, INC. and MARYANNE RHODES <br> Defendants. | MARCH 28, 2005 |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR EQUITABLE RELIEF</u>**

Pursuant to Local Rule 7(a) of this District, Hartford Financial Services Group, Inc. ("The Hartford") submits the following Memorandum of Law in Opposition to Plaintiff's Motion for Equitable Relief dated February 28, 2005 ("Motion for Equitable Relief"). In his Motion for Equitable Relief, Plaintiff claims that he is entitled to <u>27 years</u> of front pay until 2032. Such an award is excessive, speculative and completely unwarranted by the facts of this case. The Court should deny Plaintiff's request for an award of front pay because 1) the record is bereft of evidence that he is currently seeking employment and 2) the jury's award of back pay has fully compensated Plaintiff and made him whole. If the Court exercises its discretion in favor of an award of front pay, such an award should be limited to, at most, six months.

I.  BACKGROUND

Plaintiff commenced this action in United States District Court on January 22, 2003. Plaintiff's thirteen count Complaint alleged various statutory and common law claims against The Hartford and Maryanne Rhodes arising out of the termination of Plaintiff's employment with The Hartford on January 23, 2002. Prior to commencing the instant civil

lawsuit, Plaintiff filed an administrative charge with the Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on July 10, 2002. The CHRO dismissed Plaintiff's administrative charge on December 2, 2002 through its Merit Assessment Review process.

A.  Plaintiff's Claims

Counts One through Ten alleged the following causes of action against The Hartford: 1) sexual harassment in violation of Title VII; 2) race and sex discrimination in violation of Title VII; 3) violation of 42 U.S.C. § 1981; 4) retaliation in violation of Title VII; 5) retaliation under 42 U.S.C. § 1981; 6) race and sex discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"); 7) retaliation in violation of CFEPA; 8) intentional infliction of emotional distress; 9) negligent infliction of emotional distress and 10) breach of implied covenant of good faith and fair dealing. Count Thirteen alleged a common law claim for invasion of privacy against The Hartford.[1]

B.  Results of the Trial

Prior to trial, the Court dismissed Counts Four, Five and Seven alleging retaliation and Count Thirteen alleging invasion of privacy. Plaintiff voluntarily withdrew his claim in Count Ten alleging breach of implied covenant of good faith and fair dealing. Of the remaining counts which were submitted to the jury, the jury found in favor of The Hartford as to Count One alleging sexual harassment and Count Eight alleging intentional infliction of emotional distress. The jury found in favor of Plaintiff on his claims of race and sex discrimination alleged in Counts Two, Three and Six and on his claim of negligent infliction of emotional distress in

---

[1] Counts Eleven and Twelve alleged claims against Defendant Maryanne Rhodes for tortious interference with contract and defamation, respectively.

2

Count Nine. The jury awarded Plaintiff $170,000 in back wages and $85,000 in compensatory damages for a total award of $255,000.

### C. Plaintiff's Efforts At Mitigation

During the trial of this matter, Plaintiff testified regarding his efforts to obtain employment following his termination of employment from The Hartford. Plaintiff testified that following his discharge, he began "drinking a lot" and was depressed. (Jan. 24 Trans., pp. 227-28.)[2] Plaintiff made no efforts to obtain new employment until April or May of 2002. (Jan. 24 Trans., p. 229.) When he finally began to seek new employment, Plaintiff testified in conclusory fashion that he "started buying Sunday papers." (Jan. 24 Trans., p. 230.) Plaintiff also utilized the internet by visiting sites like ct.jobsearch, monster.com and careerbuilders.com. Plaintiff re-did his resume, prepared a cover letter and "just started applying for jobs." (Jan. 24 Trans., p. 230.)

