EXHIBIT 4

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 1

```
 1              DISTRICT OF CONNECTICUT

 2
     FERRON SHORTER, JR.,        :      Civil No.
 3        Plaintiff,            :      303CV0149 (CFD)
                                :
 4        vs.                   :
                                :
 5   HARTFORD FINANCIAL SERVICES :
     GROUP, INC. and MARYANNE   :
 6   RHODES,
          Defendants.          :

 7
 8
 9
                    VOLUME I
10  --------------------------------------------------------
          Deposition of: FERRON SHORTER, JR.
11  --------------------------------------------------------
12
13
14
15
              Taken before Sheryl L. Yeske,
16   a Notary Public/Stenographer within and for
     the State of Connecticut, at the Law Offices of
17   Jackson Lewis LLP, 55 Farmington Avenue, Hartford,
     Connecticut on April 15, 2003.
18
19
20
21
22
23
              SHERYL L. YESKE, LSR
24            License No. 00028
       Brandon Smith Reporting Service, LLC
25            44 Capitol Avenue
              Hartford, CT 06106
```

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 9

1    Q.   And where is Sharia?

2    A.   She's in New Britain.

3    Q.   Do you have visitation with Sharia?

4    A.   Do you mean legal?  I mean, I see her.  But

5    nothing -- we don't have one as far as like an order,

6    no.

7    Q.   How often do you see her?

8    A.   Whenever she wants.  Every week.  Every other

9    week.

10   Q.   How old is she?

11   A.   Ten.

12   Q.   Does she live with her mother?

13   A.   Yes.

14   Q.   What is her mother's name?

15   A.   Lucy.

16   Q.   What is Lucy's last name?

17   A.   Morales.

18   Q.   Do you pay any child support for Sharia?

19   A.   Yes.

20   Q.   How much do you pay?

21   A.   $244 a month.

22   Q.   Do you have any other children?

23   A.   No.

24   Q.   Are you currently employed?

25   A.   No.

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 10

1      Q.  When was the last time you were employed?

2      A.  January 23, 2002.

3      Q.  Have you held any employment at all since

4   January 23, 2002?

5      A.  No.

6      Q.  And are you continuing to make child support

7   payments without employment?

8      A.  Yes.

9      Q.  Do you have another source of income?

10      A.  No.

11      Q.  Where do the child support payments come from?

12      A.  Me.

13      Q.  Are you currently earning any unemployment

14   compensation?

15      A.  No.

16      Q.  All right.  Are you making child support

17   payments out of savings?

18      A.  Yes.

19      Q.  And are there any other sources that you have

20   for making child support payments?

21      A.  No.

22      Q.  Just so I am clear, do you have any side work

23   or any jobs that are not official employment?

24      A.  No.

25      Q.  Now, what have you done to look for employment

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                          Ferron Shorter, Jr.

Page 11

1    since January 23, 2002?

2        A.   I have posted my resume on Monster.com, you

3    know, through the Internet.  Looked in Sunday

4    newspapers.  And I have applied at hiring agencies.

5        Q.   Anything else?

6        A.   No.

7              MS. STRANGE:  Let me just have these

8    marked.

9

10              (Defendants' Exhibit Number 1,

11              group of documents, marked for

12              identification)

13

14       Q.   (By Ms. Strange)  I am just going to ask you to

15   take a look at what has been marked as Shorter

16   Exhibit 1, and tell me if you recognize those

17   documents.

18       A.   Yes.

19       Q.   And what are those documents?

20       A.   My resume, and reply from Aetna for a job

21   position that I applied for, and letters from the

22   hiring agencies that I met with.

23       Q.   Okay.  Is this the resume that you posted on

24   Monster.com?

25       A.   As far as I know.

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

Page 12

1    Q.   And how does that work on Monster.com, do you

2    just post it one time, or do you update your posting?

3    A.   I posted it one time.  I mean, you have the

4    option whether or not to update it.

5    Q.   When did you post it?

6    A.   The summer of 2002.

7    Q.   Have you posted it any other time since then?

8    A.   I don't understand that question.

9    Q.   Okay.  Have you updated your resume on

10   Monster.com since the summer of 2002?

11   A.   Not that I can recall.

12   Q.   And have you posted your resume or presented

13   your resume to any other Internet sites other than

14   Monster.com?

15   A.   Yes.

16   Q.   Where else did you post it?

17   A.   CT Job Search.

18   Q.   And when did you do that?

19   A.   Anywhere from last summer to last fall of

20   2002.

