UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FERRON SHORTER JR., | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:03-cv-149(WIG) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD FINANCIAL SERVICES GROUP, INC., | : | |
| | : | |
| Defendant. | : | APRIL 22, 2005 |

**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR EQUITABLE RELIEF**

Plaintiff Ferron Shorter Jr., by and through his undersigned counsel and pursuant to Local Civil Rule 7(e)[1] of the District of Connecticut, hereby replies to Defendant Hartford Financial Services Group, Inc. ("The Hartford")'s Memorandum of Law in Opposition to Plaintiff's Motion for Equitable Relief ("Memorandum").

**I.    INTRODUCTION**

The Hartford's conclusion that Plaintiff is not entitled to equitable relief[2] assumes flawed premises.

First, Plaintiff was not required to produce any evidence, at trial, of his efforts to mitigate his back pay or front pay damages. Therefore it is not proper to confine Plaintiff to the trial record in determining efforts to mitigate.[3] (Def.'s Mem. in Opp'n to Equitable Relief

---

[1] Local Civil Rule 7(e) provides, in relevant part: "A rely brief may not exceed 10 pages, must be strictly confined to a discussion of matters raised by the responsive brief to which reply and must contain references to the pages of the responsive brief to which reply is being made."

[2] At sections II(B) and II(C) of the Memorandum, The Hartford adopts the position that Plaintiff is not entitled to reinstatement and front pay, respectively.

[3] The Jury Charge, entitled "Mitigation of Damages," instructed: "Additionally, you are instructed that a plaintiff has a duty to mitigate his damages, that is, to exercise reasonable diligence under the circumstances to minimize his damages. On this issue, however, the burden of proof is on The Hartford as the defendant, and thus, it must prove by a preponderance of the evidence that Mr. Shorter failed to use reasonable efforts to mitigate or minimize his damages. If you find that Mr. Shorter failed to seek out or take advantage of a suitable employment opportunity that

(hereinafter, "Mem.") at 3-6, 11-13)

Second, in its opposition to reinstatement, The Hartford inaccurately (a) argues that Plaintiff waived his opportunity to seek reinstatement as a remedy because he did not allege failure to reinstate as a claim (Mem. at 7-8); (b) relies upon discredited information that The Hartford possessed in January and February of 2002 to justify opposing reinstatement in the March of 2005 (Mem. at 8); (c) maintains that Plaintiff's violation of the Electronics Communication Policy (ECP) warranted Plaintiff's discharge, contrary to the jury's verdict (Mem. at 8-9); and (d) represents that The Hartford does not have any position available for Plaintiff despite the fact that Plaintiff worked at The Hartford for fourteen (14) years during which time he held numerous positions that required different skills. (Mem. at 9) (Trial Tr., Mem., Ex. 1 at 97-99)

Third, The Hartford's conclusion that Plaintiff's request for front pay is speculative ignores the difficulties that Plaintiff will encounter in the future, not the least of which will be responding truthfully to the question, "Why did you leave The Hartford?", in the following manner, "I was terminated for violating the ECP, for workplace violence, and for lying but then I sued my employer for discrimination, and a jury awarded me $255.000.00 that my former employer had to pay." A determination of front pay is directly related to how one reasonably believes an employer similar to The Hartford would respond to such an applicant.

## II. DISCUSSION

### A. <u>Determination of Front Pay is an Equitable Issue for the Court, not the Jury</u>

Whether or not Plaintiff's testimony at trial filled three (3) pages or one-hundred (100) trial transcript pages concerning his efforts to find employment following his termination is

---

was reasonably available to him, you must reduce his damages by the amount of the wages and fringe benefits he reasonably would have earned if he had sought out or taken advantage of such an opportunity." (doc. #123)

immaterial. See Mem. at 3 ("Plaintiff's entire direct testimony regarding his efforts to mitigate his damages consumed less than three pages of the trial transcript.") Mitigation of damages was not an element of Plaintiff's case. The fact that Plaintiff's trial testimony consumed less than three (3) pages of the transcript demonstrates that mitigation was not an element of The Hartford's case either. In fact, The Hartford did not submit the affirmative defense of mitigation to the jury in its closing statement as demonstrated by the Court's denial of Plaintiff's request to address damages in his closing rebuttal statement.

