# Law Office of Rachel M. Baird

Stonegate Professional Building
379 Prospect Street
Torrington CT 06790-5239

Phone: 860.626.9991
Facsimile: 860.626.9992
Toll free: 866.279.6402

Rachel M. Baird, Attorney

January 29, 2002

**Via facsimile and first-class mail**
Jennifer Ames Haber
Human Resources Generalist
The Hartford
1 Hartford Plaza
Hartford CT 06115-1703
Fax: 860.547.5106

Re:   **Ferron Shorter, Jr.**

Dear Ms. Haber:

A former employee of The Hartford, Ferron Shorter, Jr. (hereinafter, "my client" or "Mr. Shorter"), has retained my office to represent him in matters pertaining to his unlawful discharge from your company on Wednesday, January 23, 2002. In terminating Mr. Shorter from his employment at The Hartford, your company breached certain contracts and covenants arising from Mr. Shorter's twelve (12) year employment at The Hartford. Mr. Shorter's claims include, but are not necessarily limited to, breach of implied contract, defamation, breach of an implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Furthermore, your company acted in contravention of public policy and statutory law, including, but not limited to, the Connecticut Fair Employment Practices Act, CONN. GEN. STAT. § 40a-60(a).

The purpose of this letter is to inform you that my client has suffered and will continue to suffer financial damages, emotional distress, and injury to his reputation, as a result of your wrongful and illegal acts:

- First, Mr. Shorter provided a detailed statement on Wednesday, January 23, 2002, to Richard Wardell, an Investigator at The Hartford, Department of Special Investigations, in good faith and in reliance upon the company's representation that Mr. Shorter's "continued employment" at The Hartford was "contingent" on Mr. Shorter's "complete truthfulness and cooperation" during the "investigation." Mr. Shorter's immediate termination on January 23, 2002, following his statement, contradicts any representation by the company that a complete and objective investigation ever was contemplated.

CONFIDENTIAL
HAR 000912

Re: Ferron Shorter, Jr.                                               January 29, 2002

- Second, the reason for Mr. Shorter's discharge remains unclear. Initially, you informed Mr. Shorter that his discharge was based upon the January 23, 2002, statement. However, when Mr. Shorter asked why the company had asked if he owned a gun, you indicated that you did not recall that part of the statement and had, in fact, only browsed the statement. You then informed Mr. Shorter, during the same January 24, 2002, phone conversation, that his discharge had been a "company management" decision. Clearly, in the intervening time between Mr. Shorter's statement and his discharge, neither you nor company management had the opportunity to review the statement and investigate the underlying facts. In fact, the entire discharge process appears to have been given limited consideration.

The circumstances of Mr. Shorter's discharge, as described briefly in the previous paragraphs, unfortunately depict a company's rush to judgment on the basis of race and sex. Mr. Shorter is well aware that the complaining party, although an employee of The Hartford, and subject to the same conduct code as all other employees, did not encounter the severe treatment meted out to Mr. Shorter, an employee with twelve (12) years of company service. Such inequality occurred despite the fact that the complaining party was equally or more so involved in the circumstances that led the company to discharge Mr. Shorter, although, as stated previously, the reason for Mr. Shorter's discharge has not been clarified.

Clearly, Mr. Shorter has been devastated by the events of last Wednesday, January 23, 2002. His professional reputation has suffered immeasurable harm and he is unable to respond to questions from his former colleagues regarding the reasons for his termination. If the company had performed a full investigation, these same colleagues would have provided invaluable information clarifying the circumstances of the allegations against Mr. Shorter.

In conclusion, Mr. Shorter requests that the company save all E-mails and voice mail messages appearing on both his accounts and the accounts of MaryAnn Rhodes. The information contained in these E-mails and voice mail messages support Mr. Shorter's position. In order for my office to ascertain the reason for Mr. Shorter's termination, please provide a copy of any statements made against Mr. Shorter that were considered in the decision to discharge and include a copy of any employee handbook or corporate conduct relevant to Mr. Shorter's employment at the time of his discharge. Furthermore, please provide a complete copy of Mr. Shorter's personnel records. A request in conformance with the requirements of CONN. GEN. STAT. § 31-128g will be forwarded to your office.

Despite the anguish and emotional distress that Mr. Shorter is now experiencing as a result of the company's unfair and illegal acts, he remains committed to restoring his reputation, alleviating his damages, and taking any recourse allowed under the laws to regain his former position at the company.

CONFIDENTIAL
HAR 000913

Re: <u>Ferron Shorter, Jr.</u>   January 29, 2002

    Mr. Shorter seeks reinstatement to his former position with no loss of seniority or other accrued benefits. In addition to reinstatement, and in order to compensate him for the harm he has suffered as a result of the discharge, my client reasonably requests any damages and costs associated with the discharge.

    Please contact my office immediately to discuss the content of this letter so that Mr. Shorter may return to work and this matter may resolve amicably.

Sincerely,

*Rachel M. Baird*

Rachel M. Baird, Attorney



THE
HARTFORD
Ian Veitzer
Associate Counsel

March 11, 2002

Rachel M. Baird, Esq.
Stonegate Professional Building
379 Prospect Street
Torrington, CT 06790-5239

Re:   **Ferron Shorter, Jr.**

Dear Ms. Baird:

  I am an attorney with the Employee Relations Unit of The Hartford's Law Department. As such, I am writing in response to your January 29, 2002 letter to Jennifer Ames Haber.

  I have reviewed both the allegations contained in your letter and the circumstances of Mr. Shorter's termination. Based on this review, I have determined that the termination was appropriate and was done in accordance with The Hartford's policies. Moreover, I have determined that there is neither any evidence of nor any basis for an allegation that Mr. Shorter's race or gender had anything to do with the investigation or his termination.

