UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FERRON SHORTER, JR                              CASE NO. 3:03-cv-00149-WIG

                    Plaintiff,

        - against -

HARTFORD FINANCIAL SERVICES GROUP,              JULY 27, 2005
INC

                    Defendant

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT AS A MATTER OF LAW

Employment law recognizes a crucial distinction between lawful *differentiation* and unlawful *discrimination* That well-established distinction requires judgment as a matter of law in this case

Plaintiff Ferron Shorter (i) violated his employer's technology rules, and (ii) did so in a way that demonstrated exactly why the rules exist: He caused actual and tangible injury to another employee trying to perform company business Specifically, Shorter repeatedly used Maryanne Rhodes' password and department code to access her work voicemail system, listen to her messages, delete her messages, change her password, and block her access to her voicemail Shorter admitted this misconduct to defendant Hartford Financial Services Group, Inc ("The Hartford" or the "Company") during its investigation of the matter, and he repeated his admissions at trial The Company decided to terminate Shorter for violating its Electronic

Communications Policy ("ECP") and Code of Conduct, and because the Company believed that Shorter lied about his criminal history during the investigation

Shorter claims in this lawsuit that he was terminated because of his race and gender, but he did not and could not adduce even a shred of evidence to support either claim  This is not a case in which evidence supporting the jury verdict is *weak*  Here the evidence — evaluated in light of the clear legal rules governing discrimination claims based on comparative evidence — is *nonexistent*  These well-settled rules require judgment as a matter of law for The Hartford

## I.    THERE IS NO TRIABLE QUESTION OF RACE OR SEX DISCRIMINATION

At trial, The Hartford demonstrated — and Shorter conceded — the legitimate, nondiscriminatory reasons for Shorter's termination  Shorter therefore was required to show that these reasons were pretexts, and that the Company intentionally discriminated against him based on race or gender  *See, e.g., Reeves v Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 143 (2000) ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (citation omitted); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir) (plaintiff must come forward with "concrete particulars" showing that a triable issue remains), *cert denied*, 474 U.S. 829 (1985).  Shorter sought to satisfy his burden with comparative evidence:  He compared his own discharge with the lesser discipline given Ms. Rhodes.  But Shorter's proffer violated the well-established rules of comparative evidence, and thus failed to raise a triable question [1]

---

[1] Shorter brought discrimination claims under Title VII, 42 U.S.C. section 1981, and the Connecticut Fair Employment Practices Act ("CFEPA")  Each of these claims is analyzed under the same burden-shifting framework initially set forth in *McDonnell Douglas Corp v Green*,

(*Continued    )

A.    <u>Shorter Admittedly Tampered With Ms. Rhodes' Work Voicemail In Violation Of Company Policy.</u>

The material facts are undisputed. Shorter broke into Ms. Rhodes' voicemail and interfered with her ability to access to her work messages. Specifically:

- In late September or October 2001, Shorter accepted Ms. Rhodes' department code and password, both needed to access the Company's voicemail system. (Trial Transcript (Jan. 24, 2005) ("Tr. I") at 105-06, 140-41; Trial Transcript (Jan 25, 2005) ("Tr. II") at 103.)

- In late December 2001, Shorter first accessed Ms. Rhodes' voicemail and listened to a message. (Tr. I at 115-16, 123; Tr. II at 26-27.)

- On January 18, 2002, Shorter accepted a new password from Ms. Rhodes. (Tr. I at 137-39.) He then used the password to access her voicemail seven times that day, during which he listened to personal and possibly work-related messages and deleted four messages. (Tr. I at 170-78; Tr. II at 41.) He also changed Ms. Rhodes' password so as to lock her out of the Company's voicemail system. (Tr. I at 175-77; Tr. II at 66.) Shorter testified that, because he altered the password by just one digit the first time, he went back in a second time and changed the password completely, so that Ms. Rhodes would not be able to guess what it was. (Tr. II at 62.)

---

411 U.S. 792 (1973). *See Burford v. McDonald's Corp*, 321 F. Supp. 2d 358, 362 & n.3 (D. Conn. 2004) (in analyzing CFEPA claims, courts apply the same standards as in Title VII cases); *Dep't of Health Servs. v. Comm'n on Human Rights & Opportunities*, 198 Conn. 479, 489 (1986) (same); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (same; section 1981).

