

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FERRON SHORTER, JR.,               .    Case No. 3:03-CV-00149
                                   .    (WIG)
                Plaintiff,         .
                                   .    Bridgeport, Connecticut
      v.                           .    January 28, 2005
                                   .
HARTFORD FINANCIAL SERVICES  .
                                   .
GROUP, INC., ET AL.,               .
                                   .
                Defendants.        .
   .   .   .   .   .   .   .   .   .   .   .   .   .

CONTINUED TRIAL
BEFORE THE HONORABLE WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              Law Offices
                               By: RACHEL M. BAIRD, ESQ.
                               Stonegate Professional Bldg
                               379 Prospect Street
                               Torrington, CT 06790-5239

For the Defendant:             Jackson Lewis
                               By:  MARGARET STRANGE, ESQ.
                                    JAMES F. SHEA, ESQ.
                               55 Farmington Avenue
                               Suite 1200
                               Hartford, CT 06105

Court Monitor:                 MS. SANDRA J. BALDWIN
                               MS. MARIA CORRIETTE


Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.

---

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

28

1    instruction, it's my argument, but it really all goes

2    back to Lisa Anderson, because it's clear, if you look

3    at Defendants' Exhibit 534, the warning that Mary Ann

4    Rhodes received, what the heck is the subject matter?

5    "Warning of Improper E-Mail Internet Use."

6        I don't -- It doesn't even appear that Sharon

7    Courey and Brian Vadney knew what happened, and then

8    Ms. Courey testifies that the log-on ID password

9    attachment is what she was given to show, you know, how

10   she violated the electronics communication policy, and

11   Ms. Anderson comes in and says, "That's not the right

12   attachment.  That doesn't have anything to with the

13   voice mail system."  And you know, what?  On this point

14   I have to agree with Ms. Anderson.  I have to, because

15   if you look at it, if you look at it clearly, it does

16   say that "all passwords must be eight characters in

17   length," and it was clear from the testimony that voice

18   mail passwords are six characters in length.

19       So what is this attachment that Mary Anne

20   Rhodes was given?  What is the subject matter, having

21   to do with e-mail and internet use?  And in the

22   investigation report, it's referred to as a "final

23   warning."  It doesn't say "Final Warning" on there.  It

24   says "Warning," and in all honestly, it doesn't look

25   like it was real harsh.

44

1    There's no delineation of what's more

2    serious, less serious.  It's not in their policy, and

3    as Ms. Rhodes read to you, the attachment to the

4    warning that she received indicated that you're

5    accountable for all actions initiated under your

6    password.

7    Of course, by this time we've noticed that

8    that's not the correct attachment, but it's the

9    attachment that Mary Anne Rhodes was given with regard

10   to her violation, and we would argue that it certainly

11   applies in this case.

12   Our argument.  Ms. Anderson, Mr. Wardell, Ms.

13   Ames had no basis, on January 23rd, 2002, other than

14   Rhodes' -- Ms. Rhodes' statement that plaintiff had

15   ever shown Rhodes a gun.  That's something that only

16   Mary Anne said.

17   In January 2002, during the investigation,

18   Ms. Anderson and Mr. Wardell had direct knowledge, or

19   could have had direct knowledge of Rhodes' harassing

20   phone calls to plaintiff at work, when plaintiff told

21   them about those phone calls, but they declined to

22   follow up on that.

23   In essence, and to put it brutally, The

24   Hartford chose to believe that Mr. Shorter was a

25   violent, gun-possessing, black male who presented a

136

C E R T I F I C A T E

I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings
in the above-entitled matter.

_Stephen C. Bowles_                February 19, 2005
STEPHEN C. BOWLES