United States District Court,
S.D. New York.
Cheri ALBURY, Plaintiff,
v.
J.P. MORGAN CHASE (formerly known as The Chase Manhattan Bank), Defendant.
No. 03 Civ.2007 HBP.
March 31, 2005.

*MEMORANDUM OPINION AND ORDER*

PITMAN, Magistrate J.
I. *Introduction*
*1 Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"), alleging that her employment was terminated on the basis of race, color, national origin, gender and age. Plaintiff also alleges a claim of false imprisonment. Pursuant to 28 U.S.C. § 636(c), the parties have consented to my exercising plenary jurisdiction.
Defendant has moved for summary judgment on plaintiff's claims. For the reasons that follow, defendant's motion is granted and the action is dismissed.
II. *Facts*
A. *Facts Underlying Plaintiff's Claims*
Plaintiff is an African-American female who was born in Brooklyn, New York in June, 1952 (Deposition of Cheri Albury, conducted on November 17, 2003 ("Albury Dep."), at 7, annexed as Ex. G to the Affidavit of Stacey L. Blecher, Esq., sworn to May 14, 2004 ("Blecher Aff.")). Plaintiff's educational background includes a high school general equivalency diploma, certificates from the American Institute of Banking and an Accredited Professional certificate from the National Automated Clearinghouse Association (Albury Dep. at 18-19). Plaintiff began working for defendant in November, 1969 (Amended Complaint ¶ 11).
Defendant maintained a written "Code of Conduct" (the "Code") that served as a guide to ethical conduct for all of defendant's employees (Blecher Aff. Ex. Q at JPMC 305). In her affidavit in opposition to defendant's motion, plaintiff denies that she ever read the Code but admits that the Code was available to her through defendant's Human Resources Department (Affidavit of Cheri Albury, sworn to July 15, 2004 ("Albury Aff."), at ¶ 6). [FN1] According to the Code, accessing confidential employee information for non-work related purposes or failing to cooperate fully with internal investigations constitute violations that may result in "immediate" termination (Blecher Aff. Ex. Q at JPMC 305, 307-08; Deposition of Jack Huebsch, conducted on December 8, 2003 ("Huebsch Dep."), at 64, annexed as Ex. I to Blecher Aff). On March 31, 1996, defendant distributed "Working Together," a guide of its Human Resources policies, to all of its employees (Blecher Aff. ¶ 27; Blecher Aff. Ex. S). According to "Working Together," notwithstanding defendant's progressive disciplinary system, "immediate dismissal may occur at any time without any prior warnings, if ... the situation calls for such action. Examples of behaviors that may call for ... immediate dismissal include ... breach of trust [and] dishonesty ..." (Blecher Aff. Ex. S at JPMC 576-77).

> FN1. While defendant submitted a document purportedly signed by plaintiff that indicates plaintiff read the Code on August 4, 1997, (Blecher Aff. Ex. R at JPMC 622), this document must be disregarded for the purposes of deciding the summary judgment motion because conflicts in evidence must be resolved in favor of plaintiff, the non-movant. See *Milani v. Int'l Bus. Machs. Corp.*, 322 F.Supp.2d 434, 442 n. 16 (S.D.N.Y.2004).

Beginning in February, 1987, plaintiff worked in defendant's Automated Clearinghouse Operations ("ACH") department as the proofing control manager and later as an operations manager (Albury Dep. at 31). Plaintiff's duties in the ACH department included accessing employee bank accounts and profile information including employee names, addresses and account numbers (Albury Dep. at 31-32). Plaintiff was promoted to Assistant Vice President in November, 1994 (Albury Dep. at 25). From March, 1997 until her termination in 2000, plaintiff acted as a customer service officer for the City of New York and the United Nations (Albury Dep. at 24-25, 28-29). Plaintiff's direct supervisor was Barry Kelly, an African-American male (Albury Dep. at 29, 161; Deposition of Teresa Cahill, taken January 20, 2004 ("Cahill Dep."), at 8, annexed as Ex. L to Blecher Aff.). Kelly reported to Ellen Honeywell, an African-American female, who in turn reported to Teresa Cahill, a female of undisclosed race, then a Vice President with Global Custody Services (Albury Dep. at 29, 58, 161; Cahill Dep. at 8; Deposition of Barry Kelly, taken January 20, 2004 ("Kelly Dep."), at 6-7, annexed as Ex. N to Blecher Aff.). Plaintiff's responsibilities as a customer service officer required her to view employee and non-employee account information; some of the data, however, was blocked from plaintiff by defendant's security systems (Albury Dep. at 26-28).

*2 In early 2000, one of plaintiff's co-workers complained to the Human Resources Department that plaintiff was accessing and disseminating employee salary and other confidential information for non-work related purposes (Deposition of Deon McFayden, conducted on January 26, 2004 ("McFayden Dep."), at 14-15, annexed as Ex. O to Blecher Aff.). An employee in the Human Resources Department contacted Jack Huebsch, an Employee Relations manager, about the complaint in order to start an internal investigation, and plaintiff's managers placed her on paid administrative leave during the pendency of the investigation (Cahill Dep. at 18; Deposition of Dayna DiFrancisco, conducted on December 8, 2003 ("DiFrancisco Dep."), at 7, annexed as Ex. K to Blecher Aff.; Huebsch Dep. at 11-12).

