

DEFENDANT'S
EXHIBIT
9

United States District Court, D. Connecticut.
Barbara CAVUOTO, Plaintiff
v.
OXFORD HEALTH PLANS, INC., Brendan Shanahan, Scott Thibeault, and Nick Daukas,
Defendants
No. 3:99-CV-00446 (EBB).
June 22, 2000.

RULING ON MOTION TO DISMISS

BURNS, Senior District J.
**\*1** Plaintiff Barbara Cavuoto ("Plaintiff") brings this nineteen-count Complaint against her former employer, Oxford Health Plans, Inc., and three employees of Oxford (collectively "Defendants"). She claims, *inter alios,* violations of Title VII based on hostile work environment, gender discrimination and retaliation, the Americans with Disabilities Act ("ADA"), the Equal Pay Act, the Connecticut Fair Employment Practices Act ("FEPA"), and state law claims based on breach of contract, promissory estoppel, implied duty of good faith and fair dealing, negligent infliction of emotional distress and intentional infliction of emotional distress. Defendants now move to dismiss all claims, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, with the exception of those brought under Title VII for gender discrimination and the Equal Pay Act.

STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, the Motion. Inasmuch as, under each of these grounds for dismissal, the factual allegations of the Complaint are deemed true, the Court distills the Statement of Facts from said Complaint.

Plaintiff is a resident of Connecticut and was employed by Oxford as the Payroll Manager from June 26, 1995 to on or about March 9, 1998. She does not allege that she was working under a contract with Oxford, whose principal place of business is also in Connecticut.

Brendan Shanahan ("Shanahan") was Oxford's Vice President and Comptroller and Plaintiff's immediate supervisor. Scott Thibeault ("Thibeault") was the Director of Compensation and Benefits, while Nick Daukus ("Daukus") was the Human Resources Generalist.

Plaintiff alleges that, in her interview for the job, Shanahan orally promised and represented to her that the payroll system was suitable for Oxford, that Oxford was sensitive to family responsibilities, and that she would not have to work an excessive amount of hours each week. These alleged promises took place prior to her employment with Oxford.

Plaintiff alleges that, as soon as she commenced employment, she discovered that the payroll system was inadequate, that the Payroll Department lacked the necessary physical space and staff, and that she was required to work sixty-five hours per week.

Plaintiff also alleges that she inherited compliance issues, that she complained to Shanahan in 1995, and that she submitted a similar complaint through the Vice President of Human Resources. Despite these discoveries, Plaintiff continued her employment with Oxford. She further alleges that, despite the fact that she continually requested assistance from Shanahan concerning the affairs of the Payroll Department, he failed to act "in accord with his managerial responsibilities."

Plaintiff further alleges that Shanahan "continually" used vulgarities while in her presence (although they are not alleged to be directed to Plaintiff) and that he excluded her from senior management meetings because she was an "hysterical female" who was "incapable of attending" such meetings. She says that this occurred due to her severe PMS, of which Shanahan was aware.

**\*2** Plaintiff also alleges that a "Corrective Action Letter" was issued to her on or about August 12, 1997, containing false accusations and blaming her for "low morale" in her department, when actually the low morale had been confirmed to be "company wide" by surveys done by Oxford.

Plaintiff further states that Thibeault "repeatedly" used profanity around her, although this, too, was not directed to her. She also alleges that both Thibeault and Daukas tried to circumvent her authority by having her subordinates bring complaints to them directly.

As to her Equal Pay claim, Plaintiff contends that Oxford compensated females "significantly less than male managers who had similar jobs and responsibilities."

Finally, she claims that when she was terminated, the process followed by Oxford was unreasonable and extreme, and caused her to suffer emotional distress.

## LEGAL ANALYSIS

I. The Standards of Review

A. Federal Rule of Civil Procedure 12(b)(1)

A Motion to Dismiss under Rule 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case ..." and "typically ... alleges that the federal court lacks either federal question or diversity jurisdiction over the action." 2A James W. Moore et al., Moore's Federal Practice, ¶ 12.07, at 12-49 (2d ed.1994) quoted in Beiler v. Christwood Contracting Co., Inc., 868 F.Supp. 461, 464 (D.Conn.1994), affirmed in part, reversed in part on other grounds, 72 F.3d 13 (2d Cir.1995). In considering a motion to dismiss under Rule 12(b)(1), the court construes the complaint broadly and liberally in conformity with the principle set out in Federal Rule of Civil Procedure 8(f). See 5A Charles A. Wright et al., Federal Practice and Procedure § 1350, at 218-19 (1960 & Supp.1991). In ruling on such a motion, the court is to consider allegations of the complaint as true. Zellars v. Liberty Nat. Life Ins. Co., 907 F.Supp. 355 (M.D.Ala.1995); Hart v. Mazur, 903 F.Supp. 277 (D.R.I.1995).

