UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FERRON SHORTER, JR.<br><br>Plaintiff,<br><br>- against -<br><br>HARTFORD FINANCIAL SERVICES GROUP, INC.<br><br>Defendant. | CASE NO. 3:03-cv-00149-WIG<br><br><br><br><br><br>**September 30, 2005** |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Ferron Shorter's entire case rested on a comparison of his circumstances to those of Maryanne Rhodes. But Shorter and Rhodes committed different violations of Company policy and received different discipline as a result. Rhodes revealed her password to allow Shorter to *listen to* her voicemail messages. Shorter used the password (among other things) to *erase* the messages and to *block Rhodes' access* to the entire voicemail system. Shorter's violation, unlike Rhodes', directly impeded the conduct of Company business. The Hartford therefore judged Shorter's conduct to be more egregious.

Shorter devotes his entire Opposition Brief to second-guessing that judgment — notably, without citing any legal authority in support. But (as demonstrated in the Opening Brief) the Company's calibration of discipline to the level of each person's culpability raises no triable issue of unlawful discrimination. The Company's motion for judgment as a matter of law should be granted.

I.  **THERE IS NO TRIABLE QUESTION OF RACE OR SEX DISCRIMINATION**

    A.  **Shorter Admittedly Tampered With Rhodes' Work Voicemail In Violation Of Company Policy.**

Shorter does not even attempt to dispute the material facts. As Shorter admitted at trial, he repeatedly broke into Rhodes' voicemail and interfered with her ability to access her work messages. (Opening Br. at 3-4.) He first accepted Rhodes' password in late 2001 and used it to access her voicemail and listen to a message. (*Id.*)[1] Then, over the weekend of January 18-20, 2002, Shorter (i) accepted a new password from Rhodes; (ii) accessed her voicemail system 20 times; (iii) deleted seven messages; and (iv) intentionally blocked Rhodes' access to her work voicemail by changing the password three separate times. (Tr. I at 240-43; Trial Transcript (Jan. 25, 2005) ("Tr. II") 100-01, 139-40; Trial Transcript (Jan. 27, 2005) ("Tr. IV") at 26-29.)

    B.  **Shorter's Sole "Evidence" Of Discrimination — That Rhodes Was Given A Lesser Punishment — Is Insufficient To Raise A Triable Issue.**

        1.  **Shorter and Rhodes were not similarly situated.**

Shorter's sole proffered evidence of discrimination is that Rhodes also violated The Hartford's policy, but was given a lesser punishment. *If* they were similarly situated

---

[1] Shorter disputes the timing of when Rhodes first shared her password with him. (Opposition at 3 & n.4.) In doing so Shorter misstates the record, and his quibbling is irrelevant in any event. Shorter misstates the record because he cites only a portion of his testimony. Shorter testified at trial that Rhodes shared her password with him a second time in January 2002 (when the couple was not cohabitating). (Trial Transcript (Jan. 24, 2005) ("Tr. I") at 137-39.) Shorter also testified, however, that Rhodes first shared her password with him in late 2001, around the same time they started living together. (Tr. I at 105-07.) And Shorter's quibbling on this issue is beside the point, in any event. It is undisputed that Rhodes shared her password as a way of reassuring Shorter that she was not talking to other men, not to impede the conduct of Company business. (Tr. I at 105:25-106:8 ("[S]he wanted me to check her voice mail . . . [as] her way of proving, . . . 'No other guys' . . . ."); Tr. III at 41:5-7 ("[I gave him the passcode] [b]ecause he wanted to be able to hear if I was getting messages from other men.").)

comparators, then their respective levels of discipline might yield an inference helpful to Shorter's case. But because as a matter of law they were not similarly situated, no triable question arises.

Rhodes allowed Shorter to listen to her voicemail messages (an indiscretion for which she received a written warning); Shorter, on the other hand, repeatedly used that password to break into Rhodes' voicemail, delete messages, and intentionally block her access to the system by changing the password multiple times. (*Id.*) Rhodes shared her password with Shorter to assure him that she was not talking with other men (*see supra* note 1); he used her password to tamper with her voicemail and impede Company business. By altering Rhodes' password and preventing her from accessing her messages, Shorter jeopardized the Company's ability to communicate with its own employee and interfered with Rhodes' ability to do perform her job. Because the two policy violations were different in purpose, kind, and effect, The Hartford lawfully differentiated between them when meting out discipline.