Plaintiff initially limited his search to information technology jobs in Connecticut. However, because there were few such positions available and because Plaintiff was a self-described "beginner" in the field, he was unable to secure a position.[3] (Jan. 24 Trans., p. 231.) After approximately one year, Plaintiff expanded his job search to include rating and underwriting positions. (Jan. 24 Trans., p. 231.) Plaintiff has previously worked in rating and underwriting at The Hartford. (Jan. 24 Trans., p. 98.) Plaintiff's entire direct testimony regarding his efforts to mitigate his damages consumed less than three pages of the trial

---

[2] A copy of the relevant portions of the transcript of Plaintiff's trial testimony on January 24, 2005 (hereinafter referenced as "Jan. 24 Trans., p. ___.") is attached as Exhibit 1

[3] Plaintiff testified that he only became a developer – what he referred to as an "official programmer" – in October 2001. (Jan. 24 Trans., pp. 97-99.)

transcript. Plaintiff's trial testimony included none of the dates, names and other detailed information contained in his Affidavit submitted in support of his Motion for Equitable Relief.[4]

On cross-examination, Plaintiff testified that during the first four to five months following his termination, he did not make an effort to find employment because he was "drinking, depressed [and] embarrassed." (Jan 25 Trans., pp. 130-31.)[5] While Plaintiff claimed that he began to look for a new job in April or May 2002, it was "[d]efinitely no later than June" of 2002. (Jan. 25 Trans., p. 132.) The first documentation Plaintiff provided of his job search was a response he received from Aetna in October 2002. (Jan 25 Trans., p. 132.) Plaintiff was unsuccessful finding a position in information technology, but eventually accepted employment with a company called American Distributions. (Jan. 25 Trans., p. 133.)

## II. ANALYSIS

### A. The Court Should Disregard Plaintiff's Affidavit, His Expert Report And The Materials He Submitted From DeVry University

In support of his Motion for Equitable Relief, Plaintiff submitted his Affidavit of Ferron Shorter. Plaintiff's Affidavit consists of 11 pages of detailed and exhaustive information about Plaintiff's efforts to obtain employment following his discharge from The Hartford, including job leads he pursued, employment applications he submitted and job interviews he attended. (Shorter Affidavit, ¶¶ 4-47.) Plaintiff's Affidavit also contains an account of his discussions with individuals at DeVry University and ITT Technical Institute regarding

---

[4] In his Affidavit, Plaintiff repeatedly cites to Exhibit 29, which contained Plaintiff's resume and various cover letters, emails and other documents regarding Plaintiff's job search. Many of these documents are undated and unaddressed. From the face of these documents, it is unclear that they were even sent to prospective employers. At the very end of Attorney Baird's re-direct of Plaintiff, Exhibit 29 was entered into evidence. There was no testimony addressing or explaining the contents of this exhibit. (Jan 25 Trans., pp. 159-62.)

[5] A copy of the relevant portions of the transcript of Plaintiff's trial testimony on January 25, 2005 (hereinafter referenced as "Jan. 25 Trans., p. ___") is attached as Exhibit 2.

4

additional training he intends to pursue to obtain an undergraduate degree in networking and programming.[6] (Shorter Affidavit, ¶¶ 48-62.) Most remarkably, Plaintiff's Affidavit contains the opinion of an expert witness regarding the value of Plaintiff's alleged lost pension benefits. (Shorter Affidavit, ¶¶ 67-68.) Plaintiff never disclosed an expert witness as required by Rule 26 and, as set forth above, virtually none of the information in Plaintiff's Affidavit is contained in Plaintiff's trial testimony or elsewhere in the record.

The Court should disregard Plaintiff's Affidavit, the materials from DeVry University and his expert report because he did not present any of this evidence at trial. The trial of Plaintiff's claims against The Hartford is complete and the record is closed. Plaintiff, in essence, has attempted to supplement his trial testimony with a lengthy and detailed Affidavit in support of his damages claims, including an expert report. This is patently unfair to The Hartford as none of this information was disclosed during discovery and none of it was subject to cross-examination at trial.[7] It is also improper, as a procedural matter, for the Court to consider "evidence" outside the record in evaluating Plaintiff's claim for damages in the form of equitable relief when this "evidence" was never introduced or admitted at trial or subject to cross-

---

[6] Plaintiff's claim that he requires additional education to obtain comparable employment should be rejected. Plaintiff did not have a college degree in his position at The Hartford. (Jan. 24 Trans., p. 96.) Therefore, by definition, any position that requires a college degree is not comparable to the position Plaintiff held at The Hartford.