21   Q.   Did you do that one time?

22   A.   I believe so.

23   Q.   Are there any other places that you posted your

24   resume?

25   A.   There may be, but I can't recall at this

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                Ferron Shorter, Jr.

Page 13

1    moment.

2       Q.   And is this resume an accurate reflection of

3    your educational and job experience?

4       A.   As far as I know, yes.

5       Q.   Did you prepare this resume yourself?

6       A.   Yes.

7       Q.   And where did you prepare it?  Did you prepare

8    it at home?

9       A.   Yes.

10      Q.   Do you have a home computer?

11      A.   Yes.

12      Q.   Are there any other versions of this resume in

13   existence that you're aware of anywhere?

14      A.   Yes.

15      Q.   And what other versions of your resume are in

16   existence?

17      A.   I don't understand what you mean.

18      Q.   Have you changed your resume at all since

19   leaving your employment with The Hartford?

20      A.   Possibly in words as far as describing, you

21   know, what I did.

22      Q.   And do you have any other copies of any other

23   resumes other than the one that's Defendants'

24   Exhibit 1?

25      A.   Yes.

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 14

1      Q.  And where are those copies?

2      A.  On disk.

3      Q.  And that is a disk that you have at home?

4      A.  Yes.

5      Q.  Does that disk also contain letters concerning

6    your job search?

7      A.  Yes, cover letters.

8      Q.  All right.  Now, looking at Defendants'

9    Exhibit 1, are these all of the cover letters that

10   you're aware of concerning your job search?  I'm sorry,

11   strike that.

12        Are you aware of any cover letters concerning your

13   job search?

14     A.  Yes.

15     Q.  And are those letters that you produced in this

16   litigation?

17     A.  No.

18     Q.  Why not?

19     A.  I was asked for the resume, and that's what I

20   presented.

21     Q.  Did you ever look for, in connection with this

22   litigation, documents related to your employment

23   search?

24     A.  Can you repeat that question?

25     Q.  Sure.  Did you ever look for documents in

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                                    Ferron Shorter, Jr.

Page 15

1      connection with this litigation that were related to

2      your employment search since leaving The Hartford?

3          A.  I don't totally understand that question.

4          Q.  Let me ask you this.  You produced some

5      documents attached as Exhibit 1 that appear to be

6      documents related to your search for employment; is

7      that correct?

8          A.  Yes.

9          Q.  And are you testifying now that there are other

10     documents related to your search for employment

11     including cover letters that you did not produce?

12         A.  Yes.

13         Q.  And do you know why you did not produce those?

14         A.  Because from what I remember was I was just

15     asked for a copy of my resume.

16         Q.  All right.  And how many cover letters do you

17     have related to your search for employment since

18     leaving The Hartford?

19         A.  I don't have an exact number in my head right

20     now.

21         Q.  Is it more than 10?

22         A.  I don't think so.

23         Q.  Do you recall any places that you have sent out

24     resumes since leaving your employment with

25     The Hartford?

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                          Ferron Shorter, Jr.

Page 16

1    A.  Repeat that question, please.

2    Q.  Sure.  Do you recall any other places that you

3  have sent your resume since leaving your employment

4  with The Hartford?

5    A.  Yes.

6    Q.  Where have you sent your resume?

7    A.  To Peerless, Lincoln Mutual.  There are other

8  companies, but I don't recall them right now.

9    Q.  Did you -- when did you send your resume to

10  Peerless?

11    A.  I think it was in the fall of 2002.

12    Q.  Did you receive a response?

13    A.  Not that I can recall.

14    Q.  And what about Lincoln Mutual, when did you

15  send your resume there?

16    A.  I believe it was around the same time.

17    Q.  Now, did you interview for a position at the

18  Aetna?

19    A.  No.

20    Q.  Did you interview for a position with any of

21  the agencies that are identified in Defendants'

22  Exhibit 1?

23    A.  I met with them.  What do you mean?  Do you

24  mean for any specific position that was available?

25  Because it's a hiring agency.

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 17

1    Q.  Right.  Right.  I am just wondering if you went

2    in and met with anyone at the hiring agency.