The Hartford seems to argue that because Plaintiff did not submit evidence in support of his motion for front pay to the jury, Plaintiff is now foreclosed from presenting evidence to the proper fact finder, in this instance, the Court. In its Memorandum, The Hartford states, "The Court should disregard Plaintiff's Affidavit, the materials from DeVry University and his expert report because he did not present any of this evidence at trial." (Mem. at 5) This is similar to arguing that Plaintiff cannot apply for attorney's fees and costs because these issues were not presented to the jury. If the Court does not instruct a jury to determine attorney's fees and costs, prejudgment and post-judgment interest, and front pay then it is not reasonable to argue that evidence of these same issues should have been presented to the jury. The Hartford's assertion that "[i]f Plaintiff wanted the Court to consider this information in determining his claim for equitable relief, he was required to present this evidence at trial in the same way that he presented his claim for legal relief to the jury" is wrong as evidenced by the following inapposite cases cited as support in its Memorandum.

- The Hartford relies upon the matter of Sequa Corp. v. GBJ Corp., 156 F.3d 136 (2d Cir. 1998), a case never submitted to a jury. (Mem. at 6) Following a bench trial, the parties cross-appealed from a judgment "awarding damages for breach of contract to defendants and

3

awarding damages for breach of fiduciary duty to plaintiffs." Id at 136. At issue was a motion by plaintiff Sequa Corp. pursuant to Rule 52(b) of the Federal Rules of Civil Procedure[4] to amend the court's findings based on allegedly inaccurate computerized tax calculations that had been submitted into evidence. The appellate court affirmed the district court's denial of the motion for amendment finding that "in light of their weak foundation in the record, Sequa's proposed recalculations were insufficiently reliable to support amended findings." Id at 144. The Hartford cites Sequa Corp. for its "finding that factual and legal findings as well as estimates of liability must be based on evidence in the records." (Mem. at 6) A motion for equitable relief following a jury trial alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 is distinguishable from the substance and procedural posture found in Sequa Corp. v. GBJ Corp.

- The Hartford relies upon the matter of Excel Corp. v. Bosley, 165 F.3d 635 (8th Cir. 1999), a case including a motion for front pay decided following a jury recommendation. Id at 638 ("The jury recommended against a jury award.") The appellate court affirmed the district court's denial of front pay stating, "The district court may not reject findings made by the jury, but it does have the discretion to consider all the circumstances involved in determining appropriate equitable relief." Id at 639. In the instant matter, the Court did not instruct the jury on front pay and the jury did not submit findings of fact regarding front pay so there is no reason to believe that it would have been proper to present evidence supporting front pay to the jury.[5]

---

[4] Rule 52(b) provides, in part: "On a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly."
[5] Although the Local Civil Rules of this district do not address the procedure for requesting an evidentiary hearing and presumably leaves that to the discretion of the Court, Plaintiff did comply with Local Civil Rule 7(a) by requesting oral argument in recognition that a motion in equity may raise issues and require evidence not submitted to a jury.

4

B.      The Hartford Fails to Present Any Reasonable Impediment to Reinstatement

Plaintiff's request for reinstatement arises from the pragmatic supposition that without substantial relief, as he requests in front pay, Plaintiff will never obtain the position, seniority, status, and benefits that he earned at The Hartford.  The Hartford's conclusion that the law does not support Plaintiff's reinstatement is flawed for four reasons.