  In reviewing your letter, it appears that you are laboring under some misunderstandings about what Mr. Shorter did, what actually occurred during the investigation and The Hartford's policies and procedures. In an attempt to clarify these misunderstandings, I would like to reply to some of your specific allegations.

  First, you assert that Mr. Shorter provided a detailed statement "in good faith and in reliance upon the company's representation that Mr. Shorter's 'continued employment' at The Hartford was 'contingent' on Mr. Shorter's 'complete truthfulness and cooperation' during the 'investigation.'" You seem to be suggesting that Mr. Shorter somehow is entitled to continued employment because he apparently was truthful during the investigation. This suggestion reveals a serious misunderstanding of our policies.

  It is true that Mr. Shorter, like any other employee involved in an investigation, was told that his continued employment was contingent on his complete truthfulness and cooperation

Hartford Plaza
Hartford, CT 06115
Telephone 860 547 4573
Facsimile 860 723-4313
ian.veitzer@thehartford.com

P39

Page 2

during the investigation. Quite simply, this means that if an employee is not truthful or cooperative during an investigation, they will be terminated. It does not mean, nor could it reasonably be interpreted to mean, that an employee is relieved from the consequences of their actions simply by admitting them when questioned by our investigative unit. Nor does it mean that an employee's at-will employment status is altered simply because they are truthful during an investigation. Surely, you do not think otherwise.

I also must point out that Mr. Shorter was not completely truthful during the investigation. At one point during his interview, he volunteered that the other employee involved, MaryAnn Rhodes, had "nothing to worry about" from him because he has "no criminal convictions." Our investigation, however, revealed that Mr. Shorter has several criminal convictions, including one for Threatening.

Second, you assert that Mr. Shorter's termination following the completion of his statement indicates that we did not perform a complete investigation and gave the matter only limited consideration. You assert that we could not possibly have had time to investigate the underlying facts between the time Mr. Shorter gave his statement and the time he was terminated. Again, these allegations indicate an apparent misunderstanding of The Hartford's investigative procedure.

Mr. Wardell's interview of Mr. Shorter was not the beginning of the investigation. Rather, it was the last part of an exhaustive investigation involving The Hartford's Human Resources, Equal Opportunity, Building Security, Special Investigation, and Telecommunications Departments. The allegations against Mr. Shorter were very serious and the evidence compelling. Once this evidence had been obtained, Mr. Shorter was given an opportunity to provide his explanation. During the interview, he admitted what the investigation had revealed: that he had accessed Ms. Rhodes' company voice mail, changed her password without her knowledge or consent and prevented her from getting her business related phone messages. He presented no legitimate reason for his actions. To the contrary, he admitted that he had acted out of a jealousy fueled desire to "prove she was lying" about personal matters. Combined with the substantial supporting evidence accumulated before Mr. Shorter was interviewed, his admission of this egregious conduct was considered sufficient to justify his immediate termination.

I hope that this brief review of Mr. Shorter's admissions will clear up any confusion that you might have about the reasons for his termination. Because you mentioned it in your letter, however, I would like to briefly clarify the situation surrounding Mr. Shorter's gun. Mr. Shorter was asked whether he had a gun because Ms. Rhodes had told our investigators that he did and

Page 3

that she was concerned about her safety. We take such concerns very seriously, and thus asked Mr. Shorter whether he had a gun.

Interestingly, Mr. Shorter's response to the question was that although he had a gun, it was not a "legal" gun. At his request, that admission was not included in his written statement. Nevertheless, I am sure that you can see why it would cause some concern, particularly given his admission that his romantic relationship with Ms. Rhodes had deteriorated to a point where he had accessed and listened to her voice mail messages in an attempt to catch her in a lie.

Finally, I must address your somewhat amazing assertion that Ms. Rhodes "was equally or more involved in the circumstances that led the company to discharge Mr. Shorter." Ms. Rhodes gave her voice mail password to Mr. Shorter. At the time she did so, Ms. Rhodes and Mr. Shorter were romantically involved and were living together. Nevertheless, Ms. Rhodes should not have given her password to Mr. Shorter, and was disciplined for doing so.

In contrast, Mr. Shorter, driven by a jealousy based obsession to prove that Ms. Rhodes was lying to him about her whereabouts, accessed Ms. Rhodes voice mail, listened to her messages, deleted messages and changed her password, preventing her from getting access to her business related messages. Moreover, he was unrepentant, continuing to insist that he had done nothing wrong. Indeed, in a classic example of blaming the victim, Mr. Shorter asserted that Ms. Rhodes was guiltier than he was because she had unwisely shared her password with him.

Mr. Shorter may believe that he and Ms. Rhodes are equally culpable in this matter. We respectfully disagree. Although both may have violated our policies, in our view, there is no comparison between the severity of their respective actions. In our view, the difference in how Ms. Rhodes and Mr. Shorter were disciplined was both justified and appropriate. Indeed, we have no doubt that terminating Mr. Shorter's employment was the proper response to his disturbing and egregious conduct.

In short, Mr. Shorter's employment with The Hartford was terminated because of his undeniably improper conduct. The decision to terminate his employment was made after a detailed investigation of the situation and his being given an opportunity to explain his actions. Neither his race nor his gender had anything to do with the decision, and there is absolutely no evidence that it did.

As you no doubt can tell from the above, we will not consider reinstating Mr. Shorter to his position. Nor do we think it necessary to "compensate" him in any way for anything. As for your request for materials, you should have received a copy of Mr. Shorter's personnel file under separate cover. Investigative materials and voice and email messages, however, remain The Hartford's property, and will not be released.

P41