- The next day, January 19, Shorter accessed Ms. Rhodes' voicemail six additional times, during which he listened to messages, deleted a message, and changed her password for the third time. (Tr. I at 149, 179-85.)

- On January 20, Shorter accessed Ms. Rhodes' work voicemail five more times and deleted two more messages. (Tr. I at 185-90.)

- On January 21, Shorter accessed Ms. Rhodes' voicemail one last time before the Company reset her password. (Tr. I at 190-92.)

In all, Shorter accessed Ms. Rhodes' voicemail system 20 times and deleted seven messages. (Tr. I at 192-93, 241.) In addition, he intentionally blocked Rhodes' access to her work voicemail by changing the password three separate times. (Tr. I at 175-77, 183, 242.) He admittedly did not alert anyone at the Company that he had changed Ms. Rhodes' password, and he did not give the new passwords to Ms. Rhodes or anyone else at The Hartford. (Tr. I at 243; Tr. II at 71.)[2]

Ms. Rhodes complained that Shorter had blocked her voicemail and interfered with her ability to perform her job. Shorter admitted his misconduct. (Tr. I at 240-43; Tr. II at 100-01, 139-40; Trial Transcript (Jan. 27, 2005) ("Tr. IV") at 26-29.) He was given the opportunity during an investigation to explain his behavior as much as he wanted, and to review and make

---

[2] Ms. Rhodes testified that she repeatedly asked Shorter for the new password, but he refused to give it to her. (Trial Transcript (Jan. 26, 2005) ("Tr. III") at 53-56.) Shorter did not recall having these conversations with Ms. Rhodes. (Tr. II at 68-69.) The difference in recollection on this point is not material to this motion; the material point, which is undisputed, is that Shorter blocked Ms. Rhodes' access to the voicemail system.

changes to his written statement. (Tr. I at 238-39; Tr. II at 91-92, 94, 96-97, 171 ) At trial,
Shorter admitted that his conduct violated Company policy. (Tr. II at 105-06.)

B.    Shorter's Sole "Evidence" Of Discrimination — That Ms. Rhodes Was Given
      A Lesser Punishment — Is Insufficient Even To Make Out A *Prima Facie*
      Case Of Discrimination, Let Alone To Raise A Triable Issue.

At trial, Shorter did not dispute that he violated Company policy. His sole proffered
evidence of discrimination was that Ms. Rhodes also violated the ECP (by sharing her password)
and was given a lesser punishment (a written warning). But employment discrimination law has
developed rules for analyzing claims, like this one, resting on comparative evidence. The rules
are clear-cut: An employer's treatment of a comparator cannot give rise to an inference of
discrimination unless the comparator is "similarly situated" with the plaintiff "in all material
respects." *E g , Norville v Staten Island Univ Hosp* , 196 F 3d 89, 95-96 (2d Cir 1999)
(affirming judgment as a matter of law in favor of defendant on race discrimination claim
because plaintiff was not similarly situated with either of two proffered comparators); *see Wyvill
v. United Cos Life Ins Co* , 212 F.3d 296, 304 (5th Cir 2000) (plaintiff must show that
defendant gave preferential treatment to an employee outside of the protected category under
"nearly identical" circumstances); *Ercegovich v Goodyear Tire & Rubber Co* , 154 F 3d 344,
352 (6th Cir 1998) (plaintiff must prove that "all of the *relevant* aspects of his employment
situation were 'nearly identical' to those of the non-minority's employment situation") (emphasis
in original; internal marks and citation omitted). In particular, comparative evidence relating to
disciplinary actions will raise an inference of discrimination only where the comparator's
conduct is comparably serious. *E g , Graham v Long Island R R* , 230 F 3d 34, 40 (2d Cir
2000) (endorsing "comparable seriousness" standard and citing cases); *Norville*, 196 F 3d at 96

-5-

("In order for employees to be 'similarly situated' . . . they 'must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's . . .'") (citation omitted); *Hargett v. Nat'l Westminster Bank*, 78 F.3d 836, 839 (2d Cir. 1996) (to raise an inference of discrimination, a plaintiff must show preferential treatment of "other employees involved in acts against the employer of comparable seriousness") (citation omitted).

Because Shorter and Ms. Rhodes were not similarly situated, no triable question arises, as shown below.