Huebsch conducted an investigation during which he interviewed plaintiff and several of her co-workers who confirmed that plaintiff had been improperly accessing confidential employee information (Blecher Aff. Ex. H at JPMC 30-31; Huebsch Dep. at 31, 58-59). Plaintiff herself admitted that she accessed account information of three co-workers for non-business related purposes (Albury Aff. at ¶ 4; Albury Dep. at 72-76). Plaintiff maintains that she never disseminated any of this confidential information to co-workers (Albury Aff. at ¶ 3; Blecher Aff. Ex. H at JPMC 41). [FN2] At the conclusion of the investigation, Huebsch wrote a "Report of Findings" for plaintiff's employee relations file (Blecher Aff. Ex. H at JPMC 30; Huebsch Dep. at 33). In his report, Huebsch stated that plaintiff admitted to him that she accessed the salary information of Carlos Petit, an employee working with plaintiff, but that she denied having disseminated that information (Blecher Aff. Ex. H at JPMC 30). Huebsch also noted that several of plaintiff's co-workers reported that plaintiff had disseminated confidential information and, on that basis, Huebsch appeared to determine that plaintiff had not been truthful during the investigation (Blecher Aff. Ex. H at JPMC 30). Huebsch concluded his report by recommending that plaintiff be dismissed due to her repeated violations of defendant's company policy against the unauthorized accessing of confidential account information and her failure to give Huebsch honest answers during the investigation (Blecher Aff. Ex. H at JPMC 31; see Huebsch Dep. at 64).

> FN2. While defendant submitted substantial evidence that plaintiff did in fact share confidential information with co-workers, conflicts in evidence must be resolved in favor of non-movant plaintiff. See *Milani v. Int'l Bus. Machs. Corp., supra*, 322 F.Supp.2d at 442 n. 16.

Jack Cascio, a Vice President in the Auditing Division of Fraud Prevention and Investigations, also investigated plaintiff (Albury Dep. at 69; Deposition of Jack Cascio, conducted on December 8, 2003 ("Cascio Dep."), at 4-5, annexed as Ex. J to Blecher Aff.). On February 17, 2000, Cascio met with plaintiff to discuss the complaints concerning plaintiff's unauthorized accessing of confidential account information (Cascio Dep. at 11-12, 17). At the beginning of the meeting, plaintiff signed an "Acknowledgment Form" which stated:

I have been advised that my full cooperation is expected in the course of this investigation and that

my responses [must] be truthful and complete to the best of my knowledge. Any intentional [sic] false statements or lack of cooperation could be considered grounds for termination. I fully understand the contents of what I have read and have been offered an opportunity to ask any questions concerning the above before affixing my signature hereon.
*3 (Blecher Aff. Ex. H at JPMC 40; Cascio Dep. at 15). After discussing the complaints against her, Cascio asked plaintiff to write down the substance of their conversation; he testified that he did not tell her what to write (Cascio Dep. at 16, 38). [FN3] Plaintiff memorialized the discussion she had with Cascio as follows:

> FN3. In her affidavit, plaintiff alleges that Cascio dictated the contents of the statement to her and threatened her with termination if she did not sign it (Albury Aff. at ¶ 4). Plaintiff's affidavit, however, conflicts with her previous deposition testimony, see Albury Dep. at 149-50, and, therefore, is disregarded. Rubens v. Mason, 387 F.3d 183, 192 (2d Cir.2004); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001).

> Plaintiff also alleges that Cascio's request that plaintiff submit a written statement violated defendant's internal policies. Plaintiff,

> however, has not submitted any evidentiary proof that such a policy exists, and, therefore, this fact will also be disregarded. See Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir.2002); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996). Moreover, even if plaintiff's statement was attainted in violation of defendant's policies, that fact would not affect its admissibility.