B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984) quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). See also Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of case). However, the Federal Rules do not allow the substitution of conclusory statements "for minimally sufficient factual allegations." Furlong v. Long Island College Hosp., 710 F.2d 922, 927 (2d Cir.1983).

II. The Standards As Applied

a. Plaintiff's Title VII Claims and ADA Claim: Counts 1,3,4

**\*3** Defendant Oxford moves to dismiss these Title VII claims, [FN1] firstly, for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Oxford asserts that, inasmuch as Plaintiff failed to meet the time limits of such a claim, she is now time-barred from bringing it before this Court. Secondly, Defendant alleges that Plaintiff was not subjected to a severely hostile working environment within the meaning of Title VII or the ADA.

> FN1. The only Title VII claim which Defendants have not moved to dismiss is Count Two, which Count pleads gender discrimination.

Pursuant to 42 U.S.C. Section 2000e-5(e), a charge of discrimination must be filed with the EEOC within 180 days of the alleged unlawful employment practice or, if the claimant has already filed the charge with a state or local equal employment agency, the time is expanded to 300 days. Ouinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.1998). This requirement functions as a statute of limitations, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon Plaintiff's suit in a district court. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir.1996); see also Butts v. City of New York, 900 F.2d 1397, 1401 (2d Cir.1993).

In Delaware v. Ricks, 449 U.S. 250, 258 (1980), the Supreme Court held that, for purposes of the EEOC's filing requirements, the period of limitations begins to run on the date the Plaintiff is given notice of the alleged discriminatory act, even if the acts or its effects do not occur until later. [FN2] In the present case, Plaintiff claimed discriminatory incidents beginning in June of 1995 and continuing through the end of August, 1997. See, e.g., Complaint at ¶¶ 15, 22, 23, 27,28 and 29. However, she did not file her CHRO Complaint until June 26, 1998, which is almost two years after the initial conduct of which she complained as discriminatory conduct amounting to a hostile work environment.

[FN3]

FN2. For purposes of examining the time requirements under both the EEOC and CHRO charges, the state courts have looked to the federal courts in deciding issues regarding discriminatory practices. *See Department of Health Servs. v. Commission on Human Rights & Opportunities,* 198 Conn. 479,

489 (1986).

FN3. Plaintiff alleges in her Complaint that she was retaliated against for making complaints about her working environment. However, she never set forth a retaliation count in either of her EEOC or CHRO complaints. This is fatal to her retaliation claims, in that a Title VII plaintiff may not bring claims in a lawsuit which were not included in her EEOC (or CHRO) charges. *Alexander v. Gardiner-Denver Co.,* 415 U.S. 36, 47 (1974). "[A]llowing a complaint to encompass allegations outside of the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. Western and Southern Life Ins. Co.,* 31 F.2d 497, 499 (7th Cir.1994).

Nor can Plaintiff take advantage of the continuing-violation exception to the statute of limitations under Title VII. Under this exception, the limitations period is extended for all claims of discriminatory conduct committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations. *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998). However, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* 511 U.S. 1052 (1994). Plaintiff may not use this exception simply because the conduct which she sets forth in the complaint is not discriminatory conduct within the meaning of Title VII, in the first place.

Plaintiff alleges that her job responsibilities were misrepresented to her during her job interview and that, shortly following her employment, she found that these misrepresentations were significant. She further alleges that, having discovered the above misrepresentations, in August, 1995, she submitted a complaint through Shanahan and the Human Resources Department. She also inquired of Shanahan why he had misrepresented the state of the payroll department to her.

**\*4** Plaintiff further alleges that she was issued a Corrective Action letter on August 12, 1997, which contained erroneous, untrue and exaggerated statements concerning complaints from employees in Plaintiff's department. A revised Corrective Action Letter was issued at the end of August, 1997. Finally, she asserts that male co-workers frequently used profanity in front of her, though it was not directed to her, which she found personally objectionable. However, the lack of gentility of these particular men still does not:(a) bring her within any continuing violation exception: or (b) set forth a claim for hostile work environment or sexual discrimination within the meaning of Title VII. "Title VII is not to be used as a 'general civility code' but is actionable only for conduct sufficiently 'extreme to amount to a change in the terms and conditions of employment." ' *Osier v. Broome County,* 1999 WL 304683 (N.D.N.Y.1999), *quoting Faragher v. City of Boca Raton,* 524 U.S. 775, 783 (1998).