*Bryant v. Compass Group USA Inc.*, 413 F.3d 471 (5th Cir. 2005), is instructive. In that case, plaintiff Brandon Bryant, a white male, worked as a cook for the defendant, which provided food and beverage services to a university. *Id.* at 474. During a birthday party on campus catered by the defendant, Bryant was observed taking, from a gift table, envelopes containing money for the party's honoree. *Id.* The defendant fired Bryant after he admitted to the theft during an investigation. *Id.* Bryant then sued, claiming race discrimination. *Id.* Bryant contended that the defendant's reason for termination was pretextual because a Hispanic employee, one Ortiz, was not terminated even though she "had pilfered food, alcoholic beverages, and/or table decorations" from the party. *Id.* at 478. A jury found for Bryant on his

DEFENDANT'S MEM. OF LAW IN SUPP. OF MOTION
FOR JUDGMENT AS A MATTER OF LAW

discrimination claim. *Id.* at 474-75. But the Fifth Circuit reversed, holding that Bryant and Ortiz were not similarly situated because their offenses were not of comparable seriousness: "[T]he alleged theft of alcohol, party decorations, and table decorations is not the same as stealing money from a client's gift table at a catered event," the court held. *Id.* Ortiz's theft merely affected *company* property, the court noted; Bryant's theft affected *client* property and thus damaged the defendant's business and reputation. *Id.* at 478-79.

Here, similarly, Shorter was not similarly situated with Rhodes because his offense was both qualitatively and quantitatively more serious than hers. She may have given him the "keys" in the first instance, but he then elected to use those "keys" repeatedly — not simply to access, but to block access to, Company property. The Hartford disciplined Rhodes for her indiscretion, by issuing a written warning.[2] The discipline Rhodes received was legally irrelevant unless she was similarly situated with Shorter (which she was not). The Hartford's decision to mete out different punishment to Rhodes (as the inadvertent enabler) than to Shorter (as the willful perpetrator) therefore raises no triable issue. Shorter conspicuously does not even try to address *Bryant* or any of the other cases cited in the Opening Brief illustrating that employers lawfully differentiate based on the seriousness of the violation and the company's assessment of relative culpability. (*See* Opening Br. at 6-12.)[3]

---

[2] Shorter cites testimony that Rhodes should be "accountable" for what followed her ECP violation. (Opposition at 1-2.) She *was* held accountable; that is why she was disciplined. Nothing in any testimony or Company policy states that Rhodes must be treated as *equally* accountable with someone whose misbehavior exceeded her own.

[3] Shorter summarily states that the cases cited in The Hartford's Opening Brief are "inapposite" and provides brief descriptions of the cases without *any* accompanying analysis, let alone a substantively differentiating one. (Opposition at 7-10.) But Shorter does not and cannot

(*Continued . . .*)

### 2. Rhodes' "agency" theory is not the law and does not raise a triable issue in any event.

Shorter analogizes to the law of principal and agent and argues that Rhodes must be deemed equally culpable with him. (Opposition at 3-4 & n.6.) Not so. No case has imported such concepts into the law of employment discrimination, and in any event the analogy is misplaced. Rhodes perhaps would bear equal responsibility if Shorter only did what Rhodes authorized him to do: listen to her voicemail messages. Shorter's conduct in that event would have been coextensive with (what he calls) his "agency." But that is not what occurred. Rhodes did not invite Shorter to do anything more than listen in, *see supra* note 1, and even that authorization logically expired when their relationship ended. Shorter, by tampering with her voicemail and blocking her access to it, exceeded the scope of any supposed "agency" and therefore committed an offense that the Company lawfully judged different, both in kind and in degree.

Shorter's attempt to distinguish *Albury v. J.P. Morgan Chase*, No. 03 Civ. 2007 (HBP), 2005 WL 746440 (S.D.N.Y. Mar. 31, 2005), thus misses the mark. In that case, the plaintiff was terminated for accessing and disseminating confidential employee information for non-work related purposes in violation of the defendant's written Code of Conduct, and for lying about her

---

distinguish the holdings of these cases, *i.e.*, that comparators must be similarly situated in all material respects in order for their disparate treatment to raise an inference of discrimination. Shorter's suggestion that *Graham v. Long Island Railroad*, 230 F.3d 34 (2d Cir. 2000), disavows the "similarly situated" standard (Opposition at 9) is misleading. The Second Circuit in *Graham* declined to require that comparators be "identical" in every respect, but it reaffirmed that comparators must be "similarly situated in all material respects" and that, in the context of disciplinary action, the key issue is whether the comparators engaged in misconduct of "comparable seriousness." *Id.* at 40-41.

misconduct during the employer's investigation. *Id.* at *1, 2. The district court granted summary judgment on plaintiff's discrimination claims, rejecting her argument that she was similarly situated with the three co-workers who had asked her to access their account information but who had not themselves accessed any information. *Id.* at *10. Shorter contends *Albury* is distinguishable because the three co-workers who asked the plaintiff to access their confidential information did not themselves provide the "keys" for the plaintiff to do so, as Rhodes did in this case. (Opposition at 12.) That is a distinction without a difference. Rhodes here shared her password but that says nothing about the liberties Shorter then took with it: He tampered with Rhodes' work voicemail and blocked her access to it.[4]

### C. Shorter's Continued Quibbling Over The Hartford's Investigation And Choice Of Discipline Raises No Triable Issue.

Shorter principally second-guesses the Company's exercise of its business judgment as to what the "right" investigative techniques and disciplinary response should have been. Neither bit of second-guessing raises a triable question of discrimination.