[7] During discovery, The Hartford requested information about Plaintiff's efforts to mitigate his damages in its First Set of Interrogatories and at Plaintiff's deposition. In his responses to The Hartford's interrogatories, Plaintiff stated that he "applied to numerous companies through the Internet, the exact companies and dates of application are unknown. Plaintiff applied to companies advertising the Sunday edition of the Hartford Courant, the exact companies and dates of application are unknown." Plaintiff disclosed that he received one reply from Aetna in October 2002 and that he registered at three employment agencies in the fall of 2002 at which he sought positions as a data input technician, rater and underwriting assistant. (A copy of Plaintiff's response to Interrogatory No. 13 of The Hartford's First Set of Interrogatories is attached as Exhibit 3.) Plaintiff's deposition testimony regarding his efforts to mitigate his damages was equally unresponsive and lacking in detail. (The relevant portions of the transcript of Plaintiff's deposition testimony are attached as Exhibit 4.)

examination. If Plaintiff wanted the Court to consider this information in determining his claim for equitable relief, he was required to present this evidence at trial in the same way that he presented his claim for legal relief to the jury. See Excel Corp. v. Bosley, 165 F.3d 635, 639-40 (8th Cir. 1999)(denying an award of front pay because "the evidence in the record indicated a failure to mitigate for purposes of front pay. . . . The evidence actually in the record before the court could not support a finding of mitigation."); Sequa Corp. v. GBJ Corp., 156 F.3d 136, 143-44 (2d Cir. 1998)(finding that factual and legal findings as well as estimates of liability must be based on evidence in the record).

Based on the foregoing, the Court's evaluation of Plaintiff's claim for front pay must be limited to the testimony and other evidence in the record.[8] Thus, Plaintiff's Affidavit, including the information from DeVry University and his expert report, should be disregarded in its entirety.

B.      Reinstatement Is Not Practical Or Appropriate

Title VII of the Civil Rights Act of 1964 allows the Court, in its discretion, to order reinstatement as a remedy for employment discrimination in order to "reestablish the prior employment relationship . . . and at the same time assure the plaintiff of employment free of discrimination." Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (1984). "Courts have acknowledged that there are times when reinstatement is impractical and should not be granted, such as when the employer-employee relationship has become hostile or when the position in question . . . has changed substantially." Evans v. State of Connecticut, 967 F. Supp. 673, 684

---

[8] If the Court chooses to accept and consider Plaintiff's Affidavit, The Hartford must be permitted to cross-examine Plaintiff, challenge the admissibility of representations in the Affidavit and submit additional evidence regarding Plaintiff's failure to mitigate his damages. Plaintiff should also be required to disclose the identity of his expert witness as required by Rule 26(a)(2) so that The Hartford may conduct appropriate discovery, including deposing this individual, and have an opportunity to retain its own expert witness, if necessary.

(D. Conn. 1997)(citations omitted). See Whittlesey, 742 F.2d at 728 (reinstatement is not appropriate when the employer-employee relationship has been irreparably damaged by animosity associated with the litigation).

In this case, reinstatement is not appropriate. At one point during trial, Plaintiff testified that he sought reinstatement to this position with The Hartford. (Jan. 25 Trans., pp. 99-100.) In response, The Hartford attempted to introduce evidence regarding why it did not reinstate Plaintiff and why reinstatement was inappropriate. This evidence consisted of additional information The Hartford discovered about Plaintiff's arrest record and criminal history following his termination on January 23, 2002. Plaintiff objected to the introduction of this evidence and the parties and the Court discussed this issue at length. (Jan. 25 Trans., pp. 108-27.) During this discussion, counsel for The Hartford explained that evidence regarding Plaintiff's arrest record was necessary to rebut Plaintiff's claim for reinstatement:

> [I]f [Plaintiff] is saying, "I've been trying to be reinstated," Mr. Wardell had this arrest warrant. The Hartford had this information, and they would testify. This information was extremely troubling to them when they got it. They got it long after the fact . . . but it shows the exact same conduct, the exact same accusations of conduct. And I again would ask if we can ask him about this situation because he's saying – or at least get this arrest record in through Mr. Wardell, because he's saying he wanted to be reinstated, and this goes to why The Hartford would not have reinstated him.