3    A.  Yes, I went in and met with all the agencies.

4    Q.  I am going to start with RJS Associates.  Do

5    you recall meeting with Amy Oler from RJS Associates?

6    A.  I met Jeff Coons at RJS Associates.

7    Q.  When did you meet Jeff Coons?

8    A.  Sometime in the fall of 2002.

9    Q.  Okay.

10   A.  Amy --

11   Q.  Go ahead.

12   A.  Amy Oler may be the name of the person at the

13   job fair.  I went to a career job fair in October

14   2002.

15   Q.  Now, I just want to direct your attention to

16   the letter from RJS Associates and clarify, was it

17   James Coons that you met, senior insurance recruiter?

18   A.  Yes.

19   Q.  Okay.  And when you met with James Coons, did

20   you discuss your prior experience?

21   A.  Yes.

22   Q.  Did he ask you about your position with

23   The Hartford?

24   A.  Yes.

25   Q.  Did he ask you why you left The Hartford?

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                          Ferron Shorter, Jr.

Page 18

1       A.   I don't remember.

2       Q.   Looking at James Coons' letter, it says you had

3    interviewed with several of their clients.   Do you

4    recall any of the client interviews you went on in

5    connection with RJS Associates?

6       A.   I don't remember their names.

7       Q.   Do you recall where any of the interviews were?

8       A.   I know Farmington, and that interview went

9    very well.   But I don't remember his name.

10      Q.   When was that interview?

11      A.   December 2002.

12      Q.   Was that for a temporary position?

13      A.   No.

14      Q.   Let me just ask you, what does RJS Associates

15   do?   Are they a placement agency?

16      A.   From what I know, yeah, they place potential

17   employees into permanent positions.

18      Q.   Your interview in Farmington in December 2002,

19   did you discuss your position at The Hartford during

20   that interview?

21      A.   Which position are you talking about?

22      Q.   Well, did you discuss in general your

23   employment at The Hartford?

24      A.   Yes.

25      Q.   And did you discuss why you left The Hartford?

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 19

1      A.  Not that I recall.

2      Q.  Did you ever hear back from that interview in

3   Farmington in December 2002?

4      A.  Jim Coons informed me that he spoke with them.

5      Q.  And what did he tell you he said?

6      A.  He said that everything -- he liked me as a

7   potential employee, but the position I applied for, he

8   thought I was going to need training for it.  And, at

9   the time, the company did not have the time to train.

10     Q.  Do you recall any other interviews that you had

11  gone on in connection with RJS Associates?

12     A.  No.

13     Q.  When is the last time you have spoken with

14  anyone at RJS Associates?

15     A.  I believe it was around March 10th of this

16  year, 2003.

17     Q.  And who did you speak with?

18     A.  Tammy Melendez.

19     Q.  What did you discuss with Tammy?

20     A.  I am trying to think.  Her name was

21  Tammy Melendez, but her name just changed.  But,

22  anyway, the name I remember is Tammy Melendez.  She

23  just asked me just how I was doing, how my job search

24  was coming long, and she wished me luck.  And that's

25  as far as I remember.

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                        Ferron Shorter, Jr.

Page 20

1      Q.   Are they still continuing to try to place you?

2      A.   No.

3      Q.   Why not?

4      A.   Well, because nothing has been happening.  I

5   told them that they don't have to spend their time

6   anymore, because I am relocating to somewhere else to

7   try to find work.

8      Q.   Where are you relocating to?

9      A.   The Atlanta area of Georgia.

10     Q.   When is that?

11     A.   Within a couple of weeks.

12     Q.   Where are you going to live in Atlanta?

13     A.   Actually, it is on the outskirts,

14   Lawrenceville.

15     Q.   Do you have a place to live there?

16     A.   I am going to stay with my parents at first.

17     Q.   And do you have a job down there?

18     A.   Not yet.

19     Q.   Have you made any efforts to find a job down

20   there yet?

21     A.   I am not there.  So, I am going to take -- I

22   am going to look for work as soon as I get there.

23     Q.   Have you stopped looking for employment up here

24   because you are relocating to Atlanta?

25     A.   Yes.

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 21

1      Q.   Now, looking at your Defendants' Exhibit 1, did

2   you -- do you recall interviewing for a position in

3   connection with Management Search, Inc. in December of

4   2002?