First, The Hartford quotes the undersigned as "appear[ing] to agree with the Court's statement that reinstatement was not an issue in this case."  (Mem. at 8)  The Memorandum quotes Plaintiff's attorney at trial:

> Well, Your Honor, we certainly, haven't amended the complaint to add reinstatement.  I mean, reinstatement is one of the forms of relief  … You don't have to make a claim, and we're certainly not making a claim that they should have, you know …

(Trial Tr., Mem., Ex 2 at 121)  The Court's commentary, which is necessary for a complete understanding of the exchange, is omitted by the first ellipses in the foregoing quote.[6]  The Hartford then concludes, "Based on the Court's refusal to admit this evidence [of "criminal history obtained by The Hartford after is termination"],[7] Plaintiff's reinstatement to his former position is not an appropriate remedy."  (Mem. at 8)  However, there is no relation between the Court ruling excluding post-termination events at trial and the appropriateness of reinstatement as a post-verdict remedy just as there would be no relation between a Court ruling excluding evidence supporting attorney's fees and costs from trial and the appropriateness of a post-verdict

---

[6] The Trial Transcript, without the The Hartford's insertion of the first ellipses omitting the Court's statement, provides:
"Ms. Baird:  Well, Your Honor, we certainly haven't amended the complaint to add reinstatement.  I mean, reinstatement is one of the forms of relief.
"The Court:  One of the forms of relief, right.
"Ms. Baird:  You don't have to make a claim, and we're certainly not making a claim that they should have, you know …"  (Tr. Trans, Mem., Ex. 2 at 121)

[7] The evidence referenced is found in the last sentence of the immediately preceding paragraph, "The Court later instructed the jury to disregard any information about Plaintiff's criminal history obtained by The Hartford after his termination of employment."  (Mem. at 8)

5

award of attorney's fees and costs.

Second, The Hartford argues that it would have presented evidence at trial as to why Plaintiff was not reinstated and since that evidence was excluded Plaintiff cannot now be reinstated. (Mem. at 8) The Hartford forgets that a jury found that it discriminated against Plaintiff. The jury's subsequent award of back pay further demonstrated that Plaintiff should not have been terminated.[8] The claims that The Hartford relies upon to argue that Plaintiff should not be reinstated are the same claims that were discounted by the jury as motivated by discriminatory intent when it found that Plaintiff should not have been terminated. If The Hartford contended at trial that it terminated Plaintiff for work place violence, lying about a criminal conviction, and a violation of the ECP more egregious than the violation committed by MaryAnne Rhodes ("Rhodes"), The Hartford cannot still use those reasons to deny Plaintiff reinstatement after the jury discounted, did not believe, and found that those reasons did not support The Hartford's discretion as an employer to terminate Plaintiff.[9] An opposition to reinstatement cannot be justified by the same arguments that a jury previously rejected in finding that the termination was motivated by discriminatory intent.

Third, The Hartford maintains that Plaintiff's violation of the ECP determines that he should not be reinstated. (Mem. at 8) According to The Hartford, "[a]t most the jury's verdict suggests that Ms. Rhodes should have been terminated along with Plaintiff." (Mem. at 9) In other words, Plaintiff's violation warranted termination whether or not one believes that Rhodes should have been terminated. The Hartford did not elicit testimony, engage in cross-argue to the

---

[8] A finding of discrimination did not mandate an award of back pay.
[9] The Jury Charge, entitled "Employer Discretion in Employment Decisions," instructed, in part: "You should be mindful that the law applicable to this case requires only that an employer not discriminate against an employee because of the employee's gender or race. So far as you are concerned, an employer may discharge an employee for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of the employer even though you personally may not favor the action taken and would have acted differently under the circumstances." (doc. #123)

6

jury that its mistake was not in terminating Plaintiff but in not terminating Rhodes. The Hartford steadfastly held to its position that Rhodes was not terminated because her violation of the ECP was not as egregious as Plaintiff's violation. There really were only four possible outcomes in The Hartford's response to Plaintiff's and Rhodes' ECP violations:

    a. Terminate Plaintiff but not Rhodes (The Hartford's trial evidence and argument.)

    b. Terminate neither Plaintiff nor Rhodes (Plaintiff's trial evidence and argument.)

    c. Terminate Rhodes but not Plaintiff (Plaintiff's trial evidence and argument.)[10]

    d. Terminate Plaintiff and Rhodes (No evidence at trial; not argued.)