1.    **Shorter and Ms. Rhodes as a matter of law were not similarly situated.**

Shorter's argument is simple — and simplistic. He contended that both he and Ms. Rhodes violated the ECP and thus should have received the same punishment. But he and Ms. Rhodes did not commit the same offense. The Hartford lawfully differentiated between them.

a.    **The ECP violations were different in kind.**

Not all violations of the ECP (or any policy) are alike. *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 (11th Cir. 1998) (affirming entry of judgment as a matter of law for employer in race discrimination case and rejecting plaintiff's "sweeping" claim that she was similarly situated with other nurses who also had made "medication errors" regardless of the medication at issue; "[Plaintiff's argument is based on a level of generality that is too high for use in defining the concept of 'similar.' We cannot endorse comparisons that are this ill-defined."), *opinion superseded on other grounds*, 151 F.3d 1321 (11th Cir. 1998); *Dodge v. Hertz Corp.*, No. 04-51023, 2005 WL 350586, at * 2 (5th Cir. Feb. 11, 2005) (affirming

summary judgment in favor of employer in race and gender discrimination case; plaintiff (a branch manager who altered rental contracts to increase fraudulently his commission) was not similarly situated with comparator (a manager of a branch from which some money went missing) even though they both engaged in "dishonest" conduct; "[T]he mere fact that two situations can be classified in the same broad category is a far cry from their being nearly identical.").

Employers are entitled to and do draw distinctions based on the seriousness of the violation and the company's assessment of culpability. *See Graham*, 230 F.3d 34, 40 (2d Cir. 2000) ("The determination that two acts are of comparable seriousness requires — in addition to an examination of the acts — an examination of the context and surrounding circumstances in which those acts are evaluated."); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (affirming summary judgment in favor of employer on race discrimination claim; plaintiff who was terminated for *physically* assaulting another employee was not similarly situated with proffered comparators who had *verbally* assaulted other employees); *Hogan v. State of Conn Judicial Branch*, 220 F. Supp. 2d 111, 119-20 (D. Conn. 2002) (same; "Different violations of policy warrant different employer responses, and they cannot be compared for Title VII purposes unless they are equally serious.").[3]

---

[3] *Accord Kriescher v. Fox Hills Golf Resort and Conference Ctr., FHR, Inc.*, 384 F.3d 912, 916 (7th Cir. 2004) (affirming summary judgment in favor of employer; plaintiff, a front desk manager at a resort who exceeded her authority by directing security personnel to gather information about other employees, was not similarly situated with other managers who she claimed also violated resort rules, one who attended an adult entertainment event hosted at the resort and another who was suspected of having an affair with a resort bartender); *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 858 (8th Cir. 2004) (affirming summary judgment in

(*Continued . . .*)

Here, Ms. Rhodes shared her password with Shorter, who at the time was her live-in boyfriend. She did so, not to impede Company business, but to reassure Shorter that she was faithful to him. (Tr. I at 105-06, 139.) Shorter, by contrast, used the password to impede Company business. He used it to break into Ms. Rhodes' voicemail, listen to messages, delete messages, and intentionally block her access to the system by changing the password multiple times. Ms. Rhodes may have given Shorter the "keys" in the first instance, but it then was his choice to use those "keys" repeatedly to access — and block access to — Company property. His offense was both qualitatively and quantitatively more serious than hers. *See Shumway v United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (granting summary judgment; plaintiff dated a subordinate employee, harassed him when the relationship soured, and then concealed the misconduct when questioned about it by management; plaintiff was not "similarly situated in all material respects" with a male co-worker who merely had a dating relationship in violation of defendant's nonfraternization policy); *Gilmore v AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (affirming summary judgment in race discrimination case; proffered comparators were not similarly situated with plaintiff where "the circumstances of their misconduct" were not "comparable in severity or frequency to [plaintiff's] infractions"); *Bryant v Compass Group USA Inc.*, ___ F.3d ___, 95 FEP 1084, 1089 (5th Cir. 2005) (reversing denial of employer's motion for judgment as a matter of law; plaintiff who worked as a cook for a food services operator and allegedly stole money from a client's gift table at a catered event was not similarly

---

favor of employer; plaintiff who repeatedly and unwelcomingly grabbed her male-coworkers' genitals while they worked was not similarly situated with proffered comparator who exposed her breasts upon request).

situated with proffered comparator who allegedly took alcohol, food, and table decorations from the employer's stock); *Padilla v. Harris*, 285 F. Supp. 2d 263, 269-70 (D. Conn. 2003) (granting summary judgment in a gender discrimination case; plaintiff worked in a home for the developmentally disabled and was terminated after he failed to perform a required nightly bed check, thus failing to discover *at all* that one of the residents needed medical attention; plaintiff was not similarly situated with a proffered comparator on the following shift who was 15 minutes late, and who for that reason discovered an injured resident *15 minutes later* than would have been the case had the comparator been on time).