I have on occasion [done] inquiries on specific accounts as well as my own.
In all cases it has been due to curriousity [sic] and my access is limited due to employee security systems.
....
Any information I have seen, I have not disclosed to anyone. It is in my nature to be currious [sic] & in order to stop this from reoccurring I recommend my access to [confidential account information] be terminated.
I apologize for this violation, & I will seek help in the future ... to put a limit on ... [my curiosity].
(Albury Dep. at 148-50; Blecher Aff. Ex. H at JPMC 41; Cascio Dep. at 16, 38-39). Cascio's "Final Report of Investigation" noted the conflict between plaintiff's statement that she did not disseminate confidential employee account information to others and the contradictory statements of her co-workers (Blecher Aff. Ex. J at JPMC 23-24; Cascio Dep. at 25-26).
Plaintiff explained in her deposition testimony that she viewed the confidential account information of some of her co-workers at their request. Specifically, plaintiff testified that three co-workers--(1) Carlos Petit, an African-American male employee in defendant's technology department with whom plaintiff had a romantic relationship; (2) Barry Kelly, an African-American male who was plaintiff's supervisor, and (3) Barbara Monahan, a Caucasian female (Albury Dep. at 76, 213-15)--asked her to access their account information.
On March 14, 2000, plaintiff received a call at home asking her to come into defendant's office for a meeting concerning defendant's internal investigations (Albury Dep. at 60). Plaintiff arrived at the office with her sister, who was concerned about plaintiff's ability to drive back home after the meeting (Albury Dep. at 63). Teresa Cahill and an employee in defendant's Human Resources Department met with plaintiff and terminated her employment (Albury Dep. at 57-60; Blecher Aff. Ex. H at JPMC 31). Cahill then told plaintiff to meet with Huebsch in his office (Albury Dep. at 60, 62; Blecher Aff. Ex. H at JPMC 31; Huebsch Dep. at 5, 31). Plaintiff's sister accompanied her to Huebsch's office and waited for her outside the office door while plaintiff went inside (Albury Dep. at 62-63). After plaintiff entered Huebsch's office, he closed the office door, but plaintiff testified that she did not know whether it was locked (Albury Dep. at 63). Plaintiff did not feel free to leave Huebsch's office during their meeting (Albury Aff. at ¶¶ 8, 10). Plaintiff testified that after she asked Huebsch why she was being terminated, Huebsch answered, "You're a liar, liar, liar" and "started screaming at the top of his

throat" (Albury Dep. at 64). Plaintiff further testified that the meeting lasted approximately eight minutes, that Huebsch never touched her at any point and that she never told him that she felt uncomfortable (Albury Dep. at 64-65).

*4 After her termination, plaintiff's co-worker, Elizabeth McGuire, a Caucasian female under thirty years of age, replaced plaintiff until a permanent replacement was found (Albury Dep. at 219-23). McGuire was also an Assistant Vice President in plaintiff's department and acted as plaintiff's "primary backup" whenever plaintiff was absent from the office (Albury Dep. at 220-23). McGuire was later replaced by Lavonne Keller, an African-American female, also under thirty years of age (Albury Dep. at 225; Amended Complaint at ¶ 19; Kelly Dep. at 25).

In support of her contention that defendant treated her differently due to her race, color, national origin, gender and age, plaintiff describes an incident involving another of defendant's employees. During late 2003, defendant dismissed John Walker, an African-American male employee (Huebsch Dep. at 82- 83). Walker's dismissal occurred after another employee accused him of sexual harassment (Huebsch Dep. at 83). Plaintiff has not set forth the nature of Walker's allegedly offensive conduct. Defendant paid Walker some amount of money after his dismissal became effective (Huebsch Dep. at 85).

B. *Procedural History*

On September 7, 2000, plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR") alleging that defendant wrongfully terminated her on the basis of her race, color, national origin, gender and age (Blecher Aff. Ex. A). Plaintiff also asserted a claim for false imprisonment arising from the meeting in Huebsch's office (Blecher Aff. Ex. A).

On November 18, 2002, the NYSDHR issued a Determination and Order dismissing plaintiff's claims of discrimination, stating, "The preponderance of the relevant and material evidence ... indicates that the nexus to [plaintiff's] discharge is more clearly established with her actions in violation of [defendant's] established and enforced policies than to any alleged discriminatory basis" (Blecher Aff. Ex. C at 2). On December 19, 2002, the EEOC dismissed plaintiff's charge, stating, "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes" (Blecher Aff. Ex. B). The EEOC's dismissal form also contained a "Notice of Suit Rights" section that informed plaintiff of her right to file suit in federal court within ninety days of the receipt of the notice (Blecher Aff. Ex. B).

On March 21, 2003, plaintiff filed a complaint in this Court, and on May 7, 2003, plaintiff filed the amended complaint currently before the Court alleging that defendant discriminated against her on the basis of race, color, national origin, gender and age and asserting a claim for false imprisonment (Amended Complaint ¶¶ 3, 13).

III. *Analysis*

A. *The Parties' Contentions*

Defendant argues that summary judgment is appropriate on plaintiff's claims brought pursuant to Title VII and the ADEA because there is insufficient evidence to sustain an inference of discrimination, the evidence unquestionably establishes that defendant had a legitimate, non-discriminatory reason for terminating plaintiff and plaintiff cannot prove that defendant's non-discriminatory reason is pretextual. Defendant also argues that it is entitled to summary judgment on plaintiff's false-imprisonment claim because plaintiff cannot prove any of the four elements of the *prima facie* case for false imprisonment. Plaintiff argues that there is sufficient evidence of disparate treatment to satisfy the fourth prong of the *prima facie* case for discrimination and that pretext is proven through evidence of plaintiff's disparate treatment. Plaintiff further argues that there is sufficient evidence to establish a claim of false imprisonment.

B. *Standard of Review*

*5 The standards applicable to a motion for summary judgment are well-settled and require only brief review.

Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This form of relief is appropriate when, after discovery, the party--here plaintiff--against whom summary judgment is sought, has not shown that evidence of an essential element of her case--one on which she has the burden of proof-- exists. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. See *Howard v.*

*Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993). If the nonmovant fails to meet this burden, summary judgment will be granted against it. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir.2004). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.... In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.... Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253-54 (2d Cir.2002) (citations omitted); see *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir.2004); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003); *Hayut v. State Univ. of New York*, 352 F.3d 733, 743 (2d Cir.2003); *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000); *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999); *Hemphill v. Schott*, 141 F.3d 412, 415 (2d Cir.1998); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir.1997).