The Supreme Court has interpreted Title VII to bar "requiring people to work in a discriminatorily hostile or abusive work environment." *Harris v. Forklift Systems, Inc.,* 610 U.S. 17, 21 (1993). This form of harassment is actionable "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and to create an abusive working environment ." *Id.* In her Complaint, Plaintiff alleges a hostile work environment within the meaning of Title VII and the ADA which was caused by the use of profanity in her presence, that her supervisors encouraged her subordinates to report to them, rather than to her, that, on two occasions, a co-worker reduced her to tears and, when she filed an action under Oxford's anti-harassment policy, her case was not investigated by Oxford. Construing these allegations in the light most favorable to Plaintiff, the Court finds that such actions are simply run-of-

the-mill complaints about her particular job and were not sufficiently severe to make her working environment "abusive" within the meaning of Title VII or the ADA.

This cannot be the basis for a hostile work environment claim because there is no implication of all-encompassing discriminatory behavior.

Accordingly, Counts 1 and 3, brought under Title VII, are dismissed, both procedurally and substantively, pursuant to subsections (1) and (6) of Federal Rule of Civil Procedure 12. [FN4] Count 4, brought under the ADA, and incorporating the identical conduct, also must be dismissed because such did not create a hostile work environment under the standards set forth above.

> FN4. The FEPA was amended by the legislature to make the statute coextensive with Title VII. FEPA, therefore, through the CHRO, has a statute of limitations of 180 days. Accordingly, as with the Title VII claim, the FEPA claims brought in Counts 6-9 are dismissed as time-barred. In any event, such claims are dismissed for the identical substantive reasons the Court has set forth in this Ruling regarding Plaintiff's Title VII claims.

Counts 3, 7 and 8 are also dismissed as to the individual Defendants, as Plaintiff did not name them in her CHRO charge and never served them notice of same. A failure to comply with the administrative requirements prescribed by the legislature for a discrimination claim bars the statutory authority to pursue that claim in Court. See Sullivan v. Board of Police Commissioners, 196 Conn. 208, 216 (1985); accord Carter v. City of Hartford, 1998 WL 823044 (D.Conn.998) (dismissing individuals not named in EEOC petition pursuant to Fed.R.Civ.P. 12(b)(1)).

b. Count Five: The ADA Claim

**\*5** The ADA prohibits an employer from discriminating against a "qualified individual with a disability because of the disability ... in regard to [the] terms, conditions and privileges of employment." 42 U.S.C. Section 12112(a).

In order to state a viable ADA claim, the Plaintiff must plead and prove that: (a) her employer is subject to the ADA; (b) she suffers from a disability within the meaning of the ADA; (c) she could perform the essential functions of her job with or without reasonable accommodation; and (d) she was discriminated against because of her disability. Reeves v. Johnson Controls World Servs., 140 F.3d 144, 149-50 (2d Cir.1998); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir.1998). In the present case, Plaintiff succeeds in setting forth her prima facie case in that she is regarded by her supervisor as having a disability within the meaning of the ADA. The ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. See 42. U.S.C. § 12102(2). "Disability is not a unitary concept under the ADA." Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir.1997). Instead, the statute sets forth three subsets of disability, any one of which is sufficient to trigger the Act's protections. Id. The subset which Plaintiff meets is three, as her pleading that she was not permitted to attend certain meetings because she was an "hysterical woman" due to her PMS, must be interpreted as being "regarded as having a disability" by her supervisor. Accordingly, she states a claim upon which relief may be granted in Count 5.

c. Count 10: Conn. Gen.Stat. § 31-49 Claim

A federal court must look to the highest level of decision-making in the state, here the Supreme Court for Connecticut. The Supreme Court, in Parsons v. United Technologies Corp., Sikorsky Aircraft Division, 243 Conn. 66 (1997), held that an at-will employee could plead a cause of action for wrongful discharge for refusing to travel to the area of the Persian Gulf war, as such was a reasonably unsafe working condition, which threatened his physical welfare or could result in the risk of death, disease or serious bodily harm to the employee. Id. at 80, 82. An employee "who contests his or her discharge as a violation of the safe workplace public policy [must] prove that the condition or situation in which a plaintiff was directed to work posed an objectively, substantial risk of death, disease, or serious bodily harm." Id. at 86.