As for investigative techniques, courts repeatedly reject as a matter of law claims of discrimination by plaintiffs who attempt to second-guess the employer's investigation or

---

[4] Shorter next claims that Rhodes did not disclose that she had given her password to Shorter. (Opposition at 2-3.) That, according to Shorter, "hindered" the Company's business. But there was no omission; Rhodes testified without contradiction that she told Lisa Anderson in the Company's Human Resources department that she believed she could not access her voicemail because she had given her password to Shorter and that Shorter had changed the password. (Trial Transcript (Jan. 26, 2005) ("Tr. III") at 32, 182.) And even if there were a brief delay before all the facts emerged, any "hindrance" was caused in the first instance *by Shorter*. Had he not elected (repeatedly) to use Rhodes' password to access her voicemail, delete messages, and block her access, there would have been no work obstacle to overcome. Whether and how quickly Rhodes acted to correct the "hindrance" caused by Shorter's misuse of her password is legally irrelevant to the assessment of Shorter's own culpability for causing it in the first place.

DEFENDANT'S MEM. OF LAW IN SUPP. OF MOTION
FOR JUDGMENT AS A MATTER OF LAW

factfinding methodology. *See, e.g., Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 675-76 (7th Cir. 1997) (while "[o]bjectively speaking, [the company's] investigation left something to be desired," the employer still was entitled to summary judgment; "[I]f the company honestly believed in those reasons, the plaintiff loses even if the reasons are foolish or trivial or baseless.").[5] *See generally Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) (affirming summary judgment in discriminatory discharge case; that an employer exercised "poor business judgment" will not raise a triable question of discrimination; "[T]he reasons tendered need not be well-advised, but merely truthful.").

Moreover, that Shorter was the target of a complaint alleging *workplace violence* (while Rhodes was not) readily accounts for any difference in the Company's investigative procedures. Rhodes registered her complaint about Shorter to Lisa Anderson in Human Resources, during the course of which Rhodes admitted to having given Shorter her password. (Tr. III at 57-58, 130-33.) Anderson testified at trial that Human Resources interview practice does not require employees to make statements under oath or give social security numbers. (Tr. III at 134.) Shorter, by contrast, was being investigated as a possible security threat. He thus was interviewed by Richard Wardell in The Hartford's Department of Special Investigations. (Tr. III

---

[5] *Accord Hardy v. S.F. Phosphates Limited Co.*, 185 F.3d 1076, 1081-82 (10th Cir. 1999) (fact that investigative team did not interview all of the individuals who witnessed the events leading to plaintiff's termination did not give rise to an inference of pretext); *Gill v. Reorganized Sch. Dist. R-6*, 32 F.3d 376, 379 (8th Cir. 1994) (affirming summary judgment even though the defendant's investigation was shoddy; "We are not permitted to second guess the [employer] or to correct an unwise decision if the [employer] gave an honest, nondiscriminatory explanation for his behavior."); *Lanear v. Safeway Grocery*, 843 F.2d 298, 302 (8th Cir. 1988) ("[H]indsight suggests that an interview with [a particular employee] would have been appropriate," but an arguable factfinding or investigative error "does not show discriminatory intent.").

at 135, Tr. IV at 16.) Prior to his interview with Shorter, Wardell met briefly with Rhodes to confirm the truth of the statement she previously had given to Anderson and to ask if she feared for her safety — which she said she did. (Tr. IV at 22.) Wardell then met with Shorter and, consistent with Department of Special Investigations' procedure, requested a written statement under oath and explained that Shorter's continued employment was contingent upon his truthfulness in the investigation. (Tr. III at 135-36; Tr. IV at 25, 41.) The nature of the investigation was logically related to the nature of the allegations being investigated.

As for Shorter's second-guessing of The Hartford's disciplinary response, courts repeatedly refuse to sit as super-personnel departments reexamining the wisdom of this sort of business decision. *E.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 119-20 (2d Cir. 1998) (reversing on appeal a plaintiff's verdict in a discrimination case; plaintiff was fired for taking a long lunch after learning that his father was terminally ill; "[I]t is easy to see how a reasonable person could conclude from the facts of this case that it was *wrong* for [defendant] to fire Norton. . . . But the [discrimination law] does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their [protected characteristic].") (emphasis added); *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) (per curiam) (the reviewing court "does not sit as a super-personnel department that reexamines an entity's business decisions").