(Jan. 25 Trans., p. 109.) Attorney Strange later continued,

> I think that is my problem with him testifying that he wanted to be reinstated. It's not a claim in his complaint. It's not part of this case . . . and I thought we had . . . agreed on that. Now that he . . . said, "I wanted to be reinstated," and I clarified he wanted to be reinstated after February, we had that arrest information in February, and I think Wardell will testify that that arrest – if you look at the scenario, that arrest scene with the mother of his child is very troubling. It's a very similar circumstance, and Wardell will say, "I was a state police officer for 25 years. I saw a problem here."

7

(Jan. 25 Trans., p. 114.)

Attorney Baird appeared to agree with the Court's statement that reinstatement was not an issue in this case. She stated, "Well, Your Honor, we certainly haven't amended the complaint to add reinstatement. I mean, reinstatement is one of the forms of relief. . . . You don't have to make a claim, and we're certainly not making that claim that they should have, you know -- ." (Jan. 25 Trans., p. 121.) The Court later instructed the jury to disregard any information about Plaintiff's criminal history obtained by The Hartford after his termination of employment. (Jan. 25 Trans., p. 130.)

Based on the Court's refusal to admit this evidence, Plaintiff's reinstatement to his former position is not an appropriate remedy. In response to Plaintiff's claim that he sought reinstatement, The Hartford made an offer of proof concerning evidence it obtained about Plaintiff's arrest record following his discharge. The Hartford also had witnesses prepared to testify that Plaintiff would not have been reinstated based, in part, on this evidence. Upon Plaintiff's objection, this evidence was not admitted at trial and The Hartford was prohibited from introducing evidence supporting its claim that Plaintiff was not entitled to reinstatement. Consequently, Plaintiff cannot now argue that he is entitled to reinstatement when he objected to The Hartford introducing evidence explaining why Plaintiff would not have been reinstated.

In addition, the Court should deny reinstatement because it is undisputed that Plaintiff violated The Hartford' Electronic Communications Policy ("ECP"). Plaintiff admitted to accessing Ms. Rhodes' voice mail, deleting messages and changing her password. Plaintiff's conduct, in which he violated the ECP and interfered with The Hartford's business, warranted his discharge. While the jury found discrimination, evidently seeing disparate treatment in that Ms.

Rhodes was not terminated for a lesser violation of the ECP, the jury did not conclude that Plaintiff's termination was unjust or unwarranted. At most, the jury's verdict suggests that Ms. Rhodes should have been terminated along with Plaintiff. Moreover, the fact that the jury concluded that Plaintiff was discriminated against because Ms. Rhodes was not terminated does nothing to diminish the seriousness of Plaintiff's misconduct. Reinstating Plaintiff, notwithstanding his admitted misconduct, would confer on him the benefit of a job at The Hartford from which his own misconduct disqualified him. Under these circumstances, The Hartford should not be required to provide employment to an individual who violated its policies, who behaved in an entirely inappropriate fashion and whom The Hartford believes was appropriately terminated.

The Court should also deny reinstatement on grounds that it is impractical. Over three years have passed since Plaintiff's discharge and during that time, Plaintiff has not worked in the information technology field or obtained any training to update his skill level and knowledge. The IT field is constantly changing and there is no evidence in the record that Plaintiff has updated his skill level to stay current in the field. See Evans, 967 F. Supp. at 684 n.17 (denying reinstatement due, in part, to plaintiff's outdated skill level and lack of current training). Thus, there is no basis for the Court to conclude that Plaintiff has the skills and knowledge to perform the duties of his former position.

C. The Court, In Its Discretion, Should Deny Plaintiff An Award Of Front Pay

In cases where reinstatement is inappropriate and the plaintiff has no reasonable prospect of finding comparable employment, the court may award front pay and future benefits. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1182 (2d Cir. 1996) "The decision to award front pay is discretionary, and a request for front pay may be denied if the court finds that the back pay

award is sufficient to make the plaintiff whole." Greenway v. Buffalo Hilton Hotel, 951 F. Supp. 1039, 1064 (W.D.N.Y. 1997), aff'd, 143 F.3d 47 (2d Cir. 1998) (citing Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993)(finding that district court properly exercised its discretion to deny plaintiff an award of front pay)). See Evans, 967 F. Supp. at 685 (A court's decision to deny an award of front pay "is not an abuse of discretion if the court finds that back pay is sufficient to make plaintiff whole.").