5      A.   Yeah.

6      Q.   And did you interview with Christine Durrer?

7      A.   Yes.

8      Q.   What do you recall about that interview?

9      A.   Say that again, please.

10     Q.   What do you recall about that interview?

11     A.   It went well.  She told me she was happy to

12  meet me, and very impressed, and she was going to try

13  to do her best to find work for me.

14     Q.   And was she able to find any work for you?

15     A.   We came close, but the lady that I talked to,

16  I spoke with a lady over the phone, and she spoke with

17  Christine afterwards, and she told her she was also

18  very impressed, but, at the time, the position I

19  applied for, she felt that maybe I was out of

20  experience with that particular job for too long.  It

21  was a rating position.

22     Q.   And was that something you had done in your

23  employment at The Hartford?

24     A.   Yes.

25     Q.   Did they ask you why you left The Hartford?

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                      Ferron Shorter, Jr.

Page 22

1      A.   I don't recall.

2      Q.   Do you recall telling anyone in connection with

3    your job search efforts why you left The Hartford?

4      A.   I have told various people that I have left

5    just to pursue other opportunities, but as far as

6    which people, as far as people that were asking me

7    personally as opposed to people at a job search place,

8    I don't recall which ones specifically asked that of

9    me.

10     Q.   Did you ever tell anyone in connection with

11   your job search efforts that your employment was

12   terminated from The Hartford?

13     A.   Ask me that again.

14     Q.   Sure.  Did you ever tell anybody in connection

15   with your job search efforts that you had been

16   terminated from employment with The Hartford?

17     A.   Not that I could remember.

18     Q.   And your last submission for Exhibit 1 is from

19   A.R. Mazzotta.  Did you meet with anyone at

20   A.R. Mazzotta?

21     A.   Yes.

22     Q.   And who did you meet with?

23     A.   Denise S. I can't remember how to pronounce

24   her last name, but it began with an S.

25     Q.   And where did you meet with her?

Page 23

```
 1      A.   In Middletown.  And I believe it was on

 2   Broad Street.

 3      Q.   What do you recall about meeting with her?

 4      A.   I explained to her the position that I was

 5   applying for, and I was placed in another room to take

 6   a test of data entry as well as Microsoft Word and

 7   Excel knowledge.

 8      Q.   And do you know how you did on the tests?

 9      A.   I did very well on Excel.  And for data entry,

10   I did, in her words, exceptionally well.  Over 10,000

11   keystrokes per minute, or however the rate is.  And,

12   Word, I didn't feel too great about.

13      Q.   Was A.R. Mazzotta able to place you anywhere?

14      A.   No.

15      Q.   Do you know why not?

16      A.   I was informed that the positions that were

17   possible for me were data entry positions.  But when

18   the company looked at my resume, they felt that I was

19   too overqualified.  And they felt I would not remain

20   with the place, because in their words, they felt that

21   I would, it would be tedious, which I disagreed with

22   but --

23      Q.   Did you interview with any companies in

24   connection with A.R. Mazzotta?

25      A.   No.
```

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

Ferron Shorter, Jr.

Page 24

1    Q.  And your meeting with A.R. Mazzotta, was that

2    around the December 2, 2002 date that's in this letter?

3    A.  Yes.

4    Q.  And is this a letter that you received from

5    Nancy Cronin at A.R. Mazzotta?

6    A.  Yes.

7    Q.  Did you request this letter?

8    A.  Yes.

9    Q.  And why did you request it?

10   A.  I requested it just in case I needed it to

11   show anyone who would ask me if I had been looking for

12   work.

13   Q.  Was that in connection with this lawsuit?

14   A.  No.

15   Q.  Did you request the letter -- strike that.

16    When did you request this letter?

17   A.  I believe it was in March of 2003.

18   Q.  And going to the previous page, the letter from

19   MSI, Management Search Inc., did you request that

20   letter as well?

21   A.  Yes.

22   Q.  And why did you request that?

23   A.  For the same reason.

24   Q.  And when did you request that?

25   A.  I believe it was in March of 2003.

Brandon Smith Reporting Service

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 25

1    Q.   And then going back one more to the letter from

2    RJS Associates, did you request that letter as well?

3    A.   Yes.

4    Q.   What was your purpose in requesting that

5    letter?