The Hartford presented testimony, cross-examined witnesses, and argued at trial that it was correct to terminate Plaintiff but not Rhodes. Plaintiff presented testimony, cross-examined witnesses, and argued at trial that neither Plaintiff nor Rhodes should have been terminated. No party presented testimony, cross-examined witnesses, or argued that both Plaintiff and Rhodes should have been terminated. Only one of the four possible outcomes allowed for an award of back pay and this was the outcome terminating Plaintiff but not Rhodes. If the jury found, as The Hartford now supposes, that Rhodes should have been terminated as well as Plaintiff that would mean that the jury found that Plaintiff should have been terminated. This is not consistent with the jury award of back pay to Plaintiff. If the theory that The Hartford erred by not terminating Rhodes was a viable one for The Hartford then certainly it would have presented testimony and argument supporting it. Following such evidence and argument it would have requested an instruction to the jury informing it that if it believed that Plaintiff should have been

---

[10] In closing arguments, Plaintiff's attorney did argue briefly that the evidence, if anything, supported Rhodes' termination, not Plaintiff's, because Rhodes withheld information from her supervisor that would have allowed her supervisor to facilitate Rhodes' access to her voice mail and therefore Rhodes interfered not only with her work but with her supervisor's as well. In addition, Plaintiff's attorney relied upon a policy prohibiting employees from interfering with work that did not exclude form its scope the violation of interfering with one's own work which Rhodes did by failing to inform her supervisor that she knew why she could not access her voice mail so that The Hartford could forthwith remedy the problem.

7

terminated but The Hartford acted illegally in not terminating Rhodes as well then there should not be a finding of back pay. However, there would have been no evidence or argument to support such an instruction and in fact the evidence and argument were contrary.

The jury's award of back pay could only be supported by a finding that Plaintiff should not have been terminated. Therefore, Plaintiff's conduct was deemed no worse or egregious than Rhodes and if Rhodes was able to maintain her employment at The Hartford following her violation then Plaintiff should be reinstated.

Fourth, The Hartford's representation that Plaintiff's reinstatement is "impractical" because he "has nor worked in the information technology field or obtained any training to update his skill level and knowledge" is not true as applied to The Hartford and Plaintiff (Mem. at 9) Plaintiff worked at The Hartford for fourteen (14) years in numerous capacities. The Hartford is a large corporation. The seniority that Plaintiff enjoyed at The Hartford is irreplaceable for Plaintiff. If Plaintiff finds a comparable position at $44,500.00, adjusted for raises and promotions since 2002, it will take him until the age of fifty-one (51) to reach the same position he held in 2002 at the age of thirty-four (34).

When Plaintiff was terminated he had worked a mere three (3) months as a Developer and was still in training and learning. Three months prior to his termination, The Hartford did not believe that it was impractical to transfer Plaintiff to the position of Developer. As regards Plaintiff's inability to maintain currency in his skills and training for the past three (3) years since his termination as a reason not to reinstate Plaintiff but denies that the Court should award Plaintiff any funds to obtain that training. Plaintiff has not had the means to train while unemployed and working at positions for less money than he had relied upon in the past. Plaintiff's finances were thrown in disarray and The Hartford blames him for not keeping current

with his training and finding. Of course, Plaintiff, due to the circumstances of his termination, was denied the services and assistance that severed employees have access to for job search assistance and support. Presently even after a jury verdict finding that The Hartford was motivated by discrimination intent in terminating Plaintiff, The Hartford holds Plaintiff accountable for all negative outcomes associated with his termination including not having the money for training and school and many non-yielding efforts to find employment.