The instant case is closely analogous to the regularly recurring situation arising where two (or more) employees are involved in the same incident of misconduct but receive different punishments. Numerous cases recognize that an employer does not unlawfully discriminate by calibrating the discipline to the level of each person's culpability. This sort of calibration does not even raise a triable question. *E.g.*, *Flores v. Preferred Technical Group*, 182 F.3d 512, 516 (7th Cir. 1999) (plaintiff, who was Hispanic, was terminated for *initiating* a raucous employee protest; Caucasian comparators who merely *participated in* the protest were not terminated; there was no triable question of discrimination because the proffered comparators were not equally culpable); *Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 26 (1st Cir. 1998) (affirming judgment as a matter of law in an age discrimination case; the plaintiff, who initiated a fist-fight, was not similarly situated with the other employee involved in the fight); *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 561 (8th Cir. 1997) (two employees were involved in the same altercation but received different discipline; plaintiff (who slapped the other employee) was not similarly situated with the other employee (who merely grabbed

plaintiff's finger)); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 508-09 (7th Cir. 2004) ("An employer's decision to punish the instigator of a violent, or nearly-violent episode more severely than it treats his victim is evidence of rationality, not pretext.").[4]

The very recent case of *Albury v. J.P. Morgan Chase*, No. 03 Civ. 2007 (HBP), 2005 WL 746440 (S.D.N.Y. Mar. 31, 2005), is on all fours. The plaintiff, Cheri Albury, had access to employee investment-account information as part of her customer service officer job duties. *Id.* at *1. Albury accessed and disseminated confidential employee information for non-work related purposes in violation of the defendant's written Code of Conduct. *Id.* at *1, 2. During an investigation Albury admitted *accessing* confidential information for three co-workers at their request. *Id.* at *2. She denied *disseminating* any of the confidential information, but her co-workers told the employer otherwise. *Id.* The defendant terminated Albury for accessing confidential account information without authorization and for lying during the investigation about disseminating that information. *Id.* Albury sued for race, national origin, gender, and age discrimination. Magistrate Judge Pitman granted summary judgment, rejecting Albury's claim that she was similarly situated with the three co-workers who had asked her to access account information but who had not themselves accessed any information. *Id.* at *10. The court made

---

[4] These authorities also dispose of Shorter's claim at trial that Ms. Rhodes was equally culpable because her written warning attached a policy excerpt stating that an employee who shares his or her password is "responsible" for the consequences of that action. (Tr. I at 83; Tr. II at 221; Tr. III at 33.) The Company did hold Ms. Rhodes "responsible" for her conduct — *i.e.*, by issuing her a written warning. The Hartford's decision to mete out different punishment to Ms. Rhodes (as the enabler) than to Shorter (as the perpetrator) raises no triable issue; there are different degrees of culpability, even for persons who are "responsible" for forms of misconduct. Additionally, as a factual matter, the record at trial was uncontroverted that the attached policy applied to the Company's *email* system, not to its *voicemail* system. (Tr. II at 226-27; Tr. III at 171-72; Trial Transcript (Jan. 28, 2005) ("Tr. V") at 28, 44.)

clear that the conduct of the three co-workers was materially different from and "did not rise to the same level of seriousness" as Albury's conduct. *Id.* Here, as in *Albury*, the crucial — and the dispositive — difference between Shorter and Ms. Rhodes lies in the nature and severity of their respective conduct.

          **b.**      **The ECP violations also were different in their effect.**

Shorter altered Ms. Rhodes' password and prevented her from accessing her messages. This jeopardized the Company's ability to communicate with its own employee and interfered with Ms. Rhodes' ability to do perform her job. By contrast, as Shorter admitted at trial, Ms. Rhodes' sharing of her password did not affect his work in any way. (Tr. II at 137-38.)[5]