Summary judgment is "ordinarily inappropriate" in employment discrimination cases, such as this one, where the employer's intent and state of mind are in dispute. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.2000); see *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Moreover, in discrimination cases

*6 summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so over-whelmingly tilted in one direction that any contrary finding would constitute clear error.

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir.1998) (citations omitted). See *Weber v. Parfums Givenchy, Inc.*, 49 F.Supp.2d 343, 354 (S.D.N.Y.1999).

Although the central role of intent requires that caution be exercised in addressing a summary judgment motion made in a discrimination case, " 'the salutary purposes of summary judgment-- avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to ... other areas of litigation.' " *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001), quoting *Meiri v. Dacon, supra*, 759 F.2d at 998. Thus, the Court of Appeals has expressly "remind[ed the] district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.' " *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000), quoting *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir.1994). See generally *James v. New York Racing Ass'n*, 233 F.3d 149 (2d Cir.2000) (affirming grant of summary judgment in age discrimination case); *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir.2000) (same); *Elliott v. British Tourist Auth.*, 96 Civ. 9154(NRB), 2001 WL 435633 (S.D.N.Y. Apr. 30, 2001) (granting summary judgment in age discrimination case); *Bennett v. Watson Wyatt & Co.*, 136 F.Supp.2d 236 (S.D.N.Y.2001) (granting summary judgment in race discrimination case).

C. *Plaintiff's Title VII and ADEA Claims*

Plaintiff's claims of discrimination on the basis of race, color, national origin and gender are governed by Title VII of the Civil Rights Act of 1964, which makes it unlawful for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff's claim of age discrimination is governed by the ADEA, which makes it unlawful for an employer to discharge an employee who is at least forty years old because of her age. See 29 U.S.C. §§ 623(a), 631(a); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001); *Butler v. New York State Dep't of Law*, 211 F.3d 739, 745 (2d Cir.2000).

Claims brought pursuant to Title VII and the ADEA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Johns v. Home Depot U.S.A., Inc.*, 03 Civ. 4522(DC), 2005 WL 545210 at *4

(S.D.N.Y. Mar. 8, 2005); see Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir.2000) (Title VII); Schnabel v. Abramson, supra, 232 F.3d at 87 (ADEA). "In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the Supreme Court established an 'allocation of the burden of production and an order for the presentation of proof in Title VII' cases." Fisher v. Vassar Coll., 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir.1999); Jean-Gilles v. County of Rockland, 195 F.Supp.2d 528, 531 (S.D.N.Y.2002). "Following the Supreme Court's directive, plaintiff must initially come forward with facts sufficient to establish a *prima facie* case that [she suffered an adverse employment action] under circumstances giving rise to an inference of discrimination." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir.1998); see Weiss v. City of New York, 96 Civ. 8281(LTS) (MHD), 2003 WL 1621403 at *2 (S.D.N.Y. Mar. 28, 2003).

*7 In order to establish a *prima facie* case of discriminatory treatment, a plaintiff must show that (1) she is a member of a protected class (2) she was qualified for the position; (3) she was subject to an adverse employment action and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class. Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir.2005); Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir.2002); Brennan v. Metro. Opera Ass'n Inc., 192 F.3d 310, 316 (2d Cir.1999); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir.1999); Hills v. City of New York, 03 Civ. 4265 (WHP), 2005 WL 591130 at *3 (S.D.N.Y. Mar. 15, 2005); Beckmann v. Darden, 351 F.Supp.2d 139, 146 (S.D.N.Y.2004); Williams v. Salvation Army, 108 F.Supp.2d 303, 308 (S.D.N.Y.2000), citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

"The burden of establishing a *prima facie* case is not a heavy one. One might characterize it as minimal." Carlton v. Mystic Transp. Inc., supra, 202 F.3d at 134. See Holtz v. Rockefeller & Co., 258 F.3d 62, 77 (2d Cir.2001); Galabya v. New York City Bd. of Ed., 202 F.3d 636, 639 (2d Cir.2000); Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir.1997) (per curiam); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994) (describing the burden of production as *de minimis*); Bogart v. New York City Health & Hosps. Corp., 98 Civ. 6118(TPG), 2001 WL 504874 at *5 (S.D.N.Y. May 11, 2001). If a plaintiff succeeds in establishing a *prima facie* case of discrimination, a presumption is created "that the employer discriminated against the employee in an unlawful manner," Greenway v. Buffalo Hilton Hotel, supra, 143 F.3d at 52, and the burden then shifts to the employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its actions. Dawson v. Bumble & Bumble, supra, 398 F.3d at 216; Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir.2001); Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 134; Gallo v. Prudential Residential Servs., supra, 22 F.3d at 1224; Bickerstaff v. Vassar Coll., supra, 196 F.3d at 446.