Plaintiff's pleadings herein are woefully insufficient to plead a cause of action based on an unsafe working condition. Based on the objective standard set forth in Parsons in defining an unsafe working condition, Plaintiff's claims do not, in whole or in part, set forth facts from which one could make the leap that the behavior complained of is violative of Section 31-49. See also Perille v. Raybestos-

_Manhattan Europe, Inc.,_ 196 Conn. 529 (no cause of action under Section 31-49, even where interactions among co-workers resulted in assault).

**\*6** Plaintiff fails to set forth a cause of action under Section 31-49. Hence, Count 10 is also dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

c. Counts 11-12: Breach of Implied Contract Count 14: Promissory Estoppel

Counts 11 through 13 allege that Oxford made certain promises to Plaintiff and breached those promises. Counts 11 and 12 are both entitled "Breach of Contract As to All Defendants".

The Counts must be dismissed as to the individual Defendants, as it is clear from the language, and damages sought, that they relate only to Oxford itself. No allegations against the three individual Defendants are pleaded. Accordingly, pursuant to Fed.R.Civ.P. 12(b)(6), the individual Defendants are dismissed from these Counts.

As to Oxford, these claims must also be dismissed. Under Connecticut law, a plaintiff must prove by a fair preponderance of the evidence that her employer " 'agreed, either by words or actions, to undertake [some] form of actual contract commitment" ' to [Plaintiff], under which [she] could not be terminated without just cause." _Manning v. Cigna Corp.,_ 807 F.Supp. 889, 895 (D.Conn.1991), _quoting Coelho v. Posi-Seal Int'l., Inc.,_ 208 Conn. 106, 112 (1988) (citations omitted). Plaintiff alleges that an implied contract arose when Defendant advised her that the payroll department was in good shape, that she would not have to work long hours, and that the payroll system was capable of handling the size of the growing company. There are no written documents upon which Plaintiff relies to bolster her claim of implied contract.

Plaintiff alleges that after commencing employment with Oxford, she found these statements, upon which she relied, to be untrue. This, however, does not legally change her position to an employee who could not be terminated without just cause, as Plaintiff seems to allege. "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like." _Toroysan v. Boehringer Ingelheim Pharmaceuticals, Inc.,_ 234 Conn. 1, 14 (1995). Although the alleged promises of Oxford included Plaintiff's working hours and job responsibilities, Oxford did not change Plaintiff's at-will status and Plaintiff did not plead that Oxford breached its implied contract with her by terminating her without cause. Rather, her claim for breach of an implied contract is the fact that the oral promises made to her were allegedly false. The Court is at a loss as to damages Plaintiff suffered as a result of this and, with no remedy, there can be no breach of implied contract.

Nor is Plaintiff's claim for promissory estoppel (Count 14) a viable cause of action under Connecticut law, based on the facts of this case. Count 14 is a duplicate of the breach of implied contract Counts 11 and 12, except the term "induced reliance" is added to each sentence. In Connecticut, an implied employment contract may arise under the doctrine of promissory estoppel, where injustice to a promisee who has acted in reliance can be avoided only by enforcement of "a clear and definite promise which a promisor could reasonably be expected to induce reliance." _Manning,_ 807 F.Supp. at 895 (citations omitted). To prevail on such a claim, a plaintiff again must prove by a fair preponderance of the evidence that her employer agreed with her, by words or actions, that she could not be terminated without cause. Although Plaintiff pleads that she "relied to her detriment" on the alleged statements set forth above, she does not say why, or how, she was damaged thereby. Nowhere does she plead that she could not have been terminated without cause, which is the _sina qua non_ of claims of breach of implied contract and promissory estoppel.

**\*7** Even viewing these allegations in the light most favorable to Plaintiff, and drawing all inferences in her favor, the Court cannot find that she sets forth a claim under Count 11, 12 or 14 and they are, accordingly, dismissed.

e. Counts 13, 15 and 16: The Statute of Limitations

Negligent misrepresentation claims, fraud claims and breach of the implied covenant of good faith and fair dealing claims all must be brought within three years from the date of the act or omission of which Plaintiff complains. Conn. Gen.Stat. § 52-577. _Accord West Haven v. Commercial Union Ins. Co._ 894 F.2d 540 (2d Cir.1996); _In re Colonial Ltd. Partnership Litigation,_ 864 F.Supp. 64,90 (D.Conn.1994).