In the end, Shorter was required to come forward with evidence on the ultimate issue of *discrimination*. Because he failed to provide any evidence that his race or sex had anything to do with his termination, his discrimination claims fail as a matter of law.[6]

### D. The Two Possible Explanations For The Jury's Verdict Simply Confirm Why It Should Be Set Aside.

The Company in its Opening Brief posited two explanations for the jury's verdict. These explanations further underscore why the verdict cannot stand.

#### 1. The misunderstanding over Shorter's criminal record is not a basis for liability, and indeed is further reason to set the verdict aside.

The Hartford during its investigation believed (in error, as it later turned out) that Shorter had a criminal record, and that he lied about it. (Opening Br. at 14-16.) As set forth in the Opening Brief, the Company's good-faith belief provided another nondiscriminatory reason for discharge, and another basis at the time for differentiating Shorter from Rhodes in calibrating discipline. (*Id.*) This misunderstanding might help explain — but it cannot make right — the

---

[6] Shorter contends that Anderson of Human Resources noted the race and gender of both Shorter and Rhodes in her investigation file. (Opposition at 7.) Anderson and her manager David Jimenez both testified without contradiction that it was their standard practice to note such demographic information. (Tr. III at 196-201; Tr. IV at 105-06.) Indeed, *any* competent Human Resources professional is mindful of key demographic information in making an important employment decision, *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 410 (2d Cir. 1990) (affirming judgment for the defendant even though its personnel recorded on company forms the race of plaintiff and others; the company "was merely following industry custom"), precisely in order to avoid groundless discrimination claims like this one, *cf. Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994) ("We cannot vilify every employer that exercises caution in the handling of delicate employment situations where race might factor."). No inference of discrimination arises because an employer notes — or even asks affirmatively about — demographic information like this. *E.g., Bruno v. City of Crown Point*, 950 F.2d 355, 362, 364-65 (7th Cir. 1991) (no triable question of gender discrimination even though a job interviewer asked the plaintiff questions about her ability to work the night shift and her childcare arrangements).

jury's verdict. The jury, thinking that because Shorter got "a raw deal" on the criminal-conviction issue, likely was confused into thinking that "a raw deal" was the same thing as discrimination. (*Id.*) But even *unfair* discipline is not *discriminatory* discipline, as shown in the Opening Brief.

### 2. That Shorter and Rhodes traded accusations does not make them similarly situated; to the contrary, the dissimilarity in their allegations further distinguishes them.

Shorter and Rhodes each filed an internal complaint against the other — she for security threats, he for sexual harassment. (Opening Br. at 17-19.) But Shorter does not take issue with the Company's argument that Rhodes' complaint against Shorter was qualitatively different and provided yet another reason why the two were not similarly situated comparators. (*Id.*) Here again, the jury's confusion on the applicable law may be understandable, but it is this Court's job to make it right. Judgment as a matter of law must be granted where, as here, there is no probative evidence of discrimination.

## II. THERE REMAINS NO TRIABLE QUESTION OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

There is no evidence that The Hartford engaged in unreasonable conduct in the termination process, as required to sustain Shorter's claim for negligent infliction of emotional distress. (Opening Br. at 19-20.) Shorter tacitly so concedes; his Opposition Brief is completely silent as to this claim.

## III. CONCLUSION

Shorter defaulted in his proof as to the two theories on which the jury found in his favor. Judgment as a matter of law for The Hartford should be entered.

Dated: September 30, 2005      Respectfully submitted,

By: *Margaret J. Strange* (signature)
Margaret J. Strange (ct08212)
James F. Shea (ct16750)
JACKSON LEWIS LLP
90 State House Square, 8th Floor
Hartford, CT 06103
Phone: (860)522-0404/Fax: (860) 247-1330
Email: strangem@jacksonlewis.com
Email: sheaj@jacksonlewis.com

By: _____
Paul W. Cane, Jr. (Calif. SB# 100458)
Katherine C. Huibonhoa (Calif. SB# 207648)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105-3441
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
Email: paulcane@paulhastings.com

Counsel for Defendant
HARTFORD FINANCIAL SERVICES GROUP, INC.

CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this 30th day of September 2005, to the following counsel of record:

Rachel M. Baird
Law Office of Rachel M. Baird
379 Prospect Street
Torrington, CT 06790
(860) 626-9991
Attorney for Plaintiff

_____
James F. Shea

LEGAL_US_E # 70050502 2