While back pay compensates the plaintiff for lost wages and benefits before trial, front pay is intended to compensate the plaintiff for losses after trial.[9] "Where a plaintiff has already been fully compensated for the injuries resulting from discrimination, front pay is not appropriate. In order to qualify for front pay, a plaintiff must have been diligent in seeking comparable employment and under no circumstances can the award be based on speculation." Rivera v. Baccarat, 34 F. Supp. 2d 870, 877-78 (S.D.N.Y. 1999). With an award of front pay, the plaintiff must demonstrate reasonable efforts to find new employment and the court must estimate the plaintiff's ability to mitigate damages going forward. Palma v. Pharmedica Communications, Inc., No. 3:00 CV 1128 (HBF), 2003 U.S. Dist. LEXIS 21227, *17-*19 (D. Conn. Sept. 3, 2003)(Exhibit 5); Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, 79 F. Supp. 2d 197, 204 (E.D.N.Y. 2000).

An award of front pay is subject to the Court's discretion. Equitable factors which courts consider in determining an award of front pay include the age of the plaintiff, the plaintiff's skills, the job market, the nature of the plaintiff's position, and the plaintiff's

---

[9] An award of front pay is not intended to allow Plaintiff to pay his living expenses while he attends school to obtain his undergraduate degree. Moreover, the fact that Plaintiff intends to enroll in school militates against an award of front pay because an award of front pay requires that Plaintiff is willing and available to work. Floca v. Homecare Health Servs., 845 F.2d 108, 113 (5th Cir. 1988) (denying front pay where plaintiff entered law school and thus was not available to work).

10

reasonable prospects of obtaining comparable employment. Fernandez, 79 F. Supp. 2d at 204. Courts have routinely refused to award front pay at all on the grounds that the plaintiff failed to provide evidence that he was diligent in seeking comparable employment following his termination. See Palma, 2003 U.S. Dist. LEXIS 21227 at 20-*21; Oliver v. Cole Gift Centers, Inc., 85 F. Supp. 2d 109, 116 (D. Conn. 2000); Rivera, 34 F. Supp. 2d at 878-79. A court may also exercise its discretion to refuse to award front pay if the court concludes that the back pay award was sufficient to make the plaintiff whole. Reed, 95 F.3d at 1182; Evans, 967 F. Supp. at 685.

        1.      Plaintiff Failed To Establish That He Has No Reasonable Prospect Of Finding Comparable Employment

The Court should, in its discretion, deny Plaintiff an award of front pay because there is nothing in the record which establishes that Plaintiff has no reasonable prospect of finding comparable employment. First, Plaintiff failed to undertake a diligent search for employment following his termination. The record shows that Plaintiff did not make any efforts to seek employment for approximately four months following his termination. (Jan. 24 Trans., p. 229.) After this initial period, Plaintiff's job search consisted primarily of reading the Sunday paper and visiting web sites like ct.jobsearch, monster.com and careerbuilders.com. (Jan. 24 Trans., p. 230.) Plaintiff did not document any attempts to find employment until October 2002 – nine months after his termination. (Jan 25 Trans., p. 132.)

Second, there is absolutely no evidence in the record regarding Plaintiff's present, ongoing efforts to obtain comparable employment. Plaintiff's trial testimony regarding his efforts to obtain employment stopped in July 2004 with his employment at American Distributions. (Jan. 25 Trans., p. 133) Thus, there is nothing in the record which shows that

Plaintiff has looked for work since July 2004 or that he presently continues to look for comparable employment in the information technology or insurance industries.

As set forth above, back pay is intended to compensate the plaintiff for lost wages and benefits incurred before trial. Thus, in making its award of back pay, the jury fully compensated Plaintiff for his losses up to the time of trial. Front pay, on the other hand, is intended to compensate the plaintiff for lost wage and benefits incurred after trial. In considering Plaintiff's ability to mitigate his damages going forward, the Court must consider his present efforts to find new employment. Palma, 2003 U.S. 21227 at *16; Fernandez, 79 F. Supp. 2d at 204. There is no evidence of any such ongoing efforts in the record.