6    A.   For the same reason.

7    Q.   This Defendants' Exhibit 1, these are all of

8    the letters that you requested in connection with your

9    job search?

10   A.   All except the Aetna letter.

11   Q.   And just so I am clear, the Aetna letter, you

12   did not request; correct?

13   A.   Correct.

14   Q.   Okay.  Now, Defendants' Exhibit 1, does this

15   contain all of the letters that you have in connection

16   with your job search?

17   A.   As far as I can recall.  I have other

18   information from the career fair, but I don't think it

19   includes any formal letters.

20   Q.   When was the career fair?

21   A.   I believe the exact date was October 14th of

22   2002.

23   Q.   Where was that?

24   A.   It was at the Radisson Hotel in Cromwell,

25   Connecticut.

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                    Ferron Shorter, Jr.

Page 26

1      Q.   Did you attend -- strike that.

2       Who sponsored the career fair?

3      A.   I am not sure.

4      Q.   And did you attend the career in hopes of

5   obtaining a job?

6      A.   Yes.

7      Q.   How long did you spend there?

8      A.   Roughly, two hours.

9      Q.   And how many people did you talk to about

10   obtaining a job?

11     A.   I believe at least 14, between 10 and 14.

12     Q.   Did you give resumes to those people?

13     A.   Yes.

14     Q.   Do you recall the names of any of the people

15   you spoke with, or what company they were from?

16     A.   I am not sure, but I believe either CIGNA or

17   the Travelers.

18     Q.   You believe you left a resume for either CIGNA

19   or the Travelers?

20     A.   Yes.  And RJS Associates.

21     Q.   Anyone else?

22     A.   From what I remember, a couple of health care

23   companies, but I don't recall the names of them.

24     Q.   Now, other than what you have testified to

25   already, have you made any other efforts to obtain

8217c679-fe23-40f3-b6fa-baa7dfaf7006

Shorter, Jr. vs Hartford Financial Services

Page 27

1    employment since leaving The Hartford in December of

2    2002 -- or, I'm sorry in January of 2002?

3       A.   That's all that I can recall off the top of my

4    head right now.

5       Q.   All right.  Have you ever asked for a letter of

6    reference from The Hartford?

7       A.   No.

8       Q.   And, to your knowledge, has anyone at

9    The Hartford ever done anything to prevent you from

10   getting a job since you left your employment there?

11      A.   Say that question again.

12      Q.   Sure.  Has anyone at The Hartford -- let me

13   break this down.  Has anyone in management at

14   The Hartford done anything to prevent you from getting

15   a job since your employment was terminated?

16      A.   Not that I know of.

17      Q.   Has anyone at The Hartford ever done anything

18   to prevent you from getting a job since your employment

19   was terminated?

20      A.   Not that I specifically know of.

21      Q.   Have you been in contact with anyone who you

22   used to work with at The Hartford since your employment

23   was terminated?

24      A.   Yes.

25      Q.   Who have you been in contact with?

Shorter, Jr. vs Hartford Financial Services

4/15/2003                                                    Ferron Shorter, Jr.

Page 226

1                       STATE OF CONNECTICUT

2

3            I, SHERYL L. YESKE, Notary Public duly

4      commissioned and qualified in and for the State of

5      Connecticut, do hereby certify that pursuant to notice

6      there came before me on April 15, 2003, the

7      following-named person to wit:  FERRON SHORTER, JR.,

8      who was by me duly sworn to testify to the truth and

9      nothing but the truth; that he was thereupon carefully

10     examined under his oath and his examination reduced to

11     writing under my supervision; that this deposition is a

12     true record of the testimony given by the witness.

13           I further certify that I am neither attorney,

14     nor counsel for, nor related to, nor employed by any of

15     the parties to the action in which this deposition is

16     taken, and further that I am not a relative or employee

17     of any attorney or counsel employed by the parties

18     hereto, or financially interested in this action.

19           IN WITNESS THEREOF, I have hereunto set my hand

20     this 25th day of April, 2003

21                        _____

22                            SHERYL L. YESKE, LSR

23                            License No. 00028

24

25     My Commission Expires:  July 31, 2003

Brandon Smith Reporting Service