The Hartford may contend that it would be "impractical" to reinstate Plaintiff but for Plaintiff the true impracticality was having his salary reduced from $44,500.00 to $0 and losing fourteen (14) years worth of accrued benefits in one day. At the least, The Hartford should be expected to mitigate Plaintiff's damages by incurring whatever "impracticability" there may be, if any, in reinstating Plaintiff.[11]

      C.     <u>Plaintiff's Front Pay Request is not Speculative</u>

The Hartford's presumption that Plaintiff will ever be able to obtain a position comparable to the position he held at The Hartford at a company comparable to The Hartford is speculative. Plaintiff's Affidavit in Support of his Motion for Equitable Relief clearly and exhaustively sets forth the efforts Plaintiff has made and the obstacles he has encountered in looking for work. In its Memorandum, The Hartford admits one obstacle to Plaintiff's employment and that is the time period Plaintiff has been away from the Information Technology field.

---

[11] Interestingly, while The Hartford argues that Plaintiff is no longer qualified for an Information Technology position at The Hartford due to the passage of time and concomitant diminishment of skill level (Mem. at 9), it also cites <u>Floca v. Homecare Health Servs.</u>, 845 F.2d 108, 113 (5th Cir. 1988) to argue that front pay should be denied where plaintiff is enrolled in school and unavailable for work. (Mem. at 10 n.9) But see <u>Floca</u> at 113 ("The time a person spends in school learning a new career is an investment for which future benefits are expected. The student is compensated for the time in school by the opportunity for future earnings in the new career and thus suffers no damages during that period. To allow front pay for this period would compensate the person twice.") By The Hartford's own admission, Plaintiff needs training to work at his previous job at The Hartford. Plaintiff is not seeking a new career but an opportunity to regain his old career whether through his first choice of reinstatement or his second choice of front pay.

Also of note, along with the many external obstacles to Plaintiff's ability to regain what he lost when The Hartford terminated him, is the internal obstacle that the jury concurred did affect Plaintiff when it found that Plaintiff had suffered severe emotional distress.[12]  Plaintiff cannot even begin to treat his emotional distress until he receives back pay, part of which will be available for health insurance.  In consideration of these factors, twenty-seven (27) years in front pay to regain what was lost, if reinstatement does not occur, is more reasonable then The Hartford's conclusion that no more than six months will be required for Plaintiff to be placed in the same position as he was when he left The Hartford.  (Mem. at 16)  If this is the case then within six (6) months back at The Hartford following reinstatement Plaintiff should be at the same level he was when he was terminated making his reinstatement not as "impractical" as The Hartford has argued.  (Mem. at 9)

### III.    CONCLUSION

In reliance upon the facts and arguments of law expressed in Plaintiff's Memorandum of Law in Support of Equitable Relief, and for the reasons set forth in the instant reply brief disagreeing with the logical basis for The Hartford's opposition to reinstatement, Plaintiff respectfully moves the Court to grant the equitable relief requested by Plaintiff in his Motion for Equitable Relief.  (doc. #133)

```
                                    PLAINTIFF
                                    FERRON SHORTER JR.


                            BY:     _____
                                    Rachel M. Baird (ct12131)
                                    379 Prospect St, Torrington CT 06790-5239
                                    Tel:  (860) 626-9991  Fax: (860 626-9991
                                    E-mail:  bairdlawoffice@aol.com
```

---

[12] The jury found in favor of Plaintiff and against The Hartford on the negligent infliction of emotional distress claim.  (Jury Verdict, doc. #124)

## **CERTIFICATION**

     I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Reply Brief to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Equitable Relief was mailed, first-class, postage paid, on April 22, 2005, to the following counsel of record:

Margaret J. Strange  
James F. Shea  
Jackson Lewis LLP  
55 Farmington Ave Ste 1200  
Hartford CT 06105

_____  
Rachel M. Baird