That Shorter's misconduct tangibly affected Company business, while Ms. Rhodes' did not, is a dispositive distinction between the two. *E.g., Bryant v. Compass Group USA Inc.*, ___ F.3d ___, 95 FEP at 1089 (plaintiff who allegedly stole money from a client was not similarly situated with comparator who allegedly stole supplies from the employer; "A key distinction is that the [theft from a client] can result in a significant loss of business and clients . . . ."); *Hayes v. Invesco, Inc.*, 907 F.2d 853, 856-57 (8th Cir. 1990) (reversing plaintiff's judgment in a race discrimination case; when plaintiff inadequately supervised her students, two nursing homes cancelled their contracts with the defendant and two others threatened to cancel their contracts

---

[5] Shorter's case at trial was devoted primarily to *why* he broke in to Ms. Rhodes' voicemail — *i.e.*, because she was the kind of woman who "just wouldn't take no for an answer." (Tr. I at 79.) But *why* Shorter repeatedly accessed Ms. Rhodes' voicemail and locked her out of it is beside the point. Also beside the point is Shorter's explanation — introduced for the first time at trial (Tr. II at 79-80) — that the messages he deleted supposedly were messages that he himself had left. The salient fact was that he improperly accessed and deleted messages from another employee's voicemail system in violation of Company policy — and changed her password to block her own access to the system.

unless the plaintiff was replaced; a comparator engaged in similar conduct, but it did not result in the actual or threatened loss of a contract; the comparator thus was not similarly situated, and the comparison was insufficient as a matter of law to prove discrimination); *Rivera-Aponte v. Restaurant Metropol #3, Inc.*, 338 F.3d 9, 12 (1st Cir. 2003) (affirming summary judgment in age discrimination case; plaintiff who was involved in an altercation that resulted in injury to a co-worker was not similarly situated with comparators who were involved in altercations that did not result in injuries); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 608-09 (6th Cir. 2002) (affirming summary judgment in race discrimination case; plaintiff was not "similarly situated" with three white truck drivers even though all four did exactly the same thing; all four pulled their trucks away from the loading dock without insuring that the back doors were closed, but only plaintiff injured a co-worker in the process).

Here, Ms. Rhodes consented to have her voicemail *monitored* by a jealous boyfriend. She did not — and certainly the Company did not — consent to have the voicemail *blocked*. She and Shorter simply are not similarly situated; their ECP violations were different in their effect.

2.    **Even if Ms. Rhodes were a proper comparator (which she is not), still there would be no triable issue.**

In any event, even assuming that Shorter was similarly situated with Ms. Rhodes, the Company's treatment of her does not raise an inference of discrimination as to him. Single instances of disparate treatment are insufficient to create a triable question of discrimination. *See Shank v. Kelly-Springfield Tire Co.*, 128 F.3d 474, 480 (7th Cir. 1997) (reversing ADEA judgment notwithstanding plaintiff's presentation of a single instance of comparative evidence; "[The other employee's] situation was not comparable to [plaintiff's], and in any event, one

example of better treatment is not enough to support an inference of discrimination."); *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996) ("A plaintiff who wants a court to infer discrimination from the employer's treatment of comparable cases has to analyze a goodly sample. One is an anecdote, and several cases are several anecdotes. Judges do not find discrimination on such a thin basis.").

C.    **Shorter's Quibbling With The Hartford's Choice Of Discipline Raises No Triable Issue.**

At bottom, Shorter can only argue, as he did at trial, that he should have been given a written warning or some lesser form of discipline in lieu of termination. But this is no more than quibbling over the Company's exercise of its business judgment about what the "right" disciplinary response should have been. That is not what discrimination trials are about. *E.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 119-20 (2d Cir.) (reversing on appeal a plaintiff's verdict in a discrimination case; plaintiff was fired for taking a long lunch after learning that his father was terminally ill; "[I]t is easy to see how a reasonable person could conclude from the facts of this case that it was *wrong* for [defendant] to fire Norton . . . . But the [discrimination law] does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their [protected characteristic].") (emphasis added), *cert. denied*, 525 U.S. 1001 (1998); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) (affirming summary judgment in discriminatory discharge case; that an employer exercised "poor business judgment" will not raise a triable question of discrimination;

"[T]he reasons tendered need not be well-advised, but merely truthful.")[6] Shorter thus was required to come forward with evidence that The Hartford intentionally discriminated against him. Because he failed to provide any evidence that his race or sex had anything to do with his termination, his discrimination claims fail as a matter of law.

### D.  What, Then, Explains The Jury Verdict?  There Are Two Possibilities, But Neither Is A Sufficient Basis For Sustaining It.

The Hartford sees two possible explanations for the verdict. Neither provides a legally sufficient ground for sustaining it — and indeed, properly analyzed, both provide additional reasons for setting it aside — as shown below.