The defendant's burden of production also is not a demanding one; [it] need only offer such an explanation for the employment decision. Although the burden of production shifts to the defendant, the ultimate burden of persuasion remains always with the plaintiff.

Bickerstaff v. Vassar Coll., supra, 196 F.3d at 446 (citations omitted).

If the employer articulates a non-discriminatory reason for the termination, the presumption of discrimination raised by the *prima facie* case "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, supra, 509 U.S. at 510-11; see Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 134-35; Green v. Harris Publ'ns, Inc., 331 F.Supp.2d 180, 187 (S.D.N.Y.2004). At this point, the burden shifts back to the plaintiff to offer proof that would allow a rational fact finder to conclude that the employer's proffered reason for the termination was pretextual. St. Mary's Honor Ctr. v. Hicks, supra, 509 U.S. at 507-08; Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 135. Although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, "the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual...." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (internal quotation marks omitted); Dawson v. Bumble & Bumble, supra, 398 F.3d at 216. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 148.

*8 In Schnabel v. Abramson, supra, 232 F.3d at 90, the Second Circuit explained the impact of the Supreme Court's decision in *Reeves* as follows:

In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a *per se* rule requiring *in all instances* that [a claimant] offer more than a *prima facie* case and evidence of pretext.... But the converse is not true: following *Reeves*, we decline to hold that *no*

[ ] defendant may succeed on a summary judgment motion so long as the plaintiff has established a *prima facie* case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Reeves, 530 U.S. at ---, 120 S.Ct. at 2106 (internal quotation marks omitted).
See also Hill v. Citibank Corp., 312 F.Supp.2d 464, 478 (S.D.N.Y.2004).
Furthermore, in James v. New York Racing Ass'n, supra, 233 F.3d at 155, the Second Circuit explained that proof that the employer's non-discriminatory explanation is false does not inevitably establish illegal discrimination:
We reasoned in *Fisher* that "evidence constituting a *prima facie* case prior to the employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason may--or may not--be sufficient to show illegal discrimination." Fisher, 114 F.3d at 1333. In nearly identical terms the Supreme Court explained in *Reeves* that in some circumstances, a *prima facie* case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred....
233 F.3d at 155.
1. *Plaintiff's Prima Facie Case Under Title VII*
For the purposes of this motion, defendant does not dispute that plaintiff belongs to a protected group, that she was qualified for her position, or that she was subjected to an adverse employment action (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, dated May 17, 2004 ("Def.Mem."), at 14 & n. 3). Defendant's sole contention concerning the adequacy of plaintiff's *prima facie* case is that summary judgment is warranted because plaintiff has not come forward with any evidence showing that she was terminated under circumstances that give rise to an inference of discrimination.
First, plaintiff argues that defendant violated its internal rules by terminating plaintiff without applying its policy of progressive discipline. Plaintiff argues that this action constitutes an act of discrimination. As defendant correctly points out, however, defendant's internal policies explicitly allow for "immediate" dismissal without any prior warning or corrective action in the case of "breach of trust [and] dishonesty" (Blecher Aff. Ex. S at JPMC 576-77). Breach of trust and dishonesty are the precise explanations defendant gave for plaintiff's dismissal (*see* Huebsch Dep. at 64). As a result, defendant's argument fails.
\*9 Moreover, in the absence of evidence that plaintiff was terminated under circumstances that would not have resulted in the termination of a similarly-situated employee outside of her protected classes, she has, at most, shown only a potential violation of defendant's policies. A violation of an employer's internal personnel practices is not, by itself, an act of discrimination. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir.2000); EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1182- 83 (5th Cir.1996).
Next, plaintiff relies upon the allegedly disparate treatment she received compared to her co-workers for purportedly similar violations of defendant's Code as evidence of discrimination. Specifically, plaintiff argues that her conduct in accessing confidential employee account information "pales in comparison" to the conduct of John Walker, an African-American male who defendant terminated based upon complaints of sexual harassment (Def. Mem. at 16). Plaintiff also argues that three of her co-workers--Carlos Petit, a Hispanic male, Barry Kelly, an African-American male and Barbara Monahan, a Caucasian female--asked plaintiff to access their confidential account information but that defendant did not terminate them for their purportedly similar misconduct.
A plaintiff may "establish the fourth element of a *prima facie* case, [by] show [ing] that she was treated differently from 'similarly situated' [co-workers]. To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.1997) (internal citations omitted); see Norville v. Staten Island Univ. Hosp., supra, 196 F.3d at 96. Put differently, where a plaintiff seeks to prove that an inference of discrimination exists by offering proof of disparate treatment of other employees, "those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."
McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir.2001). However, "a plaintiff is not obligated to show disparate treatment of an *identically* situated employee." McGuinness v. Lincoln Hall, supra, 263 F.3d at 54; see Tomasino v. Mount Sinai Med. Ctr. & Hosp., 97 Civ. 5252(TPG), 2003 WL 1193726 at \*14 (S.D.N.Y. Mar. 13, 2003). The Second Circuit has further explained that "there should be a

reasonably close resemblance of facts and circumstances" between a plaintiff and those with whom she compares herself, and that the "key is that they be similar in significant respects." *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001). In addition, where, as here, the claim of disparate treatment is based on inconsistent disciplinary practices, a plaintiff is required "to show that similarly situated employees who went undisciplined engaged in comparable conduct." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir.2000); *see Lucibello v.. Yale-New Haven Hosp.,* 3:03 CV 0814(RNC), 2005 WL 578324 at *6 (D.Conn. Mar. 10, 2005) ("In cases involving disparate treatment with regard to discipline, the plaintiff must show that the conduct of the other employee[s was] of comparable seriousness.").