Plaintiff asserts that Defendants made certain misrepresentations and fraudulent statements to her prior to her commencing employment with Oxford. She further alleges that "immediately after commencing employment", she discovered that these statements and representations were false. It is these allegations which form the basis for Plaintiff's claim for implied covenant of good faith, promissory estoppel, negligent misrepresentation and fraud/deceit.

Plaintiff was hired on or about June 26, 1995. In her Complaint she alleges that these statements

were made "on or about June of 1995, prior to accepting her position as payroll manager ...." She further asserts that she "discovered" that the representations were false "immediately upon commencing employment." Therefore, in order for these claims to be timely brought, Plaintiff must have filed these claims by June 26, 1998.

Inasmuch as her Complaint containing these claims was not brought until February 18, 1999, Count 13 through and including Count 16 are time-barred and will be dismissed, as Plaintiff fails to set forth claims upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Accord, Fed.R.Civ.P. 12(b)(1). [FN5]

> FN5. Plaintiff attempts to set forth additional arguments in her memorandum of law, not set forth in her complaint, regarding these causes of action. These after-the fact allegations cannot supersede allegations of the Complaint, nor be considered by this Court in ruling on this Motion to Dismiss. See, e.g. Davis v. Cole, 999 F .Supp. 809, 813 (E.D.Va.1998).

f. Count 18: Negligent Infliction of Emotional Distress [FN6]

> FN6. This Count is dismissed against the individual Defendants Thibeault and Daukus because there are no specific, wrongful allegations brought against these two men in this Count. In fact, neither was involved in the termination of Plaintiff.

In order to establish a cause of action for negligent infliction of emotional distress, the Plaintiff must prove that the Defendants: (1) should have realized that conduct involved an unreasonable risk of causing distress to the Plaintiff; and (2) should have realized that the distress, if caused, might result in illness or bodily harm. Barrett v. Danbury Hospital, 232 Conn. 259, 260-61 (1995). There are, however, specific rules when the alleged infliction occurs in the workplace. "[N]egligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.' The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. 'The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." '. Parsons 243 Conn. at 88-89, citing Morris v. Hartford Courant Co., 200 Conn. 242, 682 (1986) and Madani v. Kendall Ford, Inc., 312 Or. 198, 204 (1991).

*8 In the present case, the Court finds that there was nothing unreasonable or socially intolerable behavior in the termination of Plaintiff. The fact that she was not allowed to retrieve her personal belongings without a corporate employee at hand is usual behavior for corporations for their own protection. See Parsons, 243 Conn. at 89 (removing an employee from building under security escort after termination insufficient to support claim for negligent infliction of emotional distress). The cancellation of her voice mail is also not intolerable behavior, transgressing bounds of decency. Accordingly, Count 18 is dismissed for failure to state a claim upon relief may be granted. Fed.R.Civ.P. 12(b)(6).

g. Count 19: Intentional Infliction of Emotional Distress

In order to assert a claim for intentional infliction of emotional distress, the Plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." Peyton v. Ellis, 200 Conn. 243, 253 (1986).

Whether the Defendant's conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the Court. Johnson v. Cheesebrough-Ponds USA Co., 918 F.Supp. 543, 552 (D.Conn.) aff'd 104 2d. 355 (2d Cir.1996). Only where reasonable minds would differ, does it become a question for the jury. Id., citing Reed v. Signode Corp., 652 F.Supp. 129, 137 (D.Conn.1986). See also 1 Restatement (Second) of Torts § 46, comment (h). The general rule "is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a

nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." _Johnson,_ 918 F.Supp. at 552 _quoting Mellaly v. Eastman Kodak Co.,_ 42 Conn. Sup. 17, 19-20 (Conn.Super.1991). _See also_ 1 Restatement (Second) at comment (d)("[C]onduct must be so outrageous and extreme... as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society".).

Applying these stringent standards to the present case, while viewing them in the light most favorable to Plaintiff, the Court finds that Defendants' conduct as alleged in the Complaint was not "so outrageous and extreme... [as] to be regarded as atrocious and utterly intolerable in a civilized society."

Hence, Count 19 is also dismissed for failure to state a claim under which relief may be granted. Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss Counts 1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, and 19 [Doc. No. 16] is GRANTED. It is DENIED as to Count 5.

**\*9** If the parties believe that a settlement conference would be of assistance, they shall so notify the Court.

SO ORDERED

D.Conn.,2000.

Cavuoto v. Oxford Health Plans, Inc.

2000 WL 888263 (D.Conn.)