Under these circumstances, where the plaintiff obtained subsequent, lesser employment and there is no evidence of the plaintiff's ongoing efforts to obtain a better, more comparable position, courts have exercised their discretion to deny front pay awards. See Bosley, 165 F.3d at 639-640 (court denied award of front pay where there was no evidence of any further job search by the plaintiff after she accepted a lesser position; consequently, "the evidence did not show that Bosley had mitigated her damages for purposes of the front pay decision"); Palma, 2003 U.S. Dist. LEXIS at *19 (court denied award of front pay finding, "Without any evidence of an effort to seek a higher paying position, or even a position comparable in pay and responsibilities to her job [with the defendant], the Court can only conclude that plaintiff is content to remain at her current [lesser] job at the current [lesser] rate of pay."); Oliver, 85 F. Supp. 2d at 116 (denying award of front pay where there was no evidence that the plaintiff continued to search for work after she accepted a lesser position following her termination); Rivera, 34 F. Supp. 2d at 878 (where plaintiff worked at her new job for two years with lower wages and benefits than she earned with defendant, court denied award of front pay

on grounds that the plaintiff failed to present evidence that she made any further efforts to secure more comparable employment).

The Court cannot conclude that there is no reasonable probability that Plaintiff will not find comparable employment because there is no evidence that Plaintiff is still seeking comparable employment. In other words, looking ahead from the date of trial, Plaintiff failed to present evidence at trial that he has mitigated, or is attempting to mitigate, his future back pay damages by seeking comparable employment.[10] Accordingly, the Court should exercise its discretion to deny Plaintiff an award of front pay.

### 2. The Jury's Award Was Sufficient To Make Plaintiff Whole

The Court should also deny Plaintiff an award of front pay because the jury's award of back pay has made Plaintiff whole. The evidence at trial established that Plaintiff earned $44,500 per year and that following his termination, he collected $15,834 in unemployment compensation benefits. (Jan. 25 Trans., p. 132; Ex. 535.) In awarding Plaintiff the amount of $170,000 in back pay, the jury awarded Plaintiff an effective annual salary of $56,000 and failed to take into account: 1) Plaintiff's complete failure to seek any employment until approximately May 2002; and 2) the income Plaintiff actually earned in the three years

---

[10] Plaintiff's mitigation of damages for purposes of front pay and back pay are two separate issues. For example, in Bosley, the plaintiff appealed the district court's conclusion that she was not entitled to an award of front pay because she failed to mitigate her damages on the grounds that the jury already concluded she mitigated damages in awarding her back pay. The Eighth Circuit rejected the plaintiff's reasoning finding, "The circumstances informing the back pay issue are not necessarily the same circumstances that inform the front pay issue. . . . The jury's conclusion that during the period of the back pay award, Bosley had mitigated her damages is not inconsistent with the district court's determination that at the time of the front pay determination, sufficient time had passed such that Bosley's failure to find comparable employment was due to a failure to mitigate." Bosley, 165 F.3d at 640. In that case, the plaintiff's failed to mitigate for purposes of front pay because she failed to establish that she continued to look for comparable employment following her acceptance of employment which paid $2.90 less per hour than what she earned while employed with the defendant. Bosley, 165 F.3d at 639-40. See Dominic v. Consolidated Edison Co. of New York, 822 F.2d 1249, 1258 (2d Cir. 1987)(finding that the defendant's "failure to show that Dominic had not mitigated damages does not entitle him to a lifetime front-pay award. In calculating the size of a front-pay award, the court must estimate the plaintiff's ability to mitigate damages in the future").

following his discharge. In evaluating Plaintiff's claim for front pay, the Court should also consider that Plaintiff collected an additional amount of $15,834 in unemployment compensation benefits after his termination. (Jan. 24 Trans., p. 227.)

As it now stands, Plaintiff has been fully and generously compensated for his alleged losses. Had Plaintiff continued working for The Hartford during the last three years, he would have earned, taking into account potential future salary increases, between $135,000 and $150,000. The jury awarded Plaintiff $170,000. In addition, the jury failed to take into account Plaintiff's failure to seek new employment for approximately four months following his termination and it failed to deduct income actually earned by Plaintiff after his discharge. These factors, in addition to Plaintiff's receipt of $15,834 in unemployment compensation benefits, establish that Plaintiff has been made whole for his alleged losses and that he is not entitled to an additional award of front pay.