#### 1.  The misunderstanding over Shorter's criminal record is not a basis for liability, but an additional ground for setting the verdict aside.

The Hartford in its investigation believed that Shorter had a criminal record, and lied about it. (Tr. IV at 99-101 (parties stipulated that The Hartford's records at the time of Shorter's interview and termination showed a criminal conviction, but those records later were found to be incorrect).) The Company's information turned out to be wrong, as the Company learned after the termination. That misunderstanding may well help explain how the jury went astray, but, properly analyzed, the misunderstanding if anything provides still another reason why judgment as a matter of law now should be granted.

---

[6] *Accord Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) (per curiam) (the reviewing court "does not sit as a super-personnel department that reexamines an entity's business decisions"); *Kariotis v. Navistar Int'l Transp. Corp*, 131 F.3d 672, 675-76 (7th Cir. 1997) ("[I]f the company honestly believed in [the reasons for discharge], the plaintiff loses even if the reasons are foolish or trivial or baseless."); *Gill v. Reorganized Sch. Dist. R-6*, 32 F.3d 376, 379 (8th Cir. 1994) ("We are not permitted to second guess the [employer] or to correct an unwise decision if the [employer] gave an honest, nondiscriminatory explanation for his behavior.").

The Hartford conducted a criminal check as part of its investigation of Shorter and obtained records indicating that he had a prior criminal conviction. (Tr. IV at 18-20, 24-25.) The Company also interviewed Shorter, during which he denied any criminal convictions. (Tr. I at 201; Tr. II at 97, 99; Tr. IV at 31-32.) Based on the records it then had available, the Company believed that Shorter lied about his criminal history during his interview. (Tr. III at 170; Tr. IV at 132-35.) The Company's belief in the lie provided still another nondiscriminatory reason for discharge.

That Shorter did not, in fact, have a criminal record makes no difference. All that matters is that the Company *believed* he did, and that he had lied about it, at the time of the termination decision. *E.g.*, *Straughn v. Delta Air Lines*, 250 F.3d 23, 41 (1st Cir. 2001) (plaintiff was discharged for lying; "[The] principal focus must be upon whether . . . the responsible Delta decisionmakers *reasonably believed* that [plaintiff] lied, *rather than whether she actually lied.* 'In assessing pretext, our "focus must be on the perception of the decisionmaker," that is, whether the employer believed its stated reason to be credible.'") (emphasis in original; citations omitted); *Tesh v. United States Postal Serv.*, 349 F.3d 1270, 1273 (10th Cir. 2003) ("[Because] we must assess pretext by examining the facts as they appear to the person making the decision to terminate, the question is not the factual accuracy of the [investigative] memo but whether [the employer] reasonably 'perceived' that it was accurate.") (citation omitted).[7]  There is no dispute

---

[7] *See also Cruz*, 202 F.3d at 568 (plaintiff was terminated for physically assaulting another employee in violation of her employer's "no assault" policy; plaintiff's claim that she acted in self-defense raised no triable issue; "[E]ven if [plaintiff] herself believed that she was acting in self-defense, she has produced no evidence showing that [her employer] believed that to be the case."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("In judging

*(Continued )*

as to The Hartford's good-faith belief about the facts: Shorter admitted at trial that The

Hartford's records at the time showed that he had a criminal conviction. (Tr. IV 99-101.)

The misunderstanding about the conviction, while legally irrelevant to proving

discrimination, does help explain the jury's verdict. The jury, perhaps thinking that Shorter got

"a raw deal" on the criminal-conviction issue, likely was confused into thinking that "a raw deal"

was the same thing as discrimination. As shown above, it is not. Indeed, properly analyzed, the

belief that Shorter lied about his criminal record — even though, in the end, a factually erroneous

one — is simply still another factor that, for discrimination-law purposes, lawfully differentiates

Ms. Rhodes' discipline from that meted out to Shorter. *See Mangaroo v. Boundless*

*Technologies, Inc.*, 253 F. Supp. 2d 390, 400-01 (E.D.N.Y. 2003) (granting summary judgment

in race discrimination case; plaintiff who was terminated for lateness, and excessive absenteeism

and insubordination, was not similarly situated with a co-worker who only was habitually late;

plaintiff's discipline was based on his tardiness *and* absenteeism, while the proffered comparator

was merely late).