*10 The question of whether employees are similarly situated is ordinarily a question of fact. *Feingold v. New York,* 366 F.3d 138, 154 (2d Cir.2004). "This rule[, however,] is not absolute ... and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 n. 2 (2d Cir.2001).

Plaintiff here has failed to satisfy her burden of offering evidence that would sustain a finding that her proposed comparators were "similarly situated."

First, plaintiff fails to offer sufficient evidence that the facts concerning John Walker's termination were comparable to her termination. As noted above, defendant terminated Walker based an allegations of sexual harassment, a violation that was entirely different than plaintiff's actions in accessing confidential account information. In addition, plaintiff offers no evidence of the nature of the harassment, whether it involved more egregious conduct, such as overtly sexual advances and unwanted touching, or less egregious conduct, such as repeated but unwanted invitations to another employee to meet socially. Finally, Walker's offense was qualitatively different from plaintiff's. Plaintiff's offense involved the misuse of the defendant's tangible and intangible property. Walker's conduct did not. On the most basic level, therefore, Walker cannot be said to be "similarly situated" to plaintiff for the purposes of establishing disparate treatment because the facts and circumstances involving his termination are not even remotely comparable to those involving plaintiff's termination. [FN4] *See Lizardo v. Denny's, Inc., supra,* 270 F.3d at 101-02; *Subramanian v. Prudential Sec., Inc.,* NO. CV016500 (SJF)(RLM), 2003 WL 23340865 at *10 (E.D.N.Y. Nov. 20, 2003); *Fontanez v. Thompson,* 00 Civ.2090(DFE), 2003 WL 1964052 at *15 (S.D.N.Y. Apr. 24, 2003); *Costello v. St. Francis Hosp.,* 258 F.Supp.2d 144, 154 (E.D.N.Y.2003).

> FN4. Plaintiff appears to make the alternative argument that defendant's grant of a sixty-day severance package to Walker after his termination shows that defendant's termination of plaintiff constitutes "a subterfuge to avoid paying her severance based on discrimination" because defendant did not provide plaintiff with any severance pay (Def. Mem. at 14). Since Walker is not "similarly situated" to plaintiff in any material way, plaintiff's "subterfuge" argument fails for the same reasons set forth in the text. *See Shumway v. United Parcel Serv., Inc., supra,* 118 F.3d at 64.

Next, plaintiff argues that three of her co-workers--Carlos Petit, Barry Kelly and Barbara Monahan--asked plaintiff to access their confidential account information but that those employees were not disciplined for their actions. Plaintiff again fails to satisfy her burden of offering evidence that would sustain a finding that any of these three individuals were "similarly situated." Rather, a material difference exists because the conduct in which Petit, Kelly and Monahan engaged did not rise to the same level of seriousness as plaintiff's conduct. *See Khan v. Costco Wholesale Inc.,* 99 CV 3944(SJ), 2001 WL 1602168 at *7 (E.D.N.Y. Dec. 13, 2001) (allegations of racial discrimination in a Section 1981 case unsupported where plaintiff's theft was more serious than thefts committed by his co-workers); *see also Lucibello v. Yale-New Haven Hosp., supra,* 2005 WL 578324 at *6 (disparate disciplinary treatment was not evidence of race discrimination where plaintiff's employer previously disciplined her for more serious conduct than her comparator); *Tomasino v. Mount Sinai Med. Ctr. & Hosp., supra,* 2003 WL 1193726 at *14 (no age discrimination found where plaintiff, a nurse, medicated a patient without a doctor's orders and none of plaintiff's comparators committed an infraction of the same or similar seriousness). According to plaintiff's deposition testimony, Petit, Kelly and Monahan merely asked plaintiff to access their own confidential information; they did not access

account information themselves (Albury Dep. at 74-76, 213-15). Nor is there evidence that Petit, Kelly or Monahan failed to cooperate fully with defendant's internal investigation. Moreover, as far as is discernable from the record, at least one co-worker-- Petit--worked in a different department, had a different job title and, presumably, a different supervisor than plaintiff (Deposition of Carlos Petit, conducted on January 28, 2004 ("Petit Dep."), annexed to Blecher Aff. as Ex. P, at 7-8).

*11 Thus, plaintiff has failed to offer evidence that shows her employment was terminated under circumstances that give rise to an inference of discrimination based on allegedly disparate treatment. See Shumway v. United Parcel Serv., Inc., supra, 118 F.3d at 64. Furthermore, even if she had satisfied the fourth prong of a McDonnell Douglas prima facie case, as discussed below, plaintiff cannot satisfy her burden at the third step of the McDonnell Douglas analysis of proving that defendant's reason for terminating plaintiff was a pretext for discrimination.