D.  The Court Should Reject Plaintiff's Claim For 27 Years Of Front Pay

In the event the Court chooses to exercise its discretion to make an award of front pay to Plaintiff, it should reject out of hand Plaintiff's request for 27 years of front pay until 2032. In essence, Plaintiff seeks an award of front pay which would compensate him for the rest of his working career. Such an award is highly improper and can only be based on rank speculation about events so far in the future. See Whittlesey, 742 F.2d at 728 ("[A]n award of front pay in lieu of reinstatement does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing, because the duty to mitigate damages by seeking employment elsewhere significantly limits the amount of front pay available."); Hybert v. Hearst Corp., 900 F.2d 1050, 1056 (7th Cir. 1990)(vacating five year front pay award as "impermissibly speculative" and stating, "the longer the front pay period, the more speculative the front pay

award."). An award of front pay would eviscerate any incentive for Plaintiff to mitigate damages for the period of time covered by the award. It also portends a windfall: with front pay in hand, Plaintiff can obtain another position and turn a substantial profit on the transaction – in effect being paid double for his work – all because, as noted above, Ms. Rhodes was not terminated for her own, relatively minor, misconduct.

In his Motion for Equitable Relief, Plaintiff failed to cite a single case supporting his claim that he is entitled to an award of 27 years of front pay. Indeed, Plaintiff provided almost no analysis in support of his claim and relied on one case, Excel Corp. v. Bosley, 165 F.3d 635 (8th Cir. 1999), in which the Eighth Circuit affirmed the trial court's decision not to award front pay to the plaintiff. The extravagant and speculative award of front pay which Plaintiff seeks, to the best of counsel's knowledge, would be unprecedented in the Second Circuit. Courts have repeatedly warned against front pay awards far smaller than that which Plaintiff seeks.

In Bosley, 165 F.3d at 640; Saulpaugh, 4 F.3d 134, Palma, 2003 U.S. Dist. LEXIS 21227, Oliver, 85 F. Supp. 2d 109, Rivera, 34 F. Supp. 2d 870, and Evans, 967 F. Supp. 673, the court refused to award front pay on the grounds that such an award was an equitable remedy unwarranted by the circumstances. In Fernandez, the court rejected the 59 year old plaintiff's claim for six years of front pay as "highly speculative" and, instead, awarded two years of front pay. Fernandez, 79 F. Supp. 2d at 204. In Greenway, 951 F. Supp. 1063, the plaintiff requested an award of twenty years of front pay. The court denied the plaintiff's claim as "excessive" and awarded him six months of front pay. Greenway, 951 F. Supp. at 1064. See Dominic v. Consolidated Edison Co., 652 F. Supp. 815, 820 (S.D.N.Y. 1986) (two years front pay awarded to 52 year old plaintiff), aff'd, 822 F.2d 1249 (2d Cir. 1987).

In this case, Plaintiff's relatively young age, his lack of diligence in obtaining new employment and his relative lack of experience in the field of information technology militate against a front pay award of more than six months. Plaintiff was discharged from The Hartford three years ago. Based on the jury's award of back pay, he has been fully and generously compensated for losses incurred during this period of time. An award of front pay beyond an additional six months is speculative and unwarranted given the full relief Plaintiff already recovered.

III. CONCLUSION

Based on the foregoing, the Court should deny Plaintiff's Motion for Equitable Relief.

                    DEFENDANT,
                    HARTFORD FINANCIAL SERVICES
                    GROUP, INC.

By: _____
Margaret J. Strange (ct08212)
James F. Shea (ct16750)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105
Phone: (860) 522-0404/Fax: (860) 247-1330
email: strangem@jacksonlewis.com
email: sheaj@jacksonlewis.com

CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this 28th day of March 2005, to the following counsel of record:

Rachel M. Baird
Law Office of Rachel M. Baird
379 Prospect Street
Torrington, CT 06790
(860) 626-9991
Attorney for Plaintiff

David L. Metzger
Metzger & Associates
25 Capitol Avenue
Hartford, CT 06106-1707
Ph. (860) 549-5026
Attorney for Defendant Maryanne Rhodes

_____
Margaret J. Strange

H:\Client Folder\H\The Hartford\Shorter\Post Trial\Opposition to Motion for Equitable Relief DOC
64532