---

whether [the employer's] proffered justifications were 'false,' it is not important whether they
were *objectively* false (e.g. whether [plaintiff] *actually* [was guilty as charged]). Rather, courts
only require an employer honestly believed its reason for its actions, even if the reason is foolish
or trivial or even baseless.") (internal quotation marks omitted; emphasis in original); *Kariotis*,
131 F.3d at 677 ("[A]rguing about the accuracy of the employer's assessment is a distraction
because the question is not whether the employer's reasons for a decisions are '*right* but whether
the employer's description of its reasons is *honest*.'") (emphasis in original; internal citations
omitted); *Das v. Our Lady of Mercy Med. Ctr.*, No. 00 Civ. 2574 (JSM), 2002 WL 826877, at
*12 (S.D.N.Y. Apr. 30, 2002) ("the relevant inquiry is whether the decisionmakers believed at
the time of discharge that the employee was guilty" of wrongdoing; whether the charges against
the employee "are actually true is beyond the scope of the inquiry") (citation omitted), *aff'd*, 56
Fed. Appx. 12, 2003 WL 174672 (2d Cir. Jan. 23, 2003).

2.    <u>That Shorter and Ms. Rhodes traded accusations does not make them similarly situated; to the contrary, the dissimilarity in their allegations further distinguishes them.</u>

Shorter may contend that he and Ms. Rhodes were similarly situated because each filed an internal complaint against the other. This contention at best is a red herring. In fact, properly analyzed, the dissimilarities in their complaints further distinguish the two cases.

Shorter claims to have complained to The Hartford's outside security contractor that Ms. Rhodes was making a pest of herself. Specifically, he alleged that Ms. Rhodes was coming to his desk at work and annoying him. (Tr. I at 151-53, 204; Tr. II at 81, 82-83.) Later, Shorter alleged that she left him messages that had sexual content as their romantic relationship foundered. (Tr. I at 206-07, Tr. II. 28-33; Tr. III at 166; Tr. IV at 32.) She also may have attempted to seduce Shorter one day when he went over to her home. (Tr. I at 225-56.)

Ms. Rhodes' complaint against Shorter was qualitatively different. She alleged that he posed a workplace violence threat.[8] (Tr. I at 104; Tr. II at 218; Tr. III at 132-33, 154, 156-58; Tr. IV at 108-10, 144.) *Phillips v. Union Pacific R.R. Co.*, 216 F.3d 703 (8th Cir. 2000), thus is

---

[8] Specifically, Ms. Rhodes alleged that Shorter had showed her a gun at one point and later told her that he would "come after" her if she reported to the Company that he had blocked her voicemail access. (Tr. III at 57, 132, 138; Tr. IV at 31.) Ms. Rhodes also claimed that Shorter had physically abused her and threatened her brother, that her sister-in-law had called the police when she overheard them having an argument, and that she had a voice message from Shorter berating her. (Tr. III at 49, 132.) The Company also obtained during its investigation an email from Shorter saying that he was a "real jealous-type dude" who "wouldn't forget about [her] right away." (Tr. I at 13-14; Tr. IV at 45-46.) Ms. Rhodes told the Company that she was afraid of Shorter and feared for her safety. (Tr. III at 57, 73, 132-33; Tr. IV at 21-22, 40.) Consistent with these allegations, following Shorter's termination, Ms. Rhodes went to the local police department and asked about obtaining a restraining order against Shorter, and she did not stay at her home for one to two weeks because she was scared Shorter would come by. (Tr. II at 210-11; Tr. III at 59-60, 71.)

instructive. The plaintiff was the subject of a co-worker's complaint that she threatened violence against two co-workers. *Id.* at 705. Union Pacific suspended the plaintiff pending clearance from a psychiatrist that she was able to resume work. *Id.* Plaintiff sued, claiming that Union Pacific discriminated against her based on race by suspending her and requiring her to undergo psychiatric treatment while giving more favorable treatment to a white employee, Jerry Allen. *Id.* at 706. Affirming judgment as a matter of law in favor of Union Pacific, the court held that Phillips and Allen were not similarly situated in all relevant respects because they were not involved in the same or comparable misconduct. *Id.* at 706, 707. Allen only had a disruptive temper and used profanity; the plaintiff threatened violence. There was no evidence that Allen "acted in such a way as to cause Union Pacific to fear that he might intentionally injure a co-worker." *Id.* at 706.