2. Plaintiff's Prima Facie Case under the ADEA

With respect to her age-discrimination claim, plaintiff, then forty-eight years old (Amended Complaint at ¶ 8), argues that defendant's replacing her with younger, less experienced women--Elizabeth McGuire and Lavonne Keller--is sufficient to support an inference of discrimination (Albury Dep. at 219, 225). Specifically, plaintiff argues that her replacement by women who were in their twenties satisfies her de minimus burden of proving that her termination occurred under circumstances giving rise to an inference of discrimination. Since plaintiff was in fact replaced by two women who were both outside of her protected class, plaintiff has established a prima facie case of age discrimination. Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir.2001); see Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir.2003); Carlton v. Mystic Trans., Inc., supra, 202 F.3d at 135; Slatky v. Healthfirst, Inc., 02 Civ. 5182(JGK), 2003 WL 22705123 at *4 (S.D.N.Y. Nov. 17, 2003).

3. Defendant's Legitimate, Non-Discriminatory Reason for Terminating Plaintiff

Once plaintiff satisfies her burden of proving a prima facie case of discrimination under Title VII and the ADEA, the burden of production shifts to defendant to rebut the presumption of discrimination by offering a legitimate, non-discriminatory reason for terminating plaintiff. Bickerstaff v. Vassar Coll., supra, 196 F.3d at 446. Defendant asserts that it had a non-discriminatory reason for terminating plaintiff's employment because plaintiff violated defendant's internal policies by accessing confidential employee account information for non-work purposes and failing to cooperate fully with defendant's internal investigation. As stated above, the Code explicitly listed plaintiff's actions as grounds for "immediate" dismissal (Blecher Aff. Ex. Q at JPMC 305, 307-08). In light of the fact that plaintiff admitted in writing that she viewed confidential information solely to satisfy her own curiosity, (Blecher Aff. Ex. H at JPMC 41), and re-confirmed that statement in her deposition testimony, (Albury Dep. at 74-76, 213-15), and bearing in mind that defendant's burden at this stage of the McDonnell Douglas analysis is also minimal, Bickerstaff v. Vassar Coll., supra, 196 F.3d at 446, defendant has met its burden of articulating a non-discriminatory reason for its decision.

4. Plaintiff's Proof of Pretext

*12 Defendant next argues that even if plaintiff has offered evidence sufficient to satisfy all the elements of a McDonnell Douglas prima facie case, her discrimination claims fail at the third step of the McDonnell Douglas analysis because she has not offered evidence sufficient to show that defendant's non-discriminatory reason for terminating plaintiff's employment was a pretext for illegal discrimination.

Since defendant has not only articulated, but offered compelling evidence of a non-discriminatory reason for terminating plaintiff's employment (i.e., plaintiff's admitted violation of defendant's rules concerning the accessing of confidential account information), the burden shifts back to plaintiff to "demonstrate by competent evidence that 'the legitimate reasons offered by defendant were not its true reasons, but were a pretext for discrimination." ' Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir.2004). In determining whether plaintiff has met this burden, the court must undertake a "case-specific" inquiry and should "consider a number of factors including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for [summary judgment]." ' Zimmermann v. Assocs. First Capital Corp., supra, 251 F.3d at 381, quoting Reeves v. Sanderson Plumbing Prods., supra, 530 U.S. at 148-49.

At the third step, plaintiff relies on the same evidence she relied upon to give rise to an inference of discrimination at the first step of the McDonnell Douglas analysis, namely that she was more severely disciplined than Walker, Petit, Kelly and Monahan, and that she was replaced by younger individuals. Even if this evidence were sufficient to sustain a finding that plaintiff's proposed comparators were similarly situated to plaintiff, the differences in their positions and acts of misconduct substantially

attenuate any inference of discrimination. Similarly, the fact that plaintiff was replaced by younger individuals, without more, is weak evidence of age-based animus. Against this evidence, defendant cites evidence that plaintiff was terminated as a result of her admitted violation of defendant's rules concerning the accessing of information and her failure to cooperate in the investigation conducted by defendant. Plaintiff has offered no evidence that these proffered reasons are false. See *Harris v. Franziska Racker Ctrs., Inc.*, 340 F.Supp.2d 225, 237 (N.D.N.Y.2004) (granting defendant's motion for summary judgment where plaintiff failed to offer evidence that defendant's reason for terminating her--a violation of an internal policy against disseminating confidential information--was a pretext for illegal discrimination); *Jordan v. Olsten Corp.*, 111 F.Supp.2d 227, 233-38 (W.D.N.Y.2000) (granting defendant's motion for summary judgment where plaintiff failed to offer evidence that her termination for violating an internal company policy against disseminating confidential employee salary information was a pretext for illegal discrimination); *Thomas v. Saint Francis Hosp. & Med. Ctr.*, 990 F.Supp. 81, 86-88 (D.Conn.1998) (granting defendant's motion for summary judgment where plaintiff's evidence was insufficient to show that defendant's proffered reason for terminating her, a violation of company policy concerning tardiness, absenteeism, and patient care, was a pretext for racial or gender discrimination).