The same is true here. Shorter was the target of a complaint alleging, not just an ECP violation, but also possible workplace violence. Ms. Rhodes was not. The two simply were not similarly situated, let alone similarly situated in all respects. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 562-63 (7th Cir. 1998) (affirming summary judgment in favor of employer; plaintiffs were the subject of complaints by female employees for engaging in sexually explicit behavior and were terminated; plaintiffs were not similarly situated with female comparators who engaged in similarly sexually explicit behavior because no one had complained about the females' behavior; "[P]laintiffs must show that the [comparators' misconduct] prompted a complaint of sexual harassment to management."); *Albury v. J.P. Morgan Chase*, No. 03 Civ 2007 (HBP), 2005 WL 746440, at *10 (S.D.N.Y. Mar. 31, 2005) (plaintiff terminated for

improperly accessing co-workers' confidential employee information was not similarly situated with proffered comparator accused of sexual harassment).

## II.    THERE IS NO TRIABLE QUESTION OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Connecticut courts do not recognize claims for negligent infliction of emotional distress based on "conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." *Perodeau v. City of Hartford*, 259 Conn. 729, 762-63 (2002). "Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct . . . in the termination process. The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88-89 (1997) (citation omitted; internal quotations omitted).

There is no evidence that The Hartford engaged in unreasonable conduct in the termination process. That Shorter had to wait for Human Resources Generalist Jennifer Haber to retrieve his personal items from his work station (Tr. I at 216-17) is a triviality, as a matter of law not unreasonable conduct. *See Davis v. Liberty Mutual Ins. Co.*, 218 F. Supp. 2d 256, 263-64 (D. Conn. 2002) (allegation that, following her discharge, plaintiff was escorted out the building without an opportunity to clean out her desk held insufficient to establish unreasonable conduct in the termination process); *see also Cavuoto v. Oxford Health Plans, Inc.*, No. 3:99 CV 00446 (EBB), 2000 WL 888263, at *8 (D. Conn. June 22, 2000) (finding that there was "nothing unreasonable or socially intolerable" in plaintiff's termination even though she was "not allowed to retrieve her personal belongings" on her own).

Nor is Shorter's claim that he was escorted from the building by a security officer (Tr. I at 216-18) sufficient to establish negligent infliction of emotional distress. *Parsons*, 243 Conn. at 89 ("[I]t is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort."); *Meola v. Eagle Snacks Corp.*, No. CV 960384760, 2000 Conn. Super. LEXIS 2318, *18-19 (Conn. Super. Ct. Sept. 6, 2000) (dismissing negligent infliction claim based on allegations that plaintiff was given 10 minutes to get his things and escorted from the premises by a security guard).

And even if Shorter was subjected to unreasonable conduct (he was not), no recoverable emotional distress resulted from it. If Shorter experienced distress, it was because of the *fact* of the termination: He was unemployed. No evidence indicates that he suffered cognizable distress from waiting briefly for Ms. Haber on the termination day, or from any other aspect of the termination *process*.

## III.    CONCLUSION

Shorter defaulted in his proof as to the two theories on which the jury found in his favor. Judgment as a matter of law for The Hartford should be entered.

DEFENDANT'S MEM. OF LAW IN SUPP. OF MOTION
FOR JUDGMENT AS A MATTER OF LAW

Dated: July ___22___, 2005          Respectfully submitted,


By:     _Margaret J. Strange_
        Margaret J. Strange (ct08212)
        James F. Shea (ct6750)
        JACKSON LEWIS LLP
        55 Farmington Avenue, Suite 1200
        Hartford, CT 06105
        Phone: (860)522-0404/Fax: (860) 247-1330
        Email: strangem@jacksonlewis.com
        Email: sheaj@jacksonlewis.com

By:     _Paul W. Cane_
        Paul W. Cane, Jr. (Calif. SB# 100458)
        Katherine C. Huibonhoa (Calif. SB# 207648)
        PAUL, HASTINGS, JANOFSKY & WALKER LLP
        55 Second Street
        Twenty-Fourth Floor
        San Francisco, CA 94105-3441
        Telephone: (415) 856-7000
        Facsimile: (415) 856-7100
        Email: paulcane@paulhastings.com

        Counsel for Defendant
        HARTFORD FINANCIAL SERVICES GROUP, INC.

DEFENDANT'S MEM. OF LAW IN SUPP. OF MOTION
FOR JUDGMENT AS A MATTER OF LAW