**\*13** In light of the weakness of plaintiff's showing and the strength of defendant's showing, I conclude that plaintiff has not sustained her burden at the third step of the *McDonnell Douglas* analysis, and that summary judgment is, therefore, appropriate. *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir.1998) (reversing plaintiff's jury verdict, stating "Norton's very weak *prima facie* case, combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough to support the jury's conclusion that he was fired because of his age."); accord *Hansberry v. Father Flanagan's Boy's Home*, CV-03-3006 (CPA), 2004 WL 3152393 at \*6 (E.D.N.Y. Nov. 28, 2004); *Hoyt v. Dep't of Children & Families*, 309 F.Supp.2d 299, 307 (D.Conn.2004); *Ahmad v. Nassau Health Care Corp.*, 00-CV-7549 (TCP), 234 F.Supp.2d 185, 196 (E.D.N.Y.2002).

D. *False-Imprisonment Claim*

Plaintiff claims that defendant falsely imprisoned her when plaintiff met with Huebsch in his office to discuss the reasons for her termination, and Huebsch closed his office door, yelled at plaintiff and called her a liar (Albury Dep. at 64). Plaintiff testified that the meeting lasted only eight minutes, she wasn't sure whether the door was locked, Huebsch never touched her, she never told Huebsch that she felt uncomfortable and that her sister was sitting directly outside the office door during the meeting (Albury Dep. at 62-65). In support of her false-imprisonment claim, plaintiff argues that she did not feel free to leave Huebsch's office during the meeting but cites no reason for this belief other than the fact that the office door was closed, and that Huebsch yelled at her (Albury Aff. at ¶¶ 8-9; Albury Dep. at 62-64).

"False imprisonment is an unlawful detention contrary to the will of the person detained, accomplished with or without process of law. A prima facie case of the intentional tort of false imprisonment is established upon a showing that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that [s]he was confined; and (4) the confinement was not other-wise privileged, such as confinement pursuant to a warrant or with probable cause or immunity protection." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir.1998). "In addition, '[a] false imprisonment claim requires a prima facie showing of actual confinement or threatening conduct.' " *Campoyerde v. Sony Pictures Entm't*, 01 Civ. 7775(LAP), 2002 WL 31163804 at \*8 (S.D.N.Y. Sept. 30, 2002), quoting *Lee v. Bankers Trust Co.*, 96 Civ. 8153(DAB), 1998 WL 107119 at \*4 (S.D.N.Y. Mar. 11, 1998), aff'd 166 F.3d 540 (2d Cir.1999) (citations omitted). "A lengthy interview of an employee by an employer, without more, does not support a claim for false imprisonment." *Lee v. Bankers Trust Co., supra*, 1998 WL 107119 at \*4.

**\*14** Plaintiff has failed to offer sufficient evidence of a *prima facie* case of false imprisonment, particularly with respect to Huebsch's intent to confine plaintiff in his office. As plaintiff admits in her deposition testimony, plaintiff did not see Huebsch lock the office door nor did Huebsch verbally or physically communicate an intent to restrain plaintiff from leaving his office (Albury Dep. at 62-65). As stated by the Honorable Deborah A. Batts, United States District Judge, "Summoning an employee into an interview in familiar surroundings in the employer's office does not indicate an intent to confine." *Lee v. Bankers Trust Co., supra*, 1998 WL 107119 at \*5. Plaintiff's reliance on the fact that Huebsch yelled at her and called her a liar, while certainly not pleasant, does not rise to the level of false imprisonment.

In *Cellamare v. Millbank, Tweed, Hadley & McCloy*, 03-CV-0039 (FB)(LB), 2003 WL 22937683

(E.D.N.Y. Dec. 2, 2003), plaintiff sued her former employer under Title VII and the ADEA after she was terminated. In addition to her claims of discrimination, the plaintiff in that case, like the plaintiff here, claimed that defendants falsely imprisoned her when defendants called plaintiff into a meeting at their office, questioned her for over five hours and called her a liar. 2003 WL 22937683 at *2. The Honorable Frederic Block, United States District Judge, relying on Lee v. Bankers Trust Co., supra, 1998 WL 107119 at *5, held that plaintiff failed to show that the encounter was "anything more than a lengthy interview by an employer" because defendants did not tell plaintiff that "she was not free to leave and there [was] no allegation that [defendant] forced her to stay." 2003 WL 22937683 at *2. Here, plaintiff's meeting with Huebsch lasted only eight minutes and there is no evidence that Huebsch indicated to plaintiff in any way that she was not free to leave. Accordingly, under both Lee v. Bankers Trust Co. and Cellamare v. Millbank, Tweed, Hadley & McCloy, there is insufficient evidence to establish a claim of false imprisonment, and, therefore, defendant's motion for summary judgment is granted.

IV. *Conclusion*

Accordingly, for the foregoing reasons, defendant's motion for summary judgment is granted in all respects and plaintiff's complaint is dismissed.

S.D.N.Y.,2005.
Albury v. J.P. Morgan Chase
2005 WL 746440 (S.D.N.Y.)